IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| DAVITA M. KEY, )<br>)<br>)<br>**Plaintiff,** )<br>)<br>) **CIVIL ACTION NUMBER:**<br>v. ) **2:19-cv-00767-ECM-SMD**<br>)<br>HYUNDAI MOTOR MANUFACTURING )<br>ALABAMA, LLC, HYUNDAI )<br>ENGINEERING AMERICA, INC. and )<br>DYNAMIC SECURITY, INC. )<br>)<br>**Defendants.** ) | |

**MOTION TO DISMISS (HYUNDAI MOTOR MANUFACTURING ALABAMA, LLC)**

Plaintiff's Complaint contains three counts, but two distinct causes of action. Counts One and Three are for retaliation under Title VII and Count Two is for pregnancy discrimination under the Pregnancy Discrimination Act (PDA) which amended Title VII. *See* Complaint, Doc. 1, ¶¶1; 29-41. As explained below, these claims are due to be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because HMMA never employed Plaintiff and because they fail to state a claim as a matter of law.

**HMMA never employed Plaintiff.**

Plaintiff did not sign a Charge of Discrimination until well one year after her termination. (Exhibit A, Charge). Therefore, her Charge is valid only as an amendment to her Intake Questionnaire signed by Plaintiff on August 2, 2017, the day after her termination. (Exhibit B); 29 C.F.R. §1601.12(b). In Plaintiff's Intake Questionnaire, she states that she desires to file a claim against "Hyundai," "Ms. Casandra Williams," and "Ms. Gloria Robinson." (Exhibit B). There is no corporation doing business in Alabama, registered with Alabama's Secretary of State, operating simply under the name "Hyundai." (Exhibit C, Secretary of State Search

Results). Hyundai Motor Manufacturing Alabama, LLC ("HMMA"), is simply one of dozens of companies with the word Hyundai in its name that have registered with the Alabama Secretary of State. So is Hyundai ENG America, Inc. ("HEA"). (*Id.*). It is important to note that HEA is a wholly separate company from HMMA. (Exhibit D, Burns Declaration, ¶7). HEA is not a parent or subsidiary of HMMA; nor is HMMA a parent or subsidiary of HMMA. (*Id.*). The two entities do not share employees, policies, executives, or resources with each other. (*Id.*, ¶¶7-8).

In July and August 2017, HMMA had a contractual relationship with HEA, formerly named Hyundai AMCO America, Inc. (Exhibit D, Burns Declaration, ¶6; Exhibit E, Secretary of State business entity record for HEA). Upon information and belief, HEA contracted with Dynamic Security, Inc., which was Plaintiff's sole employer. (*Id.*, ¶¶9-10). Dynamic Security is a wholly separate entity from HMMA. (*Id.*, ¶¶12-13; *see also* Exhibit F, Secretary of State business record for Dynamic Security). Dynamic Security is not a parent or subsidiary of HMMA; nor is HMMA a parent or subsidiary of Dynamic Security. (Exhibit D, ¶13). The two entities do not share employees, policies, executives, or resources with each other. (*Id.*, ¶¶12-13).

No one named in Plaintiff's EEOC Charge or Complaint[1] was employed by HMMA. Based on its investigation, HMMA determined that Gloria Robinson, Maurice Chambliss, and Tonya Howell were employed by Dynamic Security, Inc. (Exhibit D, Burns Declaration, ¶9). Cassandra Williams was employed by HEA. (*Id.*; Exhibit G, Williams Declaration). When the employers of Ms. Robinson, Mr. Chambliss, Ms. Howell, and Ms. Williams are properly identified, as they are above, then it becomes abundantly clear that HMMA had nothing to do with Plaintiff's employment and termination and so should be dismissed from this Complaint.

---

[1] In paragraph 25 of her complaint, Plaintiff obliquely refers to an unnamed "HR Representative for Hyundai Motor Manufacturing Alabama and Dynamic Security." HMMA employs no personnel jointly with Dynamic Security. (Exhibit D, ¶12). In her Charge, the sole person associated with grooming instructions is Ms. Williams, the HEA employee.

**Plaintiff's Complaint fails to state a cause of action for which relief can be granted.**

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain a viable legal theory and sufficient factual allegations to support a plausible claim for relief under that theory. *See AFL-CIO v. City of Miami*, 637 F.3d 1178, 1186 (11th Cir. 2011); *Glover v. Liggett Group, Inc.*, 459 F.3d 1304, 1309-1310 (11th Cir. 2006); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) ("a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'").

Even if the Court sets aside Plaintiff's attempts to obscure the identity of her employer, Plaintiff's Complaint suffers from fatal, incurable deficiencies. Specifically, an employer prohibition against dreadlocked hair has repeatedly and conclusively been found not to constitute a racially discriminatory practice. In fact, the law is so clear on this point that it would not be objectively reasonable for an employee to believe that such hairstyle discrimination was unlawful, such that opposing such a rule would not amount to protected conduct. And, Plaintiff's Complaint does not contain allegations that would render her claim of pregnancy discrimination plausible, not merely possible.

**I.   It is well settled as a matter of law that there is no cause of action for racial discrimination restricting the wearing of dreadlocks.**

As noted above, no claim can survive summary judgment if it fails to allege a violation of law. *See AFL-CIO v. City of Miami*, *supra.*; *Glover v. Liggett Group, Inc.*, *supra*. To the extent that Plaintiff's Complaint contains a cause of action for race discrimination,[2] it is ultimately one

---

[2] Plaintiff's Complaint occasionally references its intent to include a claim for race discrimination under Title VII, despite the fact that none of its three counts include such a claim. *Compare* Complaint, doc. 1, ¶1 and ¶10 *with* ¶¶29-41 (two counts for retaliation, one for Pregnancy Discrimination).

for discrimination against a mutable hair style, which is not prohibited by Title VII or any other law.

In her Complaint, Plaintiff attempts to obscure the nature of her hairstyle which she alleges initiated criticism by Ms. Williams. However, in her Charge (Exhibit A), she is more exact: the hairstyle in question is dreadlocks. The Eleventh Circuit has conclusively and categorically concluded, first, that dreadlocks are not a natural hair growth pattern but an elective, mutable style; and, second, that as such, an employer prohibition against dreadlocks is not racially discriminatory. *EEOC v. Catastrophe Mgmt. Sols.*, 852 F.3d 1018, 1030, 1032-33 (11th Cir. 2016). Therefore, regardless of whom Plaintiff's employer is and regardless of which entity or entities allegedly established a rule against dreadlocks, there is no cause of action for race discrimination for such a workplace grooming rule. *Id.*; *see also Eatman v. UPS*, 194 F.Supp.2d 256, 262 (S.D.N.Y. 2002) ("it is beyond cavil that Title VII does not prohibit discrimination on the basis of locked hair...Thus, even if [the employer]'s policy [which prohibited "unbusinesslike" hairstyles] explicitly discriminated against locked hair, it would not violate Title VII on its face."); *Pitts v. Wild Adventures, Inc.*, 2008 U.S. Dist. LEXIS 34119, *19 (M.D. Ga.) ("Dreadlocks and cornrows are not immutable characteristics, and an employer policy prohibiting these hairstyles does not implicate a fundamental right."); *Carswell v. Peachford Hospital*, 1981 U.S. Dist. LEXIS 14562, **5-6 (N.D. Ga.) ("There is no evidence, and this court cannot conclude, that the wearing of beads in one's hair is an immutable characteristic, such as national origin, race, or sex. Further, this court cannot conclude that the prohibition of beads in the hair by an employer is a subterfuge for discrimination."); *Cooper v. American Airlines, Inc.*, 1998 U.S. App. LEXIS 10426, **2-3 (4th Cir.) (upholding district court's 12(b)(6) dismissal of claims based on a grooming policy requiring that braided hairstyles

be secured to the head or at the nape of the neck). As such, even if the Complaint were construed to contain a claim of racial discrimination, that count would be due to be dismissed for failing to state a viable legal theory.

## II. Relatedly, Plaintiff could not have had a reasonable belief that the alleged hairstyle restriction was unlawful.

To establish a *prima facie* case of retaliation, a plaintiff must show that "(1) she engaged in statutorily protected activity, (2) an adverse employment action occurred, and (3) the adverse action was causally related to plaintiff's protected activities." *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 959 (11th Cir. 1997). In this case, Plaintiff has failed to establish statutorily protected activity.

According to Plaintiff, her supervisors (none of whom were employed by HMMA, (Exhibit D, ¶9)), asked her about her dreadlocked hairstyle, then later the same day told her that the hairstyle was against the rules of a defendant. (Complaint, doc. 1, ¶¶16, 19). When she requested to see the policy, she was refused. (*Id*. at ¶20). After a call ascertaining her due date and confirming she could work without restrictions, Plaintiff was terminated. (*Id*. at ¶¶22-24).[3]

For conduct to be protected under Title VII, a plaintiff must have had a "good faith, reasonable belief that the employer was engaged in unlawful employment practices." *Little*, 103 F.3d 956, 960. The plaintiff must show not only her own subjective belief that the employer's practices were unlawful, but must also show that that belief was objectively reasonable, as measured against substantive law. *Id*.; *Clover v. Total Sys. Svcs., Inc.*, 176 F.3d 1346, 1351 (11th Cir. 1999); *Anduze v. Florida Atlantic Univ.*, 151 Fed. Appx. 875, 878 (11th Cir. 2005). Even before the *Catastrophe Management* decision above, the caselaw regarding hairstyle discrimination was well-established. *See McBride v. Lawstaf, Inc*., 1996 U.S. Dist. LEXIS

---

[3] While Plaintiff's Complaint is not a model of clarity with its two retaliation claims, Plaintiff does not allege that she engaged in any nominally-protected conduct related to her pregnancy before her termination.

16190, **6-7 (N.D. Ga.), *adopted by* 1996 U.S. Dist. LEXIS 16188 (dismissed a retaliation claim pursuant to Rule 12(b)(6) because the plaintiff could not have had a reasonable belief that she was objecting to unlawful discrimination where she objected to the employer's policy against placing women with braided hair); *see also Harper v. Blockbuster*, 139 F.3d 1385, 1388 (11th Cir. 1998) (opposing grooming policies regarding male hair length was not protected conduct). But certainly since the Eleventh Circuit's well-publicized decision in *Catastrophe Management,* no individual could reasonably believe that having a dreadlocked hairstyle put one in a protected class.

### III. Plaintiff's pregnancy discrimination claim fails to breach the threshold of possibility to plausibility.

Plaintiff alleges that she requested to see a policy on restricted hairstyles and that she was refused, and she was then instructed to wear a hat covering her dreadlocks. (Complaint, doc. 1, ¶¶20-21). About five minutes later, Plaintiff contends she received a call from her supervisor, asking for her due date and confirmation that she was cleared to continue working. *Id*. at ¶22. Plaintiff responded that her due date was January 2018 and that she had no restrictions. *Id.* at ¶23. After that, according to Plaintiff, she was terminated and told that "Hyundai" and Dynamic Security did not want her at their work site due to "her hair and something else." *Id*. at ¶¶24-25. In other words, the factual matter supporting Plaintiff's pregnancy discrimination claim amounts to the allegations that she was pregnant and that she was terminated.

However, to state a claim of discrimination, it is not sufficient to allege merely one's membership in a protected class and that one experienced an adverse action. *E.g.*, *Edwards v. Prime Inc*., 602 F.3d 1276, 1301 (11th Cir. 2010) (dismissing claims for racial harassment where factual allegations did not indicate negative action was taken because of complainant's race); *Durham v. Ascension Parish Sch. Bd.*, 624 Fed. Appx. 237, 238 (5th Cir. 2015); *Sanders v.*

6

*Grenadier Realty, Inc.*, 367 Fed. Appx. 173, 175 (2nd Cir. 2010) (merely alleging "facts consistent with a discrimination claim, i.e., that non-black residents were granted subsidies," the complaint "nevertheless 'stops short of the line between possibility and plausibility of entitlement to relief' because plaintiffs do not allege any facts supporting an inference of racial animus.") (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (other quotation and citation marks omitted)).

From the above allegations, there is an obvious alternative explanation—other than pregnancy discrimination—for the reason for Plaintiff's dismissal: her hairstyle and her request to see the policy that prohibited her hairstyle. Where an obvious alternative explanation exists that would render the Defendant's objective conduct lawful, then dismissal is appropriate. *See Heard v. Hannah*, 51 F.Supp.3d 1129, 1143 (N.D. Ala. 2014) (citing *Iqbal*, 556 U.S. 662, 681-82); *Henley v. Turner Broad. Sys.*, 267 F.Supp.3d 1341, 1353 (N.D. Ga. 2017) (in something of a reverse situation from this complaint, African-American plaintiff's race discrimination claim was dismissed where she experienced a change in treatment after her return from maternity leave).

## CONCLUSION

As explained above, Plaintiff's claims are without merit and fail to establish violations of Title VII, as amended. These inadequacies call for a complete dismissal of Plaintiff's claims. Additionally, Defendant HMMA is not a proper defendant in this suit, having never employed Plaintiff or any of the key individuals she names in this suit.

Respectfully Submitted,

s/ David J. Middlebrooks
David J. Middlebrooks ASB- 8553-D58D
Whitney R. Brown ASB-4431-H71B

OF COUNSEL:
LEHR MIDDLEBROOKS VREELAND & THOMPSON, P.C.
P.O. Box 11945
Birmingham, Alabama 35202-1945
(205) 326-3002
Fax: (205) 326-3008
Email: dmiddlebrooks@lehrmiddlebrooks.com
wbrown@lehrmiddlebrooks.com

**CERTIFICATE OF SERVICE**

     I hereby certify that on January 30, 2020, I have served a copy of the foregoing on the following by placing same in the United States Mail, properly addressed and first class postage prepaid

          Ms. Davita M. Key
          6940 Wrangler Rd, Apt. C
          Montgomery, AL 36117

                         s/ David J. Middlebrooks
                         OF COUNSEL

665034.docx