IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| DAVITA M. KEY, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:19-CV-767-ECM |
| | ) |
| HYUNDAI MOTOR | ) |
| MANUFACTURING, ALABAMA, | ) |
| LLC; HYUNDAI ENG AMERICA, | ) |
| INC.; and DYNAMIC SECURITY, INC. | ) |
| | )    Jury Trial Requested |
|    Defendants. | ) |

## FIRST AMENDED COMPLAINT

### I.   JURISDICTION AND VENUE

1.   The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331,

1343(a)(4).  This lawsuit for termination based on pregnancy and race

discrimination and retaliation is authorized and instituted pursuant to Title

VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*,

and as amended by the Pregnancy Discrimination Act of 1978, and 42

U.S.C. § 1981 as amended.  Plaintiff invokes the jurisdiction of this Court to

secure protection for and to redress the deprivation of rights secured by Title

VII, the PDA and § 1981, seeking injunctive and other relief against

discrimination on the basis of sex, race, and retaliation.

## II.   PARTIES

2.   Plaintiff, Davita M. Key, ("Key" or "Plaintiff") is a Black female over the age of 18 and is a resident of Montgomery, Alabama.

3.   Defendant, Hyundai Motor Manufacturing Alabama, LLC. ("HMMA") is a foreign limited liability company doing business within the State of Alabama with offices located in this judicial district.  HMMA employed at least 15 people at all times relevant to this action.

4.   HMMA's registered agent's office is 700 Hyundai Boulevard; Montgomery, AL 36105.

5.   HMMA's website is https://www.hmmausa.com/.

6.   Defendant, Hyundai ENG America, Inc.. ("HEA") is a foreign corporation doing business within the State of Alabama with offices located in this judicial district.  HEA employed at least 15 people at all times relevant to this action.

7.   Upon information and belief, HMMA contracted with HEA in 2017 for HEA to provide services at HMMA's Montgomery, Alabama location.

8.   HEA's employees performed work on the premises of HMMA for the benefit of HMMA.

9.   Upon information and belief, HEA's employees were subject to HMMA's policies and procedures.

10.     Upon information and belief, HEA's employees were subject to HMMA's work schedules.

11.     Upon information and belief, HEA's employees were subject to the direction and control of management and supervisory level employees for HMMA.

12.     Upon information and belief, HEA and HMMA are joint employers and/or an integrated enterprise.

13.     Defendant HEA and Defendant HMMA are jointly referred to as "Hyundai".

14.     Defendant, Dynamic Security, Inc. ("Dynamic") is a domestic corporation organized under the laws of the State of Alabama with offices located in this judicial district. Dynamic employed at least 15 people at all times relevant to this action.

15.     Dynamic's website is http://www.dynamicsecurity.org/.

16.     Dynamic's website provides on its "Our Approach" page, "The Dynamic Approach begins by forming strong lines of communication with our client contact, ensuring an understanding of our valued client's objectives, turning those goals into a regimen of recruitment, training and ongoing multi-layered support."

17.     In addition to providing contract security services, per Dynamic's website, it also provides facility staffing for part-time, temporary, full-time, industrial, and clerical workers.

18. Dynamic's website states on its "our services page"
(http://www.dynamicsecurity.org/our-services.html) that it will put together
a customized proposal for a company or organization.

19. In 2017, Dynamic placed employees to work on HMMA's property.

20. The employees Dynamic placed to work on HMMA's property were
supervised and directed in their work by HMMA and/or HEA.

21. The employees Dynamic placed to work on HMMA's property were subject
to the policies and procedures of HMMA and/or HEA.

22. The work schedules for employees Dynamic placed to work on HMMA's
property were set by HMMA and/or HEA.

23. Dynamic was a joint employer with HMMA and/or HEA with respect to the
employees Dynamic placed on HMMA's premises.

### III.    CONDITIONS PRECEDENT

24. Key brings this action for the unlawful employment practices and acts of
intentional discrimination and retaliation.

25. On August 3, 2017 Key completed an EEOC Intake Questionnaire detailing
her allegations of discrimination against Dynamic and "Hyundai" she
identified "Hyundai" as located at 700 Hyundai Blvd., Montgomery,
Alabama. On page 4 of the intake, Key marked "box 2" expressing an intent
to file a charge. (Doc. 11-2).

26.   Key wrote in her intake questionnaire that she had "filed a complaint w/ Dynamic Security/the agency I was hire through . . ."

27.   The EEOC formalized the charge against Dynamic as Charge No. 846-2017-32787. (Doc. 13-2).

28.   The EEOC formalized the charge against HMMA as Charge No. 420-2019-00128. (Doc. 13-1).

29.   After a failed conciliation, the EEOC issued a Cause Finding and Notice of Right to Sue stamped July 12, 2019. (Doc. 1-1).

30.   The EEOC dismissed the charge against Dynamic on March 1, 2019.

31.   Key did not receive the Dismissal until it was filed by a defendant in this action.

32.   Key belived and understood that her claims against Dynamic had been incorporated with the Hyundai charge.

33.   When Plaintiff received the finding in her favor and Notice of Right to Sue relating to the Hyundai charge, she believed it applied to Dynamic.

34.   Plaintiff filed this action within 90 days for receiving the Hyundai charge.

35.   Plaintiff meets all administrative prerequisites for filing suit on her Title VII, claims and timely brings this action.

36.   Plaintiff has no administrative prerequisites to satisfy for any claims under 42 U.S.C. § 1981 and is entitled to bring this action.

## IV.   FACTS

37.   Plaintiff Key is Black.

38.   Defendant Dynamic provides security and staffing services to various

facilities throughout the state.

39.   Defendant HEA contracts with both HMMA and Dynamic to perform work

for the benefit of HMMA at HMMA's Montgomery location at 700 Hyundai

Boulevard; Montgomery, AL 36105.

40.   Defendant HMMA is a Limited Liability Company doing business in

Alabama at 700 Hyundai Blvd overseeing the production and manufacturing

of Hyundai vehicles. HMMA employees more than 2500 employees at the

Montgomery Alabama facility.

41.   Dynamic provides certain staff to the facility located at 700 Hyundai Blvd

("Hyundai Plant").

42.   Key applied with Dynamic for a position of mail clerk through indeed.com

and was selected for an interview at the Hyundai Plant.

43.   Dynamic sent Key to the Hyundai plant to interview.

44.   Three individuals, Gloria Robinson, Lt. Maurice Chambliss, and Cassandra

Williams, interviewed Key on July 19, 2017.

45. During the month of July 2017 Key wore her hair in "neat locks" or a neat dreadlocks style. She wore her hair in this style on the date of her interview. During her interview, no one raised concern about Key's hairstyle.

46. At the conclusion of the interview, Robinson brought in Cassandra Williams to see if Key's hairstyle was "okay."

47. Williams turned up her nose and asked if Key could take it down to which she responded only if she cut it. Williams asked Robinson what the policy was regarding hair and Robinson responded she did not think it was allowed.

48. Key showed both Williams and Robinson a manner in which she could wear her neat locked hair "up" and both approved the style.

49. Robinson, who was employed by Dynamic and worked under the umbrella and direction of Hyundai, emailed Key on July 21, 2017 hiring her for the position of mail clerk.

50. On July 27, 2017 Key completed training and paperwork at Dynamic's facility.

51. After completing the training, Key asked Dynamic's office manager, Nicole Scavella, if her hairstyle was within company policy. Scavella noted Key's hair was neat and was within policy and she was not sure why anyone would raise any issue. Dynamic approved Key's neat lock hairstyle as within its policy.

52.   On July 31, 2017, Key reported to the Hyundai Plant for her first day of employment wearing her hair in the same style that Scavella said was approved and she had worn during her interview.

53.   During her training at the Hyundai Plant, Key received a safety manual marked "Hyundai Motor Manufacturing Alabama, LLC."

54.   While Key was waiting to receive her security badge, Williams came into the building and spoke with Key. Though Key's hair was fully visible, Williams did not say anything to Key about her hairstyle at that time.

55.   Key also saw Robinson to receive certain instructions. Robinson also did not make any mention about Key's hairstyle.

56.   After receiving instructions from Robinson, Key pulled Robinson and Chambliss aside to inform them she was pregnant.

57.   Key presented Robinson and Chambliss a note from her doctor stating she was pregnant, had no restrictions, and would be able to fulfill all her duties. She provided this information as notice of future doctor's appointments.

58.   Robinson took the note to the office she shared with Williams.

59.   Approximately 10 minutes later Williams came to the area where Key was twice, the second time, she asked Key what she was going to do about her hair.

60.    Key told Williams that Dynamic had told her that her hair was neat and
       appropriate under the policy.

61.    Williams aggressively and loudly responded it was what she said that
       mattered, not what Dynamic had told her, and stormed off.

62.    Williams' comment made clear to Key that the employment decision at issue
       would be controlled by Hyundai.

63.    Key began training with another individual named Tanya.

64.    After approximately 30-45 minutes Tanya received a call to bring Key back
       to the office.

65.    Key returned to the office where Williams, Robinson, and Chambliss joined
       her.

66.    Williams informed her in a stern voice she could not maintain her hair in
       that style because it was against policy. Key asked to see the policy but
       could only point Key to the policy for female uniformed officers – Key was
       not a uniformed officer. Key's hairstyle did not violate any company policy.

67.    Williams told Key Dynamic could send her to any number of facilities if
       Dynamic approved her hair but she could not wear her hair in that style at
       the Hyundai Plant.

68.    Williams said females could wear braids and they were different because of
       the "name and professionalism" and braids allowed you to see the scalp.

Williams and Robinson would not answer Key when she asked if her hair would be appropriate if she could see her scalp.

69. Williams told Key she would have to get her stylist to change her hair but she would not tell her to go home and gave her the option of wearing a hat all day every day if all her hair was covered.

70. Key said she had a hat at home she could wear that would cover all her hair and did not contain a logo. Robinson sent her home for the day telling her to contact her stylist and they would "go from there."

71. Key left as instructed she had only worked roughly 3.5 hours.

72. Approximately five minutes after Key left the Hyundai Plant, Robinson called Key and asked her when she was "due" and if her doctor knew she would be lifting boxes.

73. Key responded January (6 months) and yes her doctor was aware of her responsibilities and had cleared her. Robinson responded "okay" and hung up.

74. The next day, August 1, 2017, Key returned to the Hyundai Plant to resume work. She complied with Williams request and wore a hat that completely covered her hair. She reported to her job site with her trainer Tanya.

75.     Tanya and Key made rounds, reached the security building, and went inside to office of Robinson and Williams, neither acknowledged Key or raised any concern with her hairstyle or hat.

76.     On the ride back to the mailroom, Tanya asked Key why they had sent her home the day before. Key responded because of her hair and that she did not think it was right but she was still wanting to work with them.

77.     After returning to the mailroom, Tanya received a call that Chambliss was coming to get Key. Key gathered her things and Chambliss returned her to the security building.

78.     Robinson and Chambliss met with Key in the conference room and Robinson asked Key if anything was wrong with her.

79.     Key, uncertain of what she was talking about, said she was fine and explained she wore her hat as she was told she could because she could not get a hair appointment so quickly.

80.     Robinson stated the meeting was not because of her hat and asked, "so you feel discriminated against?"

81.     Key said she had no comment and Robinson said, "so you do" and stated Tanya had told her she felt that way.

82.     Robinson told Key the Koreans (HMMA and HEA) were a "different breed of animals and they send little memos saying that they do not want African-

Americans wearing their hair in dreadlock hairstyles" because they have VIP clients.

83.   Robinson said Key was going to be a problem and that the situation was going to be a problem and Key returned to work.

84.   Tanya confirmed she had stated Key felt discriminated against. Tanya called Robinson again, but Key stepped out of the mailroom. When Key returned, Key wrote up a formal complaint against Hyundai, Robinson, and Williams and told Chambliss she wanted to file a complaint with human resources. Chambliss told her to talk to Williams or Robinson. When she expressed concern about speaking with them Chambliss told her to go to Dynamic's facility and speak with Ray Cureton.

85.   Chambliss gave her permission to leave to speak with Cureton. She went immediately to the Dynamic facility to speak with Cureton.

86.   Cureton had Scavella sit in on the meeting and she shared her complaint.

87.   Scavella remarked Key's efforts would be fruitless and that filing a discrimination complaint is a serious offense.

88.   Cureton told Key Williams did not want her at the Hyundai Plant anymore because of her hair and "something else."

89.   Cureton stated he would send a copy of her complaint to the HR office in Birmingham and get back to her in a couple of days so she could review the Hyundai dismissal paperwork.

90.   Scavella walked Key to her car and told her she (Scavella) had "really" been discrimination against and that what Key experience was not discrimination and she was fighting a losing battle.

91.   On August 2, 2017, Robinson e-mailed Cureton and others at Dynamic from an e-mail addressing belonging to HMMA to relay express that Hyundai did not allow women to have cornrows or dreads and asked that Key not return to the plant.

92.   Key received a paycheck from Dynamic for her two partial days of work listing HMMA under the "Customer ID."

93.   Dynamic never placed Key in any further assignments.

94.   HMMA exercised control over Dynamic staff at the Hyundai Plant including dress code, work hours, hiring/firing (from that location), safety training, issuance of Hyundai badges.

95.   HME exercised control over Dynamic staff at the Hyundai Plant including disciplinary and training decisions.

## V.   STATEMENT OF PLAINTIFF'S CLAIMS

### COUNT ONE
### TITLE VII – PREGNANCY DISCRIMINATION

96.   Plaintiff adopts and realleges the allegations of paragraphs 1-95 as if fully
set forth herein.

97.   Defendants discriminated against Plaintiff on the basis of sex/pregnancy in
the terms and conditions of her employment in violation of Title VII of the
Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act.

98.   Defendants hired Plaintiff to perform duties as a mail clerk at the Hyundai
Plant.

99.   Defendants had previously discussed Plaintiff's hairstyle and come to a
resolution which allowed Plaintiff to begin working July 31, 2017. When she
began her shift, Defendants, having seen her hair that day, made no mention
of her hairstyle.

100.   After beginning her workday, Plaintiff notified Defendants of her pregnancy
on July 31, 2017 but did not ask for any accommodations and provided a
doctor's note clearing her for work.

101.   Within minutes of receiving Plaintiff's doctor's note, Defendants developed
issues with Plaintiff's hair and sent her home for the day denying her the
remainder of her shift.

102.   Defendants terminated Key's employment from the Hyundai Plant August 2,
2017.

103.  Defendant Dynamic did not assign Key to any other assignments upon her
Hyundai termination.

104.  Defendants terminated Plaintiff because of her pregnancy and otherwise
subjected her to pregnancy discrimination.

105.  Pregnancy was a motivating factor in Defendants decision.

106.  As a consequence of Defendants' unlawful conduct, Plaintiff suffered
damages, including but not limited to lost wages, benefits, embarrassment,
humiliation, shame, damages to reputation, mental distress, and emotional
pain and anguish.

107.  Plaintiff has no plain, adequate, or complete remedy at law to redress the
wrongs alleged herein, and this suit for compensatory damages, punitive
damages, attorneys' fees, costs, injunctive relief, and declaratory judgement
is her only means of securing adequate relief.

108.  Plaintiff is now suffering and will continue to suffer irreparable injury from
Defendant's unlawful practices set forth herein unless enjoined by this
Court.

**RELIEF**

WHEREFORE, Plaintiff requests this Court assume jurisdiction of this cause of
action and award the following relief:

a.   Enter a declaratory judgment that Defendants' policies, practices, and procedures complained of herein have violated and continue to violate the rights of Plaintiff as secured by Title VII and the PDA;

b.   Grant Plaintiff a permanent injunction enjoining Defendants, their agents, successors, employees, attorneys, and those acting in concert with Defendants or at Defendants' request from violating Title VII;

c.   Grant Plaintiff an Order requiring Defendants to make her whole by granting appropriate declaratory relief, backpay, compensatory damages (including damages for mental anguish), punitive damages, interest, attorneys' fees, expenses, and costs; and

d.   Grant Plaintiff such other, further, different, or additional relief and benefits as justice may require.

## COUNT TWO
## TITLE VII RACE DISCRIMINATION

109.   Plaintiff adopts and realleges the allegations of paragraphs 1-95 as if fully set forth herein.

110.   Defendants discriminated against Plaintiff on the basis of race in the terms and conditions of her employment in violation of Title VII of the Civil Rights Act of 1964, as amended.

111.   Defendants hired Plaintiff to perform duties as a mail clerk at the Hyundai Plant.

112. Plaintiff verified with Defendant Dynamic that her hairstyle was appropriate under the policy.

113. Defendants HMMA and HEA set Plaintiff home from her shift because she had her hair in neat locks and were unable to point Plaintiff to any policy preventing that style.

114. Defendants HMMA and HEA required Plaintiff to cover her hair claiming to give her time to get an appointment to change it.

115. Defendant Dynamic was aware of Hyundai's alleged concern around Key's hair and allowed Hyundai to prevent Key from working.

116. Without allowing Plaintiff time to change her hairstyle, Defendants HMMA and HME terminated Key's employment from the Hyundai Plant August 2, 2017.

117. Plaintiff wore her hair in a manner commonly worn by African-American's.

118. Plaintiff's hairstyle was neat and within policy but was identified as a negative African American characteristic by Defendants HMMA and HEA. This racial link is purportedly contained in Hyundai memos.

119. Defendants HMMA and HEA terminated Plaintiff because of her race.

120. Race was a motivating factor in HMMA and HEA's decision.

121. Additionally, Defendants purported policy creates a disparate impact on African Americans.

122.   As a consequence of Defendants' unlawful conduct, Plaintiff suffered

damages, including but not limited to lost wages, benefits, embarrassment,

humiliation, shame, damages to reputation, mental distress, and emotional

pain and anguish.

123.   Plaintiff has no plain, adequate, or complete remedy at law to redress the

wrongs alleged herein, and this suit for compensatory damages, punitive

damages, attorneys' fees, costs, injunctive relief, and declaratory judgement

is her only means of securing adequate relief.

124.   Plaintiff is now suffering and will continue to suffer irreparable injury from

Defendant's unlawful practices set forth herein unless enjoined by this

Court.

## RELIEF

WHEREFORE, Plaintiff requests this Court assume jurisdiction of this cause of

action and award the following relief:

a.   Enter a declaratory judgment that Defendants' policies, practices, and

procedures complained of herein have violated and continue to violate

the rights of Plaintiff as secured by Title VII;

b.   Grant Plaintiff a permanent injunction enjoining Defendants, their

agents, successors, employees, attorneys, and those acting in concert

with Defendants or at Defendants' request from violating Title VII;

c. Grant Plaintiff an Order requiring Defendants to make her whole by granting appropriate declaratory relief, backpay, compensatory damages (including damages for mental anguish), punitive damages, interest, attorneys' fees, expenses, and costs; and

d. Grant Plaintiff such other, further, different, or additional relief and benefits as justice may require.

**COUNT THREE**
**42 USC § 1981 DISCRIMINATION**

125. Plaintiff adopts and realleges the allegations of paragraphs 1-95 as if fully set forth herein.

126. Defendants discriminated against Plaintiff on the basis of race in the terms and conditions of her employment in violation of 42 USC § 1981.

127. Defendants hired Plaintiff to perform duties as a mail clerk at the Hyundai Plant.

128. Plaintiff verified with Defendant Dynamic that her hairstyle was appropriate under the policy and notified Dynamic of Hyundai's issue.

129. Defendants HMMA and HEA set Plaintiff home from her shift because she had her hair in neat locks despite her hair being within Defendant Dynamic's policy and earlier agreeing to allow Plaintiff to cover her hair until she could get an appointment to change it.

130. Defendants HMMA and HME terminated Key's employment from the Hyundai Plant August 2, 2017.

131. Plaintiff wore her hair in a manner commonly worn by African-Americans.

132. Defendants HMMA and HEA characterized Plaintiff's hairstyle as negative in the context of race.

133. Defendants HMMA and HEA terminated Plaintiff because of her race.

134. Race was a motivating factor in HMMA and HEA's decision.

135. Additionally, Defendants purported policy creates a disparate impact on African Americans.

136. As a consequence of Defendants' unlawful conduct, Plaintiff suffered damages, including but not limited to lost wages, benefits, embarrassment, humiliation, shame, damages to reputation, mental distress, and emotional pain and anguish.

137. Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein, and this suit for compensatory damages, punitive damages, attorneys' fees, costs, injunctive relief, and declaratory judgement is her only means of securing adequate relief.

138. Plaintiff is now suffering and will continue to suffer irreparable injury from Defendant's unlawful practices set forth herein unless enjoined by this Court.

**RELIEF**

WHEREFORE, Plaintiff requests this Court assume jurisdiction of this cause of action and award the following relief:

a.  Enter a declaratory judgment that Defendants' policies, practices, and procedures complained of herein have violated and continue to violate the rights of Plaintiff as secured by 42 USC § 1981;

b.  Grant Plaintiff a permanent injunction enjoining Defendants, their agents, successors, employees, attorneys, and those acting in concert with Defendants or at Defendants' request from violating 42 USC § 1981;

c.  Grant Plaintiff an Order requiring Defendants to make her whole by granting appropriate declaratory relief, backpay, compensatory damages (including damages for mental anguish), punitive damages, interest, attorneys' fees, expenses, and costs; and

d.  Grant Plaintiff such other, further, different, or additional relief and benefits as justice may require.

**COUNT FOUR**
**TITLE VII RACE RETALIATION**

139.   Plaintiff adopts and realleges the allegations of paragraphs 1-95 as if fully set forth herein.

140.  Defendants discriminated against Plaintiff in retaliation for engaging in protected activity in violation of Title VII of the Civil Rights Act of 1964, as amended 42 USC § 2000e, by terminating Plaintiff's employment when she complained of discrimination on the basis of a racially protected trait and a racially disparate grooming policy.

141.  Dreadlocks, as a form of natural hair, are a protected racial characteristic under various versions of the CROWN Act in multiple jurisdictions.[1]

142.  Defendants HMMA and HEA called Plaintiff into the office on August 1, 2017 because another employee said Plaintiff felt discriminated against.

143.  Plaintiff requested to file a formal discrimination complaint on August 1, 2017.

144.  Plaintiff left the Hyundai facility (with permission) to file a formal complaint with Dynamic at the Dynamic facility.

145.  Defendants HMMA and HEA terminated Key's employment from the Hyundai Plant August 2, 2017 after she left to file a complaint.

146.  Defendant Dynamic made statements demeaning or undermining Plaintiff's complaint and discouraging her from filing a formal complaint.

---

[1] The CROWN Act states for Creating a Respectful and Open World for Natural hair. Some jurisdictions have adopted the Act as "workplace" not "world.".  The Crown Act has gained substantial press coverage and has even been filed in the Alabama legislature according to www.thecrownact.com.

147.   Defendants terminated Plaintiff because she complained of race discrimination.

148.   As a consequence of Defendants' unlawful conduct, Plaintiff suffered damages, including but not limited to lost wages, benefits, embarrassment, humiliation, shame, damages to reputation, mental distress, and emotional pain and anguish.

149.   Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein, and this suit for compensatory damages, punitive damages, attorneys' fees, costs, injunctive relief, and declaratory judgement is her only means of securing adequate relief.

150.   Plaintiff is now suffering and will continue to suffer irreparable injury from Defendant's unlawful practices set forth herein unless enjoined by this Court.

### RELIEF

WHEREFORE, Plaintiff requests this Court assume jurisdiction of this cause of action and award the following relief:

   a.   Enter a declaratory judgment that Defendants' policies, practices, and procedures complained of herein have violated and continue to violate the rights of Plaintiff as secured by Title VII;

b. Grant Plaintiff a permanent injunction enjoining Defendants, their agents, successors, employees, attorneys, and those acting in concert with Defendants or at Defendants' request from violating Title VII;

c. Grant Plaintiff an Order requiring Defendants to make her whole by granting appropriate declaratory relief, backpay, compensatory damages (including damages for mental anguish), punitive damages, interest, attorneys' fees, expenses, and costs; and

d. Grant Plaintiff such other, further, different, or additional relief and benefits as justice may require.

## COUNT FIVE
## 42 USC § 1981 RACE RETALIATION

151. Plaintiff adopts and realleges the allegations of paragraphs 1-95 as if fully set forth herein.

152. Defendants discriminated against Plaintiff in retaliation for engaging in protected activity in violation of 42 USC § 1981, by terminating Plaintiff's employment when she complained of discrimination on the basis of her race because of her African-American hairstyle and because of a racially disparate grooming policy.

153. Defendants HMMA and HEA called Plaintiff into the office on August 1, 2017 because another employee said Plaintiff felt discriminated against.

154. Defendants stated she (Key) was going to be a problem.

155. Plaintiff requested to file a formal discrimination complaint on August 1, 2017.

156. Plaintiff left the Hyundai facility (with permission) to file a formal complaint with Dynamic at the Dynamic facility.

157. Defendants HMMA and HEA terminated Key's employment from the Hyundai Plant August 2, 2017 after she left to file a complaint.

158. Defendant Dynamic made statements demeaning or undermining Plaintiff's complaint and discouraging her from filing a formal complaint.

159. Defendants terminated Plaintiff because she complained of race discrimination and a racially disparate policy.

160. As a consequence of Defendants' unlawful conduct, Plaintiff suffered damages, including but not limited to lost wages, benefits, embarrassment, humiliation, shame, damages to reputation, mental distress, and emotional pain and anguish.

161. Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein, and this suit for compensatory damages, punitive damages, attorneys' fees, costs, injunctive relief, and declaratory judgement is her only means of securing adequate relief.

162.   Plaintiff is now suffering and will continue to suffer irreparable injury from

Defendant's unlawful practices set forth herein unless enjoined by this

Court.

### RELIEF

WHEREFORE, Plaintiff requests this Court assume jurisdiction of this cause of

action and award the following relief:

a.   Enter a declaratory judgment that Defendants' policies, practices, and

procedures complained of herein have violated and continue to violate

the rights of Plaintiff as secured by 42 USC § 1981;

b.   Grant Plaintiff a permanent injunction enjoining Defendants, their

agents, successors, employees, attorneys, and those acting in concert

with Defendants or at Defendants' request from violating 42 USC §

1981;

c.   Grant Plaintiff an Order requiring Defendants to make her whole by

granting appropriate declaratory relief, backpay, compensatory

damages (including damages for mental anguish), punitive damages,

interest, attorneys' fees, expenses, and costs; and

d.   Grant Plaintiff such other, further, different, or additional relief and

benefits as justice may require.

**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY
ON ALL CLAIMS SO TRIABLE.**

Respectfully Submitted,

Attorneys for Plaintiff

*/s/ Heather Leonard*
Heather Newsom Leonard
ASB-1152-061H

OF COUNSEL:
Heather Leonard, P.C.
2105 Devereaux Cir. Suite 111
Birmingham, AL 35243
Phone: (205) 977-5421
heather@heatherleonardpc.com

*/s/ Leslie A. Palmer*
Leslie A. Palmer
ASB-0436-L40P

OF COUNSEL:
Palmer Law, LLC
104 23rd Street South, Suite 100
Birmingham, AL 35233
Phone: (205) 285-3050
leslie@palmerlegalservices.com

## Certificate of Service

I hereby certify that I have filed the foregoing on the Court's CM/ECF electronic filing system which will provide notice to all counsel of record on this 1st day of June, 2020.

Wesley C. Redmond
Susan W. Bullock
FordHarrison LLC
420 20th Street North, Suite 2560

Birmingham, AL 35203
wredmond@fordharrison.com
sbullock@fordharrison.com
Phone: (205) 244-5905
Counsel for Dynamic Secuirty, Inc.

David J. Middlebrooks
Whitney R. Brown
Lehr Middlebrooks Vreeland & Thompson, P.C.
PO Box 11945
Birmingham, AL 35202
dmiddlebrooks@lehrmiddlebrooks.com
wbrown@lehrmiddlebrooks.com
Phone: (205) 326-3002
Counsel for Hyundai Motor Manufacturing Alabama, LLC

Yurie Yeoul Bae
Richard L. DeWeese, Jr.
Deweese & Bae, LLC
8191 Seaton Place
Montgomery, AL 36116
yurie@deweesebae.com
richard@deweesebae.com
Phone: (334) 239-7994
Counsel for Hyundai ENG America, Inc.