IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| DAVITA KEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) CIVIL ACT. NO. 2:19-cv-767-ECM | |
| | ) (WO) | |
| HYUNDAI MOTOR MANUFACTURING, | ) | |
| ALABAMA, LLC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION and ORDER

## I. INTRODUCTION

Davita Key ("Plaintiff" or "Key") filed the operative complaint in this action on June 1, 2020, (doc. 28), in which she alleges Defendants Hyundai Motor Manufacturing Alabama, LLC, ("HMMA"), Hyundai ENG America, Inc., ("HEA"), and Dynamic Security, Inc., ("Dynamic") (collectively "the Defendants") discriminated against her because of her pregnancy and race. Specifically, Key brings claims against all Defendants for pregnancy discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") (count one); race discrimination under Title VII (count two); race discrimination pursuant to 42 U.S.C. § 1981 (count three); retaliation under Title VII (count four); and retaliation pursuant to 42 U.S.C. § 1981 (count five). (Doc. 28).

Now pending before the Court are the Defendants' motions to dismiss the Plaintiff's first amended complaint. (Docs. 30–32). For the reasons that follow, the Defendants' motions (docs. 30, 31 and 32) are due to be GRANTED in part and DENIED in part.

1

## II.  JURISDICTION AND VENUE

The Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and the jurisdictional grant found in 42 U.S.C. § 2000e-5(f)(3).  Personal jurisdiction and venue are uncontested, and the Court concludes that venue properly lies in the Middle District of Alabama.  *See* 28 U.S.C. § 1391.

## III.  LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (alteration in original) (citation omitted). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id*., at 678.  Conclusory allegations that are merely "conceivable" and fail to rise "above the speculative level" are insufficient to meet the plausibility standard. *Twombly*, 550 U.S. at 555–56.  This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  Indeed, "[a] pleading that offers 'labels and

conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"
*Id*.

## IV.  FACTS AND PROCEDURAL HISTORY[1]

Key applied for and was offered an interview with Dynamic Security, an employment agency, for a mail clerk position at the Hyundai Plant in Montgomery, Alabama.  At the interview, she met with Gloria Robinson, a Dynamic employee, Maurice Chambliss,[2] and Cassandra Williams, an HEA employee.

For the interview, Key wore her hair in "a neat dreadlocks style."  At the end of the interview, Robinson asked Williams if Key's hairstyle was "okay."  Williams "turned up her nose" and asked Key if she could take her hair down.  Key responded that she could take her hair down only if she cut it.  Williams then asked Robinson about the hair policy at the plant.  Robinson did not think Key's hairstyle was allowed.  In response, Key showed Robinson and Williams that she could wear her hair "up."  Both approved of the style.  Two days later, Robinson hired Key for the mail clerk position at Hyundai.

The next week, Key trained and completed paperwork at Dynamic's facility.  After training, Key asked Nicole Scavella, Dynamic's office manager, whether her hairstyle was consistent with company policy.  Scavella told Key she did not think there would be an issue because her hair was neat and consistent with policy.

---

[1] This recitation of the facts is based upon the Plaintiff's complaint.  At this stage of the proceedings, for purposes of ruling on the motions to dismiss, the facts alleged in the complaint and reasonable inferences drawn therefrom are set forth in the light most favorable to the Plaintiff.

[2] The complaint does not specify which entity employed Maurice Chambliss or in what capacity he was employed.

On July 31, 2017, Key arrived at the Hyundai plant for her first day of work. She wore her hair in the same manner as in her interview and approved by Scavella. During her training at the plant, Key received a safety manual marked "Hyundai Motor Manufacturing of Alabama, LLC."

Both Robinson and Williams spoke with Key. Although Key's hair was fully visible, neither commented on it.

After receiving instructions from Robinson, Key told Robinson and Chambliss that she was pregnant. Key informed Robinson and Chambliss of her pregnancy to notify them of upcoming doctor appointments. She also gave them a note from her doctor that indicated that Key "was pregnant, had no restrictions, and would be able to fulfill all her duties."

Robinson took the note to the office she shared with Williams. About ten minutes later, Williams twice came to Key's area. Williams asked Key "what she was going to do about her hair." Key responded that Dynamic told her that her hair was neat and in compliance with policy. Williams "aggressively" and "loudly" told Key that it was "what she [Williams] said that mattered" and "not what Dynamic had told [Key]."

Shortly thereafter, Key was called to the office where she met with Williams, Robinson, and Chambliss. Williams sternly informed Key that she could not keep her hairstyle because it violated policy. Key asked to see the policy. They showed Key a policy for a female uniformed officer—not Key's position. Williams told Key that Dynamic could send her to other facilities if it approved of her hairstyle; but she could not wear her current hairstyle at the Hyundai plant. Williams explained women could wear braids, which were different because of the "name and professionalism" and the scalp was

visible.  Key asked if her hairstyle would be appropriate if her scalp was visible, but Robinson and Williams would not answer her question.

Williams told Key she would have to get her hair restyled and gave Key the option of "wearing a hat all day every day if all her hair was covered."  Key responded she had a hat at home that could cover all her hair. After telling Key to contact her stylist, Robinson sent Key home for the day and said they "would go from there."  Key left the plant, having worked approximately 3.5 hours.

Within minutes of leaving the Hyundai plant, Robinson called Key and asked her baby's due date and whether "her doctor knew she would be lifting boxes."  Key said she was due in six months and that her doctor had cleared her to perform her work responsibilities.

The next day, August 1, 2017, Key reported to the Hyundai plant.  In compliance with Williams' instructions, she wore a hat that completely covered her hair.  As Key and her trainer made their rounds, they encountered Robinson and Williams.  Neither said anything about Key's hat or hairstyle.  On the way back to the mailroom, her trainer asked Key why she was sent home the previous day.  Key explained she was sent home because of her hair.  Key said, "she did not think it was right," but she still wanted "to work with them."

After returning to the mailroom, Key was summoned to the security building to meet with Robinson and Chambliss.  Robinson asked Key "if anything was wrong with her."  Although Key did not know the reason for the question, she replied she was fine and explained that she wore a hat because she had not yet gotten a hair appointment.  Robinson

told her the meeting was not about the hat and asked, "so you feel discriminated against?" When Key replied that "she had no comment," Robinson responded, "so you do." Robinson also stated that Key's trainer said Key felt that she was being discriminated against. Robinson told Key that the Koreans "were a different breed of animals and they send little memos saying that they do not want African-Americans wearing their hair in dreadlock hairstyles." Robinson said Key and her situation were going to be problematic. Nonetheless, Key returned to work.

When Key returned to the mailroom, she wrote a formal complaint against Hyundai, Robinson, and Williams. She told Chambliss she wanted to file a complaint with human resources. He told her to speak with Williams and Robinson. Key was concerned about speaking directly with Williams and Robinson, so Chambliss told her to go speak with Ray Cureton at Dynamic's facility. Key immediately left the Hyundai plant and went to the Dynamic facility.

Key met with Cureton and Scavella who told Key that her efforts would be "fruitless and that filing a discrimination complaint is a serious offense." Cureton then added that "Williams did not want [Key] at the Hyundai plant anymore because of her hair and 'something else.'" Cureton told Key he would forward her complaint to the HR office in Birmingham. He also told Key he would contact her in a few days to review the dismissal paperwork from Hyundai. "Scavella walked Key to her car and told [Key] that she (Scavella) had 'really' been discrimination (sic) against and that what Key experience[d] (sic) was not discrimination and she was fighting a losing battle."

The next day, Robinson, using a HMMA email address, emailed Cureton and others at Dynamic to specify that Hyundai's policy did not permit women to have "cornrows or dreads." She specifically "asked that Key not return to the plant." Dynamic did not place Key in any other assignments. When Key received a paycheck from Dynamic for her partial days of work, HMMA was listed as the customer.

On August 3, 2017—the day after Key was terminated—she completed an EEOC intake questionnaire setting forth her allegations against Dynamic and "Hyundai." She described "Hyundai" as being located at 700 Hyundai Blvd., Montgomery, Alabama. The EEOC created two charges: one against HMMA and another against Dynamic.

Although the EEOC dismissed her charge against Dynamic on March 1, 2019, Key alleges that she did not receive the right to sue letter until Dynamic filed it in this action.

On July 12, 2019, the EEOC issued a cause finding and notice of right to sue against HMMA. Key alleges that she believed her claims against Dynamic had been "incorporated with the Hyundai charge." She further asserts that when she received the notice of right to sue on her Hyundai charge, she believed that it also applied to the charge against Dynamic. On October 10, 2019, Key filed suit against HMMA, HEA, and Dynamic. Key filed this action within 90 days of her receipt of the EEOC charge determination against "Hyundai."

### V. DISCUSSION

The Defendants move to dismiss the Plaintiff's claims of pregnancy discrimination, race discrimination and retaliation under Title VII and race discrimination and retaliation claims under § 1981. The Defendants argue that the Plaintiff has not stated a plausible claim for relief against them under any of the causes of action. In response, the Plaintiff

argues that she pleaded sufficient facts to withstand the Defendants' motions to dismiss. The Court turns first to the Defendants' motions to dismiss the Plaintiff's Title VII claims.

## A. Title VII

In addition to their arguments that the Plaintiff has failed to state a claim under Title VII, the Defendants also argue that the Plaintiff's Title VII claims are barred for several procedural deficiencies as well. HEA argues that Key's Title VII claims against it are due to be dismissed because the Plaintiff did not specifically name HEA in her EEOC charge. Thus, she did not exhaust her administrative remedies against HEA with the EEOC. (Doc. 31 at 1). HEA and HMMA also argue that the claims against them should be dismissed because they had no employment relationship with the Plaintiff. (Doc. 30 at 2–8; doc 31 at 7–8).

Dynamic argues that Key failed to file her lawsuit against Dynamic within the prescribed statutory period after receiving a determination from the EEOC, so her Title VII claims against Dynamic should be dismissed. (Doc. 32 at 1).

The Court first considers the preliminary issues of whether the claims are procedurally barred for failure to satisfy administrative prerequisites and whether the Plaintiff has adequately pleaded facts to show that HEA or HMMA were Key's joint employers. The Court will then turn to whether the Plaintiff has stated claims for relief under Title VII or § 1981.

### 1. *Procedural prerequisites*

### a. **Plaintiff failed to exhaust her administrative remedies as to HEA**

HEA argues that the Plaintiff failed to exhaust the EEOC administrative remedies by not naming HEA in her EEOC charge. (Doc. 31 at 1). HEA points out that nowhere in the Plaintiff's complaint does she identify HEA as the "Hyundai" entity located at 700 Hyundai Blvd, and the only connection that the Plaintiff makes with HEA is in her intake form identifying Cassandra Williams—specifically identified as an employee AMCO, the former name of HEA. (*Id*. at 11). Further, in her EEOC charge against HMMA she identified Williams—an HEA employee— as an employee of HMMA.[3] (Doc 13-1). HEA argues that allowing the Title VII claims to proceed against HEA, a party not named in Key's EEOC charge, would not fulfill the purpose of Title VII. (Doc. 31 at 11).

---

[3] Although the Plaintiff did not attach a copy of her EEOC charges to her complaint, defendants HMMA and Dynamic attached copies to their motions to dismiss the complaint. (Doc. 11-1; Doc. 13-1 and 2). In general, the Court considers matters outside the pleadings on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the motion is converted into a motion for summary judgment. The Court may consider exhibits attached to a motion to dismiss in certain circumstances, however, without converting the motion to dismiss into a motion for summary judgment.

> Our Rule 12(b)(6) decisions have adopted the "incorporation by reference" doctrine, *see In re Silicon Graphics Inc. Securities Litigation,* 183 F.3d 970 (9th Cir.1999), under which a document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment only if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed. *See Harris v. Ivax Corp.,* 182 F.3d 799, 802 n.2 (11th Cir.1999). "Undisputed" in this context means that the authenticity of the document is not challenged. *See, e.g., Beddall v. State Street Bank and Trust Co.,* 137 F.3d 12, 16–17 (1st Cir.1998); *GFF Corp. v. Associated Wholesale Grocers, Inc.,* 130 F.3d 1381, 1384 (10th Cir.1997); *Branch v. Tunnell,* 14 F.3d 449, 454 (9th Cir.1994).

*Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).

> Although Key did not attach her EEOC charges to her amended complaint, she references them; they are central to her claims; and she does not dispute its contents or authenticity.

Key responds that she listed "Hyundai" in her EEOC charge as her employer at 700 Hyundai Blvd, and that HEA operates at that facility.  (Doc. 34 at 17).  The Plaintiff asserts that HEA and HMMA "operate out of the same facility, for the same interest, share policies, and act as joint employees," (*id.*), so notice to HMMA was sufficient as to HEA.

HEA argues that neither the Plaintiff nor the EEOC provided it notice about Plaintiff's EEOC claim. (Doc. 31 at 12).  Even if it was aware of Plaintiff's charge, HEA suggests that the charge would not have put HEA on notice that it faced potential liability as an employer of the Plaintiff.  (*Id.*).  HEA also claims that it was not invited to participate or included in the EEOC conciliation process, and that they were prejudiced by this exclusion from the proceedings.  (*Id.*).  In response, the Plaintiff does not assert that she filed an EEOC complaint against HEA but instead argues that she pleaded enough facts to show that including HEA would be consistent with the purposes of Title VII.  (Doc. 34 at 16).

Before bringing a Title VII claim, a plaintiff is required to exhaust administrative remedies which includes first filing a charge with EEOC.  *Virgo v. Riviera Beach Assocs., Ltd.*, 30 F.3d 1350, 1358 (11th Cir. 1994) (referencing 42 U.S.C. § 2000e-5).  Generally, a plaintiff must name a defendant in an EEOC charge before proceeding against it in subsequent litigation under Title VII.  *Id.*  However, "courts liberally construe this requirement." *Id.*  Although the naming requirement "serves to notify the charged party of the allegations and allows the party an opportunity to participate in conciliation and voluntarily comply with the requirements of Title VII," courts allow claims against unnamed parties to proceed if doing so would fulfill the purposes of Title VII.  *Peppers v.*

*Cobb Cty., Georgia*, 835 F.3d 1289, 1296 (11th Cir. 2016).  To determine whether the purposes of Title VII have been met, a court considers:

> (1) the similarity of interest between the named party and the unnamed party; (2) whether the plaintiff could have ascertained the identity of the unnamed party at the time the EEOC charge was filed; (3) whether the unnamed parties received adequate notice of the charges; (4) whether the unnamed parties had an adequate opportunity to participate in the reconciliation process; and (5) whether the unnamed party actually was prejudiced by its exclusion from the EEOC proceedings.

*Peppers*, 835 F.3d at 1296 (citing *Virgo*, 30 F.3d at 1358–59).

Here, allowing Title VII claims to proceed against HEA would not advance the purpose of Title VII.  The Plaintiff demonstrated in her EEOC charge that she was aware of the distinction between her employers when she brought separate charges against HMMA and Dynamic.  In addition, she showed that she could distinguish between the two Hyundai entities when she identified Williams as an AMCO (HEA) employee in her intake questionnaire and an HMMA employee in her charge. *Compare* Doc. 11-2 and Doc. 13-1. Further, simply directing her discrimination charge against at "Hyundai" located 700 Hyundai Blvd. did nothing to put HEA on notice that Key asserted a claim against it. Indeed, Key asserts in the complaint that "HMMA contracted with HEA in 2017 for HEA to provide services at HMMA's Montgomery, Alabama location." (Doc. 28 at 2).  These allegations illustrate that HEA and HMMA are distinct entities which contracted with one another for the provision of services.  Unlike in *Virgo*, 30 F.3d at 1359, where the plaintiff used the name under which her actual employer did business, the Plaintiff alleged in her complaint that HEA and HMMA are separate corporate entities.  Although the Plaintiff

11

implies that HMMA received notice of the EEOC complaint, (doc. 28 at 5), she alleges nothing to suggest that HEA was on notice of her charge.  She argues that because HEA and HMMA are an integrated enterprise, notice to both was unnecessary.  In contrast to *Virgo* where named and unnamed defendants shared executives who knew of the charge, there is no indication that HEA was ever on notice of the Plaintiff's EEOC charge.  30 F.3d at 1359.  Although Key alleges "[u]pon information and belief, HEA and HMMA are joint employers and/or an integrated enterprise," (doc. 28 at 3), she fails to allege sufficient facts to support this vague assertion.  The failure to name HEA in the EEOC charge, thereby depriving it of an opportunity to participate in the conciliation process, constitutes prejudice to HEA. Because the Plaintiff does not plead sufficient facts to demonstrate that proceeding against HEA would advance the purposes of Title VII, her Title VII claims against HEA are due to be DISMISSED for her failure to exhaust her administrative remedies against that entity.

### b.  Plaintiff's claims against Dynamic

Dynamic argues that the Plaintiff did not plead that "all conditions precedent to the institution of the lawsuit have been fulfilled" pursuant to Fed. R. Civ. P. 9(c), so the Court must dismiss all of the Plaintiff's Title VII claims against Dynamic. Specifically, the Defendant asserts the Plaintiff failed to bring her lawsuit within the statutory period prescribed by Title VII.  (Doc. 32 at 1).  Dynamic contends that, on March 1, 2019, the EEOC District Director mailed to the Plaintiff a notice of right to sue, (*id.* at 3), of which Dynamic received a copy. (Doc. 13-3).  Plaintiff had 90 days within which to file a lawsuit in district court.  Because the Plaintiff filed her suit on October 10, 2019—more than a

hundred days after the June 3, 2019 deadline—the Plaintiff's Title VII claims are untimely. Further, Dynamic argues that the Plaintiff did not plead any specific facts that she did not receive the notice of right to sue on March 1, 2019, or that the EEOC had combined her Dynamic claim with her Hyundai claim. (Doc. 32 at 9, 11).

In response, the Plaintiff asserts that she did not receive the Dynamic right to sue letter until it was filed by one of the defendants in this case. (Doc. 28 at 5). She further contends that she thought the charges were handled together and her claims against Dynamic were included in the right to sue notice against HMMA. So, according to the Plaintiff, it was enough for her to set forth that she received the right to sue letter only when it was attached to a filing in the case. (Doc. 34 at 18). Because of this, she argues, she is not required to plead more specific facts of when she received the right to sue letter. (*Id.*). Instead, she argues that the "three-day" rule applied by the Defendant is only applicable when there is no alternative proof of when the Plaintiff received the right to sue letter. (*Id.* at n.8).

Title VII provides that "[w]ithin ninety days after the giving of . . . notice [of dismissal of the charge] a civil action may be brought against the respondent named in the charge . . . by the person claiming to be aggrieved . . . ." 42 U.S.C § 2000e–5(f)(1). When a defendant contests whether the complaint was timely filed, the plaintiff bears the burden of showing that the plaintiff has met the timeliness requirement. *Kerr v. McDonald's Corp.*, 427 F.3d 947, 951 (11th Cir. 2005); *Green v. Union Foundry Company,* 281 F.3d 1229, 1233–34 (11th Cir. 2002). The Eleventh Circuit further explained that determinations on when notice was received, and thus the start of the 90-day limitation period, are to be

considered, "on a case-by-case basis to fashion a fair and reasonable rule for the circumstances of each case, one that would require plaintiffs to assume some minimum responsibility . . . without conditioning a claimant's right to sue . . . on fortuitous circumstances or events beyond [her] control." *Kerr*, 427 F.3d at 952 (citing *Zillyette v. Capital One Fin. Corp.,* 179 F.3d 1337, 1340 (11th Cir. 1999)) (alternations in original). However, when there is a dispute about when the plaintiff received notice of the EEOC determination, the Eleventh Circuit has applied a "presumption of three days for receipt by mail." *Kerr,* 427 F.3d at 953 n.9; *Zillyette,* 179 F.3d at 1342.

"Because courts must make findings of fact regarding when a plaintiff . . . received [notice] in order to determine whether an action was timely filed, courts tend to this issue at summary judgment or after holding an evidentiary hearing." *Blair v. Brennan*, 2017 WL 2538564, at *2 (M.D. Fla. June 12, 2017). *See also Kerr,* 427 F.3d at 951–52 (summary judgment); *Zillyette*, 179 F.3d at 1341 (summary judgment); *Lewis v. Conners Steel Co.*, 673 F.2d 1240, 1243 (11th Cir. 1982) (reversing dismissal and remanding for an evidentiary hearing). When courts have considered the issue at the motion to dismiss stage, two general trends have emerged. If the plaintiff does not dispute receiving notice or does not plead any facts about when notice was received, courts apply the three-day receipt presumption and will dismiss the claim if it is untimely. *See Hood v. WalMart Store #5903*, 2020 WL 3555226, at *2 (M.D. Ala. June 11, 2020), *report and recommendation adopted*, 2020 WL 3549992 (M.D. Ala. June 30, 2020);  *Howard v. Sec'y of the Army*, 2015 WL 4496129, at *5 (M.D. Fla. July 23, 2015) ("Howard has not contested the date Defendants contend she received the letter, nor has she attempted to refute the presumption of

receipt."); *Mims v. Monroe Cty. Bd. of Educ.*, 2014 WL 2508732, at *3 (S.D. Ala. June 4, 2014) (finding that even though the plaintiff did not offer any evidence of when she received the right to sue letter, the court assumed she received it three days after mailing and her claim was timely filed). However, if a plaintiff disputes when or if she received a right to sue letter and pleads sufficient supporting facts, courts have either denied the motion to dismiss without prejudice or allowed limited discovery to the issue of when the plaintiff received notice of the determination. *Blair*, 2017 WL 2538564 at *2 (allowed limited discovery about receipt when plaintiff argued "that USPS must have misdelivered [the determination] addressed to his attorney's office because his attorney did not receive [the determination] on November 12 (a Saturday) or November 14 (the next business day)") (brackets added); *Themm v. Tervis Tumbler Co.,* 2015 WL 1293120, at *1, 4 (M.D. Fla. Mar. 23, 2015) (denied motion to dismiss without prejudice when the plaintiff argued she only received notice of the right to sue letter when her lawyer requested the letter and was told it had been sent almost three months before).

Here the Plaintiff argues that she only received notice of the Dynamic right to sue letter when it was filed as an attachment to the Defendants' motions to dismiss, and she had never received a copy from the EEOC in the mail. She further argues that she thought when she received the HMMA right to sue letter that it had integrated her charges against Dynamic. (Doc. 34 at 18). Because the Plaintiff disputes when she received the Dynamic right to sue letter and pleads facts, which taken as true as to when she received notice, it would be premature to dismiss her Title VII claim as untimely at this time. This case is distinguishable from other cases that were dismissed for untimeliness at the motion to

dismiss stage because in those cases, the plaintiffs either did not contest receipt or did not plead any facts of when they received notice. The Plaintiff here pleads enough facts that she did not receive notice until she received the Dynamic right to sue letter from Dynamic. (Doc. 28 at 5). Therefore, the motion to dismiss the Plaintiff's Title VII claims against Dynamic on timeliness grounds is due to be DENIED without prejudice.

### 2. *Joint employer theory*

Because the Plaintiff did not file an EEOC charge against HEA and the Court has concluded that the Title VII claims against HEA should be dismissed, the Court only addresses whether HMMA had an employment relationship Key.

### a. The Plaintiff has pleaded enough facts to support a plausible employment relationship between HMMA and Key

HMMA claims that the Plaintiff has not plausibly pleaded that HMMA was a joint employer of the Plaintiff. (Doc. 30 at 2-8). According to HMMA, because every step of the Plaintiff's employment was predominated by employees of Dynamic and HEA, no HMMA employee played any role in the Plaintiff's employment. (*Id.* at 3). As alleged in the complaint, the Plaintiff applied for employment with Dynamic; the grooming policy was enforced by employees of HEA or Dynamic; and an HEA employee (Williams) did not want Key to return the Hyundai plant. (Doc. 28 at 6–7, 12). HMMA argues that the Plaintiff, without factual support, combined HMMA and HEA in her pleadings. (Doc. 30 at 4). The only claims specific to HMMA were that it provided the work site and a safety manual. (*Id.* at 5). HMMA asserts that, because these two instances would be insufficient to provide a factual basis that HMMA was Key's joint employer, the allegations are conclusory and, therefore, should not be considered under 12(b)(6). (*Id.* at 4-5).

Because Plaintiff alleged various facts that support the interrelationship between the Defendants, the Plaintiff asserts she pleaded enough facts to show the Defendants are joint employers or involved in an integrated enterprise.[4] (Doc. 34 at 5-7). Because the Plaintiff alleges a plausible employment relationship, she argues her claims against HMMA should survive the motion to dismiss. (*Id.* at 8).

"A Title VII . . . discrimination claim can only be brought by an employee against [her] employer." *Peppers*, 835 F.3d at 1297 (alteration added). However, courts have interpreted the term "employer" liberally in line with the remedial purpose of Title VII. *Id.* The Eleventh Circuit has explained the existence of an employer relationship turns on the question of "who (or which entity) is in control of the fundamental aspects of the employment relationship that gave rise to the claim." *Id.* (citing *Lyes v. City of Riviera Beach*, 166 F.3d 1332, 1345 (11th Cir. 1999) (en banc)). To answer this question, courts consider "the totality of the employment relationship." *Peppers*, 835 F.3d at 1297 (citing *Welch v. Laney*, 57 F.3d 1004, 1011 (11th Cir. 1995)). Courts consider: "(1) how much control the alleged employer exerted on the employee, and (2) whether the alleged employer had the power to hire, fire, or modify the terms and conditions of the employee's employment." *Id.* (citing *Welch*, 57 F.3d at 1011). In the joint employer context, courts

---

[4] The Plaintiff has not pleaded facts, however, to show that Defendants HEA and HMMA are an integrated enterprise. An integrated enterprise exists "where two nominally separate entities are actually part of a single integrated enterprise so that, for all purposes, there is in fact only a single employer." *Long v. Aronov Realty Mgmt., Inc.,* 645 F. Supp. 2d 1008, 1029 (M.D. Ala. 2009) (quotation marks omitted). "The single employer analysis involves examining various factors to determine if two nominally independent entities are so interrelated that they actually constitute a single integrated enterprise. . . ." *Id.*, (citing *Swallows v. Barnes & Noble Book Stores, Inc.,* 128 F.3d 990, 993 n.4 (6th Cir. 1997)). Beyond conclusory assertions, the Plaintiff has not pleaded enough facts to show the sufficient level of interrelation between HEA and HMMA to be an integrated enterprise.

examine the alleged employer's control over: "(1) the means and manner of the plaintiff's work performance; (2) the terms, conditions, or privileges of the plaintiff's employment; and (3) the plaintiff's compensation." *Kaiser v. Trofholz Techs., Inc.,* 935 F. Supp. 2d 1286, 1293 (M.D. Ala. 2013). The Eleventh Circuit has explained that "the focal point of the inquiry is not which entity controlled the specific aspect of the relationship giving rise to a discrimination claim, but rather which entity or entities controlled the fundamental and essential aspects of the employment relationship when taken as a whole." *Peppers,* 835 F.3d at 1301.

Courts usually determine whether a defendant is a joint employer at the summary judgment stage because such a determination requires a factual determination. Therefore, at the motion to dismiss stage, the Court is limited to considering whether a plaintiff has alleged sufficient facts that the defendant had enough control to plausibly be a joint employer. *Caver v. Help at Home LLC*, 2019 WL 2024265, at *2 (N.D. Ala. 2019). For example, in *Kaiser*, 935 F. Supp. 2d at 1293, the court found that the plaintiff had pleaded sufficient factual allegations to support the inference of an employment relationship when she alleged that the alleged employer employed her supervisors who could report on her job performance and her supervisors precipitated her termination by threatening to terminate her employer's contract. Similarly, a court found a plausible employment relationship existed when the plaintiff pleaded that the alleged employer provided feedback, oversaw day-to-day employment, work hours, and could discipline and remove employees. *Linzy v. Alabama Dep't of Pub. Health*, 2020 WL 6205848, at *2 (M.D. Ala. Oct. 22, 2020). The *Linzy* court further noted that the plaintiff need not allege that the

employer controlled every aspect of employment. *Id.*   Further, in *Caver*, the court concluded that the plaintiff had plausibly alleged facts supporting the existence of an employment relationship when the employer's name was used on internal records, the plaintiff's paychecks, and the plaintiff's termination email. 2019 WL 2024265 at *2. However, a court found there was no plausible employment relationship when the plaintiff only pleaded that he "worked under the supervision" of the alleged employer, attended a meeting called by the alleged employer, and reported harassment to the alleged employer by one of its employees.  *Isaacs v. Felder Servs., LLC*, 2014 WL 2806128, at *3 (M.D. Ala. 2014).  And another court found there not to be a plausible employment relationship in light of only pleading "[t]here existed an employer-employee relationship between Plaintiff and Defendants" without specific factual support beyond "[m]ere shadowy allegations." *Craighead v. Austal USA, LLC*, 2017 WL 6559917, at *4 n.7 (S.D. Ala. 2017).

Here, the Plaintiff pleads enough facts—barely—to plausibly show that HMMA had enough control of her employment to support an employment relationship.   After disregarding conclusory and speculative "upon information and belief" statements,[5] the Plaintiff has pleaded that she worked at a facility owned by HMMA, (doc. 28 at 2*)*, received a safety manual "marked Hyundai Motor Manufacturing, LLC", (*id.* at 8), an HEA employee emailed Dynamic from an HMMA email address stating dreadlocks were not allowed, (*id.* at 13), and HMMA was the customer identified on the Plaintiff's check from Dynamic.  (*Id.*).  The Plaintiff also alleges that she was told that the Koreans were a

---

[5] The Court is not required to accept as true the Plaintiff's conclusory "upon information and belief" statements without more factual information. *Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013) (citing *Twombly*, 550 U.S. at 551 (declining to take as true the conclusory allegation "upon information and belief" that the companies had entered a conspiracy without enough facts to take that statement plausible)).

"different breed of animals and they send little memos saying that they do not want African-Americans wearing their hair in dreadlock hairstyles. . .." (*Id.* at 11–12). Although the Plaintiff does not plead that HMMA had the same amount of control to directly supervise or set work hours as in *Kaiser* or *Lenz¸* she has alleged that she worked at facility owned by HMMA and, similar to *Caver*, that HMMA's name was used on her paycheck and emails about Key came from an HMMA email address. Although the Plaintiff's complaint contains conclusory statements about the nature of the employment relationship, there are enough factual allegations to distinguish the instant case from the cases where courts concluded that statements could not be considered more than mere allegations. Therefore, at this point, HMMA's motion to dismiss on the basis that it was not the Plaintiff's employer is due to be DENIED.

### 3. *Title VII claims against HMMA and Dynamic*

Because the Plaintiff failed to exhaust the administrative remedies against HEA, the only Title VII claims that remain are against Dynamic and HMMA. The Court first considers whether the Plaintiff has pleaded sufficient facts to proceed on her race discrimination and the pregnancy discrimination claims. The Court will then turn to whether the Plaintiff has alleged sufficient facts to support her claims of retaliation.

#### a. Race Discrimination

HMMA argues that the Plaintiff cannot state a claim for race discrimination because enforcing a ban on dreadlocks is not a racially discriminatory practice, and, therefore, does not fall within the ambit of Title VII. (Doc. 30 at 8). HMMA points to the Eleventh Circuit's holding in *Equal Emp't Opportunity Comm'n v. Catastrophe Mgmt. Solutions*,

852 F.3d 1018 (11th Cir. 2016) that a no-dreadlock grooming policy is not racially discriminatory. (Doc. 30 at 9).  The Plaintiff responds that she pleaded a plausible claim under Title VII for both disparate treatment and disparate impact.

## I.    Disparate treatment

HMMA argues the Plaintiff cannot plausibly plead a race discrimination claim based on the enforcement of Hyundai's dreadlock ban because dreadlocks are not an immutable characteristic of race but is an "elective, mutable style." (Doc. 30 at 9). The Plaintiff responds that the grooming policy was used to target her because she was African American and distinguishes the instant case from *Catastrophic Mgmt. Solutions, supra*. (Doc. 34 at 9–11).  In *Catastrophic Mgmt. Solutions,* the court said there was no disparate treatment claim when a company applied a race neutral grooming policy. 852 F.3d at 1030. But in the instant case, the Plaintiff alleges that discrimination occurred when she was reprimanded for wearing her hair in dreadlocks based on a policy she was not shown and after she was given approval to wear her hair in that manner. (Doc. 28 at 11).  In addition, she was told that the policy against dreadlocks was specific to African Americans and that her dismissal was "because of her hair and something else." (*Id.* at 11–12). She argues that these facts distinguish her case from *Catastrophe Mgmt. Solutions,* because they plausibly show that the grooming policy was used as proxy for intentional race discrimination. (Doc. 34 at 11–12).

Because the Supreme Court has explained that to survive a motion to dismiss a plaintiff is not required to plead facts to establish a prima facie case under the *McDonnell*

*Douglas*[6] framework, Key is only required to plausibly set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." *Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, 511–12 (2002) (citing Federal Rule of Civil Procedure 8(a)(2)). "The question in a disparate treatment case is 'whether the protected trait actually motivated the employer's decision.'" *Catastrophe Mgmt. Solutions,* 852 F.3d at 1026 (quoting *Raytheon Co. v. Hernandez*, 540 U.S. 44, 53 (2003)). Therefore, at the motion to dismiss stage, the Court must determine whether the Plaintiff has plausible pleaded sufficient facts that the Defendants discriminated against her because of a *protected trait*.

Although the *Catastrophe Mgmt. Solutions* court found that dreadlocks were not immutable traits, and, therefore, not protected under Title VII, there is some daylight between *Catastrophe Mgmt. Solutions* and this case. In that case, the court found that not hiring an employee because she would not cut her dreadlocks in compliance with the company's grooming policy did not violate Title VII. 852 F.2d at 1021–1022. The court reasoned that "Title VII protects persons in covered categories with respect to their immutable characteristics, but not their cultural practices." *Id*. at 1030. However, the Court noted the allegations before it did not suggest that the dreadlock policy was used as a proxy for intentional race discrimination. *Id*.

The allegations in this case are distinguishable from *Catastrophe Mgmt. Solutions* because there are allegations that the enforcement of the dreadlock policy was a proxy for

---

[6] The Court, in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), set forth the now familiar test for establishing a prima facie case of discrimination by presenting circumstantial evidence.

race discrimination.[7]  The Plaintiff alleges that the basis of her termination was more than her just having dreadlocks.  Unlike in *Catastrophe Mgmt. Solutions* where the company told the plaintiff it would be unable to hire her because she would not cut her dreadlocks, the Plaintiff here was first told that her hairstyle was fine if worn in a certain manner. When this was later corrected at the Hyundai plant, she was given the option to cover her hair in a hat until she could get her hair restyled.  When her supervisors became aware that she felt that she was being discriminated against because she had to wear a hat to cover her hair, they confronted her.  In this encounter, the Dynamic employee told Key, "the Koreans … were a 'different breed of animals and they send little memos saying that they do not want African-Americans wearing their hair in dreadlock hairstyles.'" (Doc. 28 at 11–12). This statement suggests that the enforcement of the dreadlock policy, as applied to Key, was not solely about her hair—but was instead a proxy for her race.  The comment combined with the back and forth about what the dreadlock policy actually required support a plausible claim for intentional race discrimination, so the Defendants' motions to dismiss the race discrimination claim based on disparate treatment are due to be DENIED.

## II.   Disparate impact

HMMA also asserts that the Plaintiff cannot plead around *Catastrophe Mgmt. Solutions* by reframing her claim as a disparate impact claim.  (Doc. 30 at 9–10).  For her disparate impact claim, the Plaintiff argues that she fulfilled the pleading requirements by alleging "she wore her hair neat, within policy, and in a manner commonly worn by African

---

[7] It is important to clarify that this Court is not contravening Eleventh Circuit precedent that dreadlocks are not an immutable characteristic under Title VII.  This Court's holding at this juncture has nothing to do with the mutable nature of dreadlocks.  Instead, in this case, the Plaintiff has pleaded sufficient facts to show that the use of grooming policy was a proxy for underlying race discrimination.

Americans" and "the alleged policy used to terminated [sic] Key creates a disparate impact on African Americans." (Doc. 34 at 10).

To establish a disparate impact claim, a plaintiff must first identify the specific employment practice that allegedly has a disproportionate impact," and then "establish causation by offering statistical evidence sufficient to show that the challenged practice has resulted in prohibited discrimination." *Armstrong v. Flowers Hosp., Inc.*, 33 F.3d 1308, 1314 (11th Cir. 1994). To support her disparate impact claim, the Plaintiff solely pleads, "Defendants (sic) purported policy creates a disparate impact on African Americans." (Doc 28 at 17). Although the Plaintiff identified a specific employment practice that allegedly has a disparate impact, she fails to plead any factual allegations to support the claim that the dreadlocks policy resulted in a disparate impact on African Americans. Because the Plaintiff fails to plead anything beyond conclusory allegations of the disparate impact of the Defendants' dreadlock policy, the Plaintiff fails to state a plausible claim for relief for disparate impact discrimination. Therefore, Defendants' motions to dismiss the race discrimination claim based on disparate impact are due to be GRANTED.

### b. Pregnancy Discrimination

HMMA argues that Plaintiff has not plausibly pleaded enough facts to support a claim of pregnancy discrimination. HMMA asserts that the Plaintiff did not adequately allege that it knew of her pregnancy or that HMMA influenced any other defendants. (Doc. 30 at 13-14). Dynamic does not move for dismissal of the Plaintiff's pregnancy discrimination count on any basis other than the failure to comply with administrative prerequisites prior to filing suit. *See* Doc. 32.

24

The Plaintiff responds by arguing that she pleaded enough facts that the Defendants discriminated against her because of her pregnancy.  (Doc. 34 at 12).  She argues that it can be inferred that pregnancy "was a motivating factor in the employment decision by the mere mention of her pregnancy in close proximity to her discipline." (*Id.* at 13).  She alleges that her hairstyle only became a problem after she told her supervisors she was pregnant. (Doc. 28 at 14).  She also alleges that the Court can infer discriminatory motive from the fact that Robinson called and asked about her baby's due date.  (Doc. 34 at 13).

"The PDA amended Title VII to add that discrimination because of sex or on the basis of sex, includes discrimination on the basis of pregnancy, childbirth, or related medical conditions." *Hicks v. City of Tuscaloosa, Ala.*, 870 F.3d 1253, 1258 (11th Cir. 2017) (internal quotations omitted); *Valentine v. Legendary Marine FWB, Inc.*, 2010 WL 1687738, at *4 (N.D. Fla. Apr. 26, 2010) ("Discrimination on the basis of sex includes discrimination on the basis of pregnancy or childbirth.").  Courts use the same framework for a pregnancy discrimination claim as other claims of discrimination. *Chapter 7 Trustee v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1255 (11th Cir. 2012).  To state a prima facie case for pregnancy-discrimination, the Plaintiff must allege that "(1) she [was pregnant]; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) employment or disciplinary policies were differently applied to her." *Poague v. Huntsville Wholesale Furniture*, 369 F. Supp. 3d 1180, 1195 (N.D. Ala. 2019) (brackets in original). However, like her Title VII race discrimination claim, the Plaintiff is not required to plead facts sufficient to establish a prima facie pregnancy discrimination claim, only that she pleads enough facts upon which relief may be plausibly granted.

Here, the Plaintiff alleges that her supervisors began to discriminate against her immediately after she notified them of her pregnancy. (Doc. 28 at 10). The Plaintiff further asserts that although the Defendants did not question the manner in which she wore her hair in previous encounters—including that day—Williams, an HEA employee whom the Plaintiff alleges was also employed by HMMA, told the Plaintiff that she could not wear her hair in dreadlocks. The Plaintiff asserts that "minutes" after she was sent home, Robinson called and asked when her baby was due and if her doctor knew she would be lifting boxes. (*Id.*). The Plaintiff has plausibly pleaded enough facts to demonstrate that the very close temporal proximity of her disclosing her pregnancy was linked to the beginning of the Defendants' alleged discriminatory conduct. The extremely close temporal proximity alleged here is enough to survive a motion to dismiss. *See Brungart v. Bellsouth Telecomm., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000). Therefore, HMMA's motion to dismiss Key's pregnancy discrimination claim is due to be DENIED.

### c. Retaliation

HMMA asserts that the Plaintiff failed to allege a plausible claim of retaliation. Dynamic seeks to dismiss the Plaintiff's retaliation claim against it for the reasons asserted by HMMA. (Doc. 32 at 12). In light of Eleventh Circuit precedent in *Catastrophe Mgmt. Solutions*, the Defendants argue that it was unreasonable for the Plaintiff to believe that the enforcement of the dreadlocks ban was discriminatory and therefore her complaining about it was not a protected activity.

In response, the Plaintiff argues that her complaint was about race discrimination and not just about her hairstyle, and that the Defendants knew this. The Plaintiff alleges

she pleaded enough facts to show that Defendants subjected her to discrimination based on her race. She points to two examples that support an inference that she was targeted based on her race. She points to the statement that the "Koreans" did not want "African Americans" to wear their hair in dreadlocks, and no supervisor could point to any policy that applied to Plaintiff. (Doc. 34 at 14). She also alleges that she was summoned to speak with her supervisors after she complained about discrimination. (*Id.*). In her complaint, Key alleges that in the meeting with the Defendants' employees, she was told that she and her situation were going to be problematic. (Doc. 28 at 12). And she was later told by Dynamic employees that her filing a complaint was a serious offense. (*Id.*).

To establish a prima facie case of retaliation, a plaintiff must show that "(1) she engaged in statutorily protected activity, (2) an adverse employment action occurred, and (3) the adverse action was causally related to plaintiff's protected activities." *Little v. United Techs., Carrier Transicold Div.,* 103 F.3d 956, 959 (11th Cir. 1997). To establish a causal connection, a plaintiff only has to demonstrate "that the protected activity and the adverse action were not wholly unrelated." *Matamoros v. Broward Sheriff's Office*, 2 F.4th 1329, 1336 (11th Cir. 2021) (citing *Shortz v. City of Plantation*, 344 F.3d 1161, 1180 n.30 (11th Cir. 2003)). In cases in which plaintiffs attempt to establish causation through temporal proximity, the temporal proximity must be "very close." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001).

In this case, the Plaintiff's allegations support a plausible retaliation claim. Although the Defendants are correct that the Plaintiff initially complained to her trainer about how she was treated regarding her hair, which precipitated a meeting with her supervisors, it

was only after this meeting with her supervisors that she was told that the Koreans "do not want African-Americans wearing their hair in dreadlock hairstyles" and that the Plaintiff and her situation were "going to be a problem." (Doc. 28 at 12).  After this meeting, the Plaintiff wrote a formal complaint against Hyundai, Robinson, a Dynamic employee, and Williams, an HEA employee, and stated she wanted to file it with human resources. (*Id*).  The Plaintiff has pleaded sufficient facts to show that her complaint, which was shortly followed by her termination, was not just about her hair because she complained after she was told that the dreadlock ban was specific to African Americans.  While at the Dynamic facility to file her complaint, Dynamic employees told her that a complaint "would be fruitless and that filing a discrimination complaint was a serious offense." (*Id*.) While at Dynamic, Key was also told that Williams did not want her back at the Hyundai plant because of her "hair and 'something else.'" (*Id*.)

In addition, the Plaintiff argues that the HEA and HMMA conflate "reasonable belief" with a "correct belief." (Doc. 34 at 15).  She asserts that the correct standard is a "'reasonable form of good faith belief' that the conduct complained of is unlawful" and not that an employee "need to be correct in her beliefs or consult a lawyer for expert analysis for her complaint." (*Id.*).  The Plaintiff does not need to prove the conduct about which she complained "was actually unlawful in order to establish a prima facie case." *Little,* 103 F.3d at 960.  Based on the nature of her complaint which was made after her meeting with staff at the Hyundai plant, and the close temporal proximity of her termination of employment at the Hyundai plant, the Plaintiff has pleaded enough facts to support a

plausible claim of race retaliation upon which relief might be granted, so the Defendants' motions to dismiss the retaliation claim are due to be DENIED.

## B.  42 U.S.C. § 1981

Although this Court found that the Plaintiff had not exhausted her administrative remedies against HEA as to her Title VII claims, section 1981 has no such administrative prerequisites.

### a.  Race Discrimination

Although the Defendants do not differentiate their Title VII arguments from their §1981 arguments in their briefs, the arguments appear to be the same—namely that hairstyle discrimination is not cognizable under either statute.  In response, the Plaintiff argues that she has pleaded enough facts to support a disparate treatment claim[8] because she identifies statements where the Defendants described her hairstyle in the negative context of race.

Section 1981 provides, "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens . . . ." 42 U.S.C. § 1981(a).  The statute's prohibition against race discrimination in the making and enforcement of contracts includes employment contracts.  *Ferrill v. Parker Grp., Inc.*, 168 F.3d 468, 472 (11th Cir. 1999).

> To state a claim for race discrimination under § 1981, plaintiffs must allege facts establishing: (1) that the plaintiff is a member of a racial minority; (2) that the defendant intended to discriminate on the basis of race; and (3) that the discrimination

---

[8] The Plaintiff also argues she brought a disparate impact § 1981 race discrimination claim.  However, disparate impact claims are not cognizable under § 1981. *See Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 391 (1982) ("We conclude, therefore, that § 1981, like the Equal Protection Clause, can be violated only by purposeful discrimination.").

concerned one or more of the activities enumerated in the statute.

*Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1270 (11th Cir. 2004).

"The test for intentional discrimination in suits under § 1981 is the same as the formulation used in Title VII discrimination treatment cases." *Ferrill*, 168 F.3d at 472. In this case, by pleading that she is Black and was discriminated against "on the basis of her race in the terms and conditions of her employment," Key satisfies the first and third requirements for a § 1981 race discrimination claim. However, like her Title VII claim, the Defendants argue that Plaintiff fails to show intentional race discrimination because hairstyle discrimination is not a protected characteristic. And because of this, the Defendants argue that the Plaintiff cannot show that the Defendants discriminated against her by terminating her employment. Nevertheless, the Plaintiff has pleaded enough facts to show that her claim for race discrimination goes beyond a neutral application of the dreadlocks policy to her. The Plaintiff instead argues that the Defendants used the policy to target her because of her race and in support of this, the Plaintiff points to the statement that the Koreans "do not want African-Americans wearing their hair in dreadlock hairstyles." (Doc. 28 at 12). Further, when asked by the Plaintiff, the Defendants could not produce a policy that squarely applied to her. (*Id.* at 9). Because the Plaintiff has pleaded sufficient facts to plausibly show that the Defendants terminated her employment based on

race discrimination, the Defendants' motions to dismiss on that basis are due to be DENIED.[9]

### b. Retaliation

Even though the Defendants do not distinguish their arguments under § 1981 and Title VII for retaliation, the Courts construes them as the same. Namely, the Defendants argue that the Plaintiff cannot show that she reasonably thought she participated in a protected activity by complaining about how she was treated based on how she wore her hair. The Plaintiff responds that her complaint was not just about hairstyle discrimination but that the Defendants had revealed to her that the policy was based on racial stereotypes.

In addition to prohibiting race discrimination in the formation of employment contracts, § 1981 also prohibits retaliation against workers who engage in statutorily protected activity. *Goldsmith v. Bagby Elevator Co.,* 513 F.3d 1261, 1277 (11th Cir. 2008). The same standard applies to retaliation claims under Title VII and § 1981. Therefore, to prevail on § 1981 retaliation claim, a plaintiff must show that she "engaged in statutorily protected activity, [s]he suffered a materially adverse action, and there was some causal relation between the two events." *Moore v. Grady Mem. Hosp. Corp.*, 834 F.3d 1168, 1176 (11th Cir. 2016). "A complaint about discrimination is protected if the plaintiff could "reasonably form a good faith belief that the alleged discrimination existed." *Jefferson v.*

---

[9] Section 1981 is broad enough to include situations where parties do not "occupy a direct employment relationship" affect the Plaintiff's employment. *See Zaklama, M.D. v. Mt. Sinai Medical Center,* 842 F.2d 291, 294–295 (11th Cir. 1988). Therefore, the Court does not have to determine if an employment relationship existed between HMMA or HEA and the Plaintiff—only whether the Plaintiff has pleaded enough facts that there was sufficient interference by the Defendants of her contractual rights. Because the Plaintiff alleges each of the parties participated in the alleged discriminatory actions and policies that were applied to her, the Plaintiff has met this burden.

*Sewon Am., Inc.*, 891 F.3d 911, 925 (11th Cir. 2018) (quoting *Taylor v. Runyon*, 175 F.3d 861, 869 (11th Cir. 1999).  Similar to the pleading stage under Title VII, a plaintiff is only required to plead enough facts to establish a plausible claim of retaliation pursuant to § 1981.

Here the Plaintiff has pleaded enough facts to support a plausible claim of § 1981 retaliation.  Although the Defendants argue that the Plaintiff could not have reasonably thought that hairstyle discrimination was protected, the Plaintiff is correct that she could maintain a retaliation claim she acted on a good faith reasonable belief in complaining about conduct prohibited by § 1981. The Plaintiff has pleaded enough facts that she was retaliated against for complaining about race discrimination.  The Defendants' argument about hairstyle discrimination is unavailing because the Plaintiff decided to file a formal complaint against her employer *after* she met with her supervisors and they explained to her that the Koreans did not want African Americans to wear their hair in dreadlocks. The Plaintiff also pleaded that she was terminated from her employment at the Hyundai plant on the same day she submitted her complaint about race discrimination.  Accordingly, the Plaintiff has alleged sufficient facts to support a claim of § 1981 retaliation, and the Defendants' motions to dismiss the retaliation claim are due to be DENIED.

## VI. CONCLUSION

Accordingly, for the reasons as stated, it is

ORDERED as follows:

1.  Defendant HMMA's motion to dismiss, (doc. 30), is GRANTED with respect to the Plaintiff's disparate impact discrimination claims under Title VII and § 1981. The motion is DENIED in all other respects.

2.  Defendant HEA's motion to dismiss, (doc. 31), is GRANTED with respect to the Plaintiff's Title VII claims contained in Counts 1, 2, and 4 and with respect to the Plaintiff's disparate impact discrimination claims under Title VII and § 1981.  The motion is DENIED with respect the Plaintiff's § 1981 claims contained in Counts 3 and 5; and

3.  Defendant Dynamic's motion to dismiss, (doc. 32), is GRANTED with respect to the Plaintiff's disparate impact discrimination claims under Title VII and § 1981. The motion is DENIED in all other respects.

DONE this 31st day of August, 2021.

/s/ Emily C. Marks
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE