**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **DAVITA KEY,** | ) | |
| **Plaintiff,** | ) ) ) | |
| **v.** | ) ) | **Civil Action No.:** |
| **HYUNDAI MOTOR MANUFACTURING, ALABAMA, LLC; HYUNDAI ENG AMERICA, INC.  and DYNAMIC SECURITY, INC.,** | ) ) ) ) ) ) ) | **2:19-cv-00767-ECM** |
| **Defendants.** | ) ) | |

**HYUNDAI ENG AMERICA, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

**Page**

**I.**   INTRODUCTION ...................................................................1

**II.**   HEA'S STATEMENT OF UNDISPUTED FACTS.....................................3

    A.   HEA and Relevant Policies ................................................3

    B.   Plaintiff's Assignment at HMMA ........................................5

    C.   Plaintiff's Lawsuit and Claims as to HEA ...........................8

**III.**   SUMMARY JUDGMENT STANDARD .......................................9

**IV.**   ARGUMENT.............................................................9

    A.   Plaintiff's Race Discrimination Claim Fails as a Matter of Law.........9

        1.   Plaintiff cannot establish a *prima facie* case of race discrimination.................................................11

            a.   Hairstyle is not a protected class or characteristic. ........11

            b.   Plaintiff cannot establish that she was qualified for the position.................................................13

        c.     There is no comparator or replacement outside of Plaintiff's protected class....................................................13

    2.    Even if Plaintiff could establish a *prima facie* case, HEA had a legitimate non-discriminatory reason for its actions.......15

        a.     HEA had a legitimate non-discriminatory reason for its actions..................................................................15

        b.     Plaintiff cannot prove but for causation to support her Section 1981 race discrimination claim. ..................16

B.    Plaintiff's Section 1981 Retaliation Claim also Fails as a Matter of Law.......................................................................................17

    1.    Plaintiff did not complain of race discrimination. ....................17

    2.    Plaintiff had no good faith reasonable belief that a prohibition against wearing dreadlocks was unlawful.............18

    3.    Even if Plaintiff had engaged in statutorily protected activity, she cannot prove causation. ........................................19

**V.**    CONCLUSION.............................................................................21

Defendant Hyundai ENG America, Inc. ("HEA") submits this memorandum of law in support of its Motion for Summary Judgment as to Plaintiff's remaining claims against HEA.

## I.    INTRODUCTION

Defendant Hyundai Motor Manufacturing Alabama, LLC ("HMMA") contracts with HEA to receive security and other services at HMMA's Montgomery, Alabama location. HEA, in turn, contracts with security companies who assign their employees to fill security positions at the HMMA location. In 2017, Dynamic Security ("Dynamic") was the firm that provided security personnel and hired Plaintiff Davita Key for a mailroom security position. She worked less than four hours during a two-day period before her assignment ended.

Plaintiff's First Amended Complaint (Doc. 28) alleges that the three Defendants ended her assignment because of race discrimination and retaliation under Title VII and 42 U.S.C. § 1981, and pregnancy discrimination and retaliation under Title VII. The Court dismissed Plaintiff's Title VII claims against HEA (Counts I, II and IV). (Doc. 39). In her remaining claims (Counts III and V), Plaintiff alleges that HEA violated Section 1981 by ending her assignment because she wore her hair in dreadlocks, and retaliated against her for complaining that the hairstyle policy was unfair or discriminatory.  (Doc. 28 at ¶¶ 125–138). HEA moves for summary judgment in its favor on Plaintiff's remaining claims. Plaintiff cannot establish a *prima facie* case of race discrimination or retaliation, cannot establish "but for" causation required under Section 1981, and cannot rebut HEA's legitimate reasons for its actions.

1

Plaintiff cannot establish a *prima facie* case of race discrimination because, as a matter of law, hairstyle is not a protected characteristic and a prohibition against dreadlocks is not racial discrimination.  Plaintiff also cannot point to comparators who were treated more favorably (HEA applied the hairstyle policy to all races and Plaintiff actually received favorable treatment), nor was she replaced by someone outside of her protected class (the next mailroom security officer was Black).  The individuals Plaintiff claims discriminated against her are also Black, creating an inference against race discrimination. Plaintiff therefore cannot establish the required but for causation.

However, even if Plaintiff could somehow establish a *prima facie* case, HEA had a valid business reason for concurring in Dynamic's decision to end her assignment. HEA's manager, Cassandra Williams, granted Plaintiff an exception to the hairstyle policy, something she had not previously done for contract security personnel, and allowed her to wear her dreadlocks in a specific professional style, but Plaintiff did not change her hair. Ms. Williams granted Plaintiff another exception and allowed her to temporarily wear a hat to cover her hairstyle, but Plaintiff was still not satisfied and demanded to see the hairstyle policy. She then complained about the hairstyle requirements and created a disruptive environment such that the Dynamic employee assigned to train her (also Black) reported to Ms. Williams that she could not continue the training.  Plaintiff cannot point to any comparators treated more favorably, nor can she establish that HEA's reason for concurring in the decision to end her assignment was pretext for race discrimination.

Plaintiff likewise cannot establish a *prima facie* case of race-based retaliation because she did not complain of race discrimination—she complained about her hairstyle,

which is not a protected activity. Even if she had complained of race, the manner in which she objected to the hairstyle requirement rendered her opposition unprotected. Additionally, Plaintiff cannot establish a good faith belief that she was subjected to race discrimination given the following: 1) the race of those involved; 2) a prohibition against dreadlocks is not racially discriminatory; 3) HEA made exceptions for her; and 4) she admits knowing that there was no applicable law prohibiting a policy against dreadlocks. Finally, Plaintiff cannot meet her burden to show that an alleged complaint about race discrimination was the but for cause of her assignment ending and she cannot show that HEA's reason for concurring in the decision to end Plaintiff's assignment was pretext for retaliation.

For each of these reasons, discussed in more detail below, there is no genuine dispute of material fact and HEA is entitled to judgment as a matter of law as to Plaintiff's remaining claims.

## II.    HEA'S STATEMENT OF UNDISPUTED FACTS

### A.    HEA and Relevant Policies

1.      HEA contracts with HMMA to provide security services, janitorial services, landscaping, and other general construction services at the HMMA automotive assembly location in Montgomery, Alabama. (Ex. 2, Cassandra Williams Deposition at 14:13–19, 15:9–14; Ex. 3, Cassandra Williams Declaration ¶ 2).[1]  HEA also manages the security

---

[1] HEA is submitting contemporaneously herewith its Evidentiary Submission in Support of its Motion for Summary Judgment which contains as Exhibit 1, Plaintiff Davita Key's Deposition Transcript and Exhibits (hereinafter, "Ex. 1"); as Exhibit 2, Cassandra Williams's Deposition Transcript and Exhibits (hereinafter, "Ex. 2"); and as Exhibit 3 the Declaration of Cassandra Williams (hereinafter, "Ex. 3").

contract for Glovis Alabama and Glovis America at the HMMA location. (Ex. 3 ¶ 2). In 2017, HEA used Dynamic Security to provide personnel to fill contract security positions at the HMMA facility.  (Ex. 3 ¶ 7).

2.      Contract security personnel assigned to the HMMA location under the HEA security contracts are expected to comply with the Appearance Standards for Security Personnel (the "Policy"). (Ex. 2 at Ex. 9). The Policy includes a prohibition on hairstyles considered unprofessional, including dreadlocks. *Id.* at pp. 1–2. This prohibition was in place in 2017. (Ex. 3 ¶¶  3, 4, 7).

3.      Approximately one decade ago, Cassandra Williams, HEA's Manager of the Facilities Management Department, and a former Montgomery police officer, created a version of the Policy similar to what is in place currently, using a then-existing HMMA policy and her experience as a police officer to set appearance standards for security personnel. (Ex. 2 at 40:3–8, Ex. 3 ¶ 3). HMMA's then-existing policy prohibited braids, but did not specifically reference dreadlocks. (Ex. 3 ¶ 3). Ms. Williams updated the Policy to, among other things, specify that dreadlocks were prohibited for security personnel, which included mailroom personnel assigned to the HMMA facility under HEA's security services agreement with HMMA. *Id.*

4.      No employee of HMMA or HEA ever communicated with Ms. Williams, verbally or in writing, that they did not want Black people to wear their hair in dreadlocks and she has never seen any memos or other documents that indicate that HEA or HMMA did not want Black people to wear dreadlocks. (Ex. 2 at 147:2–6; Ex. 3 ¶ 5). Ms. Williams has applied the Policy without regard to race or sex during her tenure with HEA, including

4

in 2017 when Dynamic was assigning its employees to work at the HMMA location. (Ex. 3 ¶ 6) Ms. Williams would have been offended had she heard that the Policy was directed only towards Black people, as she is Black.  (Ex. 2 at 147:7–9; Ex. 1 at 38:3-5; Ex. 3 ¶ 5).

**B.    Plaintiff's Assignment at HMMA**

5.      On or about July 19, 2017, Plaintiff interviewed with Dynamic manager Gloria Robinson for employment with Dynamic as a mailroom security officer assigned to HMMA's location. (Ex. 1 at 21:8–10; Ex. 3 ¶ 7-8). Although the Policy provides a blanket prohibition on dreadlocks, after Ms. Robinson interviewed Ms. Key, she called Ms. Williams in and advised her that Plaintiff had dreadlocks, which were not permitted by the security contractor hairstyle Policy, but that Plaintiff said she could style them in a particular way that was very neat and professional. (Ex. 1 at 261:10–262:20; Ex. 3 ¶  8). Plaintiff showed Ms. Williams and Ms. Robinson a picture on her phone of her hair in a bun style. *Id.*[2] Based on the photo, Ms. Robinson and Ms. Williams agreed that Plaintiff could wear her hair to work in that style and understood that she would change her hair to that style prior to beginning work at the HMMA location. (Ex. 1 at 265:23–266:5).

6.      Ms. Key was the first security officer for whom Ms. Williams recalls granting an exception to the Policy for dreadlocks. (Ex. 3 ¶ 8). HEA has since made exceptions, each time for Black individuals, when security personnel agree to style their hair in a very neat and professional manner. (Ex. 2 at 46:12–47:16, 50:8–14; Ex. 3 ¶ 8). Ms. Williams has applied the Policy to all security contractor candidates, regardless of

_____

[2] Plaintiff says that the phone on which the picture was stored has a cracked screen and she cannot access the photos. She did not print or transfer the photo of the hairstyle but did print or transfer other items she produced in this lawsuit. (*See* Ex. 1 at 251:11–252:13).

race, and recalls at least one white candidate whose hairstyle was in dreadlocks and was therefore not acceptable. (Ex. 3 ¶ 8).

7.     The mailroom is part of the security services provided by HEA to HMMA and mailroom workers are uniformed security officers under the Policy. (Ex. 2 at 56:12–17; Ex. 3 ¶ 4). As a mail room security officer, Plaintiff was responsible for security of the mailroom and its contents, processing mail and packages, delivering mail with the HMMA location, and reconciling shipping invoices. (Ex. 2 at 64:10–23).

8.     Prior to her first day, Plaintiff attended training in mid-July at Dynamic's training site. (Ex. 1 at 266:10–12). As of that training, she had not restyled her hair. (Ex. 1 at 266:13–16).

9.     Plaintiff started her assignment in the HMMA mailroom on July 31, 2017, approximately two weeks after her interview with Dynamic. (Ex. 1 at 266:17–20, 96:17–21). When Plaintiff arrived at work her hairstyle had not changed from the date of her interview. (Ex. 1 at 266:17–20). Plaintiff says Ms. Williams questioned why she had not restyled her hair as previously instructed. (Ex. 1 at 268:8–12). Plaintiff says that during training at the Dynamic offices, a Dynamic employee told her nothing was wrong with her hair and that the Dynamic handbook did not prohibit dreadlocks. (Ex. 1 at 268:13–19). Plaintiff was advised that dreadlocks were not permitted. (Ex. 1 at 118:9–19).

10.     On July 31st, Plaintiff arrived with her hair unchanged and then demanded to see the Policy prohibiting dreadlocks, which Ms. Williams showed to her. (Ex. 1 at 269:18–270:3). Ms. Williams then granted a second exception and informed Plaintiff that she could wear a hat to cover her dreadlocks. (Ex. 1 at 118:9–19, 149:24–150:4). Plaintiff

6

did not have a hat and was sent home by Gloria Robinson for failure to adhere to the Policy. (Ex. 1 at 117:14–118:21).

11.     On the morning of August 1, 2017, Plaintiff again showed up to work at the HMMA location with her hair styled in dreadlocks, but wearing a hat. (Ex. 1 at 260:21–261:5). Ms. Williams received a call from Latunya Howell, a Dynamic employee who was training Plaintiff in the mailroom, reporting that Plaintiff was asking for an HMMA handbook to look at the hair and appearance policies and that Plaintiff was complaining about the hairstyle policy and alleging it was unfair or discriminatory. (Ex. 2 at 95:7–20). Ms. Howell reported that Plaintiff was uncooperative and did not listen or attempt to learn the mailroom position and that she could not train Plaintiff due to her behavior. (Ex. 2 at 103:8–23).

12.     At some time after the July 31st discussion, Ms. Williams and Ms. Robinson discussed Dynamic reassigning Plaintiff to a different location. (Ex. 2 at 94:2–95:6). On August 1, 2017, Ms. Williams sent an email to Dynamic supporting the decision to reassign Ms. Key.[3] (Ex. 2 at 94:2–95:6).

13.     August 1, 2017 was Plaintiff's last day assigned to the mailroom at the HMMA facility. (Ex. 1 at 96:17–21). She worked approximately four hours during her assignment. (Ex. 1 at 113:25–114:9).

---

[3] Ms. Williams has no authority to terminate Dynamic Security employees but is able to make recommendations to the account manager.  (Ex. 2 at 31:13–32:14)

C.   <u>**Plaintiff's Lawsuit and Claims as to HEA**</u>

14.    Plaintiff filed her lawsuit on October 10, 2019 (Doc. 1) and amended her complaint (Doc. 28) on June 1, 2020. Plaintiff's remaining claims against HEA are race discrimination and retaliation, based on the end of her assignment, under 42 U.S.C. § 1981. (Doc. 28 Counts III and V).

15.    Plaintiff claims that Dynamic employee Gloria Robinson told her that there were "little memos" from "the Koreans" regarding Black people's hairstyles (Doc. 28, p. 11 ¶ 82); yet, Plaintiff never saw any memo.  (Ex. 1 at 63:24–64:14). Neither Ms. Williams, nor Ms. Robinson have heard of or seen memos regarding HEA or HMMA (or Koreans) not wanting Black people to wear their hair in dreadlocks. (Ex. 3 ¶ 5; Gloria Robinson Declaration ¶ 12).[4]  During her employment with Dynamic, no one with any of the Defendants used any racial slurs towards Plaintiff.  (Ex. 1 at 173:20–22).

16.    Plaintiff spoke to Ms. Williams only about her hair and complained about not being able to wear her preferred hairstyle.  (Ex. 1 at 278:7–18). Ms. Williams is not aware of Plaintiff complaining about race discrimination during her assignment and did not construe Plaintiff's complaints about hairstyle to be about race. (Ex. 3 ¶ 9). Ms. Williams would have found it odd had Plaintiff complained about race because Williams is also Black and because Williams made an exception to the hairstyle Policy for Plaintiff. *Id.* Plaintiff says she equates her hair with her race (Ex. 1 at 278:14–15) and her claim of race discrimination is based on her hairstyle and the prohibition on dreadlocks (Ex. 1 at

---

[4] *See* Gloria Robinson's Declaration included in HMMA's evidentiary materials (identifying Ms. Robinson as "a Black woman" who never said "that "the Koreans were a different breed of animals" and has "never seen any memo from HMMA or HEA executives regarding hair styles.").

Ex. 18; Doc. 28, p. 20–21 ¶¶ 128–132); however, Plaintiff is unaware of any Alabama law prohibiting an employer from having a policy against dreadlocks.  (Ex. 1 at 254:4–11).

## III.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.  R.  Civ.  P.  56(a). The movant bears the initial burden of showing the court, by reference to materials on file, that no genuine issues of material fact exist. *Celotex Corp. v. Catrett,* 477 U.S.  317 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). After the moving party discharges its burden, the non-movant must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995). "Mere general allegations which do not reveal detailed and precise facts will not prevent the award of summary judgment." *Resol. Trust Corp. v. Dunmar Corp.,* 43 F.3d 587, 592 (11th Cir. 1995), *cert. denied*, 516 U.S. 817 (1995) (citation omitted).

## IV.   ARGUMENT

## A.   <u>Plaintiff's Race Discrimination Claim Fails as a Matter of Law.</u>

When analyzing claims under Title VII and Section 1981, courts in this Circuit use the same analytical framework. *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006); *Rice-Lamar v. City of Ft. Lauderdale*, 232 F.3d 836, 843 n.11 (11th Cir. 2000). However, under 42 U.S.C. § 1981, a Plaintiff must establish her claim under the more stringent but for causation standard. *See Comcast Corp. v. Nat. Assoc. of*

*African American-Owned Media*, 140 S.Ct. 1009, 1019 (2020) (holding Section 1981 race discrimination claims require but-for causation).

Plaintiff bears the ultimate burden of proving—by a preponderance of the evidence—that HEA discriminated unlawfully against her. *See Crawford v. Carroll*, 529 F.3d 961, 975 (11th Cir. 2008), *overruled in part on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009). Where, as here, Plaintiff admits neither Ms. Williams, nor anyone else, said anything negative about her race, (Ex. 1 at 173:20–22) (in fact, she says she did not speak to Ms. Williams about anything other than her hair (Ex. 1 at 36:12–14)) and does not present any direct evidence of discrimination against HEA, her claims are analyzed under the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) burden-shifting framework. Under this framework, Plaintiff must first establish a *prima facie* case of discrimination, to create a presumption of unlawful discrimination against the employer. *Id*. If she does so, the employer may then rebut that presumption with legitimate, nondiscriminatory reasons for the adverse employment acts. *Id*. The burden then shifts to the employee to produce evidence sufficient to create a genuine issue of material fact that the employer's articulated reasons are a pretext for unlawful discrimination. *Id*.

To establish a *prima facie* case of discrimination, Plaintiff must prove that she (1) belongs to a protected class, (2) was subjected to an adverse employment action, (3) was qualified to perform the pertinent job; and (4) was treated less favorably by her employer than "similarly situated" employees outside the protected class or was replaced by someone outside her protected class. *Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1220-21 (11th

10

Cir. 2019) (en banc); *Cuddeback v. Fla. Bd. of Educ.*, 381 F.3d 1230, 1235 (11th Cir. 2004) (listing the prima facie elements for discriminatory discharge).

### 1. Plaintiff cannot establish a *prima facie* case of race discrimination.

Plaintiff cannot establish a *prima facie* case of race discrimination against HEA because her claim is about her dreadlock hairstyle, which is not a protected class or characteristic. Plaintiff also cannot establish that she was qualified for the contract security position because she did not meet the hairstyle requirements for the position and her co-worker could not train her. Finally, Plaintiff can neither establish that HEA was her employer (Plaintiff's own testimony and unemployment filings establish that Dynamic was her employer), there are no comparators who were treated more favorably, and she was not replaced by someone outside of the protected class.

#### a. *Hairstyle is not a protected class or characteristic.*

Plaintiff cannot establish a *prima facie* case because she does not allege discrimination based on a protected characteristic or class. Plaintiff claims that HEA discriminated against her because of her dreadlock hairstyle. (Doc. 28 ¶¶ 128–132; Ex. 1 at 278:14–18). The law is well-settled in this Circuit that a prohibition of dreadlocks does not constitute actionable racial discrimination. *See Equal Emp't Opportunity Comm'n v. Catastrophe Mgmt. Sols.*, 852 F.3d 1018 (11th Cir. 2016) (upholding dismissal of complaint because EEOC "failed to state a plausible claim that [employer] intentionally discriminated against [applicant] because of her race" when employer rescinded job offer for applicant's refusal to cut dreadlocks.). In *Catastrophe Management*, the Court reaffirmed that race discrimination may be proven only when such discrimination is against

11

employees on the basis of immutable characteristics. *See id.* at 1030. Because hairstyle is not an immutable characteristic and the Eleventh Circuit has rejected hairstyle as a basis for racial discrimination, Plaintiff's Section 1981 claim fails from the outset.

Plaintiff attempts to avoid this obvious legal impediment by alleging that Dynamic employee Gloria Robinson said that "the Koreans do not want African-Americans wearing their hair in dreadlock hairstyles" and that they sent "little memos" to that regard. (Doc. 28 at ¶ 82). However, this testimony from Plaintiff does not overcome her failure to establish a *prima facie* case nor does it rebut HEA's legitimate reason for concurring in the decision to end Plaintiff's assignment.  As an initial matter, no admissible evidence supports those alleged statements and "inadmissible hearsay cannot be considered on motion for summary judgment." *Dowlen v. Sec. of Veteran Affairs*, 28 F. App'x 572, 578 (11th Cir. 2008) (quoting *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999)). Neither Plaintiff nor anyone else testified that they have ever heard such a statement from HEA or HMMA, much less has anyone seen such a memo. (Ex. 1 at 63:24–64:14, 66:20–67:10). Ms. Williams has never heard such comments or seen any such memos, and she is unaware of anyone at HMMA or HEA saying that the Policy had any relation to race. (Ex. 3 ¶ 5). She would have been offended by any such suggestion or actions.  (Ex. 2 at 147:2–9).

Ms. Williams created the provision in the Policy at issue and she applied it to all contract security personnel at the HMMA location regardless of race. (Ex. 3 ¶¶ 3, 6). In fact, the first person granted an exception to the Policy was Plaintiff, who is Black. (Ex. 3

at ¶ 8). There is no evidence that the hairstyle Policy was created to discriminate based on race or that HEA applied it in such a manner.

### b. *Plaintiff cannot establish that she was qualified for the position.*

Plaintiff also cannot establish that she was qualified for the mailroom security position. It is undisputed that the hairstyle Policy did not allow for dreadlocks and Plaintiff wore her hair in dreadlocks even after agreeing to change it. As such, Plaintiff did not meet the grooming qualifications for the position. Additionally, a necessary requirement for the position was for Plaintiff to complete training. (Ex. 3 ¶ 7). Latunya Howell, who was assigned to train Plaintiff in the mailroom, stated that she could not train Plaintiff because of her disruptive behavior. (Ex. 2 at 102:13–21, 103:16–23). Plaintiff's inability to be trained and refusal to change her non-compliant hairstyle prevents her from establishing that she was qualified for the mailroom worker position.

### c. *There is no comparator or replacement outside of Plaintiff's protected class.*

Even if Plaintiff could establish that her hairstyle was protected and that she was qualified for the position despite not meeting the grooming or training requirements; she still cannot establish a *prima facie* case of race discrimination because HEA was not her employer and she provides no evidence that she was treated less favorably than, or replaced by, individuals outside of her protected class.

Plaintiff's testimony and her unemployment filings establish that she was employed by Defendant Dynamic, not HEA. (Ex. 1 at 44:10–12). Plaintiff cannot point to anyone of another race who was not required to comply with the Policy prohibiting dreadlocks. (Ex.

1 at 154:22–25). As such, Plaintiff cannot establish a *prima facie* case of employment discrimination against HEA. *See Lewis v.  City of Union City, Ga*., 918 F.3d at 1220–21 (11th Cir. 2019) (en banc) (requiring as an element of racial discrimination claim that employer treat employee less favorably than "similarly situated" employees outside the protected class or was replaced by someone outside her protected class).

Plaintiff's discrimination argument is further eroded by the fact that Ms. Williams, who is Black, created the HEA hairstyle provision at issue (Ex. 2 at 45:5–12; Ex. 3 ¶¶ 3–4), and applied it to all contract security personnel without regard to race. (Ex. 3 ¶ 6). As the Eleventh Circuit has noted, when the decision makers are in the same protected class as the employee complaining about an adverse employment decision, the employee faces a more difficult burden in establishing that a discriminatory animus played a role in the decision complained about. *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1471 (11th Cir.1991).

If anything, HEA treated Plaintiff more favorably than others by making exceptions for her that it had not previously made for other contract security personnel. (Ex. 3 ¶ 8). Ms. Williams was willing to allow Plaintiff to wear dreadlocks, if they were styled in an agreed upon professional way (Ex. 3 ¶ 8), and even offered to allow Plaintiff to hide the style in a hat while waiting for an appointment with her stylist. (Ex. 1 at 118:9–21). Additionally, the individual who "replaced" Plaintiff in the mailroom security position at HMMA was a Black female. (Ex. 2 at 134:23–135:7). As such, Plaintiff cannot establish a *prima facie* case of race discrimination.

14

## 2. Even if Plaintiff could establish a *prima facie* case, HEA had a legitimate non-discriminatory reason for its actions.

Even if, *arguendo*, Plaintiff could establish a *prima facie* case, HEA had a legitimate non-discriminatory reason for concurring in the decision to end Plaintiff's brief assignment at the HMMA location and Plaintiff cannot establish "but-for" causation as required to overcome HEA's legitimate explanation.

### a. HEA had a legitimate non-discriminatory reason for its actions.

Plaintiff's Section 1981 discrimination claim fails because HEA had a legitimate nondiscriminatory reason to concur in the decision to end Plaintiff's assignment at HMMA. Despite an exception allowing Plaintiff to wear her dreadlocks in a specific professional style, Plaintiff did not change her hair and instead, a couple of weeks later, Plaintiff arrived for her first day of work with the original dreadlock style. (Ex. 1 at 250:17–20). Ms. Williams then agreed to make another exception and allowed Plaintiff to temporarily wear a hat to cover her dreadlocks. (Ex. 1 147:20–148:3). Despite this favorable treatment, Plaintiff did not change her hairstyle (Ex. 1 at 250:17–20), demanded to see the hairstyle policy (Ex. 1 at 50:5–13), complained about the hairstyle requirements to a co-worker (Ex. 1 at 156:16–24), and created a disruptive environment such that the Dynamic employee assigned to train Plaintiff (also) reported to Ms. Williams that she could not continue the training. (Ex. 2 at 103:16–23). Plaintiff has presented neither evidence that other contract personnel engaged in similar behavior and were treated more favorably, nor any other basis for finding that this legitimate reason for ending her assignment was pretext for race discrimination.

15

**b. Plaintiff cannot prove but for causation to support her Section 1981 race discrimination claim.**

Even if Plaintiff could establish a *prima facie* case, she cannot rebut HEA's legitimate reason for ending her assignment under the but for causation standard. *See Comcast Corp.,* 140 S.Ct. at 1019 ("To prevail, a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right."). Race cannot be the but-for cause because Plaintiff acknowledges that Ms. Williams not only gave her an opportunity to temporarily wear a hat to cover her dreadlocks, but she granted her an opportunity to style her dreadlocks neatly, which she failed to take advantage of during the approximately two-week period following her hiring and her first day on-site at HMMA. (Ex. 1 at 250:17–20). No such exception had been offered to any non-Black contact security officer. (Ex. 3 ¶ 8). It was Plaintiff's refusal to comply with the neutrally applicable hairstyle Policy and her subsequent disruptive behavior that resulted in her reassignment. Moreover, Plaintiff's own allegations and sworn testimony preclude her from establishing that race was the but for cause of her removal. Plaintiff not only claimed pregnancy discrimination in her First Amended Complaint, but she testified that *she does not know* if she would have been removed if she had not been pregnant. (Ex. 1 at 273:14–18). If Plaintiff does not know if her race, as opposed to other factors, was the cause of her removal, she cannot establish that race is the but for cause.

For each of these reasons, this Court should grant summary judgment in HEA's favor on Plaintiff's claim of race discrimination.

16

**B.** **Plaintiff's Section 1981 Retaliation Claim also Fails as a Matter of Law.**

Plaintiff's retaliation claim fails as a matter of law because Plaintiff cannot prove a *prima facie* case of retaliation under Section 1981. To do so under Section 1981, Plaintiff must show that (1) she engaged in statutorily protected activity, (2) that she suffered an adverse employment action, and (3) that a causal connection existed between the activity and the adverse action.  *Crawford,* 529 F.3d at 970. As to causation, "the [employer's] desire to retaliate [must be] but-for cause of the challenged employment action." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2528 (2013); *see also Smith v. City of Fort Pierce*, 565 F. App'x 774, 778 (11th Cir.  2014) (recognizing that after *Nassar*, a *prima facie* case of retaliation requires showing of but-for causation). Here, Plaintiff cannot make out a *prima facie* case of retaliation, but even if she could, she cannot establish pretext to rebut HEA's legitimate non-retaliatory reason.

### 1.  Plaintiff did not complain of race discrimination.

Plaintiff's claim fails from the outset because she cannot prove she engaged in statutorily protected activity. It is undisputed that what Plaintiff complained about was the hairstyle policy and that she made no mention of race. (Ex. 1 at 278:10–18). However, even if Plaintiff had claimed race discrimination, neutrally applicable policies prohibiting dreadlocks are not racially discriminatory under Eleventh Circuit law. *See Catastrophe Mgmt. Sols.*, 852 F.3d 1018 (holding that dreadlocks are a not an immutable characteristic of race and, therefore, are not a protected characteristic under Title VII).

Moreover, even if Plaintiff's complaints about her hairstyle are considered oppositional conduct about a protected characteristic, such complaints would not be

protected activity under 42 U.S.C. § 1981 because of the manner in which she complained. Plaintiff's co-worker, who was training her for the mailroom security position, reported to Ms. Williams that Plaintiff was so disruptive that the co-worker could not and would not train her. (Ex. 2 at 103:16–23). And, when the means by which an employee expresses her opposition "so interferes with the performance" of her job duties "that it renders [her] ineffective in the position for which [she] was employed," the oppositional conduct is not protected under Title VII's opposition clause." *Rosser v. Laborers' Int'l Union of N. Am., Local No. 438*, 616 F.2d 221, 223 (5th Cir. 1980).[5] In *Gogel v. Kia Motors Manuf. of Ga., Inc*. 967 F.3d 1121, 1141 (11th Cir. 2020), the Eleventh Circuit explained further that "even if an employee's oppositional conduct does not interfere with the employee's performance of her own duties, it can still be deemed unreasonable—and thereby lose its protected status—if the opposition is expressed in a manner that unreasonably disrupts other employees or the workplace in general." Here, Plaintiff's conduct, as reported to Ms. Williams, was disruptive to the point that Plaintiff could not be trained, rendering her conduct unreasonable, not protected, and supportive of HEA's legitimate basis for concurring in Plaintiff's reassignment.

### 2. Plaintiff had no good faith reasonable belief that a prohibition against wearing dreadlocks was unlawful.

Even if Plaintiff had complained about race discrimination and the manner of the complaint was protected, she cannot show she had a good faith reasonable belief the

---

[5] *See Bonner v. City of Prichard*, 661 F. 2d 1206, 1208 (11th Cir. 1981) (en banc) (adopting as binding precedent all decisions from the Fifth Circuit handed down prior to October 1, 1981).

hairstyle policy was racially discriminatory. To establish a "good faith, reasonable belief," Plaintiff must show both that she subjectively believed the practice was unlawful and that the belief was objectively reasonable. *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997) ("[i]t thus is not enough for a plaintiff to allege that his belief in this regard was honest and bona fide; the allegations and record must also indicate that the belief, though perhaps mistaken, was objectively reasonable"). Plaintiff admits that she was unaware of any laws applicable to Alabama prohibiting an employer from having a policy against dreadlocks (Ex. 1 at 254:4–11) and she is unaware of any discriminatory application of the Policy. (Ex. 1 at 154:22–25). Instead, the individuals applying the policy were the same race as Plaintiff and actually made exceptions for her. As such, even if she subjectively believed she had a basis for claiming race discrimination, such belief was not objectively reasonable.

### 3. Even if Plaintiff had engaged in statutorily protected activity, she cannot prove causation.

Even if Plaintiff had complained of race discrimination, and such complaint was protected, and she could establish a reasonable good faith belief that HEA's policy was racially discriminatory, she cannot prove causation against HEA because Ms. Williams, when echoing the decision to reassign Plaintiff, did not believe Plaintiff's complaint was about race, but instead only about her hair. (Ex. 3 ¶ 9); *see Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1211 (11th Cir. 2013) ("To establish a causal connection, a plaintiff must show that the relevant decisionmaker was 'aware of the protected conduct….'") (citation omitted). Plaintiff herself says her complaint was about her hair and that she did not speak

to Ms. Williams about anything other than her hair. (Ex. 1 at 36:9–14). Even Plaintiff's written complaint to Dynamic refers only to her hairstyle and contains no mention of race. (Ex. 1 at Ex. 18). Ms. Williams logically did not equate Plaintiff's complaint with race because she (a Black female) created the Policy and enforced it along with Gloria Robinson (also Black). (Ex. 3 ¶ 9; Robinson Decl. ¶ 14). Ms. Williams could not have retaliated against Plaintiff for complaining about racial discrimination when she was unaware that Plaintiff's complaint was about race. Thus, Plaintiff cannot prove her Section 1981 retaliation claim.

Finally, even if Plaintiff had complained about race discrimination, and the complaint was subjectively and objectively in good faith, and Ms. Williams understood the complaint to be about race discrimination, Plaintiff cannot prove that her complaint was the but for cause of her reassignment. As shown above, Ms. Williams had a legitimate reason for concurring in the decision to reassign Plaintiff. Plaintiff failed to change her hairstyle after Ms. Williams made an exception to the Policy for her, then demanded to see the Policy, and then was disruptive to the point that her trainer could not complete her training. (Ex. 1 at 250:17–20, 50:5–13; Ex. 2 at 103:17–23). Plaintiff cannot establish that other contract personnel engaged in similar behavior and were treated more favorably. Therefore, Plaintiff cannot prove causation and her retaliation claim fails.

For the reasons set forth above, this Court should grant summary judgment in HEA's favor on Plaintiff's claim of retaliation under 42 U.S.C. § 1981.

## V.  CONCLUSION

Plaintiff's Section 1981 claims fail because they are not cognizable claims as her hairstyle is not a basis for race discrimination in the Eleventh Circuit and any complaint about her hairstyle is not statutorily protected. Moreover, Plaintiff cannot establish a *prima facie* case of Section 1981 race discrimination or retaliation and, even if she could, she cannot rebut HEA's reason for concurring in her reassignment by showing that it was pretext and that the but for cause of her reassignment was intentional race discrimination or retaliation. As such, this Court should grant summary judgment in favor of HEA as to Plaintiff's remaining claims.

Respectfully submitted,

*/s/ T. Matthew Miller*

T. Matthew Miller (ASB-2129-I66T)
Cortlin Bond (ASB-6096-X12M)
Sarahanne Vaughan (ASB-1515-Q08B)
Bradley Arant Boult Cummings LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203
Telephone: (205) 521-8000
Facsimile: (205) 521-8000
Email: mmiller@bradley.com
Email: cbond@bradley.com
Email: svaughan@bradley.com

*Attorneys for Defendant*
*Hyundai ENG America, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 12, 2022, I served a copy of the foregoing by electronic mail on the following counsel of record:

Heather Leonard, P.C.
2105 Deveraux Circle, Ste 111
Birmingham, AL 35243
Heather@HeatherLeonardPC.com
Leslie Palmer

104 23rd Street South, Suite 100
Birmingham, AL 35233
leslie@palmerlegalservices.com
*Attorneys for Plaintiff*

David J. Middlebrooks
Whitney R. Brown
Lehr Middlebrooks Vreeland & Thompson, P.C.
P.O. Box 11945
Birmingham, AL 35202
dmiddlebrooks@lehrmiddlebrooks.com
wbrown@lehrmiddlebrooks.com

*Attorneys for Defendant*
*Hyundai Motor Manufacturing Alabama, LLC*

Wesley C. Redmond
Susan W. Bullock
Ford Harrison LLC
420 20th Street North, Ste 2560
Birmingham, AL 35203
wredmond@fordharrison.com
sbullock@fordharrison.com
*Attorneys for Defendant Dynamic Security, Inc.*

_____
    */s/ T. Matthew Miller*
    OF COUNSEL

22