IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| DAVITA M. KEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION NUMBER: |
| v. ) | 2:19-cv-00767-ECM-SMD |
| ) | |
| HYUNDAI MOTOR MANUFACTURING ) | |
| ALABAMA, LLC, HYUNDAI ) | |
| ENGINEERING AMERICA, INC. and ) | |
| DYNAMIC SECURITY, INC. ) | |
| ) | |
| Defendants. ) | |

**DEFENDANT HMMA'S OBJECTIONS TO PLAINTIFF'S WITNESS LIST –
DEPOSITION DESIGNATIONS (Doc. 101) and DEFENDANT DYNAMIC'S
DEPOSITION DESIGNATION LIST (Doc. 100)**

Hyundai Motor Manufacturing Alabama, LLC ("HMMA"), one of the defendants in the above litigation, objects to Plaintiff's deposition designations on her witness list (Doc. 101) and Defendant Dynamic Security, Inc.'s, deposition designation list (Doc. 100), with respect to the following excerpts and for the reasons summarized herein:

**I.      Objections to Plaintiff's Deposition Designations**

   A.   <u>Objections to Plaintiff's Deposition Designations from Kristal Riddle's Deposition</u>

Riddle, 60:04-60:09 – Riddle testifies she regarded Cassandra Williams as an employee of HMMA. Riddle admitted later in her deposition that this mistaken belief was without foundation and that she could not dispute that Williams was exclusively HEA's employee. (Riddle, 185:4-189:6, 192:7-18). Riddle's mistaken belief is likely to confuse a jury and is not especially probative as Riddle did not work for Dynamic at the HMMA site. All of Dynamic's

employees, including Plaintiff,[1] were well aware of the distinction between HEA and HMMA. Thus this excerpt should be disallowed pursuant to Fed. R. Evid. 401, 402, 403, 602.

Riddle, 74:08-17 – Riddle testifies that Dynamic's client was HMMA. Riddle's mistaken belief is likely to confuse a jury and is not especially probative as Dynamic's own records (as well as HEA's) clearly establish HEA as Dynamic's client. (Riddle, 139:19-21, 193:6-197:14, PX-24 and HMMA ex. 2). Thus this excerpt should be disallowed pursuant to Fed. R. Evid. 401, 402, 403, 602.

Riddle, 75:02-05 – Riddle testifies that Dynamic lacks documentation showing HMMA as a client contact, which is accurate since HMMA was never a Dynamic client, and that Dynamic lacks documentation that Williams was Dynamic's client contact, which is not accurate. As a whole, this is confusing as Riddle admits that she Dynamic does have records that identify HEA as Dynamic's client and Williams as HEA's client contact. (Riddle, 139:19-21, 193:6-197:14, PX-24 and HMMA ex. 2). Thus this excerpt should be disallowed pursuant to Fed. R. Evid. 401, 402, 403, 602.

Riddle, 94:17-23– Riddle testifies that "My understanding is…," which is another way of saying that she is relying on hearsay to draw mistaken conclusions of no probative value, specifically that HMMA was in anyway responsible for any sort of anti-dreadlock policy. The evidence is crystal clear that HEA alone was responsible for the decision to apply a policy prohibiting dreadlocks against Plaintiff. Riddle, 189:7-192:2, PX-38 Thus this excerpt should be disallowed pursuant to Fed. R. Evid. 401, 402, 403, 602, and 802.

---

[1] In her intake questionnaire at the EEOC, Plaintiff identified Williams as an employee of AMCO, the prior entity name of HEA.

Riddle, 121:01-08 – Riddle testifies that Dynamic's position statement identifies a grooming standard as coming from HMMA. This is incorrect as the policy came from HEA. Riddle admitted she had no personal knowledge on which to base this assumption. Riddle, 189:7-192:2, PX-38. Thus this excerpt should be disallowed pursuant to Fed. R. Evid. 401, 402, 403, 602.

Riddle, 139:08-13 – Riddle testifies Dynamic was to provide security guard services at HMMA and other services "as required by the client." Based on prior misstatements by Ms. Riddle, this could lead to conclusion that HMMA was Dynamic's client. Thus this excerpt should be disallowed pursuant to Fed. R. Evid. 401, 402, 403.

Riddle, 141:03-08 – Riddle testifies generally that "HMMA or the client" sets the hours for Dynamic Security at HMMA in response to a specific question about who set the hours for Dynamic Security employees assigned to the HMMA facility. Riddle's answer is arguably non-responsive as her invocation of "the client" and "their facility" suggests she is generalizing a response. Also, based on prior misstatements by Ms. Riddle, this could lead to conclusion that HMMA was Dynamic's client. Thus this excerpt should be disallowed pursuant to Fed. R. Evid. 401, 402, 403.

Riddle, 204:18-205:19 – Riddle testifies that "I did not know that Cassandra Williams was not an MMA," though she admits she was mistaken and had no basis to conclude that Williams was HMMA's employee. The concluding part of this excerpt provides that Riddle's assumption was based on always seeing Williams at HMMA (the same could be said of Dynamic's own employees, of course) and ambiguous recollections of what branding Williams' shirt had. Plaintiff hopes to draw from this testimony that it was reasonable to conclude that Williams was an HMMA employee or acting on HMMA's behalf. But given Riddle's corporate

responsibilities and distance from HMMA, she wasn't representative. What's important is that Williams, Robinson, and Plaintiff were not confused about Williams' employment. Thus this excerpt should be disallowed pursuant to Fed. R. Evid. 401, 402, 403, 602.

      B.      <u>Objections to Plaintiff's Deposition Designations from Sherry Spires' Deposition</u>

Spires, 17:11-18:21 – Spires testifies in a way that could be interpreted as suggesting that HMMA ("Hyundai") had a hair standard that applied to Plaintiff. This is incorrect as the policy came from HEA. Spires admitted she had no personal knowledge on which to base this assumption. Spires, 78:5-79:7, 79:14-18, PX-38. Thus this excerpt should be disallowed pursuant to Fed. R. Evid. 401, 402, 403, 602.

      C.      <u>Objections to Plaintiff's Deposition Designations from Robert Burns' Deposition</u>

Burns, 66:19-67:02 – HEA's potential liability to HMMA is not a subject of Key's suit and not probative to any claim she has and this section should be excluded pursuant to Fed. R. Evid. 401, 402. Further, that a party may not be directly required to pay damages against it is not only not probative to liability but may be prejudicial to the covered party and thus this should be excluded as well under Fed. R. Evid. 403 and consistent with Fed. R. Evid. 411.

Burns, 81:19-82:11, 83:08-84:12, 85:07-85:14 – Whether or not HEA has employment practices liability insurance, or whether HMMA continually enforced the contractual requirement that it so carry that insurance, is not a subject of Key's suit and not probative to any claim she has and this section should be excluded pursuant to Fed. R. Evid. 401, 402. Further, that a party may have insurance coverage is not only not probative to liability but may be prejudicial to the covered party and thus this should be excluded as well under Fed. R. Evid. 403 and 411.

Burns, 89:02-89:04 – Burns' knowledge of Executive Orders that don't apply to HMMA has no relevance to Plaintiff's claims. Thus this excerpt should be disallowed pursuant to Fed. R. Evid. 401, 402.

Burns, 93:06-93:20 – The questioning calls for speculation and was previously answered by the witness. Thus this excerpt should be disallowed pursuant to Fed. R. Evid. 401, 402.

Burns, 174:12-175:04 – The number of contractors or contractors and their employees is irrelevant to Plaintiff's claims. Thus this excerpt should be disallowed pursuant to Fed. R. Evid. 401, 402.

Burns, 191:13-17, 191:20-193:19, 194:11-194:23, 196:07-198:14 – The lengthy description of the measures HMMA takes to elevate its EEO policy is not relevant to the claims of Plaintiff, who was not an HMMA employee and never interacted with any HMMA employee. Thus this excerpt should be disallowed pursuant to Fed. R. Evid. 401, 402.

Burns, 198:15-199:13, 199:18-20, 201:18-202:6, 202:09-202:20, 220:01-221:01, 221:14-225:10 – The existence of employment complaints by employees is irrelevant to Plaintiff's claims. Even more circumstantially-related me-too evidence is routinely rejected on grounds of irrelevance, prejudice, and the invitation to distracting mini-trials on these unrelated issues. Thus these excerpts should be disallowed pursuant to Fed. R. Evid. 401, 402, 403, and 404(b). *See Jamar v. Jacobs Technology, Inc.*, 2012 WL 4815532, *4-5 (N.D. Ala. Oct. 4, 2012) *Ulysse v. Waste Management Inc. of Florida*, No. 11-CV-80723, 2013 WL 12177855, *1 (S.D. Fla. Nov. 4, 2013) (excluding witness testimony as to their own alleged discrimination because it "would unfairly prejudice the jury and [it was] not relevant as it fails to prove or disprove a material fact as to Plaintiff's own claim"); *Davis v. Dunn Const. Co., Inc.,* 872 F. Supp. 1291, 1318 (N.D. Ala. 2012) (excluding "me too" evidence when incidents involved different decisionmakers,

dissimilar facts and were not close enough in time to the plaintiff's alleged discrimination); *Johnson v. Ala. Comm. Coll. Sys.*, 2011 WL 507877, *1 (M.D. Ala.) (Albritton, J.); *Linn v. ST Mobile Aerospace Engineering, Inc.*, 2008 WL 2945558 at *6, n.23 (S.D. Ala.) (complaints about different supervisors by employees in different circumstances was not admissible, and court wanted to avoid "mini-trial" on other employees' allegations); *Davis v. Int'l Paper Co.*, 997 F.Supp.2d 1225, 1243 (M.D. Ala. 2014) (Watkins, C.J.) (evidence of previous lawsuits about discriminatory failures to promote to same position were not admissible because previous failures to promote involved different decisionmakers and decisions made a number of years earlier); *Denney v. City of Albany*, 247 F.3d 1172, 1189-90 (11th Cir. 2001) ("courts are reluctant to consider 'prior bad acts' in this context where those acts do not relate directly to the plaintiffs.").

Burns, 261:11-262:05, 262:11-264:11, 264:14-20, 264:23-265:06, 265:09-265:12, 265:15, 265:18-266:03, 266:06-267:21, 267:23-268:09, 299:08-301:04 – These excerpts concern and depend on correspondence with the EEOC regarding the EEOC's errant determination against HMMA. HMMA objects to these excerpts because the EEOC's whole investigation against it was untimely, the product of bias, and bears markers of untrustworthiness, including the lack of any identifiable evidence or witness supporting the EEOC's conclusion that HMMA played any role in Plaintiff's employment; the EEOC assisting and investigating Plaintiff's Charge against Dynamic only within the statutory charge-filing period, which is an apparent decision that HMMA was not a valid employer; the EEOC then assisting Plaintiff in filing an out of date Charge against HMMA even as it investigated her timely Charge against Dynamic; the inherent contradiction in finding no cause to find Dynamic—her direct employer—discriminated against Plaintiff; the EEOC's withholding of the Charge Detail Inquiry summary pages in

response to HMMA's FOIA request, which the EEOC still has not provided to HMMA under verification; the EEOC's investigator e-mailing Plaintiff, "Again, I am sorry that we can't force [HMMA] to pay up or engage in settlement negotiations with us, but with the cause finding, if you want to pursue this on your own, you will have no problem getting an attorney to take the charge for you! 😊"; and the EEOC's failure to include this biased correspondence in its investigative file. *Barfield v. Orange Cnty.*, 911 F.2d 644, 649-650 (11th Cir. 1990) (EEOC determinations should not be admitted where they arise from "circumstances indicat[ing a] lack of trustworthiness.") (citing, *inter alia*, *McClure v. Mexia Indep. Sch. Dist.*, 750 F.2d 396, 400 (5th Cir. 1985) and Fed. R. Evid. 803(8)(C)). Further, HMMA has sought to depose the EEOC's investigators to develop rebuttal information concerning the lack of merit of this investigation. HMMA's request is pending in the Northern District of Alabama, 2:22-cv-00505-MHH. Finally, HMMA objects that the admission of EEOC determinations intrudes on the province of the jury to reach their own factual determinations, which should be avoided in general, but especially where there are significant concerns regarding the quality of the investigation and the impartiality of the investigators. Accordingly, these excerpts should be disallowed pursuant to Fed. R. Evid. 401, 402, 403, and 404(b).

    D.    <u>Objections to Plaintiff's Deposition Designations from Cassandra Williams' Deposition</u>

Williams, 45:13-46:04 – the questioning is misleading in suggesting that Williams had an ongoing obligation to comply with her interpretation of an unwritten provision of a prior HMMA policy. Thus this excerpt should be excluded as likely to confuse the jury. Fed. R. Evid. 403.

Williams, 52:05-09 – Williams admits she has misspoken that HEA is a subsidiary of HMMA (88:3-18, also cited by Plaintiff). It is obvious that HEA is not a subsidiary of HMMA

and Plaintiff has not pleaded the same. It would be prejudicial and confusing to the jury to admit an obviously false statement. Thus this excerpt should be disallowed pursuant to Fed. R. Evid. 401, 402, 403.

Williams, 111:02-08 – The question calls for speculation outside of the witness' personal knowledge. Fed. R. Evid. 602.

      E.      <u>Objections to Plaintiff's Deposition Designations from Ray Cureton's Deposition</u>

Cureton, 16:15-17:18 – The questions call for speculation concerning a document that the deponent did not author (and is not answering for in a 30(b)(6) capacity) and is thus inadmissible speculation and hearsay pursuant to Fed. R. Evid. 602, 802.

Cureton, 31:03-31:14 – Cureton's testimony is incorrect and not based on his personal knowledge (Cureton, 148:14-149:1), and should not be admitted pursuant to Fed. R. Evid. 602. Admitting testimony that has been fully recanted and shown to be without foundation should be excluded to avoid confusion. Fed. R. Evid. 403.

Cureton, 55:01-02 – Cureton inaccurately states that "HMMA did not want her on the site." Cureton subsequently testified that only Williams requested Plaintiff's removal (Cureton, 148:6-9), and that any reference he made to HMMA relative to Key's employment at Dynamic was a result of his mistaken belief that HMMA employed Williams (Cureton, 149:14-19), and that his misunderstanding was not the result of any representation by Williams or HMMA (Cureton, 150:8-17) and that the existence of HEA was "as plain as the noses on our face" (Cureton, 148:14-23). Admitting testimony that has been fully recanted and shown to be without foundation should be excluded to avoid confusion. Fed. R. Evid. 403.

Cureton, 58:11-15 – Cureton inaccurately states that "Hyundai" and Plaintiff were not happy with each other. As Cureton is neither HMMA, HEA, nor Plaintiff, this was outside of his

personal knowledge and this should not be admitted pursuant to Fed. R. Evid. 602. Further, based on Cureton's testimony that all actions he attributed to "Hyundai" were those of Ms. Williams (Cureton, 149:14-19), this false statement should also be excluded to avoid confusion. Fed. R. Evid. 403.

      Cureton, 75:14-23 – Question and response concern the intention of a third party, and thus the question and response are speculative in violation of Fed. R. Evid. 602.

      Cureton, 78:01-03 – The questioning attorney testifies.

      Cureton, 78:08-09 – Cureton inaccurately states that assignment decisions are ultimately made by himself or HMMA. As Cureton later testified that all actions he attributed to HMMA were those of Ms. Williams (Cureton, 149:14-19), this false statement should also be excluded to avoid confusion. Fed. R. Evid. 403.

      Cureton, 84:14-85:21 – Cureton is asked to speculate as to the intention of a third party (who was also deposed), and thus the question and response are speculative in violation of Fed. R. Evid. 602.

      Cureton, 91:22-92:03 – Cureton inaccurately states that Plaintiff's assignment was ended because "Hyundai" didn't want her on the site due to her hair. Based on Cureton's testimony that all actions he attributed to "Hyundai" were those of Ms. Williams (Cureton, 149:14-19), this false statement should also be excluded to avoid confusion. Fed. R. Evid. 403.

      Cureton, 96:18-21 – Cureton's testimony is hearsay and inadmissible under Fed. R. Evid. 802. Further, based on Cureton's testimony that all actions he attributed to "Hyundai" were those of Ms. Williams (Cureton, 149:14-19), this false statement should also be excluded to avoid confusion. Fed. R. Evid. 403.

Cureton, 104:04-104:22 – Cureton is asked to speculate on the intention of Williams, who was employed by a third party (and who was later deposed) based on her email. Thus the question relies on hearsay and calls for speculation and repetition of the hearsay, in violation of Fed. R. Evid. 802 and 602.

Cureton, 113:18-114:02 – Cureton is describing a statement he prepared and Plaintiff's counsel reads portions of his statement reflecting that Plaintiff allegedly told Cureton she intended to file an EEOC Charge against HMMA. While Cureton's statement may be admissible as a business record against Dynamic, it is hearsay as to HMMA. And, Plaintiff's alleged statement to Cureton is thus hearsay-within-hearsay and cannot be used to argue that she desired to file a charge against HMMA. Cureton's recollection of Plaintiff's intent as to HMMA is especially suspect given his ignorance that Williams was actually HEA's employee and all actions that he attributed to HMMA relative to Plaintiff prior to learning this were actually Ms. Williams' actions. (Cureton, 149:14-19). Accordingly, this portion should be excluded pursuant to Fed. R. Evid. 802.

Cureton, 159:02-159:16 – Plaintiff's counsel's question is argumentative and calls for speculation as whether a reasonable person could conclude there was a difference between HEA and HMMA. However, as Plaintiff clearly identified that she knew Williams was the employee of AMCO (HEA's prior operating name) in her EEOC intake questionnaire, then there is no cause for speculation and no factual question to resolve. Accordingly, this portion should be excluded based on Fed. R. Evid. 401, 402, and 602.

## II. OBJECTIONS TO DYNAMIC SECURITY, INC.'S DEPOSITION DESIGNATIONS

HMMA objects to Dynamic Security's identification of deposition testimony of Sherry Spires (who served as one of its 30(b)(6) deponents) and Ray Cureton. Dynamic has not shown

that it can meet the requirements of Fed. R. Civ. P. 32 to introduce the testimony of its own witnesses by deposition.

If this global objection is overruled, HMMA objects as follows:

A.  Specific Objections to Dynamic's Deposition Designations from Sherry Spires' Deposition

Spires, 17:11-18:21, 19:21-20:2, 32:12-33:23 – Spires testifies in a way that could be interpreted as suggesting that HMMA ("Hyundai") had a hair standard that applied to Plaintiff. This is incorrect as the policy came from HEA. Spires admitted she had no personal knowledge on which to base this assumption. Spires, 78:5-79:7, 79:14-18, PX-38. Thus this excerpt should be disallowed pursuant to Fed. R. Evid. 401, 402, 403, 602.

Spires, 46:2-16 – Spires testifies in a way that suggests that HMMA (whom she mistakenly believed was Dynamic's client) had requested Plaintiff's removal. This is incorrect. Spires admitted that Williams is the only person who requested Plaintiff's removal and she had no basis to say that HMMA was Dynamic's client. Spires, 79:8-13, 80:8-81:3. Thus this excerpt should be disallowed pursuant to Fed. R. Evid. 401, 402, 403, 602.

B.  Specific Objections to Dynamic's Deposition Designations from Ray Cureton's Deposition

Cureton, 17:9-17:18 – The questions call for speculation concerning a document that the deponent did not author (and is not answering for in a 30(b)(6) capacity) and is thus inadmissible speculation and hearsay pursuant to Fed. R. Evid. 602, 802.

Cureton, 19:12-14 – Cureton inaccurately or ambiguously identifies Williams as head of security for Hyundai. To the extent this could be misinterpreted to indicate Williams was an employee of HMMA, Cureton fully disavowed this and attested that neither Williams nor HMMA had provided any basis for such a conclusion. (Cureton, 149:14-19, 150:8-17).

Admitting testimony that has been fully recanted and shown to be without foundation should be excluded to avoid confusion. Fed. R. Evid. 403.

Cureton, 52:22-53:19 – Cureton identifies actions Williams took in employee selection for Dynamic and ambiguously attributes them to HMMA. Cureton later testified that Williams was his sole client contact and that any action he may have attributed to HMMA was Williams'. (Cureton, 149:14-19, 150:18-20). Admitting testimony that has been fully recanted and shown to be without foundation should be excluded to avoid confusion. Fed. R. Evid. 403.

Cureton, 54:2-23, 92:1-3 – Cureton identifies Williams as enforcing a "Hyundai" grooming policy which could be attributed to HMMA. Cureton later testified that he had no evidence that HMMA had any appearance standard applicable to Plaintiff and that any time he referred to HMMA with respect to Plaintiff's employment, he was referring to Williams, who was not held out as anything other than an HEA employee. (Cureton, 149:2-6, 149:14-19, 150:8-17). Admitting testimony that has been fully recanted and shown to be without foundation should be excluded to avoid confusion. Fed. R. Evid. 403.

Cureton, 55:1-13, 62:6-63:4, 82:2-9, 92:1-3 – Cureton inaccurately states that Plaintiff was removed at HMMA's or the client's request (or similar language). Cureton subsequently testified that only Williams requested Plaintiff's removal (Cureton, 148:6-9), and that any reference he made to HMMA relative to Key's employment at Dynamic was a result of his mistaken belief that HMMA employed Williams (Cureton, 149:14-19), and that his misunderstanding was not the result of any representation by Williams or HMMA (Cureton, 150:8-17) and that the existence of HEA was "as plain as the noses on our face" (Cureton, 148:14-23). Admitting testimony that has been fully recanted and shown to be without foundation should be excluded to avoid confusion. Fed. R. Evid. 403.

Cureton, 153:10-154:4 – While not strictly objectionable, this designation discusses the actions of "the client." At this point in Cureton's deposition, the client has been clearly identified as HEA, but this segment leaves it ambiguous, inviting confusion such that further context would be required.

### C.   Objections to Dynamic's Deposition Designations from Plaintiff's Deposition

Plaintiff 63:24-64:14 – Hearsay, inadmissible under Fed. R. Evid. 802. Not only has this been refuted by Robinson under oath, but it is also not admissible to HMMA (or likely HEA) under any hearsay exception: it is neither the statement of a party opponent (Robinson not being an employee or agent of HMMA), nor a statement of Robinson's then-state of mind (since Key contends she is describing the state of minds of others). Further, since Key claimed that Robinson said this statement appeared in "little memos," this hearsay and alleged statement is the product of an additional one-to-two levels of also-inadmissible hearsay consisting of Robinson paraphrasing some other alleged writing, or what someone else allegedly told her was in some other alleged writing or statement, and after thorough discovery, no such other witness, or memo, or its author has been identified. This alleged statement, assigned to and refuted by Robinson, also lacks probative value under Fed. R. Evid. 401, since there is no indication that "the Koreans" is synonymous with HMMA (or HEA), as opposed to any other Korean population or corporation (or those perceived to be Korean), as Plaintiff admits at 64:15-17.

Plaintiff, 67:8-10 – Should the above portion be excluded, then this portion of Plaintiff's testimony is without meaning.

Plaintiff, 75:1-15 – Plaintiff lacks personal knowledge to assert that Dynamic's and HEA's employees were carrying out HMMA's policies or under HMMA's control and so this may not be admitted for that purpose, Fed. R. Evid. 802, 602.

Plaintiff, 77:23-25, 78:9-79:7 – This is hearsay concerning what Robinson, a Dynamic employee, allegedly told Plaintiff regarding unidentified "Koreans." As such, it is inadmissible hearsay, Fed. R. Evid. 802 with respect to HMMA and also not relevant under Fed. R. Evid. 401 since the identity of the "Koreans" is not established.

    Respectfully Submitted,

    s/ Whitney R. Brown
    David J. Middlebrooks ASB- 8553-D58D
    Whitney R. Brown ASB-4431-H71B

OF COUNSEL:
LEHR MIDDLEBROOKS VREELAND & THOMPSON, P.C.
P.O. Box 11945
Birmingham, Alabama 35202-1945
(205) 326-3002
Fax: (205) 326-3008
Email: dmiddlebrooks@lerhmiddlebrooks.com
      wbrown@lehrmiddlebrooks.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 9, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

    Heather Newsom Leonard, Esq.
    Heather Leonard, P.C.
    2105 Devereux Circle, Suite 1111
    Birmingham, AL 35243

    Wesley C. Redmond, Esq.
    Susan W. Bullock, Esq.
    FordHarrison LLP
    420 20th Street North, Suite 2560
    Birmingham, AL 35203

Leslie Palmer, Esq.
Palmer Law, LLC
104 23rd Street South, Suite 100
Birmingham, AL 35233

T. Matthew Miller, Esq.
Cortlin Bond, Esq.
Sarahanne Vaughan, Esq.
Bradley Arant Boult Cummings LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203

s/ Whitney R. Brown
OF COUNSEL

757278.docx