# *EXHIBIT A*

# *Dynamic's Objections to Deposition Designations for Kristal Riddle*

Kristal Riddle                                                    8/19/2022
                                                                        53

| | |
|---|---|
| 1 | retaliation, or pregnancy? |
| 2 | A.     I'm not sure what you're asking. |
| 3 | Q.     So Exhibit 52 contains, I think, four |
| 4 | separate headings within the document.  Other |
| 5 | than those four policies, does Dynamic Security |
| 6 | have other policies and procedures that would |
| 7 | apply to harassment, retaliation, pregnancy, or |
| 8 | other EEOC-type issues, discrimination? |
| 9 | A.     No.  These are our core policies |
| 10 | regarding issue. |
| 11 | Q.     You said these are the core policies. |
| 12 | I just want to be clear, are these the only |
| 13 | policies? |
| 14 | A.     They are the only policies. |
| 15 | Q.     Okay.  I just want to make sure we're |
| 16 | not going to uncover some other policies |
| 17 | somewhere that we should have asked for.  Okay. |
| 18 | I'll take this one back because we're going to |
| 19 | go back to it later. |
| 20 |         Okay.  Can you tell me, Mrs. Riddle |
| 21 | -- can you tell me what do you understand to be |
| 22 | discrimination?  What type of conduct would you |
| 23 | define as discrimination? |

1          MS. PALMER:  Actually, jury
2     determines that which would be people.
3          MR. MILLER:  Well, the Court can
4     determine --
5          MS. PALMER:  Right.  And --
6          MR. MILLER:  Anyway, that's my
7     objection.
8          MS. PALMER:  Right.  Well, we're
9     operating under the usual stipulations here, so
10    speaking objections should not be just object
11    to forms.
12         MR. MILLER:  I just wanted you to
13    know why I was objecting so you would have the
14    chance to rephrase it.  I was just trying to be
15    kind.  So I won't do that anymore.  I'll just
16    object and let y'all figure it out.
17         MS. PALMER:  Yeah.
18      Q.   Mrs. Riddle, let me rephrase.  As the
19    chief legal officer, is it your job to deal
20    with complaints related to discrimination?
21      A.   It is.
22      Q.   And in dealing with those complaints,
23    how would you, as the chief legal officer,

1  determine whether discrimination had occurred?
2           MR. REDMOND:  Object to form.
3       A.   I rely on the reports that I'm
4  provided.  I rely upon the -- the statements
5  that I'm given from the person who's making the
6  complaint.  I rely on the reports from
7  investigation that occurred on the ground by
8  our local branch management.  I rely on witness
9  statements if there are any.  I take -- that's
10 what I take into account.
11      Q.   And in relying on those reports and
12 witness statements, do you also look at other
13 documents or e-mails or communications as they
14 may relate to the events in question?
15      A.   If they're relevant.
16      Q.   And with regard to -- what did I ask,
17 discrimination -- with regard to retaliation as
18 the chief legal affairs -- no chief legal
19 officer, how would you make a determination as
20 to whether someone's complaint constituted
21 retaliation?
22      A.   In much the same manner.
23      Q.   And with respect to Ms. Key in 2017,

1  fearful of retaliation for making a report
2  pursuant to this policy."
3     Q.   Okay.  And would there be any
4  additional training other than what you've
5  already mentioned related to retaliation?
6     A.   No.
7     Q.   Section B there references a written
8  report to the vice president and the president.
9  Is that the same report we've already talked
10 about that Dynamic doesn't utilize anymore?
11    A.   It is.
12    Q.   All right.  You can dump that.  All
13 right.
14         Can you tell me what happened with
15 Davita Key's assignment at Hyundai?
16         MR. REDMOND:  Object to form.
17    A.   My understanding is that, during the
18 interview process when Davita met with
19 Ms. Williams, she was told that her hairstyle
20 was not permitted by the rules and by the
21 policies of HMMA and that she would have to
22 have something done with it because she could
23 not wear dreadlocks on the facility property.

         There was a discussion about what she could do, how this could be taken care of. There was -- to my understanding, there was a discussion, there was a picture that was looked at, and when Ms. Key came to work at the facility on July 31st, she had not had her hair redone as she had been directed to by Ms. Williams. She was released from the day early and told to do something about the hair because she couldn't be on the facility with her hair in dreadlocks.

         She returned on August 1st wearing a hat, and I don't really know beyond that other than what's been in the reports. To our knowledge, there was a confrontation about the hat, about the hair. She was once again told she had to remove the dreadlocks or she had to find an alternate hairstyle, and she stated that she wanted to file a complaint. And she was directed to go to the Montgomery office to file a complaint with -- and present it to Ray Cureton.

    Q.   And are you aware of whether Ms. Key

1          MS. BROWN:  Object to the form.
2      Q.   Who at Dynamic Security knew that
3  Ms. Key filed this complaint on August 1st,
4  2017?
5          MR. REDMOND:  Same objection.
6      Q.   You can answer.
7      A.   Ray Cureton was aware that she filed
8  the complaint.  Nicole Scavella was in the
9  office at the time and would have been aware.
10 And then Sherry Spiers was briefed by Ray
11 Cureton regarding the making of the complaint.
12     Q.   Okay.  At what point did you become
13 -- let me ask -- did you become aware of the
14 complaint?
15     A.   I became aware of the complaint with
16 the receipt of EEOC Form 5 on August 11th.
17     Q.   What is Dynamic Security's policy
18 with regard to receiving and reporting
19 complaints of discrimination?
20     A.   That once a report of discrimination
21 is received, it must be pushed up the chain.
22 If it's not made to the local manager, it must
23 be brought to the local manager.  The local

1  of her original charge?
2          MS. PALMER:  Other than in the FOIA
3  file, no.  And in the -- in the right to sue.
4  It was not produced as a separate, this was
5  received on this day, document.
6          MR. REDMOND:  Okay.
7          MS. PALMER:  So if you can clear that
8  up.
9          MR. REDMOND:  I've got a copy of her
10 charge.
11     Q.   Okay.  So when Ray scanned in the
12 document and e-mailed it to you, are you aware
13 of whether that e-mail was on the same date
14 that Ray received it?
15     A.   Yes, it was.
16     Q.   And you believe that date to be
17 August 11th, 2017?
18     A.   I do.
19     Q.   Okay.  And do you recall preparing a
20 position statement in response to that
21 complaint?
22     A.   I do.
23     Q.   Okay.  Let me show you what's been

```
 1   marked as Exhibit 11.
 2              (Whereupon, Plaintiff's Exhibit 11
 3              was marked for identification and
 4              copy of same is attached hereto.)
 5        Q.    If you'll look over that document,
 6   and tell me if that is in fact your position
 7   statement.
 8        A.    This is the position statement I
 9   admitted to EEOC.
10        Q.    Okay.  And just for clarity, that's
11   your signature on the last page which is
12   HEA056?
13        A.    That is my signature.
14        Q.    Okay.  And what --
15              MR. REDMOND:  This may just be a copy
16   issue, but my copy does not have an HEA number
17   on it.  I don't know if that just happened when
18   we copied that offer.  Yours -- does yours?
19              MS. PALMER:  Uh-huh.
20              MR. REDMOND:  Okay.  Maybe when we
21   copied it at our office or something, it just
22   didn't print or something.
23              MS. PALMER:  Yeah.
```

```
 1              MR. MILLER:  Object to form.
 2       A.     I see that he -- what I see is him
 3  reaching out to Sherry to ask for advice on
 4  whether -- on how he should proceed.
 5       Q.     And would not placing Ms. Key be
 6  considered a form of retaliation?
 7              MS. BROWN:  Object to the form.
 8              MR. REDMOND:  Object to the form.
 9              MR. MILLER:  Object to the form.
10       Q.     In your capacity as the individual
11  who determines whether Dynamic Security has
12  retaliated against an individual in your
13  investigations, is it your understanding that
14  not placing her because she made a complaint
15  would be retaliation?
16              MR. REDMOND:  Object to form.
17       A.     That would be retaliation.
18       Q.     And was Mr. Cureton provided any
19  refresher training at this point about
20  retaliation and appropriate or inappropriate
21  conduct?
22       A.     He was provided further training.  I
23  believe that would have been at the December
```

Kristal Riddle                                              8/19/2022
                                                                 171

1  e-mail, was she still the operation -- what
2  would you call it, a project manager at
3  Hyundai?
4      A.   She was.
5      Q.   What evidence do you have that
6  Ms. Key did not file her lawsuit within 90 days
7  of receiving the right to sue?
8      A.   That the EEOC mailed the -- mailed
9  the response on March 1st, roughly.  It's dated
10 28th, 1st.  And the lawsuit was not filed until
11 October of 2019.
12     Q.   What evidence do you have that the
13 EEOC mailed the notice to Ms. Key?
14     A.   I have -- I would have no knowledge
15 that they did.
16     Q.   Ms. Key says that she did not receive
17 a copy of the right to sue until it was filed
18 in this lawsuit.  Do you have any evidence to
19 dispute that?
20     A.   No.
21     Q.   Do you have any individuals to
22 identify as having information in this lawsuit
23 other than those individuals already identified

Kristal Riddle                                           8/19/2022
                                                              173

```
 1       Q.    Okay.  How many EEOC complaints does
 2   Dynamic Security receive?
 3             MR. REDMOND:  Ever?  Within a year?
 4       Q.    Like for a large portion of your job
 5   to be responding to the EEOC, does Dynamic
 6   Security receive a lot of EEOC charges?
 7       A.    I'm not really sure what a large
 8   number are.  It's cyclical.  There are times
 9   when we will receive two charges within two
10   weeks of each other.  There are times when I've
11   gone five or six months without having
12   something.  I just -- I really don't know how
13   to calculate that.
14       Q.    Could you give me an average, like
15   over a year?
16       A.    I think it would be fair to say that
17   we probably get an average of eight -- eight to
18   ten a year.
19       Q.    And since 2017 -- from 2017 to
20   current, how many of that -- can you give me a
21   percentage or a number of how many of those
22   would be claims for retaliation?
23       A.    As a percentage, maybe five percent.
```