# *EXHIBIT B*

# *Dynamic's Objections to Deposition Designations for Sherry Spires*

1   Q.   Okay. And what would you consider
2   appropriately in the handling of a complaint?
3   A.   I'm trying to remember.
4        THE WITNESS: Is this the first one?
5        MR. REDMOND: I'm going to object to
6   the form of that.
7   Q.   You can answer.
8        MR. REDMOND: Oh, yeah. I'm sorry.
9   I should have told you.
10  A.   Oh, okay.
11       MR. REDMOND: You can still answer.
12  There's no judge here to rule so...
13  A.   Repeat your question again, please.
14  Q.   You said that --
15       MS. PALMER: Can you reread it?
16       THE COURT REPORTER: "And what would
17  you consider appropriately in the handling of a
18  complaint?"
19       Do I need to read before that?
20       MS. PALMER: No. That's okay.
21  A.   That we were abiding by our policies
22  and procedures based on what her complaint was.
23  Q.   Okay. And what determination did you

```
 1  line with what Hyundai's policy was.
 2       Q.    Okay.  And what did you do to make
 3  sure that Dynamic was following Hyundai's
 4  policy?
 5       A.    What did I do --
 6             MS. BROWN:  Object to the form.
 7       A.    -- I'm not sure I did exactly
 8  anything because at some point during that time
 9  frame, there was an e-mail from Cassandra
10  Williams and/or Gloria Robinson that said they
11  wanted Ms. Key removed from that job site.
12       Q.    Okay.  So did Dynamic then remove her
13  in response to that e-mail?
14       A.    Yes.
15       Q.    Did you direct Ray Cureton, or did
16  you personally request a copy of the Hyundai
17  policy that Ms. Key was alleged to have
18  violated?
19             MS. BROWN:  Object to form.
20             MR. MILLER:  Object to form.
21       A.    Not that I recall.
22       Q.    Who else would have been aware of
23  Ms. Key's complaint contained in Exhibit 29?
```

```
 1            So this document, which is Exhibit
 2   Number 39, is Bates labeled 78, 79, 80 and 81.
 3   Do you recognize this document?
 4       A.   Yes.
 5       Q.   Okay.  And what do you recognize it
 6   to be?
 7       A.   It's the e-mail that originated from
 8   Gloria Robinson, who was the account manager.
 9   Dynamic Security's account manager at Hyundai.
10   It was sent to Chris Hargrove with Dynamic, Ray
11   Cureton with Dynamic, and Cassandra Williams
12   with Hyundai.
13       Q.   Okay.  And do you see there -- look
14   for me in the text of this e-mail on the
15   bottom.  Let's look at the second paragraph.
16   And, like, a sentence in it says, "I take issue
17   with her working in the mail room"; do you see
18   that?
19       A.   Yes.
20       Q.   If you'll read for me that -- just
21   read it to yourself, the sentence before that
22   and then that sentence, and let me know when
23   you've completed it.
```

1     A.    Okay.
2     Q.    What issue would there be with
3  Ms. Williams working in the -- or Ms. Key
4  working in the mail room?
5           MR. REDMOND:  Object to form.
6     A.    It appears she was concerned because
7  Ms. Key had made it known that she was
8  pregnant, and they were not allowing lifting
9  more than 50 pounds.  Oh, and -- yeah.  And
10 then the next sentence, Ms. Key had provided
11 the doctor's note, which is attached to this
12 e-mail, that she could return to work with no
13 restrictions.
14    Q.    So if she could return without
15 restrictions, what would the concern be about
16 her working in the mail room?
17          MR. REDMOND:  Same objection.
18          MS. BROWN:  Object to the form.
19          MR. MILLER:  Object to the form.
20    A.    Well, I can't speak for Gloria
21 Robinson, but, you know, with me, you've got
22 return to -- did the doctor sign this work
23 limitations with no restrictions, was the

```
 1   doctor -- did he or she know what her job
 2   duties were going to be?  Which might have
 3   involved heavy lifting.
 4        Q.    Did you ask Ms. Key what her job duty
 5   -- if she had explained to her doctors what her
 6   job duties may be?
 7        A.    I don't think I ever had a
 8   conversation with Ms. Key.
 9        Q.    Do you know if Gloria asked her?
10        A.    I don't know.
11        Q.    Did you instruct Ray to ask her if
12   she had told her doctor?
13        A.    I don't remember.
14        Q.    If you'll look for me, the last
15   paragraph on that page.  The last sentence or
16   the second to the last sentence where it says,
17   "She was also given the option to wear a hat";
18   do you see that?
19        A.    Yes.
20        Q.    So, do you understand that Gloria
21   Robinson, in her capacity as the project
22   manager at Hyundai, was telling Davita Key that
23   she could wear a hat to the site?
```

```
 1         A.    Yes.
 2         Q.    Okay.  And this is an e-mail from Ray
 3    Curaton to you; correct?
 4         A.    Yes.
 5         Q.    Okay.  So at the -- one of his last
 6    sentences there, he says, talking about
 7    reassigning her, "But I don't think that is
 8    advisable at this time.  Especially if she is
 9    to carry through with her stated, quote,
10    official complaint, end quote, of
11    discrimination against Hyundai, Ms. Williams
12    and Ms. Robinson"; do you see that?
13         A.    I do.
14         Q.    Okay.  So does that statement by
15    Mr. Cureton that he doesn't think it's
16    advisable to reassign her raise any issue with
17    you?
18         A.    That was his opinion.
19         Q.    Okay.  What action did you take in
20    response to this e-mail?
21         A.    To offer her another job site.
22         Q.    You told him to offer her another job
23    site?
```

1    A.    Yes.

2    Q.    Okay.  What did you do to ensure that
3 he did that?

4    A.    It's in an e-mail from me to him
5 to let's make sure we offer her another job
6 site.

7    Q.    Okay.  Did you instruct him that it
8 was discriminatory to not place her at another
9 job site?

10        MR. MILLER:  Object to the form.

11   A.    I don't think I would have used those
12 words.  I would have just put in the e-mail,
13 let's make sure we offer her other job sites.

14   Q.    Do you, in your functions as human
15 resources, see not placing Ms. Key because
16 she's made a complaint as discriminatory
17 conduct?

18        MR. REDMOND:  Object to the form.
19        MS. BROWN:  Object to the form.
20        MR. MILLER:  Object to the form.

21   A.    I'm not understanding the question,
22 because we did offer her.  So we didn't
23 discriminate against her and not offer her any

```
 1   job sites.  We did.
 2        Q.    Okay.  But just looking to
 3   Mr. Cureton's statement here that he doesn't
 4   think it's advisable to place her especially if
 5   she's going to carry through with the stated
 6   official complaint.  Do you see that as
 7   discriminatory?
 8              MR. MILLER:  Object to form.
 9              MS. BROWN:  Object to form.
10              MR. REDMOND:  Same object to form.
11        A.    Well, discriminatory, I would say,
12   yes, just because she has made -- she has made
13   a complaint.  But that's about -- which was
14   about her hair and her pregnancy.
15        Q.    Did you instruct Mr. Cureton that
16   that statement was discriminatory?
17        A.    I don't remember.
18              MR. REDMOND:  Object to the form.
19              MR. MILLER:  Object to the form.
20        Q.    Did -- are you aware of whether Mr.
21   Cureton received any sort of refresher training
22   or comment about his statement that it wasn't
23   advisable to place her?
```

Sherry Spiers	8/19/2022
39

1	A.	I don't remember.
2	Q.	Is there any document that you can
3	think of that would refresh your memory as to
4	whether Mr. Cureton was advised that his
5	conduct may be discriminatory?
6	A.	I don't remember.
7	Q.	How do you know that the training
8	that you referenced earlier is effective with
9	Dynamic employees?
10	A.	I don't have anything documented to
11	show the -- to rate the effectiveness of it.
12	Q.	What type of information would you
13	look for -- if you were trying to determine if
14	your policies were effective, what would you
15	consider?
16	A.	I don't actively look for anything.
17		MS. PALMER:  Did I give you Number 39
18	already?
19		MR. REDMOND:  Yeah, I've got marked
20	Number 39.
21		MS. PALMER:  And 38.  Did I give you
22	38?  Let me see that one.
23	Q.	Okay.  This is Exhibit 38 again.  If