IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| DAVITA M. KEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:19-CV-767-ECM |
| | ) |
| HYUNDAI MOTOR MANUFACTURING, ALABAMA, LLC; HYUNDAI ENG AMERICA, INC.; and DYNAMIC SECURITY, INC. | ) |
| | ) |
| Defendants. | ) |

**EXHIBIT "A" TO**

**PLAINTIFF'S OBJECTIONS TO DYNAMIC SECURITY INC.'S DEPOSITION DESIGNATIONS**

**KRISTAL RIDDLE**

| Case | Key, Davita |
|---|---|
| Issue Code | Dynamic Designation |

| RIDDLE, KRISTAL 8/19/22 VOL 1 | | |
|---|---|---|
| 1 | 008:08 - 008:21 | 008:08<br>09<br>10<br>11<br>12<br>13<br>14<br>15<br>16<br>17<br>18<br>19<br>20<br>21 |
| 2 | 018:18 - 018:21 | 018:18    Q.    Are those meetings held generally at<br>19  the same time twice a year, or do they kind of<br>20  move around?<br>21    A.    Roughly the same time every year. |
| 3 | 052:02 - 052:10 | 052:02    Q.    When was the policy and procedure<br>03  manual created?<br>04    A.    The policy and procedure manual was<br>05  originally created in 1998 and is updated as<br>06  needed or -- and reviewed once a year and then<br>07  updated as needed.<br>08    Q.    Okay.  So the policy and procedures<br>09  manual would have been in effect in 2017?<br>10    A.    That's correct. |
| 4 | 054:01 - 054:04 | 054:01    MR. REDMOND:  I'm going to object to<br>02  the form if you're asking her for a legal<br>03  conclusion.<br>04    MS. PALMER:  Just for opinion. |
| 5 | 056:02 - 056:02 | 056:02    MR. REDMOND:  Object to form. |
| 6 | 059:06 - 059:17 | 059:06    Q.    Okay.  And I just want to clarify<br>07  because we may be talking about two different<br>08  things.  You said that you reviewed Latunya |

| | | | |
|---|---|---|---|
| | | 09 | Howell's statement, Ray Cureton -- did you say |
| | | 10 | Ray Cureton? |
| | | 11 | A.    I didn't rely on his statement as |
| | | 12 | much as -- as regards to what actually happened |
| | | 13 | in -- on that day between -- between Keys, |
| | | 14 | Robinson, and Williams, but I did take it into |
| | | 15 | account. |
| | | 16 | Q.    Okay. |
| | | 17 | A.    My primary focus were those three. |
| 7 | 061:09 - 061:11 | 061:09 | Q.    Are you aware that Ms. Williams |
| | | 10 | requested Ms. Key's removal? |
| | | 11 | A.    I am aware. |
| 8 | 061:20 - 062:02 | 061:20 | Q.    Who was Ms. Williams -- where was |
| | | 21 | Ms. Williams requesting Ms. Key be removed |
| | | 22 | from? |
| | | 23 | MR. MILLER:  Object to the form. |
| | | 062:01 | MS. BROWN:  Object to form. |
| | | 02 | A.    From Hyundai property. |
| 9 | 064:10 - 065:04 | 064:10 | Q.    How did you become aware that she was |
| | | 11 | offered any positions? |
| | | 12 | A.    By a -- by conversations with Ray |
| | | 13 | Cureton.  I believe Nicole Scavella also |
| | | 14 | affirmed that positions were offered to her. |
| | | 15 | And we have the notations that these positions |
| | | 16 | were offered to her. |
| | | 17 | Q.    Did you check with Ms. Key to see |
| | | 18 | what her position would be? |
| | | 19 | A.    No.  Ms. Key was uncommunicative. |
| | | 20 | Q.    How -- tell me what you mean by she |
| | | 21 | was uncommunicative. |
| | | 22 | A.    She was refusing contact from the |
| | | 23 | branch office. |
| | | 065:01 | Q.    Okay.  Who at the branch office tried |
| | | 02 | to contact her? |
| | | 03 | A.    My understanding is that it was Ray |
| | | 04 | Cureton. |
| 10 | 067:14 - 067:16 | 067:14 | Q.    And who would have made the |
| | | 15 | determination as to whether to hire? |
| | | 16 | A.    Gloria Robinson and Ray Cureton. |
| 11 | 090:05 - 091:12 | 090:05 | Q.    All right.  And if you'll look for me |
| | | 06 | on the third -- wait.  No, that's okay.  We're |

|    |                  |        |                                                                 |
|----|------------------|--------|-----------------------------------------------------------------|
|    |                  | 07     | done with that one.  You can pass that one to                   |
|    |                  | 08     | Wes.  Let me show you Exhibit 31.                               |
|    |                  | 09     | (Whereupon, Plaintiff's Exhibit 31                              |
|    |                  | 10     | was marked for identification and                               |
|    |                  | 11     | copy of same is attached hereto.)                               |
|    |                  | 12     | Q.   And this is listed in the top                              |
|    |                  | 13     | heading.  It's Bates number 42.  And in that                    |
|    |                  | 14     | grayed out area it says, Harassment in the                      |
|    |                  | 15     | Workplace; do you see that?                                     |
|    |                  | 16     | A.   I see that.                                                |
|    |                  | 17     | Q.   Okay.  And is this another document                        |
|    |                  | 18     | that would have been included in that hire                      |
|    |                  | 19     | packet?                                                         |
|    |                  | 20     | A.   It is.                                                     |
|    |                  | 21     | Q.   How was this harassment in the                             |
|    |                  | 22     | workplace document distributed?                                 |
|    |                  | 23     | A.   This particular document in 2017 was                       |
|    |                  | 091:01 | distributed in the hire packet.                                 |
|    |                  | 02     | Q.   And how would employees be trained on                      |
|    |                  | 03     | this harassment in the workplace?                               |
|    |                  | 04     | A.   It was also part of the eight hours                        |
|    |                  | 05     | of training that the employee would go through                  |
|    |                  | 06     | at the beginning before they were assigned to a                 |
|    |                  | 07     | shift.                                                          |
|    |                  | 08     | Q.   Okay.  That eight hours, was that                          |
|    |                  | 09     | eight hours just videos, or was there other --                  |
|    |                  | 10     | were there other things that happened in that                   |
|    |                  | 11     | eight hours?                                                    |
|    |                  | 12     | A.   It's video and interaction.                                |
| 12 | 094:16 - 094:16  | 094:16 | MR. REDMOND:  Object to form.                                   |
| 13 | 104:12 - 104:17  | 104:12 | Q.   Okay.  So is it your understanding                         |
|    |                  | 13     | that Gloria Robinson informed Ms. Key that her                  |
|    |                  | 14     | dreadlocks could be worn if they were styled?                   |
|    |                  | 15     | MR. MILLER:  Object to the form.                                |
|    |                  | 16     | A.   My understanding is that she was told                      |
|    |                  | 17     | that a style was acceptable.                                    |
| 14 | 116:08 - 116:22  | 116:08 | Q.   All right.  If you will look for me                        |
|    |                  | 09     | on Exhibit 31, the second paragraph under                       |
|    |                  | 10     | policies so -- where it begins prohibited.                      |
|    |                  | 11     | Okay.                                                           |
|    |                  | 12     | So the second sentence that, "The                               |
|    |                  | 13     | company will not tolerate harassment of any                     |

| | | | |
|---|---|---|---|
| | | 14 | kind," and then it goes on to say that, |
| | | 15 | "Employees engaging in such conduct will be |
| | | 16 | subject to appropriate disciplinary action up |
| | | 17 | to and including termination of employment." |
| | | 18 | Would Ms. Gloria Robinson's |
| | | 19 | statements, related to the medical conditions, |
| | | 20 | be included as a violation of this harassment |
| | | 21 | policy? |
| | | 22 | MR. REDMOND: Object to form. |
| 15 | 122:07 - 122:13 | 122:07 | Q. This is the dismissal and notice of |
| | | 08 | rights; do you see that? |
| | | 09 | A. I do see that. |
| | | 10 | Q. Okay. And when was this document |
| | | 11 | received by Dynamic Security? |
| | | 12 | A. This document was received |
| | | 13 | March 20th, 2019. |
| 16 | 127:16 - 127:16 | 127:16 | MR. REDMOND: Object to form. |
| 17 | 200:02 - 202:08 | 200:02 | Q. If you need Gloria Robinson's memo |
| | | 03 | back to answer this, we can get it. You may be |
| | | 04 | able to answer otherwise. |
| | | 05 | From looking at Ms. Robinson's memo, |
| | | 06 | is it correct that Cassandra Williams |
| | | 07 | participated in part of the initial interview |
| | | 08 | just in terms of expressing her opinion about |
| | | 09 | the hair -- |
| | | 10 | A. Yes. |
| | | 11 | Q. -- correct? |
| | | 12 | A. That is correct. |
| | | 13 | Q. All right. So after Gloria Robinson |
| | | 14 | finished her interview, Ms. Williams came in |
| | | 15 | and was involved in that discussion about the |
| | | 16 | hair; correct? |
| | | 17 | MS. BROWN: Object to the form. |
| | | 18 | MR. MILLER: Object to the form. |
| | | 19 | A. Yes. Ms. Williams came in after the |
| | | 20 | interview and -- |
| | | 21 | Q. Since they object, let me answer |
| | | 22 | this. And we know this is not based on your |
| | | 23 | first-hand knowledge. But based on what you've |
| | | 201:01 | seen, what was Ms. Williams' role in that |
| | | 02 | initial interview with Ms. Key that Ms. |
| | | 03 | Robinson had? |

|  |  |  |
|---|---|---|
| | 04 | MS. BROWN:  Object to the form. |
| | 05 | MR. MILLER:  Object to the form.  She |
| | 06 | said she was not in the initial interview. |
| | 07 | This is the testimony of the document. |
| | 08 | A.    The document seems to -- the document |
| | 09 | seems to indicate that the purpose of |
| | 10 | Ms. Williams coming in was to -- was to discuss |
| | 11 | the hairstyle that Ms. Key was wearing. |
| | 12 | Q.    And just so we can clarify, at what |
| | 13 | part during the discussions that day did |
| | 14 | Ms. Williams participate? |
| | 15 | MS. BROWN:  Object to the form. |
| | 16 | MR. MILLER:  Object to the form. |
| | 17 | A.    It seems to indicate that it was |
| | 18 | after the initial interview with Ms. Robinson. |
| | 19 | Q.    And are you familiar with the EEOC |
| | 20 | posters? |
| | 21 | A.    I am. |
| | 22 | Q.    And does Dynamic Security post those |
| | 23 | posters? |
| 202:01 | A.    We do. |
| | 02 | Q.    And are they posted at each |
| | 03 | individual branch? |
| | 04 | A.    They are. |
| | 05 | Q.    And do you know in 2017, would those |
| | 06 | posters have been posted at the Montgomery |
| | 07 | branch? |
| | 08 | A.    They would have, yes. |