IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| DAVITA M. KEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:19-CV-767-ECM |
| ) | |
| HYUNDAI MOTOR MANUFACTURING, ) | |
| ALABAMA, LLC; HYUNDAI ENG ) | |
| AMERICA, INC.; and DYNAMIC ) | |
| SECURITY, INC. ) | |
| ) | |
| ) | |
| Defendants. ) | |

**EXHIBIT F TO**

**PLAINTIFF'S OBJECTIONS TO HYUNDAI MOTOR MANUFACTURING, ALABAMA, LLC'S DEPOSITION DESIGNATIONS**

**KRISTAL RIDDLE**

| Case | Key, Davita |
|---|---|
| Issue Code | HMMA Designation |

| RIDDLE, KRISTAL 8/19/22 VOL 1 | | | |
|---|---|---|---|
| 1 | 054:01 - 054:04 | 054:01<br>02<br>03<br>04 | MR. REDMOND:  I'm going to object to<br>the form if you're asking her for a legal<br>conclusion.<br>           MS. PALMER:  Just for opinion. |
| 2 | 121:09 - 121:13 | 121:09<br>10<br>11<br>12<br>13 | Q.   Is that the policy that was<br>referenced in the earlier e-mail from<br>Ms. Robinson --<br>           MR. REDMOND:  38?<br>           MS. PALMER:  Yeah. |
| 3 | 121:16 - 121:20 | 121:16<br>17<br>18<br>19<br>20 | A.   This was the information I used.<br>Q.   Okay.  The information in Exhibit 38.<br>Did you request at that time a printed version<br>of the policy?<br>A.   I did not. |
| 4 | 139:19 - 139:21 | 139:19<br>20<br>21 | Q.   Is there a formal contract between<br>Dynamic Security and HMMA?<br>A.   No. |
| 5 | 184:01 - 184:08 | 184:01<br>02<br>03<br>04<br>05<br>06<br>07<br>08 | Q.   You are the chief legal officer for<br>Dynamic Security; correct?<br>A.   That is correct.<br>Q.   Okay.  And are you a lawyer?<br>A.   No.<br>Q.   Do you have any sort of legal<br>training?<br>A.   No. |
| 6 | 185:04 - 197:14 | 185:04<br>05<br>06<br>07<br>08<br>09<br>10<br>11<br>12<br>13 | Q.   -- against Dynamic.  And in your<br>response, you do identify Ms. Cassandra<br>Williams as an HMMA employee.<br>           What evidence do you have to support<br>that she is an employee of HMMA?<br>A.   That was -- that's been my<br>understanding since the beginning of the client<br>relationship.<br>Q.   It's just your inference?<br>A.   Correct. |

```
            14     Q.    If Ms. William's testified under oath
            15  that at all relevant times in 2017 she was an
            16  employee exclusively of Hyundai Engineering
            17  America, would you dispute that?
            18           MS. PALMER:  Object to form.
            19     Q.    You can answer.
            20     A.    I would not be able to refute that.
            21     Q.    Okay.
            22           MS. BROWN:  How shall I number
            23  exhibits that I have?
     186:01           MS. PALMER:  However you want.
            02           MS. BROWN:  Thank you.
            03           MS. LEONARD:  If you want to do it
            04  consecutively, I can go back and see if we've
            05  got how y'all did it in Ms. Key's, but I'm not
            06  positive I've got that on my computer.  You
            07  just let me know.
            08           MS. BROWN:  I'll just call it HMMA-1.
            09     Q.    I'll show you what I'm marking as
            10  HMMA's Exhibit 1.
            11           (Whereupon, Defendant's Exhibit 1 was
            12            marked for identification and copy of
            13            same is attached hereto.)
            14     Q.    This is a declaration of Cassandra
            15  Williams executed on May 8, 2019.  And she
            16  testifies that she was exclusively employed by
            17  Hyundai Engineering America in 2017.  Do you
            18  have any basis to dispute that this is Ms.
            19  Williams' signature?
            20     A.    I have no basis.
            21     Q.    Do you have any basis to dispute that
            22  Ms. Williams was exclusively an employee of HEA
            23  in 2017?
     187:01     A.    I have no reason.
            02     Q.    Did you ever ask anyone for
            03  clarification about who Ms. Williams worked
            04  for?
            05     A.    No.
            06     Q.    Have you ever spoken to Ms. Williams?
            07     A.    Yes.
            08     Q.    About how many times?
            09     A.    We generally visited the facility
            10  three times a year, so somewhere between six
```

```
          11   and eight times.
          12       Q.   Did anyone ever tell you specifically
          13   that Ms. Williams worked for HMMA?
          14       A.   I don't recall.
          15       Q.   Have you ever seen any document that
          16   specifically identifies Ms. Williams as an HMMA
          17   employee?
          18       A.   Not that I recall.
          19       Q.   Then if you'll look at Plaintiff's
          20   Exhibit 41 which was the last exhibit that
          21   plaintiff's counsel introduced.  And if you
          22   will look on the first page, the second
          23   message, the from line.
      188:01            Could you read the from line in full,
          02   please?
          03       A.   I'm sorry.  Could you say that again?
          04       Q.   Yeah.  Where it says, "From:
          05   Williams, Cassandra."
          06       A.   It says, "Hyundai ENG America," and
          07   then, "CWilliams@hmmausa.com."
          08       Q.   Right.  And then you had -- on the to
          09   line, who was the first addressee right there?
          10       A.   Gloria Robinson, Dynamic Security,
          11   Gloriarobinson@hmmausa.
          12       Q.   And you would agree with me that
          13   Ms. Robinson was exclusively Dynamic Security's
          14   employee; correct?
          15            MS. PALMER:  Object to form.
          16       A.   I'm sorry.  Could you --
          17       Q.   Was Ms. Robinson employed by Dynamic
          18   Security?
          19       A.   Yes.
          20       Q.   And she was exclusively your
          21   employee; correct?
          22       A.   Yes.
          23       Q.   Despite having an hmmausa address?
      189:01       A.   Correct.
          02       Q.   And just like Ms. Robinson,
          03   Ms. Williams has another entity's designation
          04   popping up after her name on this from address;
          05   correct?
          06       A.   Correct.
          07       Q.   Also in the position statement, you
```

```
          08  stated that Ms. Key reviewed a copy of HMMA's
          09  policy regarding the company's grooming
          10  standards.  On what evidence did you base that
          11  statement?
          12       A.   The statement in Cassandra's e-mail
          13  where she said that when Ms. Key wanted to see
          14  a copy of the policy, that she showed it to
          15  her.
          16       Q.   Okay.  And that is Plaintiff's
          17  Exhibit 38, if someone wouldn't mind refreshing
          18  that for the witness.  I'd appreciate it.
          19            And this is the e-mail you were
          20  referencing?
          21       A.   This is the e-mail I was referencing.
          22       Q.   Anywhere in here, does Ms. -- at any
          23  point in this e-mail, does Ms. Robinson
    190:01  specifically identify this e-mail as
          02  originating from Hyundai Motor Manufacturing
          03  Alabama?
          04       A.   I'm sorry?  Could you --
          05       Q.   At any point in this e-mail, does Ms.
          06  Robinson identify that this policy that she's
          07  retyping is specifically from Hyundai Motor
          08  Manufacturing of Alabama?
          09       A.   She starts the e-mail by saying this
          10  is an excerpt from what all personnel are
          11  briefed on here and posted on our board in the
          12  roll call room.
          13       Q.   And from that, you inferred that it
          14  was HMMA's policy; correct?
          15       A.   Correct.
          16       Q.   But, in fact, you never saw it
          17  posted; correct?
          18       A.   Correct.
          19       Q.   Never asked for a photograph of it;
          20  correct?
          21       A.   Correct.
          22       Q.   And given that language that this is
          23  posted on a board in the room, it's quite
    191:01  likely that Ms. Robinson retyped this herself,
          02  correct, as opposed to a copy and paste which I
          03  think was suggested earlier?
          04       A.   It would be more -- more reasonable.
```

```
05      Q.    But you could not say who altered
06 this document that no one has a photograph of
07 that Ms. Robinson supposedly retyped?
08      A.    Correct.
09      Q.    I want to show you what I've marked
10 as Plaintiff's Exhibit 8.  It's been previously
11 produced in the deposition of Mr. Burns.
12            (Whereupon, Plaintiff's Exhibit 8 was
13             marked for identification and copy of
14             same is attached hereto.)
15            MS. PALMER:  It was Plaintiff's 8 in
16 his depo?
17            MS. BROWN:  Yes.
18      Q.    Have you ever seen this document?
19      A.    I have not.
20      Q.    Would you agree with me that it's got
21 a pretty formal heading and setup clearly
22 identifying it as belonging to Hyundai Motor
23 Manufacturing Alabama?
192:01  A.    Yes.  The logo is Hyundai -- Hyundai
02 Motor Manufacturing Alabama.
03      Q.    Thank you.  You also wrote in your
04 position statement it was agreed by Dynamic and
05 HMMA management that Ms. Key should be removed
06 from the work site.
07            What HMMA management are you
08 referencing there?
09      A.    I was still under the impression
10 that -- at the time, I was under the impression
11 that Cassandra was an HMMA employee.
12      Q.    And have we disabused you of that
13 impression?
14      A.    Like thoroughly.
15      Q.    Thank you.  You would agree with me
16 that Ms. Williams is exclusively an HEA
17 employee?
18      A.    It does appear to be the case.
19      Q.    So Ms. Williams is the only HMMA
20 management mis-referenced here in your position
21 statement; correct?
22            MS. PALMER:  Object to form.
23      Q.    When you write in your position
193:01 statement that it was agreed by Dynamic and
```

```
02  HMMA management, HMMA management does not refer
03  to anyone other than Ms. Williams?
04       A.    Correct.  I am only referring to
05  Ms. Williams.
06       Q.    Okay.  And if you will find
07  Plaintiff's Exhibit 24.  That invoice from --
08  earlier you answered a couple of questions
09  about Plaintiff's Exhibit 24.
10             But would you agree with me generally
11  that this is an invoice from HEA to HMMA?
12       A.    That does -- the top logo is Hyundai
13  Engineering America, and the addressee is
14  Hyundai Motor Manufacturing Alabama.  And this
15  is an invoice, so I would agree.
16       Q.    This is for -- marking this one with
17  a sticker for the record as HMMA-2.  Well, hang
18  on.  Yes, that's correct.
19             (Whereupon, Defendant's Exhibit 2 was
20             marked for identification and copy of
21             same is attached hereto.)
22       Q.    Have you ever seen what I've marked
23  as HMMA-2 -- Exhibit 2 before?
194:01   A.    I have seen these reports before,
02  yes.
03       Q.    And what is this?  It's the first
04  page of a report, but what sort of report is
05  this?
06       A.    This is a report that tracks the
07  employees' schedules once they've been input
08  into our payroll system.
09       Q.    And is the client identified below
10  the date?
11       A.    The client is identified below the
12  date.
13             MS. PALMER:  What's the Bates label
14  on that?
15             MS. BROWN:  I'm sorry.  This is
16  labeled Dynamic-Key 969.  And this is 1 of
17  about 60 samples that I could enter into
18  evidence, but I'm not going to, which show the
19  client being Hyundai Engineering America.  This
20  is from Wes's production yesterday afternoon.
21       Q.    And so this does identify that the
```

```
        22  client is Hyundai Engineering America; correct?
        23      A.   Correct.
   195:01      Q.   And were you involved in the
        02  production of these documents that were
        03  produced to us yesterday?
        04      A.   Yes.  I was the one who ran -- I was
        05  the one who ran the -- ran the reports.
        06      Q.   Okay.  And so if none of those
        07  reports identify Hyundai Motor Manufacturing
        08  Alabama as a client, is it safe to say that
        09  HMMA was not a client of Dynamic?
        10           MS. PALMER:  Object to form.
        11           MR. REDMOND:  I'm going to object to
        12  the form of that.  I don't know why, I don't
        13  think I have a dog in the hunt, but I'm going
        14  to object to the form of that.
        15           MS. PALMER:  Wes, when did you
        16  produce this yesterday?
        17      A.   I confess that I'm very confused by
        18  this.  When I run the actual client masters,
        19  what comes up for -- on our side is under HMMA
        20  from our records, so I'm very confused by this.
        21  But this obviously says Hyundai ENG.
        22      Q.   Do you have any evidence that Dynamic
        23  ever billed HMMA for services?
   196:01      A.   I don't know that information.
        02           MR. REDMOND:  Oh, did you say ever
        03  billed or overbilled?
        04           MS. BROWN:  Ever billed.
        05           MR. REDMOND:  Oh, I thought you said
        06  overbilled.  I'm sorry.
        07      Q.   Just in case you misheard me, do you
        08  have any evidence that HMMA ever billed -- that
        09  Dynamic ever billed HMMA for services?
        10      A.   I have no -- I have no knowledge of
        11  that.
        12      Q.   And as you can see on the particular
        13  employee report we're looking at for
        14  Ms. Courtney Dixon, this is dated August of
        15  2017; you agree that's when it begins?
        16      A.   Correct.  Wait, no.
        17      Q.   August 28th of 2017.
        18      A.   Oh, yes.  Sorry, I thought I heard
```

|   |               |        |                                                              |
|---|---------------|--------|--------------------------------------------------------------|
|   |               | 19     | some -- I thought I heard another date.  Yes,                |
|   |               | 20     | this does begin with the date August 28th,                   |
|   |               | 21     | 2017.                                                        |
|   |               | 22     |     Q.   Do you have any evidence that Dynamic               |
|   |               | 23     | was in any direct contractual relationship with              |
|   |               | 197:01 | HMMA?                                                        |
|   |               | 02     |     A.   I have no knowledge of that.                        |
|   |               | 03     |     Q.   And you would agree that HMMA's                     |
|   |               | 04     | Exhibit 2 identifies HEA as Dynamic's client;                |
|   |               | 05     | correct?                                                     |
|   |               | 06     |     A.   It does.                                            |
|   |               | 07     |     Q.   And for the record, Ms. Key was                     |
|   |               | 08     | directly employed by Dynamic; correct?                       |
|   |               | 09     |     A.   Correct.                                            |
|   |               | 10     |     Q.   And you've specifically not                         |
|   |               | 11     | identified any requests for price proposal or                |
|   |               | 12     | whatever you call it from HMMA; correct?                     |
|   |               | 13     |     A.   I don't have any -- I have no                       |
|   |               | 14     | knowledge of that.                                           |
| 7 | 204:21 - 204:23 | 204:21 |            MR. MILLER:  Object to the form.                |
|   |               | 22     |            MS. BROWN:  Object to the form.                   |
|   |               | 23     |     Q.   You can answer.                                     |