# Exhibit 22

# "Rebuttal" letter from Plaintiff to EEOC dated "October 4, 2017"

**Rebuttal**

October 4, 2017

Davita Key

**EEOC Charge Numbers:** 846-2017-32787

I strongly deny that I was offered additional employment from Dynamic Security and that I told Ray Cureton that I was only available for first shift work only.

During a telephone hearing on Tuesday, September 19, 2017 with the Alabama Dept of Labor, as a result of Dynamic Security contesting my unemployment claim, Ray Cureton admitted that I did not tell him that I was unavailable to work any shift of employment except the first shift. Mr. Cureton agreed with me that I told him I was able to work any shift but preferred to work the first, however I would take whatever assignment that was available.

After speaking with Mr. Cureton on August 1, 2017, he never offered me a specific assignment, another factor to which he retracted in the first telephone hearing. Mr. Cureton only told me of future assignments, neither he named, nor gave me a start date for these assignments. I deny that I told Mr. Cureton that I was unable to work these assignments. Furthermore, I called Mr. Cureton's office on August 2, August 3 (in which I can produce phone records) and visited the office on August 8 in reference to working assignments. On August 2, 2017, I was never able to get any Dynamic Security employee on the phone. On August 3, 2017, I called and spoke with Nicole Scavella and I asked to speak with Mr. Ray Cureton but she informed me that he was unavailable and would call me when he could. Ms. Scavella further told me that when an assignment became available that I would be informed. I have never received any phone calls from Dynamic Security regarding any matter of trying to employ me only empty promises that when a job became available that I would be informed. Mr. Cureton never said when a first-shift job became available, only when a job became available, which states that I was available and willing to work any shift.

I have made every effort to get assigned to a jobsite with Dynamic Security but they have not matched that effort and have simply put together untruths as a retaliation for me filing a discrimination complaint against their client for my treatment while at Hyundai.



DEFENDANT'S EXHIBIT KEY 26 6-20-22 SL

As stated in the beginning of Dynamic Security's rebuttal, I was never shown a policy in reference to Hyundai's disapproval of me wearing my hair natural, nor was I informed of any policy that was hanging on a wall.

I was even told on August 1 by Gloria Robinson in a hostile and aggressive manner that I should have never asked her supervisor, Cassandra Williams to even see the policy. I did comply and wear a cap on August 1, 2017 but I was still dismissed from the jobsite. I would like for Dynamic Security to produce their record of complaint that Ray Cureton wrote up on my behalf, as he has only produced Gloria Robinson's side and he did not even give me as an employee the benefit of doubt or respect to take such complaint seriously but as he stated in the telephone hearing for the Alabama Department of Labor in contest of my unemployment that he and the company wanted to get over this manner in agitated manner. I never ignored any policy of HMMA as I was never shown a policy for HMMA until July 31, in which on August 1 I complied with that policy and wore a hat. I was told from my initial interview that I worked for Dynamic Security and even when Gloria Robinson asked Cassandra Williams about my hair, Cassandra Williams asked her what was Dynamic's policy.

I was never told to come back with a hairstyle compliant to the company's policy because that would mean that I would have to cut all of my hair off. I was told that I could wear a cap and that is what I did. I did not confront my co-worker in an agitated or angry manner, and my co-worker seemed to be more upset than I was that Gloria Robinson confronted me in the manner that she did. I was never argumentative with either Cassandra Williams, Gloria Robinson or LaTayuna Howell. I remained calm and professional. Both Cassandra Williams and Gloria Robinson spoke to me in a degrading and unprofessional manner. I told Maurice Chambliss that I preferred to speak with someone in HR because of the manner in which Gloria Robinson approached me and spoke with me. Gloria Robinson talked to me in such as hostile manner that I felt if I took my complaint to her that she would further try to intimidate me and I did not want a big confrontation. I never got argumentative with Maurice Chambliss.

The first thing Ray Cureton asked me when I went in to speak with him was had I said that I was going to sue. I never told Ray Cureton that I was filing an EEOC complaint because I thought he was a HR representative and I simply wanted to file a complaint

within the company; it was not until after I left that meeting where he really seemed uninterested in what I was saying that I knew, I had to go to another outlet.

In Gloria Robinson's statement she says that I presented a doctor's excuse saying that I could return to work which is untrue. The note from my doctor, Dr. Latoya Clark, simply stated that even though I was pregnant I was able to perform all the duties of the assignment. Cassandra Williams did not come out of her office until after I told Gloria Robinson that I was pregnant and she went in the office that the two of them shared. After Cassandra Williams came out and confronted me about my hair. There was about a 30-45 minute gap before I was called back into their office. I was not told by Gloria Robinson, Maurice Chambliss or Cassandra Williams not to go with my trainer LaTanuya Howell, therefore when she came to get me, I went for my training. I think that for them to discuss my pregnancy even the due date is unethical. The phone call that Gloria Robinson made to me literally 5 minutes after I was dismissed was not simply to ask my due date but was to question whether I was capable of doing the job assigned to me and whether I disclosed to my doctor the responsibilities of the assignment in which I responded yes and thought it awkward for her to call me and ask those questions if I were sent home because my hairstyle was inappropriate.

Maurice Chambliss even though he was said to be my immediate supervisor never spoke with me in the meeting that Gloria Robinson is talking about he sat there quietly and only transported me to and from where Gloria Robinson requested me to be and when I asked Maurice Chambliss why Gloria Robinson wanted to see me, he said he did not know. I continued to ask Gloria Robinson about my hat because I wanted to be clear that my hat was not the problem as Gloria Robinson stated in her statement that the meeting was not concerning my hat. I never created a hostile environment for LaTanuya Howell and during the short time I was there, we had a great relationship and immediately established a respect for one another.

I would like to point out that Ray Cureton's statement was signed and written on August 14, 2017. This is 13 days after the incident and I believe he may not have remembered the full extent of the conversation between us, as he took no notes when I spoke with him initially on August 1, 2017 or on August 8, 2017. The complaint Ray Cureton is speaking of is the one that I thought I was filing with Dynamic Security. I decided to file an EEOC complaint after leaving the meeting with him because I felt my complaint had

fallen on deaf ears. I never told Ray Cureton I was filing an EEOC complaint. I would also like to point out that the witness statement for Ray Cureton is written in third person, which leads me to believe that he himself did not write it but it was written by someone else.