CONFIDENTIAL

# DYNAMIC SECURITY, INC.

*Over 65 Years of Quality Protective Services*

September 1, 2017

RE: *Davita Key v Dynamic Security, EEOC Charge No. 846-2017-32787*

In response to the agency's request for a position statement, Dynamic Security, Inc. states that it did not discriminate or retaliate in any way against the complainant on the basis of her race, her sex, or on any other basis.

While the respondent does not have to have any reason to remove the charging party under state or federal law in that she does not have any property right in her job with the respondent, Dynamic Security, Inc. states that it does not desire to lose employees who can provide the work ethic and services required by the respondent's clients.

Ms. Key was initially interviewed and hired for a position with a client who enforces a very strict grooming policy. She was made aware of this during her interview. When Ms. Key refused to comply with those standards, she was removed from the site. Efforts to assign her to another client have been made extremely difficult due to restrictions she has placed on her availability, despite having indicated on her original application she could work any shift.

Management's attempts to reassign Ms. Key has been stymied by a lack of Monday-Friday first shift availability—the only shift Ms. Key states she can/will work. Attempts to assign her to part time weekend first shift spots were rejected. Further complicating the matter is that Dynamic has only five (5) clients in the Montgomery area with a schedule structure that includes first shift. Our management continues to monitor the staffing needs in order to offer an appropriate assignment to her.

<u>To address Ms. Key's removal from her original assignment:</u>

The client's grooming policy is posted in the security officer roll call room. The section pertinent to this claim reads thusly:
*It has been approved for female personnel to wear braids. Only Micro Braids, Tree Braids and whatever the size that is a tad larger than micros are acceptable. The Kinky Twist style, Bob Braids, Cornrows and Dreads are not allowed. They must ensure that will be able to wear their ball cap if necessary with whatever approved braid style they select. The braids and other hair styles can be worn down to the shoulder but not beyond.*

During the interview process on 19 July 2017, Ms. Key was made aware that her current hairstyle (dreadlocks) was not acceptable per the client's policy by both Gloria Robinson (Dynamic Security, Inc., B/F) and Cassandra Williams (HMMA, B/F). Ms. Key provided a picture to Ms. Robinson and Ms. Williams of a style where the hair was twisted in a manner which concealed the dreads and gave a neater appearance. The style in the picture was approved and Ms. Key was instructed to report to work with her hair in that arrangement on her start date of 31 July 2017.

CONFIDENTIAL

Upon arrival for her first shift on 31 July, Ms. Williams approached Ms. Robinson and questioned her as to why Ms. Key had not changed her hairstyle as she had been instructed on 19 July.

When questioned, Ms. Key stated she had spoken with Dynamic Security, Inc. Office Manager Nicole Scavella while completing state mandated training at the Dynamic office prior to reporting to HMMA. According to Ms. Key, Ms. Scavella said she saw nothing wrong with her hair. Ms. Key had then decided she could simply ignore the instructions to restyle her dreads to comply with HMMA policy.

While Dynamic Security, Inc. does not have a policy disallowing dreadlocks, the client site does. In cases where the client policy is stricter than our company's policy, we always defer to the client's position. Therefore, Ms. Scavella's opinion of Ms. Key's hairstyle had no bearing whatsoever on the situation, and Ms. Key was expected to abide by the client's policy as she had been informed during her interview.

After reviewing a copy of the HMMA policy regarding the company's grooming standards, Ms. Key was sent home without completing her shift with instructions to return with a style which would be in compliance with the company policy.

On 1 August 2017, Ms. Key reported to work with her hair tucked into a hat. Shortly after, Ms. Williams received a report from mailroom clerk Latunya Howell stating Ms. Key had complained to her that she was being discriminated against by Gloria Robinson and Cassandra Williams. Ms. Williams sent for Ms. Key to be transported to the security office, where Ms. Robinson and Mr. Chambliss spoke to her regarding the statement by her coworker. Ms. Key refused to comment, and reportedly only spoke of her hair during their conversation and attempted to defend herself by repeating her assertion that Ms. Scavella had said she saw nothing wrong with her current style. Ms. Robinson left to report the situation to her supervisor, and Mr. Chambliss returned Ms. Key back to the mailroom. Upon arrival, she confronted her coworker over having reported her statement to Ms. Williams.

To summarize, in the course of less than three (3) hours across two (2) days spent at the facility Ms. Key had:
- Failed to adhere to the client grooming policy as instructed
- Become argumentative with the client Manager of Security Services
- Become argumentative with the Dynamic Security Program Manager
- Become argumentative with her mailroom coworker.

It was agreed by Dynamic and HMMA management that Ms. Key should be removed from the worksite. Dynamic management chose to retain Ms. Key for reassignment.

Ms. Key questioned Supervisor Chambliss regarding filing a complaint against Ms. Williams and Ms. Robinson regarding discrimination based upon her current hairstyle and her pregnancy. She was informed she should report to the Montgomery office and meet with District Manager Dr. Ray Cureton.

CONFIDENTIAL

Once there, she was advised that she would not be returning to that site, but would be reassigned to another Dynamic client, in accordance with Dynamic policy: *At Dynamic Security, Inc. job assignments are given on merit, experience, qualifications, job knowledge, and needs of the Client and Dynamic Security. Priority is placed on those needs. Dynamic Security makes no promise or commitment to assign an employee to a specific job site, shift, or time period. No Dynamic Security employee is authorized to make promises or commitments of this kind. Job assignments are subject to change without prior notice.*

At this point, Ms. Key was offered other positions, but informed the DM she would only work first shift. He informed her he had no available full time first shift positions available, but would try to assign her to one when an opening occurred. In the meantime, Ms. Key has refused work which was and is available. That it is not at a time or site to her liking does not negate that the work exists and that we are open to her acceptance of those shifts.

Dr. Cureton denies Ms. Key's allegation he "asked [her] whether [she] was going to sue the company." He states he counseled her that her removal from her assignment was the result of her refusal to follow the rules put forth by the client for security officers stationed at their facility, not by her announcement of her pregnancy.

Dynamic Security, Inc. states again that we have not discriminated or retaliated in any way against Ms. Key on the basis of her sex or her race. Ms. Key was removed from her original assignment for refusing to comply with the company's written grooming policy and presentation of a poor attitude to management and coworkers. Ms. Key was not terminated by Dynamic Security, Inc. Ms. Key has rejected reassignment to other clients. However, Dynamic remains open to Ms. Key becoming a productive employee of our team of security officers in the Montgomery area.

The correct name and address of the facility named in the charge is the following:

Dynamic Security, Inc.
5510 Wares Ferry Road, Suite S
Montgomery, AL 36117

The business of this corporate respondent is providing security services to its clients. The state of incorporation is Alabama. This facility did not have any federal contracts and has not been the subject of a compliance review by the OFCCP at any time in the past two years.

Employees are made aware of policies, procedures, and expectations in writing at the time of hire via both the initial hire packet and through the Dynamic Security, Inc. Employee Handbook, a pocket-sized guide which security officers are required to carry with them while on duty.

The total number of employees at the facility as of the most recent payroll date is 219.

CONFIDENTIAL

Sincerely,

*Kristal Riddle*

Kristal L. Riddle
Legal Affairs Coordinator
Dynamic Security, Inc.