IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| DAVITA M. KEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:19-CV-767-ECM |
| | ) | |
| DYNAMIC SECURITY, INC. | ) | |
| | ) | |
| Defendant. | ) | |

---

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT DYNAMIC SECURITY, INC.'S MOTION FOR RENEWED JUDGMENT AS A MATTER OF LAW AS TO LIABILITY AND PUNITIVE DAMAGES; TO VACATE, ALTER OR AMEND THE JUDGMENT; OR, ALTERNATIVELY, FOR A NEW TRIAL OR REMITTITUR OF EMOTIONAL DISTRESS AND PUNITIVE DAMAGES (DOC. 197)**

---

COUNSEL FOR PLAINTIFF:

Heather Newsom Leonard
HEATHER LEONARD P.C.
2105 Devereux Circle, Suite 111
Birmingham, AL 35243
(205) 977-5421
Heather@HeatherLeonardPC.com

Leslie A. Palmer
PALMER LAW, LLC
104 23RD Street South, Suite 100
Birmingham, AL 35233
(205) 285-3050
Leslie@PalmerLegalServices.com

Plaintiff's Response to Defendant's Post-Trial Motions
*Key v. Dynamic Security, Inc.*
United States District Court for the Middle District of Alabama
Civil Action 2:19-CV-767-ECM

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ 3

I.     INTRODUCTION ..................................................................................................... 7

II.    DEFENDANT IS NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW. ......... 8

   A.   Key asserted a § 1981 retaliation claim against Dynamic. .................................. 9

   B.   Key engaged in activity protected by 42 USC § 1981 .................................... 16

   C.   Dynamic's "best evidence" rule argument ignores the purpose for which Robinson's statements were offered. .................................................................................... 22

   D.   Key presented evidence that Cureton, Spires, and Riddle knew Key complained of race discrimination. .............................................................................................. 24

   E.   Dynamic is not entitled to judgment as a matter of law on punitive damages. ............... 26

III.   DYNAMIC IS NOT ENTITLED TO A NEW TRIAL. ................................................. 31

   A.   The Court's jury charges were proper. ......................................................... 32

      1.   This Court's instructions on retaliation accurately presented the issues and law to the jurors. ....................................................................................... 33

      2.   This Court's instructions accurately communicated the law on causation. ................. 36

      3.   Statements made in closing arguments do not warrant a new trial. ........................... 38

   B.   This Court properly refused to strike Key's jury demand. ................................. 41

1.        Key did not knowingly and voluntarily waive her right to a trial by jury. ................. 41

      2.   The waiver provision is too ambiguous to create a waiver. ................................. 46

      3.   The Court can treat the jury verdict as advisory. .......................................... 48

IV.    DEFENDANT IS NOT ENTITLED TO REMITTITUR. ................................................. 48

   A.   The jury's emotional distress award should not be remitted. .................................. 49

   B.   The jury's punitive damages award is proper. ............................................... 53

V.     CONCLUSION ....................................................................................................... 59

CERTIFICATE OF SERVICE ............................................................................................. 60

Plaintiff's Response to Defendant's Post-Trial Motions
*Key v. Dynamic Security, Inc.*
United States District Court for the Middle District of Alabama
Civil Action 2:19-CV-767-ECM

# TABLE OF AUTHORITIES

## Cases

*Advanced Body Care Sols., LLC. V. Thione Int'l, Inc.*, 615 F.3d 1352 (11th Cir. 2010).................................................................................................. 50

*Aetna Ins. Co. v. Kennedy,* 301 U.S. 389 (1937)..................................................... 41

*Akouri v. Fla. DOT*, 408 F.3d 1338 (11th Cir. 2005) ....................................... 52, 53

*Alkins v. Sheriff of Gwinnett Cty.*, 2022 U.S. App. LEXIS 23352 (11th Cir. Aug. 22, 2022).......................................................................................................... 17, 18

*Allen v. Tyson Foods,* 121 F.3d 642 (11th Cir. 1997) ........................................... 14

*Allstate Ins. Co. v. James*, 845 F.2d 315 (11th Cir.1988)....................................... 38

*Bakrac, Inc. v. Villager Franchise Sys., Inc.*, 164 F. App'x 820 (11th Cir. 2006) 42, 44

*BankAtlantic v. Blythe Eastman Paine Webber, Inc.,* 955 F.2d 1467 (11th Cir. 1992)........................................................................................................... 39

*BMW of N. Amer., Inc. v. Gore*, 517 U.S. 559 (1996)........................................... 54

*Bogle v. McClure*, 332 F.3d 1347 (11th Cir. 2003)............................................... 58

*Bonura v. Sea Land Serv. Inc.*, 505 F.2d 665 (5th Cir. 1974) ............................... 50

*Borgh v. Gentry*, 953 F.2d 1309 (11th Cir. 1992) ................................................. 42

*Bostock v. Clayton Cty.*, 140 S. Ct. 1731 (2020). ................................................. 36

Broderick v. Donaldson, 437 F.3d 1226 (D.C.Cir.2006) ....................................... 35

*Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160 (11th Cir. 2010) ........................... 49

*Brown v. Bd.*, No. 16-093-KD-M, 2016 U.S. Dist. LEXIS 123646 (S.D. Ala. Aug. 22, 2016)........................................................................................................ 43

*Brown v. Freedman Baking Co.*, 810 F.2d 6 (1st Cir. 1987)................................. 50

*Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53 (2006)....................... 55

*Burns v. Lawther*, 53 F.3d 1237 (11th Cir. 1995).................................................. 41

Plaintiff's Response to Defendant's Post-Trial Motions
*Key v. Dynamic Security, Inc.*
United States District Court for the Middle District of Alabama
Civil Action 2:19-CV-767-ECM

- 3 -

*City of Rome v. Hotels.com, LP*, 2011 U.S. Dist LEXIS 158580 (N.D. Ga. Mar. 21, 2011).................................................................................................... 23

*Collins v. Koch Foods, Inc.*, 2022 U.S. App. LEXIS 14873 (11th Cir. May 31, 2022)..................................................................................................... 54

*Colonial BancGroup, Inc. v. PriceWaterhouseCoopers, LLC*, No. 2:11-cv-746-BJR-WC (M.D. Ala. Oct. 14, 2016)..................................................... 44

*Conroy v. Abraham Chevrolet-Tampa, Inc.*, 375 F.3d 1228 (11th Cir. 2004) ....... 32

*Danow v. Borack*, 346 F. App'x 409 (11th Cir.2009)............................................. 38

*Deakle v. John E. Graham & Sons*, 756 F.2d 821 (11th Cir. 1985) ...................... 50

*Drago v. Jenne*, 453 F.3d 1301 (11th Cir. 2006).................................................... 53

*Dudley v. Wal-Mart Stores, Inc.*, 166 F.3d 1317 (11th Cir. 1999) ........................ 29

*E.E.O.C. v. Fed. Express Corp.*, 513 F.3d 360 (4th Cir. 2008) .............................. 55

*EEOC v. Exel, Inc.*, 884 F.3d 1326 (11th Cir. 2018).............................................. 28

*Equal Emp't Opportunity Comm'n v. Catastrophe Mgmt. Sols*, 852 F.3d 1018 (11th Cir. 2016) ............................................................................... 18, 22

*Ferrill v. Parker Group, Inc.*, 168 F.3d 468 (11th Cir. 1999) ............................... 51

*Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295 (11th Cir. 2016) ...... 16, 17, 18, 21

*Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261 (11th Cir.2008) ....................... 38

*Goldstein v. Manhattan Indus., Inc.*, 758 F.2d 1435 (11th Cir. 1985) ............. 49, 51

*Gore v. Turner*, 563 F.2d 159 (5th Cir. 1977) ....................................................... 51

*Gowski v. Peake*, 682 F.3d 1299 (11th Cir. 2012).................................................. 33

*Graves v. Avis Budget Grp., Inc.*, No. 8:20-cv-270-CEH-JSS, 2022 U.S. Dist. LEXIS 129849 (M.D. Fla. July 21, 2022).......................................... 41

*Hall v. Alabama State University*, 2:15-cv-0593-JTA, Doc. 188 (M.D. Ala. Dec 14, 2022).................................................................................................... 52

*Hargett v. Valley Fed. Sav. Bank*, 60 F.3d 754 (11th Cir. 1995).......................... 10

*Johnston v. Borders*, 36 F.4th 1254 (11th Cir. 2022) ........................................ 9, 27

*Key v. Allstate Ins. Co.*, 90 F.3d 1546 (11th Cir. 1996).......................................... 47

Plaintiff's Response to Defendant's Post-Trial Motions
*Key v. Dynamic Security, Inc.*
United States District Court for the Middle District of Alabama
Civil Action 2:19-CV-767-ECM

- 4 -

*Kim v. Nash Finch Co.,* 123 F.3d 1046 (8th Cir. 1997).......................................... 57

*King v. Exxon Co.*, 618 F.2d 1111 (5th Cir. 1980) ................................................. 32

*Kolstad v. Am Dental Ass'n*, 527 U.S. 526 (1999) ................................................. 28

*Lipphardt v. Durango Steakhouse of Brandon, Inc.*, 267 F.3d 1183 (11th Cir. 2001) ........................................................................................................................ 31

*Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956 (11th Cir. 1997) .. 17

*Luxottica Grp., S.p.A. v. Airport Mini Mall, LLC*, 932 F.3d 1303 .......................... 9

*Marable v. Walker*, 704 F.2d 1219 (11th Cir. 1983) .............................................. 51

*Martin v. Fin. Asset Mgmt. Sys., Inc.*, 959 F.3d 1048 (11th Cir. 2020)................. 21

*Mazloum v. District of Columbia,* 442 F. Supp. 2d 1 (Dist. of Columbia 2006).... 34

*McClinton v. Capstone Logistics, LLC*, 2:20-cv-05430-AMM, Doc. 162 (N.D. Ala. June 2, 2023) ..................................................................................................... 52

*McGregor v. Board of Commissioners of Palm Beach County*, 956 F.2d 1017 (11th Cir. 1992) ........................................................................................................... 47

*Miller v. Kenworth of Dothan Inc.*, 277 F.3d 1269 (11th Cir. 2002) ..................... 29

*Okoli v. City Of Baltimore*, 648 F.3d 216 (4th Cir. 2011) ...................................... 35

*Olson v. Lowe's Home Ctrs., Inc.*, 130 F. App'x 380 (11th Cir. 2005)............. 25, 35

*Parr v. Woodmen of World Life Ins. Co.*, 791 F.2d 888 (11th Cir. 1986) .............. 11

*Peterson v. Willie*, 81 F.3d 1033 (11th Cir. 1996).................................................. 38

*Rabun v. Kimberly-Clark Corp.*, 678 F.2d 1053 (11th Cir. 1982 .......................... 32

*Rockwell Int'l Corp. v. United States*, 549 U.S. 457 (2007) ................................... 10

*Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259 (11th Cir. 2008)............. 49

*RREF RB-AL SLDL, LLC v. Saxon Land Dev., LLC*, No. 2:11-cv-925-MEF [WO], 2012 U.S. Dist. LEXIS 54701  (M.D. Ala. Apr. 19, 2012)................................. 44

*Stallworth v. Shuler*, 777 F.2d 1431 (11th Cir. 1985) ............................................ 49

*State Farm Mutual Auto Ins. v. Campbell*, 538 U.S. 408 (2003) .................... 56, 57

*Swinton v. Potomac Corp.*, 270 F.3d 794 (9th Cir. 2001) ....................................... 58

Plaintiff's Response to Defendant's Post-Trial Motions
*Key v. Dynamic Security, Inc.*
United States District Court for the Middle District of Alabama
Civil Action 2:19-CV-767-ECM

- 5 -

*Tracinda Corp. v. DaimlerChrysler AG,* 502 F.3d 212 (3rd Cir. 2007)................. 42

*Underwood v. Dynamic Sec., Inc.*, No. 18-00017, 2020 U.S. Dist. LEXIS 181798 (E.D. Tenn. Sep. 30, 2020).................................................................................. 44

*United States EEOC v. W&O, Inc.*, 213 F.3d 600 (11th Cir. 2000) ................. 54, 55

*United States v. Lopez*, 590 F.3d 1238 (11th Cir. 2009) ......................................... 40

*United States v. Trujillo*, 561 F. App'x 840 (11th Cir. 2014)................................. 23

*Vineyard v. County of Murray, Ga.*, 990 F.2d 1207 (11th Cir.1993) ..................... 38

*Warren v. Ford Motor Credit Co*., 693 F.2d 1373 (11th Cir. 1982) ...................... 50

*Webb v. Worldwide Flight Servs.*, 2004 U.S. Dist. LEXIS 31191 (S.D. Fla. July 12, 2004)................................................................................................................... 29

*Weisgram v. Marley Co.*, 528 U.S. 440 (2000) ....................................................... 8

*Wilbur v. Corr. Servs. Corp.*, 393 F.3d 1192 (11th Cir. 2004)............................... 29

*Williams v. City of Valdosta*, 689 F.2d 964 (11th Cir. 1982) ................................. 32

**Rules**

FED. R. CIV. P. 12(b) ............................................................................................... 15

FED. R. CIV. P. 39 .................................................................................................... 48

FED. R. EVID. 1002 .................................................................................................. 23

FED. R. EVID. 801 .................................................................................................... 23

Plaintiff's Response to Defendant's Post-Trial Motions
*Key v. Dynamic Security, Inc.*
United States District Court for the Middle District of Alabama
Civil Action 2:19-CV-767-ECM

- 6 -

## I.     INTRODUCTION

This is an employment discrimination case involving a disputed retaliation claim brought under 42 USC § 1981. Plaintiff Davita Key ("Key"), a Black female, worked at an assignment at the Hyundai plant through Dynamic Security, Inc. ("Dynamic") until the termination of her assignment on August 1, 2017. (Doc. 178, pp. 8-9). Due to the natural texture of her hair, Key wears her hair in locs. The morning of August 1, 2017, Key communicated to Dynamic that she wanted to file "an official complaint of discrimination" because she believed she had "been discriminated against on the basis of her current hairstyle (dreadlocks)." (Plaintiff's Trial Ex. 3). After making that complaint, Key did not perform any more work for Dynamic. She filed this action on October 10, 2019.

On March 29, 2023, a jury returned a verdict under 42 USC § 1981 in favor of Key, against Dynamic, finding that Key engaged in protected activity, Dynamic took adverse action against Key because of Key's protected activity, that Key suffered damages because of the adverse action, and that Key should be awarded damages. (Doc. 185, pp. 1-2). The jury awarded Key $85,200 for net lost wages and benefits, $214,864 for emotional pain and mental anguish, and $511,200 for

Plaintiff's Response to Defendant's Post-Trial Motions
*Key v. Dynamic Security, Inc.*
United States District Court for the Middle District of Alabama
Civil Action 2:19-CV-767-ECM

- 7 -

punitive damages. (Doc. 185, pp. 2-3). The trial focused on a single claim, as set out in this Court's Pretrial Order (Doc. 178) brought under § 1981 alleging that after Key complained of race discrimination, Dynamic never reached out to offer a new employment assignment, effectively terminating her employment with Dynamic.

Following the trial, Dynamic filed a post-trial motion (Doc. 197) renewing arguments for judgment as a matter of law which this Court rejected multiple times, seeking a new trial on a purported jury waiver argument which this Court rejected multiple times, and seeking remittitur based on statutory caps not applicable to § 1981.  This Court should deny Dynamic's motion in its entirety.

## II.   DEFENDANT IS NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW.

Rule 50 of the Federal Rules of Civil Procedure governs motions for judgment as a matter of law in jury trials. This rule allows the district court to remove issues from the jury's consideration "when the facts are sufficiently clear that the law requires a particular result." *Weisgram v. Marley Co.*, 528 U.S. 440, 448, 120 S. Ct. 1011, 145 L. Ed. 2d 958 (2000) (internal citations omitted). As the United State Court of Appeals for the Eleventh Circuit directed, "judgment as a

Plaintiff's Response to Defendant's Post-Trial Motions
*Key v. Dynamic Security, Inc.*
United States District Court for the Middle District of Alabama
Civil Action 2:19-CV-767-ECM

- 8 -

matter of law is appropriate only if the facts and inferences point overwhelmingly in favor of one party, such that reasonable people could not arrive at a contrary verdict." *Luxottica Grp., S.p.A. v. Airport Mini Mall, LLC*, 932 F.3d 1303, 1310-11 (11th Cir. 2019) (internal citations omitted). FED. R. CIV. P. 50(b) allows for a litigant to file a renewed motion for judgment as a matter of law after the denial of a Rule 50(a) motion brought before the close of evidence. When considering a motion under Rule 50, evidence and associated inferences are to be construed in the light most favorable to the nonmoving party. *Id.*

District courts lack authority to grant a Rule 50(b) motion on a ground not previously raised in a Rule 50(a) motion prior to the submission of the case to the jury." *Johnston v. Borders*, 36 F.4th 1254, 1270 n.31 (11th Cir. 2022). Dynamic did not raise any argument that Key had not shown someone high enough in the corporate hierarchy was involved for an award of punitive damages in its Rule 50(a) motion filed with the Court. Accordingly, Dynamic cannot now raise that issue as grounds for a Rule 50(b) motion.

A.   Key asserted a § 1981 retaliation claim against Dynamic.

Dynamic moved for judgment as a matter of law by arguing Key did not assert a retaliation claim against Dynamic. However, the pretrial order contained

Plaintiff's Response to Defendant's Post-Trial Motions
*Key v. Dynamic Security, Inc.*
United States District Court for the Middle District of Alabama
Civil Action 2:19-CV-767-ECM

- 9 -

the retaliation claim, Key pled sufficient facts in her Amended Complaint for the retaliation claim to be before the Court, and Dynamic never moved under Rule 12(b) prior to filing any Answers that Key failed to state a claim for retaliation.

Initially, a pretrial order supersedes the pleadings and becomes part of the record, serving as a guide for the trial and focusing the issues. *See Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 474, 127 S. Ct. 1397, 167 L. Ed. 2d 190 (2007) ("[A] final pretrial order . . . supersede[s] all prior pleadings and control[s] the subsequent course of the action.") (internal quotation marks omitted); *see also Hargett v. Valley Fed. Sav. Bank*, 60 F.3d 754, 763 (11th Cir. 1995) (finding a district court judge did not err in permitting a defendant to pursue a defense not pled in its Answer because the defense was included in the pretrial order which superseded the pleadings). The sole claim identified by the Plaintiff in this Court's pretrial order was that "Dynamic Security violated 42 U.S.C. § 1981 by retaliating against Key when it effectively terminated her employment . . ." (Doc. 178, p. 2). Because the pretrial order supersedes all pleadings, and it contained Key's claim that Dynamic retaliated against her in violation of § 1981, Key asserted a retaliation claim against Dynamic. Dynamic's argument does not provide a basis for setting aside the jury verdict.

Plaintiff's Response to Defendant's Post-Trial Motions
*Key v. Dynamic Security, Inc.*
United States District Court for the Middle District of Alabama
Civil Action 2:19-CV-767-ECM

- 10 -

Second, pleadings prior to the pretrial order combined with the whole of the record evidence, show Key pleaded and pursued a retaliation claim against Dynamic. Courts must liberally construe pleadings not only on the ultimate issue of whether a claim for relief has been pled, but also on ancillary issues. *Parr v. Woodmen of World Life Ins. Co.*, 791 F.2d 888, 890 (11th Cir. 1986) (the "rule of liberal construction requires us to construe pleadings liberally not only on the ultimate issue of whether a claim for relief is established, but on ancillary issues as well.")[1]

Key's Amended Complaint (Doc. 28) pled the following facts which were fully incorporated into Count V:[2]

> ¶ 70 . . . Robinson sent her home for the day telling her to contact her stylist and they would "go from there."

> ¶ 79 Robinson and Chambliss met with Key in the conference room and Robinson asked Key if anything was wrong with her.

---

[1]    The issue in *Parr* was whether Parr's general allegation of race discrimination was sufficient to allege discrimination based on an interracial marriage. Rejecting a burdensome and meticulous pleading standard, the Eleventh Circuit noted [n]o requirement exists that a plaintiff specifically state that he was discriminated against because of an interracial marriage or that he was discriminated against because of *his* race to allege discrimination based on an interracial marriage." *Parr*, 791 F.2d at 890.

[2]    The facts reference Gloria Robinson and Maurice Chambliss, both of whom were management level employees for Dynamic.

Plaintiff's Response to Defendant's Post-Trial Motions
*Key v. Dynamic Security, Inc.*
United States District Court for the Middle District of Alabama
Civil Action 2:19-CV-767-ECM

- 11 -

¶ 80 Robinson stated the meeting was not because of her hat and asked, "so you feel discriminated against?"

¶ 81 Key said she had no comment and Robinson said, "so you do" and stated Tanya had told her she felt that way.

¶ 83 Robinson said Key was going to be a problem and that the situation was going to be a problem and Key returned to work.

¶ 84-91 (summarized) contained detailed allegations about Key filing a complaint with Dynamic's manager

¶ 93 Dynamic never placed Key in any further assignments.

¶ 151 adopted and realleged paragraphs 1-95 in support of Count V.

¶ 152 stated "Defendants discriminated against Plaintiff in retaliation for engaging in protected activity in violation of 42 USC § 1981, by terminating Plaintiff's employment when she complained of discrimination no the basis of her race because of her African-American hairstyle and because of a racially disparate grooming policy."

Plaintiff's Response to Defendant's Post-Trial Motions
*Key v. Dynamic Security, Inc.*
United States District Court for the Middle District of Alabama
Civil Action 2:19-CV-767-ECM

- 12 -

¶ 157 - Defendants HMMA and HEA terminated Key's employment from the Hyundai Plant August 2, 2017 after she left to file a complaint.

¶ 158 - Defendant Dynamic made statements demeaning or undermining Plaintiff's complaint and discouraging her from filing a formal complaint.

¶ 159 - Defendants terminated Plaintiff because she complained of race discrimination and a racially disparate policy.

¶ 160- As a consequence of Defendants' unlawful conduct, Plaintiff suffered damages, including but not limited to lost wages, benefits, embarrassment, humiliation, shame, damages to reputation, mental distress, and emotional pain and anguish.

Count Five pleaded facts that the Hyundai Defendants terminated Key's assignment at Hyundai because of Key's complaints, and then Dynamic was critical of those complaints, discouraged filing a formal complaint, and terminated her because of the complaint. Reading the complaint in its entirety, Key adequately plead a retaliation claim § 1981 against Dynamic.

Plaintiff's Response to Defendant's Post-Trial Motions
*Key v. Dynamic Security, Inc.*
United States District Court for the Middle District of Alabama
Civil Action 2:19-CV-767-ECM

- 13 -

Additionally, Rule 56, which is nearly identical in its standard of review to Rule 50, requires the Court and parties to look to more than just the pleadings and to review the record evidence as a whole in the light most favorable to Key. The Court must consider the record evidence as a whole. *Allen v. Tyson Foods,* 121 F.3d 642, 646 (11th Cir. 1997). Key's trial exhibits 4,[3] 5,[4]7,[5] 8,[6], 10,[7] and 13[8] evidenced that Dynamic had an issue with Key's complaints. The disputed record evidence showed Dynamic failed to offer Key any other assignments, effectively

---

[3]   Email from Cureton to Spires dated August 1, 2017 containing the statement "I can attempt to reassign Ms. Key to a different site, but I don't think that is advisable at this time, especially if she is to carry through with the stated "official complaint" of discrimination against Hyundai, Ms. Williams, and Ms. Robinson."

[4]   Email from Cureton to Spires about Key dated August 7, 2017, questioning "is it advisable to try to move her to a different site when she is making threats to sue HMMA over the appearance standards?"

[5]   Email from Cureton to Spires dated August 8, 2017, about Key's written complaint and rebuttal concerning the termination of her assignment at Hyundai. In the email, Cureton questions what other steps he should take.

[6]   Email from Cureton to Spire on August 10, 2017 asking "in light of [Key's] current complaint, am I free to offer her a position with Dynamic should we be able to agree on a place for her to work."

[7]   Email from Spires to Riddle dated August 11, 2017, stating about Key's EEOC Charge, "I knew this was coming from day one so I built my file on her which is attached."

[8]    Email from Spires to Riddle dated August 29, 2017, in which Spires writes "it's very important that Key gets denied unemployment benefits since she has also filed an EEOC Charge."

Plaintiff's Response to Defendant's Post-Trial Motions
*Key v. Dynamic Security, Inc.*
United States District Court for the Middle District of Alabama
Civil Action 2:19-CV-767-ECM

- 14 -

terminating her employment as of the time that Dynamic received Key's EEOC
Charge on or about August 10, 2017.

Prior to moving for summary judgment, Dynamic fully participated in all
aspects of discovery, including serving written discovery, attending and
questioning Key at her deposition, attending and questioning all other
witnesses/parties and their depositions, and receiving copies of all discovery
produced. Dynamic cannot claim prejudice or surprise by Key's contention that
Dynamic refused to reassign her to another job because of her complaints.
Dynamic's argument that Key did not assert a retaliation claim against it is
inconsistent with Key's Amended Complaint and the record evidence.

Further, Dynamic's argument Key did not state a valid claim against
Dynamic (Doc. 197, p. 9) is untimely since it was raised after Dynamic filed its
Answer. The authority on which Dynamic relies addresses the Court's obligation
on a 12(b)(6) Motion to Dismiss. "A motion asserting [a defense for failure to state
a claim] must be made before pleading if a responsive pleading is allowed." FED.
R. CIV. P. 12(b). Dynamic recognized Key brought a §1981 retaliatory termination
claim against it in her Amended Complaint when it filed a motion to dismiss the
claim, merely incorporating the argument of other defendants, but not asserting any

Plaintiff's Response to Defendant's Post-Trial Motions
*Key v. Dynamic Security, Inc.*
United States District Court for the Middle District of Alabama
Civil Action 2:19-CV-767-ECM

- 15 -

lack of factual allegations applicable to Dynamic. (Doc. 32 p. 12-13). The Court denied that motion in its entirety. (Doc. 38). Dynamic answered Key's Amended Complaint September 14, 2021. (Doc. 43).

For the foregoing reasons, this Court should deny Dynamic's motion for judgment as a matter of law on the issue of whether Key asserted a retaliation claim against it.

B.     <u>Key engaged in activity protected by 42 USC § 1981.</u>

Dynamic contends Key's complaints to it and then later the United States Equal Employment Opportunity Commission ("EEOC")[9] about how she was treated due to the natural styling of her hair cannot, as a matter of law, be a complaint protected by § 1981. Dynamic's argument hinges on what constitutes protected activity.

A plaintiff can show that she engaged in a statutorily protected activity if her complaint "explicitly or implicitly communicate[s] a *belief* that the practice constitutes unlawful employment discrimination." *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1311 (11th Cir. 2016) (citation omitted) (emphasis added). A

---

[9]     On August 11, 2017, Dynamic received a *Notice of Charge of Discrimination* from the EEOC notifying Dynamic that Key filed a charge against it for retaliation, race, and sex discrimination. (PL Trial Ex 9).

Plaintiff's Response to Defendant's Post-Trial Motions
*Key v. Dynamic Security, Inc.*
United States District Court for the Middle District of Alabama
Civil Action 2:19-CV-767-ECM

- 16 -

plaintiff must show that she "had a good faith, reasonable belief that the employer was engaged in unlawful employment practices." *Id.* (citing *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997)). Her burden includes both a subjective and an objective component—"[t]hat is, the plaintiff must not only show that she subjectively (i.e., in good faith) believed the defendant was engaged in unlawful employment practices, but also that her belief was *objectively* reasonable in light of the facts and record present." *Id.* (emphasis in original) (quotations and citation omitted).

The plaintiff, however, "is not required to prove that the discriminatory conduct complained of was actually unlawful" for the retaliation claim to succeed. *Id.*  In fact, "[e]ven reporting substantively *lawful* conduct is a protected activity, 'so long as [the employee] demonstrates a good faith, reasonable belief that the employer was engaged in unlawful employment practices.'" *Alkins v. Sheriff of Gwinnett Cty.*, 2022 U.S. App. LEXIS 23352, at *5-6, (11th Cir. Aug. 22, 2022) (finding protected activity where a reasonable person in the plaintiff's shoes could believe that receiving a single, unwanted, open-mouth kiss, years prior, was sexual harassment.)  The conduct need only "be close enough to support an objectively reasonable belief that it is." *Furcron* 843 F.3d at 1311 (citation

Plaintiff's Response to Defendant's Post-Trial Motions
*Key v. Dynamic Security, Inc.*
United States District Court for the Middle District of Alabama
Civil Action 2:19-CV-767-ECM

- 17 -

omitted). Whether the offensive conduct is "close enough" to an unlawful employment practice is "measured by reference to controlling substantive law" at that time and requires a fact intensive analysis of the reasonableness of the plaintiff's belief considering a totality of the circumstances. *See Alkins*, 2022 U.S. App. LEXIS 23352 at *6.

Dynamic argues that because the wording of Key's complaint referenced her hair[10] and under the precedent of *Equal Emp't Opportunity Comm'n v. Catastrophe Mgmt. Sols*, 852 F.3d 1018 (11th Cir. 2016), such a complaint could never be a complaint of race discrimination. Dynamic's argument ignores both the evidence and circumstances surrounding Key's complaint and the fair reading of *Catastrophe Management.*

First, in examining a complaint to determine if it is a protected complaint of race discrimination, the conduct at issue must not "be viewed in isolation, but rather it is to be viewed cumulatively, and in its social context." *Furcron*, 843 F.3d at 1312 (citation omitted). The evidence at trial was that on August 1, 2017, Gloria

---

[10]     Because Dynamic bears the burden of identifying the grounds for its motion and then carrying its burden of proof on those grounds, Key should not be required to address every possible argument Dynamic could make in support of its motion. Key's response on this issue is limited only to the argument Dynamic actually raised. Key does not waive her ability to address any future arguments on this issue that may be raised at a later time by the Court or others.

Plaintiff's Response to Defendant's Post-Trial Motions
*Key v. Dynamic Security, Inc.*
United States District Court for the Middle District of Alabama
Civil Action 2:19-CV-767-ECM

- 18 -

Robinson, a manager for Dynamic, met with Key about Key's request to see applicable grooming standards and Key's complaint to her trainer that she felt discriminated against. Robinson told Key she should hot have asked to see the grooming policy because the Koreans were a different breed of animals and that they send little memos and they don't want African Americans . . . wearing their hair in dreadlocks because VIP clientele could see them. After that meeting, Key testified she believed that was racist and told Maurice Chambliss, another Dynamic manager, that she wanted to file an official complaint of discrimination. (PL Trial Ex 4). Chambliss emailed Key's complaint that she felt she had "been discriminated against on the basis of my current hairstyle (dreadlocks)" to Dynamic's District Manager, Ray Cureton. (Id.). Key met with Cureton where she testified that she told him everything. In response, he stated he was just a fat old white guy and he didn't know what "they" went through. Later, on August 11, Dynamic received notice from the EEOC that Key had filed a charge of discrimination alleging race discrimination. (PL Trial Ex 10).

Dynamic's training on avoiding discrimination explained that "[r]ace discrimination involves treating a person unfavorably because he or she is of a certain race or because of personal characteristics associated with race such as hair

Plaintiff's Response to Defendant's Post-Trial Motions
*Key v. Dynamic Security, Inc.*
United States District Court for the Middle District of Alabama
Civil Action 2:19-CV-767-ECM

- 19 -

texture . . ." (PL Trial Ex 22, Bates No. Dynamic-Key 0000117). Cureton testified he received Dynamic's discrimination training for managers contained at PL Trial Ex 22, Bates No. Dynamic-Key 0000117. Sherry Spires, Dynamic's Human Resources Manager in 2017, acknowledged in her trial testimony that discriminating against someone due to his or her hair texture could be unlawful discrimination. Key testified her hair texture was inextricably linked to her race, and she saw the two issues as one in the same.

These facts viewed cumulatively and in context, especially in proximity between the complaint and Robinson's alleged statement about Koreans not liking African Americans wearing their hair in dreadlocks, demonstrated that there was a question of fact as to whether Key had both a subjective and objective good faith belief that the way she was being treated was unlawful race discrimination. A reasonable jury could, and did, find that these facts permitted Key to both subjectively and objectively believe that complaining about discrimination due to her dreadlocks was the functional equivalent of complaining about race discrimination. Thus, based on the context Dynamic's training and understanding that discrimination based on hair texture could be race discrimination and Robinson's alleged statement, Key presented evidence she engaged in statutorily

Plaintiff's Response to Defendant's Post-Trial Motions
*Key v. Dynamic Security, Inc.*
United States District Court for the Middle District of Alabama
Civil Action 2:19-CV-767-ECM

- 20 -

protected activity. *See Martin v. Fin. Asset Mgmt. Sys., Inc.*, 959 F.3d 1048, 1053 n.3 (11th Cir. 2020) ("[Section] 1981 prohibits employers from retaliating against employees for complaining about race discrimination.").

Dynamic's argument about Key's complaint in light of *Catastrophe Management* appears to heighten the burden on a retaliation plaintiff to prove that the conduct about which she complained was actually discrimination. Dynamic's argument runs contrary to the law. To succeed on a retaliation claim, Key did not need to prove that the conduct she complained of was actually unlawful. *See Furcron v. Mail Ctrs. Plus, LLC,* 843 F.3d 1295, 1311 (11th Cir. 2016). She only had to prove that the conduct was "close enough to support an objectively reasonable belief" that it was unlawful. *Id.*  As argued above, she carried this burden.

Further, Dynamic's reliance on *Catastrophe Management* for the broad assertion that dreadlocks are never a protected hairstyle and cannot therefore be the basis of retaliation claims goes too far.[11]  This matter is distinguishable because

---

[11]     *Catastrophe Management* arose from an appeal from an order granting a 12(b)(6) motion to dismiss. In the case, Catastrophe Management Solutions refused to employ Chastity Jones, a black job applicant who wore her hair in dreadlocks, based on its race-neutral grooming policy. The EEOC challenged the decision as unlawful disparate treatment based on race.

Plaintiff's Response to Defendant's Post-Trial Motions
*Key v. Dynamic Security, Inc.*
United States District Court for the Middle District of Alabama
Civil Action 2:19-CV-767-ECM

- 21 -

there is evidence permitting the inference that the policy prohibiting dreadlocks at Hyundai was a proxy for race discrimination, something not present in *Catastrophe Management.*[12] Because the grooming policy Key complained of was a proxy for race discrimination, she engaged in protected activity when she complained that she was being treated unfairly because of her hair. Dynamic's motion for judgment as a matter of law as it relates to the jury's finding that Key engaged in protected activity should be denied.

C.    Dynamic's "best evidence" rule argument ignores the purpose for which Robinson's statements were offered.

Dynamic argues it is entitled to judgment as a matter of law on the issue of whether Key had a good faith belief she was complaining of unlawful race discrimination because Key's testimony about what Robinson said to her concerning the Koreans not wanting Black employees to wear their in dreadlocks was hearsay which should have been excluded under the "best evidence rule." Dynamic appears to argue that only the "memos" which Key testified Robinson

---

[12]    Key's case is also distinguishable from *Catastrophe Management* because her claim was not that her hairstyle was chosen as "historically, physiologically, and culturally associated with their race." *EEOC v. Catastrophe Mgmt. Sols.,* 852 F.3d 1018, 1030 (11th Cir. 2016). To the contrary, Key testified she does not chemically treat her hair and that she is wearing her hair in its natural state. Key's situation is more in line with discrimination on the basis of black hair texture, a texture she cannot mute without chemical treatments. *See Id.* (recognizing discrimination on the basis of hair texture where the plaintiff wore her hair in an Afro).

Plaintiff's Response to Defendant's Post-Trial Motions
*Key v. Dynamic Security, Inc.*
United States District Court for the Middle District of Alabama
Civil Action 2:19-CV-767-ECM

- 22 -

mentioned to her could be admitted as evidence to show Key's belief in her

complaint.

Dynamic's argument ignores that not all out-of-court statements are hearsay.

The purpose for which a piece of evidence governs whether it is hearsay. If an out-

of-court statement is offered to prove the truth of the matter asserted, it is hearsay.

FED. R. EVID. 801. The rule ensures reliability of evidence. The best evidence rule

tends to go hand-in-hand with the rule against hearsay. Under the best evidence

rule, "the production of the original document is required to prove the contents of a

writing." FED. R. EVID. 1002. But the rule does not require admission of document

if the testimony is not offered to prove the contents of the document, but instead,

some other fact, like state of mind, understanding, or intent. *See City of Rome v.*

*Hotels.com, LP*, 2011 U.S. Dist LEXIS 158580, at *31 (N.D. Ga. Mar. 21, 2011)

(finding the best evidence rule did not apply where the content of the contracts was

not at issue, only the understanding of the contracts.)   "Generally, an out-of-court

statement admitted to show its effect on the listener is not hearsay." *United States*

*v. Trujillo*, 561 F. App'x 840, 842 (11th Cir. 2014). The entire evidentiary purpose

of the Gloria Robinson statement is related to the effect on Key and her reasonable

belief that her complaint was about race. Just as argued above that Key does not

Plaintiff's Response to Defendant's Post-Trial Motions
*Key v. Dynamic Security, Inc.*
United States District Court for the Middle District of Alabama
Civil Action 2:19-CV-767-ECM

- 23 -

have to prove she actually experienced race discrimination to prove she engaged in protected activity, she does not have to prove the actual contents of any purported memos. Rather, she has to present evidence as to why she felt her complaint was one of race discrimination. She did that by pointing to Robinson's statements and their effect on her. Whether the memo existed, or the actual contents of the memo is irrelevant to Key's claim, the only relevant information is Robinson's statement and the effect on Key.

Dynamic argued to the jury that Robinson did not make the statement about the Koreans and that no memos existed. Key presented evidence that Robinson made the statement to her and that Robinson's words led Key to believe the grooming policy was directed at black employees. The issues that were to be resolved by the jury were whether Robinson made the statement and what effect the purported statement had on Key. The jury resolved these disputed issues in favor of Key. Dynamic's motion for judgment as a matter of law based on the "best evidence rule" should be denied.

D.   <u>Key presented evidence that Cureton, Spires, and Riddle knew Key complained of race discrimination.</u>

In challenging whether Key presented evidence of causation for her retaliation claim, Dynamic argues that there is no evidence "the decision maker"

Plaintiff's Response to Defendant's Post-Trial Motions
*Key v. Dynamic Security, Inc.*
United States District Court for the Middle District of Alabama
Civil Action 2:19-CV-767-ECM

- 24 -

knew she complained of race discrimination.[13] Dynamic's argument is not that Cureton was unaware of Key's complaints, but rather that he did not appreciate they were complaints of race discrimination.  This argument, at is core, is a rephrasing of Dynamic's earlier argument that Key's complaint about hair discrimination was not a complaint of race discrimination. Key adopts and incorporates her arguments by reference.

As argued above, Dynamic's training, which Cureton testified he received, advised that race discrimination included discrimination based on hair texture. Key testified she told Cureton everything and that Cureton responded that he was just a fat old white guy and didn't know what "they" went through. Cureton referred to Key's complaint as an "official complaint of discrimination" and noted that she planned to sue because of it.[14] Cureton received, and forwarded Human Resources

---

[13]    It appears Dynamic may be casting Cureton in the role of decision maker since he is referenced in the subsequent lines of argument (Doc. 197, p. 25), but Dynamic does not expressly identify him as the decision maker for not reassigning Key.

[14] In considering an whether an employer has notice of a complaint, the courts have looked to the surrounding circumstances, including the response by the person receiving the complaint. *Olson v. Lowe's Home Ctrs., Inc.*, 130 F. App'x 380, 390-91 (11th Cir. 2005) (finding a question of fact existed as to whether the employee utilized the complaint process where the complaint did not use the terms "sexual harassment" but complained about a specific individual, stated something needed to be done, because he made statements that were "out there", but the employer responded that it could be sexual harassment and she would report it up the chain.)

Plaintiff's Response to Defendant's Post-Trial Motions
*Key v. Dynamic Security, Inc.*
United States District Court for the Middle District of Alabama
Civil Action 2:19-CV-767-ECM

- 25 -

and Legal for Dynamic, the notice of Key's Charge of Discrimination outlining she had filed a charge for race discrimination.[15] Key argued to a jury these facts evidenced Dynamic knew Key's complaint was a complaint of race discrimination. Dynamic argued to the jury that Cureton did not know this was a complaint of discrimination. The jury resolved this dispute in favor of Key. Dynamic's motion for judgment as a matter of law is due to be denied because there is evidence from which a jury could, and did, find that Cureton knew Key complained of race discrimination, and as a result, Dynamic did not reassign her to another job.

    E.    <u>Dynamic is not entitled to judgment as a matter of law on punitive damages.</u>

Dynamic argued it is entitled to judgment as a matter of law on the punitive damages because the decision-maker for Key's non-reassignment was not high enough in the corporate hierarchy and higher management did not approve the decision. District courts lack authority to grant a Rule 50(b) motion on a ground

---

[15]    While Dynamic argues in its motion that "no evidence exists that the Plaintiff made any attempt to be further assigned after the August 11, 2017 notice" so there could not be any retaliation due to the EEOC notice. However, Dynamic's argument ignores the trial testimony that on August 11 after receiving the EEOC Charge, Dynamic considered Key to be a former employee and did not look for any assignments for her. On August 11, after receiving the EEOC Charge, Dynamic questioned how to characterize Key's separation of employment as "voluntary quit" or "job refusal." (PL Trial Ex 11). Key presented evidence at trial that once Dynamic saw Key had made her discrimination complaint "official" by going to the EEOC, it decided she was not longer an employee and did not look for any job assignments for her.

Plaintiff's Response to Defendant's Post-Trial Motions
*Key v. Dynamic Security, Inc.*
United States District Court for the Middle District of Alabama
Civil Action 2:19-CV-767-ECM

- 26 -

not previously raised in a Rule 50(a) motion prior to the submission of the case to the jury." *Johnston v. Borders*, 36 F.4th 1254, 1270 n.31 (11th Cir. 2022). Dynamic did not raise this argument in its Rule 50(a) motion. (Doc. 182). The only argument on punitive damages in that motion was Plaintiff did not put forth substantial evidence Dynamic acted with malice or reckless indifference to Plaintiff's federally protected rights. (Doc. 182, p. 4). Defendant's renewed motion for judgment as a matter of law did not advance this argument. (Doc. 183). This argument, therefore, is not properly before the Court in terms of a motion for judgment as a matter of law.

Even if the issue were before the Court, Key presented the jury with evidence that the decisions not to reassign her involved (1) Cureton, Dynamic's district manager and highest-ranking employee in Montgomery, (2) Sherry Spires, Dynamic's Human Resources Manager, and (3) Kristal Riddle, Dynamic's Chief Legal Officer. (PL Trial Exhibits 4, 5, 7, 8, 10, and 13). Despite the District Manager, Human Resources Manager, and Chief Legal Officer being the persons involved in the decision(s) not to reassign Key to another job, Dynamic asserts Key cannot refute the argument that Cureton was not high enough in the corporate hierarchy to allow for punitive damages.

Plaintiff's Response to Defendant's Post-Trial Motions
*Key v. Dynamic Security, Inc.*
United States District Court for the Middle District of Alabama
Civil Action 2:19-CV-767-ECM

- 27 -

In *Kolstad v. Am Dental Ass'n*, 527 U.S. 526 (1999), the United States Supreme Court took up the issue of punitive damages in employment discrimination case in the context of the decision maker's place in the corporate hierarchy. The Supreme Court held that punitive damages were imputable when the wrongdoing employee discriminated while "acting in the scope of employment" and serving in a "managerial capacity." *Kolstad*, 527 at 543. The Court noted that "determining whether an employee [served in a managerial capacity] requires a fact-intensive inquiry," and it instructed courts to evaluate the employee's "type of authority" and "amount of discretion" in making that determination. *Id.* (internal quotation marks omitted). The Court's instruction, which focuses the inquiry on the discriminating employee's authority and responsibilities, appears to conflict with the Eleventh Circuit's earlier higher management standard, which looks to the size of the employer and the discriminating employee's rank in the corporate hierarchy. *EEOC v. Exel, Inc.*, 884 F.3d 1326, 1332 (11th Cir. 2018). Indeed, the Supreme Court said that "an employee must be important, but perhaps need not be the employer's top management, officers, or directors." *Id.* (internal quotation marks omitted). Cureton, Spires, and Riddle all meet the management standard set forth in *Kolstad.*

Plaintiff's Response to Defendant's Post-Trial Motions
*Key v. Dynamic Security, Inc.*
United States District Court for the Middle District of Alabama
Civil Action 2:19-CV-767-ECM

- 28 -

Under United States Supreme Court precedent, Key presented evidence imputing

punitive damages.

Even under the "higher management"[16] standard found in earlier Eleventh

Circuit precedent, Key presented evidence sufficient to impute punitive damages to

Dynamic. Whether a manager is high enough in the hierarchy to satisfy the

punitive damages requirement is a question of fact for the jury to resolve. *Webb v.*

*Worldwide Flight Servs.*, 2004 U.S. Dist. LEXIS 31191, at *14-19 (S.D. Fla. July

12, 2004).  The evidence demonstrated Cureton was the final say in Key's district

as to where she could be placed. Spires was the final say as it related to human

resources. And Riddle, Dynamic's owner's daughter-in-law, reported directly to

the company's Executive Vice President, her husband. These three individuals

were not low-level managers, but rather worked in positions of great influence over

not only Key but others working for Dynamic such that their actions could be seen

as the actions of Dynamic. Dynamic's motion for judgment as a matter of law on

the issue of punitive damages should be denied.

---

[16]      Unfortunately, the case law does not contain any meaningful definition of "higher management." *See Wilbur v. Corr. Servs. Corp.*, 393 F.3d 1192, 1205 (11th Cir. 2004); *Miller v. Kenworth of Dothan Inc.*, 277 F.3d 1269, 1280 (11th Cir. 2002); *Dudley v. Wal-Mart Stores, Inc.*, 166 F.3d 1317, 1323 (11th Cir. 1999).)

Plaintiff's Response to Defendant's Post-Trial Motions
*Key v. Dynamic Security, Inc.*
United States District Court for the Middle District of Alabama
Civil Action 2:19-CV-767-ECM

- 29 -

Dynamic also tried to argue that higher management did not countenance or approve Cureton's decision. This argument ignores Spires' and Riddle's involvement in the decision not to reassign Key, particularly in the time period after Cureton's termination by Dynamic in 2017.

Finally, Dynamic argued its "good faith efforts to comply with job discrimination laws" weighed against an award of punitive damages. Dynamic's argument ignores that its witnesses could not testify that the company's anti-discrimination policies were effective and conceded that while its handbook given to Key and others contained various conduct-related policies, the company's multi-page policies relating to discrimination and harassment were only kept in district offices (not where employees performed work) in a notebook. Dynamic even took the position that its human resources manager did not receive its anti-discrimination training. Finally, there was no evidence that in response to Cureton's multiple email expressions of reservation about reassigning Key due to her complaints, Spires or Riddle admonished him that refusing to reassign her would be unlawful retaliation. The evidence at trial demonstrated Dynamic fell woefully short of making a good faith effort to comply with job discrimination

Plaintiff's Response to Defendant's Post-Trial Motions
*Key v. Dynamic Security, Inc.*
United States District Court for the Middle District of Alabama
Civil Action 2:19-CV-767-ECM

- 30 -

laws. Dynamic's motion for judgment as a matter of law on the issue of punitive damages should be denied.

## III.   DYNAMIC IS NOT ENTITLED TO A NEW TRIAL.

Pursuant to Rule 59 of the Federal Rules of Civil Procedure, the "court may, on motion, grant a new trial on all or some of the issues —— and to any party — — as follows: (A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." The applicable standard for granting a Rule 59 motion for a new trial is when the verdict is against the clear weight of the evidence or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent a directed verdict. *Lipphardt v. Durango Steakhouse of Brandon, Inc.*, 267 F.3d 1183, 1186 (11th Cir. 2001). New trials should not be granted on evidentiary grounds unless the verdict is against the great weight of the evidence. *Lipphardt*, 237 F.3d at 1186.

There is a significant distinction between the standard applied in evaluating a Rule 50 motion and a Rule 59 motion: "'Although a trial judge cannot weigh the evidence when confronted with a motion (for judgment) notwithstanding the verdict [a Rule 50(b) motion for judgment as a matter of law], in a motion for a new trial the judge is free to weigh the evidence.'" *Williams v. City of Valdosta*,

Plaintiff's Response to Defendant's Post-Trial Motions
*Key v. Dynamic Security, Inc.*
United States District Court for the Middle District of Alabama
Civil Action 2:19-CV-767-ECM

- 31 -

689 F.2d 964, 973 (11th Cir. 1982) (quoting *Rabun v. Kimberly-Clark Corp.*, 678

F.2d 1053, 1060 (11th Cir. 1982) (*citing King v. Exxon Co.*, 618 F.2d 1111, 1115

(5th Cir. 1980))).

As argued above, the evidence Key presented at trial included evidence that

management at Dynamic, through its training, could equate hair discrimination and

race discrimination, Dynamic expressed reservations about placing Key in another

job after learning of Key's complaint, and Dynamic considered Key a former

employee once it received her EEOC Charge alleging race discrimination. The

great weight of evidence supported the jury's verdict in Key's favor.

A.    The Court's jury charges were proper.

The United States Court of Appeals for the Eleventh Circuit reviews jury

instructions *de novo* to determine whether they misstate the law or mislead the jury

to the prejudice of the objecting party." *Conroy v. Abraham Chevrolet-Tampa,*

*Inc.*, 375 F.3d 1228, 1233 (11th Cir. 2004) (quotation marks omitted). "If . . . the

instructions accurately reflect the law, the district court has wide discretion as to

the instructions' style and wording," and "we will only reverse if (1) the contents of

the requested instruction are not adequately covered by the jury charge and (2) the

requesting party suffers prejudicial harm." *Id.; Gowski v. Peake*, 682 F.3d 1299,

Plaintiff's Response to Defendant's Post-Trial Motions
*Key v. Dynamic Security, Inc.*
United States District Court for the Middle District of Alabama
Civil Action 2:19-CV-767-ECM

- 32 -

1310 (11th Cir. 2012) (per curiam) ("We review jury instructions for abuse of discretion and give trial judges wide discretion as to the style and wording employed." (quotation marks omitted)). The Eleventh Circuit reviews orders denying motions for a new trial based on erroneous and prejudicial jury instructions for an abuse of discretion. *Gowski*, 682 F.3d at 1310. Dynamic's motion does not meet the high burden of showing this Court abused its discretion, misled the jury, or misstated the law with respect to the jury instructions on the elements of a retaliation claim, *Catastrophe Management*, or on comments made in closing argument.

> 1.   This Court's instructions on retaliation accurately presented the issues and law to the jurors.

This Court's jury instructions largely resembled the Eleventh Circuit's pattern jury charge for a § 1981 retaliation claim. Dynamic argues these instructions were erroneous because they did not ask the jury to determine if Key engaged in protected activity by complaining about race discrimination. Dynamic's argument is incorrect. The Court instructed the jury that the first element it had to resolve was whether Key engaged in protected activity when she complained to Dynamic. (Doc. 184-6-7). The first question the Court asked the jury to answer on

Plaintiff's Response to Defendant's Post-Trial Motions
*Key v. Dynamic Security, Inc.*
United States District Court for the Middle District of Alabama
Civil Action 2:19-CV-767-ECM

- 33 -

the verdict form was "[t]hat Davita M. Key engaged in protected activity?" (Doc. 185, p. 1).

Dynamic argued this Court should have deviated from the pattern instructions by directing the jury that for Key to have engaged in protected activity, she would need to explicitly or implicitly communicate she was complaining of race discrimination. Dynamic's argument is an appeal for an instruction that a complaint of race discrimination is only protected if it uses the magic words "race discrimination." Dynamic's requested instruction is not an accurate statement of the law; this Court's instruction was.[17]

For a complaint of discrimination to constitute protected activity, the complaint does not have to specifically use the phrase "race discrimination" or any other magic words, but the facts and circumstances surrounding the complaint should permit the inference that the complaint is about unlawful discrimination. *See Mazloum v. District of Columbia,* 442 F. Supp. 2d 1, 13 (Dist. of Columbia 2006) ("To alert the defendant that he is opposing discrimination, the "[plaintiff] need not . . . employ any `magic words,' such as `discrimination,' for the

---

[17] To a certain extent, Dynamic's argument for "magic words" in the jury charges is a repackaged version of its argument for judgment as a matter of law that Key's complaint was not a complaint of race discrimination. Plaintiff adopts and incorporates her arguments on that point by reference.

Plaintiff's Response to Defendant's Post-Trial Motions
*Key v. Dynamic Security, Inc.*
United States District Court for the Middle District of Alabama
Civil Action 2:19-CV-767-ECM

- 34 -

communication of a complaint of unlawful discrimination . . . may

be *inferred* or *implied'* from the surrounding facts;" ) *Okoli v. City Of Baltimore*,

648 F.3d 216, 224, n.8 (4th Cir. 2011) (sexual harassment case): ("Several sister

circuits have noted that sexual harassment complaints need not include 'magic

words' such as 'sex' or 'sexual' to be effective. *See, e.g., Broderick v.

Donaldson,* 437 F.3d 1226, 1232 (D.C.Cir.2006) ("While no 'magic words' are

required, the complaint must in some way allege unlawful discrimination, not just

frustrated ambition.")*; Olson v. Lowe's Home Ctrs. Inc.,* 130 Fed.Appx. 380, 391

n. 22 (11th Cir.2005) (unpublished) ('There is no magic word requirement. That is,

the employee need not label the events 'sexual harassment' in order to place an

employer on notice of the offending behavior')." As argued *supra*, a complaint

must be viewed in context of the circumstances of which it was made. From those

facts, a jury can determine whether the complaint was about unlawful

discrimination.[18] This Court's instructions were consistent with that legal principle

and accurately stated the law.

---

[18]     While in the context of gender discrimination under Title VII, the United States Supreme Court in discussing what constitutes a but-for cause recognized how concerns are communicated conversationally without invoking legal language but are still identifiable as unlawful discrimination:

Plaintiff's Response to Defendant's Post-Trial Motions
*Key v. Dynamic Security, Inc.*
United States District Court for the Middle District of Alabama
Civil Action 2:19-CV-767-ECM

- 35 -

2.     This Court's instructions accurately communicated the law on causation.

Dynamic argues for a new trial contending the jury should have been instructed that the decision maker(s) for the decision not to reassign Key would have to conclude Key's discrimination complaint was a complaint of unlawful race discrimination for a jury to find that Dynamic did not reassign Key to another job because of her complaints. This is essentially the same knowledge/causation argument Dynamic raised as part of its Rule 50 motions. Key adopts and incorporates her response to that argument by reference.

---

But this submission rests on a mistaken understanding of what kind of cause the law is looking for in a Title VII case. In conversation, a speaker is likely to focus on what seems most relevant or informative to the listener. So an employee who has just been fired is likely to identify the primary or most direct cause rather than list literally every but-for cause. To do otherwise would be tiring at best. But these conversational conventions do not control Title VII's legal analysis, which asks simply whether sex was a but-for cause. In *Phillips*, for example, a woman who was not hired under the employer's policy might have told her friends that her application was rejected because she was a mother, or because she had young children. Given that many women could be hired under the policy, it's unlikely she would say she was not hired because she was a woman. But the Court did not hesitate to recognize that the employer in *Phillips* discriminated against the plaintiff because of her sex. Sex wasn't the only factor, or maybe even the main factor, but it was one but-for cause—and that was enough. You can call the statute's but-for causation test what you will—expansive, legalistic, the dissents even dismiss it as wooden or literal. But it is the law.

*Bostock v. Clayton Cty.*, 140 S. Ct. 1731, 1745 (2020).

Plaintiff's Response to Defendant's Post-Trial Motions
*Key v. Dynamic Security, Inc.*
United States District Court for the Middle District of Alabama
Civil Action 2:19-CV-767-ECM

Initially, this Court's instruction on the issue of protected activity essentially addresses Dynamic's concern. This Court instructed the jury that for Key's complaint to be protected she would have to have a good faith, reasonable belief she was discriminated against because of race. (Doc. 184, p. 6). The Court then clarified that a belief is "reasonable" if a reasonable person would, under the circumstances, believe that she was discriminated against because of her race. (Doc. 184, p. 6). This instruction permitted the Defendant to argue, which it did, that a reasonable person, or its managers, would not see Key's complaint as protected activity.

Second, most of the case authority cited by Dynamic about the need to show knowledge on the part of the decision maker of protected activity involved situations where the decision makers denied knowledge of any complaints. Here, there is no dispute that Dynamic Security's decision maker(s) knew Key had made on official complaint of discrimination and filed an EEOC Charge alleging race discrimination. Dynamic's argument, or dispute, is that based on the self-serving testimony of the decision maker(s) denying that it considered her complaint one of race discrimination, it could not be motivated by retaliatory animus. The case law relied on by Dynamic requiring evidence of knowledge does not apply to this

Plaintiff's Response to Defendant's Post-Trial Motions
*Key v. Dynamic Security, Inc.*
United States District Court for the Middle District of Alabama
Civil Action 2:19-CV-767-ECM

- 37 -

situation. Dynamic essentially wanted the Court to instruct the jury to make a fact finding in its favor. That is not the proper use of jury instructions, and the Court did not err in refusing to deviate from the pattern instruction and generally established law concerning the elements of retaliation. Dynamic's motion for a new trial should be denied.

> 3.   Statements made in closing arguments do not warrant a new trial.

Dynamic argues it is entitled to a new trial due to alleged improper comments made by Plaintiff's counsel in closing argument. A trial court has broad discretion to regulate the scope of closing arguments. *See Danow v. Borack*, 346 F. App'x 409, 410 (11th Cir.2009); *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1282 (11th Cir.2008); *Allstate Ins. Co. v. James*, 845 F.2d 315, 318 (11th Cir.1988). Improper closing arguments rarely warrant new trials; courts should be "reluctant to set aside a jury verdict because of an argument made by counsel during closing arguments." *Vineyard v. County of Murray, Ga.*, 990 F.2d 1207, 1214 (11th Cir.1993); *Peterson v. Willie*, 81 F.3d 1033, 1036 (11th Cir. 1996) ("Statements made in oral arguments must be plainly unwarranted and clearly injurious to constitute reversible error."). "The standard for determining whether a jury verdict should be set aside as a result of misconduct of counsel is whether the

Plaintiff's Response to Defendant's Post-Trial Motions
*Key v. Dynamic Security, Inc.*
United States District Court for the Middle District of Alabama
Civil Action 2:19-CV-767-ECM

- 38 -

conduct was 'such as to impair gravely the calm and dispassionate consideration of the case by the jury.'" *BankAtlantic v. Blythe Eastman Paine Webber, Inc.,* 955 F.2d 1467, 1474 (11th Cir. 1992) (citations omitted). While identifying statements it believes to be improper, Dynamic makes no effort to show that the statements were of such character to gravely impair the calm and dispassionate consideration of the jury. Thus, Dynamic did not carry its burden in its motion.

Initially, Dynamic argues that Key's counsel made an incorrect factual statements to the jury. Key's counsel denies that conduct, but whether the conduct occurred is immaterial because this Court instructed the jury to consider only the evidence admitted in the case, that the evidence consisted of witness testimony and exhibits admitted, and that "anything the lawyers say is not evidence and isn't binding on you." (Doc. 184, p. 2). Dynamic points to no evidence of facts that suggest the jury disregarded this instruction, disregarded the evidence, and relied on the argument of counsel as opposed to the evidence to reach its conclusion.

Dynamic also argues that Key violated this Court's ruling on motions in limine by referring to Key's EEOC filing as protected activity. Viewed in context, Key's counsel argued the EEOC filing was a continuation of Key's initial complaint of discrimination made less than two weeks earlier. The EEOC filing

Plaintiff's Response to Defendant's Post-Trial Motions
*Key v. Dynamic Security, Inc.*
United States District Court for the Middle District of Alabama
Civil Action 2:19-CV-767-ECM

- 39 -

was Key making her complaint of discrimination "official." Dynamic takes issue

with this argument saying it was an attempt to convince the jury that the EEOC

Charge was protected activity. Dynamic contends it was entitled to a curative

instruction. A court has "considerable discretion regarding the extent and character

of supplemental jury instructions." *United States v. Lopez*, 590 F.3d 1238, 1247-48

(11th Cir. 2009). A challenged supplemental jury instruction is reviewed as part of

the entire jury charge, and in light of the pleadings, the evidence presented and

argument of counsel to determine whether the jury was misled or misunderstood

the issues. *Id.* at 1248.

Dynamic offers no evidence or analysis that establishes the jury was misled

or misunderstood the issues. This Court's jury charges directed the jury, as it

related to protected activity that "Key claims that she engaged in protected activity

when she complained to Dynamic that she felt discriminated against based on her

race." (Doc. 184, p. 6) There is nothing to suggest the jury did not understand or

follow that instruction.

Dynamic's motion for a new trial based on the closing argument of counsel

is a laundry list of statements with which Dynamic disagrees, but the statements at

issue are supported by evidence in the records. This Court's instructions as to what

Plaintiff's Response to Defendant's Post-Trial Motions
*Key v. Dynamic Security, Inc.*
United States District Court for the Middle District of Alabama
Civil Action 2:19-CV-767-ECM

- 40 -

constitutes protected activity and not to treat the arguments of counsel as evidence cured any alleged undue prejudice Dynamic contends it suffered as a result of those statements. Dynamic has not met the very high burden of showing any statements made in Plaintiff's closing argument were of such character to gravely impair the calm and dispassionate consideration of the jury. Thus, Dynamic did not carry its burden in its motion and should not be granted a new trial.

> B.   This Court properly refused to strike Key's jury demand.

> > 1.    Key did not knowingly and voluntarily waive her right to a trial by jury.

Key has a fundamental right to a trial by jury secured by both the United States Constitution and federal law.[19] Accordingly, courts analyze waivers of this right with "exacting scrutiny, indulging all reasonable presumptions against a finding of waiver." *Graves v. Avis Budget Grp., Inc.*, No. 8:20-cv-270-CEH-JSS, 2022 U.S. Dist. LEXIS 129849, at *7 (M.D. Fla. July 21, 2022). *See also Aetna Ins. Co. v. Kennedy,* 301 U.S. 389, 393 (1937); *Burns v. Lawther*, 53 F.3d 1237, 1240 (11th Cir. 1995). In analyzing a potential waiver, the "court's discretion is

---

[19]    "In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved . . . " U.S. Const. amend. VII. The Civil Rights Act of 1991 amended Title VII, in relevant part, by creating a right to trial by jury. *See* 42 U.S.C. §§ 1981a(a)(1) & (c); Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e to 2000e-17; *Goodgame v. American Cast Iron Pipe Co.,* 75 F.3d 1516, 1518 (11th Cir. 1996).

Plaintiff's Response to Defendant's Post-Trial Motions
*Key v. Dynamic Security, Inc.*
United States District Court for the Middle District of Alabama
Civil Action 2:19-CV-767-ECM

- 41 -

very narrowly limited and must, wherever possible, be exercised to preserve jury trial." *Borgh v. Gentry*, 953 F.2d 1309, 1311 (11th Cir. 1992). A plaintiff may, however, waive her right to a jury trial if the Court determines, based on the facts of the case, that her waiver is knowing and voluntary. *Tracinda Corp. v. DaimlerChrysler AG,* 502 F.3d 212, 222 (3rd Cir. 2007); *Bakrac, Inc. v. Villager Franchise Sys., Inc.*, 164 F. App'x 820, 823 (11th Cir. 2006).

Dynamic's argument does not rest on an employment contract signed by Key in which there is an express waiver of a jury trial in exchange for consideration, such as employment. Instead, the argument rests on language in a Security Guard Handbook provided to Key after Dynamic hired her. Key testified she did not recall reviewing the jury waiver portion of the handbook before beginning work for Dynamic and may have signed the document before she received the handbook. These facts do not allow the conclusion that Key knowingly and voluntarily waived her right to a jury trial.

When determining if a waiver is knowing and voluntary, courts consider factors such as whether the waiver was conspicuous, the bargaining power and sophistication of the parties, and whether the terms were negotiable. *See Brown v. Bd.*, No. 16-093-KD-M, 2016 U.S. Dist. LEXIS 123646, at *5-6 (S.D. Ala. Aug.

Plaintiff's Response to Defendant's Post-Trial Motions
*Key v. Dynamic Security, Inc.*
United States District Court for the Middle District of Alabama
Civil Action 2:19-CV-767-ECM

- 42 -

22, 2016). While the court in *Brown* found that the plaintiff's waiver was enforceable, *Brown* is distinguishable from the current case. In *Brown*, the plaintiff signed a one-page document titled "Acknowledgment and Waiver of Right to Trial By Jury" followed by an express and clear waiver of any potential right to a jury trial resulting in resolution by a judge. *Id.* at *5. Additionally, the plaintiff only argued that her signature was not voluntary because it was given to her when she was under investigation with a threat of termination. *Id.* at *6.

Unlike *Brown*, Key did not sign a conspicuous one-page waiver provision, or any waiver at all. Instead, Dynamic buried its trial waiver at pages 37-39 of a more than 45-page security officer's handbook. The handbook does not contain a place for an employee to sign acknowledging any of the twenty-five provisions contained therein.

Instead, Dynamic presented Plaintiff with a separate document at some time during her onboarding titled "Acknowledgement and Receipt of Employee Handbook." (Doc. 89-2). This acknowledgment is not a part of the handbook, is not attached to the handbook, and only references the handbook. The acknowledgment does not require the Plaintiff to sign acknowledging that she read the contents of the handbook. Instead, it only acknowledges that Key received a

Plaintiff's Response to Defendant's Post-Trial Motions
*Key v. Dynamic Security, Inc.*
United States District Court for the Middle District of Alabama
Civil Action 2:19-CV-767-ECM

- 43 -

copy of the handbook and at the time of signing, that she had some future

responsibility to read the handbook "and become familiar with the contents."

Dynamic did have Key sign other separate and specific documents.[20]

Plaintiff signed a two-page Rules and Regulations that did not include the jury

waiver, a one-page Performance Standards that did not include the jury waiver, and

a one-page Harassment in the Workplace that did not include the jury waiver.

Dynamic did not include the jury waiver in any of the documents requiring

Plaintiff's signature.[21]

The handbook's states "an Officer's acceptance of employment does not

---

[20] Notably, Dynamic, represented by this same law firm, recently litigated a jury waiver issue in the Eastern District of Tennessee. In the Tennessee case, Dynamic Security had presented the employee/plaintiff with a "Standard Employee Packet" to sign that included a copy of the jury trial waiver on the *first* page of the packet. *Underwood v. Dynamic Sec., Inc.*, No. 18-00017, 2020 U.S. Dist. LEXIS 181798, at *27-28 (E.D. Tenn. Sep. 30, 2020). Dynamic did not provide Plaintiff Key the same Employee Packet and only included the waiver buried in the Security Officer's Handbook.

[21]     The other cases Dynamic relies on are similar in nature, each having the plaintiff *sign* a document that contained the specific waiver including a signed franchise agreement (*Bakrac, Inc. v. Villager Franchise Sys, Inc.*, 164 F. App'x, 820, 822 (11th Cir. 2006)), a signed engagement letter (*Colonial BancGroup, Inc. v. PriceWaterhouseCoopers, LLC*, No. 2:11-cv-746-BJR-WC, Doc. 479-2 (M.D. Ala. Oct. 14, 2016)), and a signed promissory note and guaranty (*RREF RB-AL SLDL, LLC v. Saxon Land Dev., LLC*, No. 2:11-cv-925-MEF [WO], 2012 U.S. Dist. LEXIS 54701, at *5 (M.D. Ala. Apr. 19, 2012)). Key did not sign any document that contained any written provision waiving a jury trial.

Plaintiff's Response to Defendant's Post-Trial Motions
*Key v. Dynamic Security, Inc.*
United States District Court for the Middle District of Alabama
Civil Action 2:19-CV-767-ECM

- 44 -

constitute an employment contract with Dynamic for any specific period of time." (Ex 1 p3) The separate "Acknowledgement and Receipt of Employee Handbook" specifies that while Plaintiff agrees to abide by the rules, regulations, and policies, the handbook does not create a contract and instead represents a "summary of the more important company guidelines" and is "not intended to be all-inclusive." (Doc. 89-2). The acknowledgment does not restate or specifically point to the jury waiver.

Finally, the acknowledgment Key signed specifies that Dynamic "employment practices are governed by applicable state and federal laws, regulations, and constitutional provisions and the Company at all times will abide by those legal requirements." (Doc. 89-2). This statement permits a reasonable inference that Dynamic would abide by Plaintiff's fundamental right to a jury trial.

In its earlier motion to strike the Plaintiff's jury demand, Dynamic argued Plaintiff conceded in her deposition the waiver issues. However, when asked during her deposition about the handbook and acknowledgement, Key testified she read *the acknowledgment* before she signed it. (Doc. 68-12, Pl Depo, 54:7-19).[22]

---

[22] Dynamic Security attached portions of Plaintiff's deposition to its motion, but Plaintiff's entire deposition can be found at Doc. 68-12.

Plaintiff's Response to Defendant's Post-Trial Motions
*Key v. Dynamic Security, Inc.*
United States District Court for the Middle District of Alabama
Civil Action 2:19-CV-767-ECM

- 45 -

Key testified she read the handbook, but her testimony did not elicit any facts surrounding when she read the handbook and if she read the handbook before or after signing the acknowledgment of receipt. (Doc. 68-12, Pl Depo, 54:20-24). At trial, she did not testify to having read the jury waiver before starting or continuing work for Dynamic and instead testified that she signed the document before she received the handbook.

When asked in her deposition about what she understood the waiver provision to mean, Key pointed out a clause in the waiver stating the waiver would apply "whenever is possible, in a fair and expeditious manner reflecting the interest of the concerned parties." (Doc 68-12, Pl Depo, 55:14-25). Neither the signed acknowledgment of receipt nor Plaintiff's testimony support an unequivocal finding that Plaintiff knowingly waived her right to a jury trial. Instead, Plaintiff's testimony supports a reasonable presumption that she did not knowingly waive her right and believed the policy would be applied only in a fair and expeditious manner, subject to state and federal laws, regulations, and constitutional provisions, and considering the interest of all parties. This Court should deny Dynamic motion for a new trial on the jury waiver issue.

2.     The waiver provision is too ambiguous to create a waiver.

Plaintiff's Response to Defendant's Post-Trial Motions
*Key v. Dynamic Security, Inc.*
United States District Court for the Middle District of Alabama
Civil Action 2:19-CV-767-ECM

- 46 -

Because waivers must be voluntarily and knowingly made, provisions that contain ambiguous or inconsistent statements cannot suffice to waive the Key's right to a jury. The waiver provision in the security officer's handbook states "By waiving the right to a jury trial an employee is not limiting their rights to trial by judge." This sentence, among a section claiming to waive the plaintiff's right to a jury trial represents to the plaintiff that she is *not* limited to a trial by judge only.

Generally, under drafting principles, "ambiguities in contracts are construed against their drafters." *Key v. Allstate Ins. Co.*, 90 F.3d 1546, 1549 (11th Cir. 1996) (cleaned up). Under this analysis, the ambiguity in whether the waiver does or does not limit the Plaintiff to a judge only trial must be construed against Dynamic. The same results if the sentence was included in error. "[E]rrors in drafting contracts are construed against the drafter." *McGregor v. Board of Commissioners of Palm Beach County*, 956 F.2d 1017, 1022 (11th Cir. 1992). As the drafting party, Dynamic had the opportunity to verify its intention before presenting the handbook to Plaintiff or any other employee.  Instead, this provision existed as above for more than 16 years from its creation in 2001 to the date it was given to Plaintiff in 2017. Assuming this sentence was included in error, the error must be construed against Dynamic. Additionally, Dynamic cannot rationally argue the waiver was

Plaintiff's Response to Defendant's Post-Trial Motions
*Key v. Dynamic Security, Inc.*
United States District Court for the Middle District of Alabama
Civil Action 2:19-CV-767-ECM

- 47 -

obvious when it took their lawyers over three years to act on the alleged waiver in this case. Because Dynamic represented to the Plaintiff that she was not limited to a trial by judge only, through ambiguity or error, Key did not knowingly and voluntarily waive her right to a jury trial. This Court should deny Dynamic's motion for a new trial on the jury waiver issue.[23]

            3.      The Court can treat the jury verdict as advisory.

Rule 39(c) of the Federal Rules of Civil Procedure permits a court, on motion or on its own, may try an issue with an advisory jury on an action not triable of right by a jury. A new trial would waste judicial resources and unnecessarily cost all parties unnecessary time and expense. FED. R. CIV. P. 39(c). To the extent that this Court sees merit in Dynamic's jury waiver argument, this Court could treat the jury verdict as advisory under Rule 39(c).

## IV.    DEFENDANT IS NOT ENTITLED TO REMITTITUR.

"In general, a remittitur order reducing a jury's award to the outer limit of the proof is the appropriate remedy where the jury's damage award exceeds the amount established by the evidence." *Goldstein v. Manhattan Indus., Inc.*, 758 F.2d

---

[23] Key also reasserts her position that Dynamic failed to timely raise any jury waiver. (Doc. 91 pp 2-5).

Plaintiff's Response to Defendant's Post-Trial Motions
*Key v. Dynamic Security, Inc.*
United States District Court for the Middle District of Alabama
Civil Action 2:19-CV-767-ECM

- 48 -

1435, 1448 (11th Cir. 1985); *see also Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1183 (11th Cir. 2010).

A.   <u>The jury's emotional distress award should not be remitted.</u>

The Eleventh Circuit has stated: "The injury in civil rights cases may be intangible. . . . It need not be financial or physical but may include damages for humiliation and emotional distress." *Stallworth v. Shuler*, 777 F.2d 1431, 1435 (11th Cir. 1985). But courts should order a remittitur if the damages award "exceeds the maximum amount that could have been awarded based on the evidence and the instructions." *Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1266 (11th Cir. 2008).

Dynamic argues generally the emotional distress award should be "reduced to the extent the jury could conclude [Key] experienced difficulty due to having to search for another job paying $13/hour." (Doc. 197, p. 6). This direction is inconsistent with the jury instructions about emotional pain and mental anguish (Doc. 184, p. 9) and appears to limit the emotional damages award to backpay.

Plaintiff's Response to Defendant's Post-Trial Motions
*Key v. Dynamic Security, Inc.*
United States District Court for the Middle District of Alabama
Civil Action 2:19-CV-767-ECM

- 49 -

Further, Dynamic does not argue for a specific amount by which the emotional

damages awards should be reduced; it just argues the award was too high.[24]

A trial judge must "grant a new trial or remittitur when the award exceeds

the maximum limit of a reasonable range within which the jury may properly

operate." *Warren v. Ford Motor Credit Co*., 693 F.2d 1373, 1380 (11th Cir. 1982).

However, a "jury's otherwise supportable verdict [should] stand unless [it is]

grossly excessive or shocking to the conscience." *Brown v. Freedman Baking Co*.,

810 F.2d 6, 11 (1st Cir. 1987). In considering whether to grant a remittitur, the

court must not substitute its judgment of damages for that of the jury. *Bonura v.

Sea Land Serv. Inc*., 505 F.2d 665, 669 (5th Cir. 1974).

In considering a motion for remittitur, the Court must adhere to the principle

that a jury verdict should not be disturbed so long as there is competent evidence in

the record to support it. *See Deakle v. John E. Graham & Sons*, 756 F.2d 821, 827

(11th Cir. 1985). Remittitur is only appropriate if a jury award "exceeds the

---

[24]     In *Advanced Body Care Sols., LLC. V. Thione Int'l, Inc.*, 615 F.3d 1352, 1364 (11th Cir. 2010), the Eleventh Circuit concluded a trial court did not abuse its discretion by denying a post-trial remittitur motion where the defendant sought a reduction of the jury award but did not indicate the amount of the remittitur. The defendant argued the award was excessive but by not pointing "the district court to a dollar amount that would not be excessive – it is unclear how the district court could have divined such amount." *Advanced Body Care Sols.,* 615 F.3d at 1364. The Court emphasized that it would deprive the plaintiff of its Seventh Amendment jury right for the Court to reduce a money judgment to an unidentified amount. *Id.*

Plaintiff's Response to Defendant's Post-Trial Motions
*Key v. Dynamic Security, Inc.*
United States District Court for the Middle District of Alabama
Civil Action 2:19-CV-767-ECM

- 50 -

amount established by the evidence." *Goldstein v. Manhattan Industries, Inc.*, 758 F.2d 1435, 1448 (11th Cir. 1985), cert. denied, 474 U.S. 1005, 106 S. Ct. 525, 88 L. Ed. 2d 457 (1985).

The standard of review for compensatory damages awards for intangible, emotional harm is "deferential to the fact finder because the harm is subjective and evaluating it depends considerably on the demeanor of the witnesses." *Ferrill v. Parker Group, Inc.*, 168 F.3d 468, 476 (11th Cir. 1999). As a general rule, compensatory damages need not be proven with a high degree of specificity. *See Ferrill*, 168 F.3d at 476. Compensatory damages "may be inferred from the circumstances as well as proved by the testimony." *Id.* (quoting *Gore v. Turner*, 563 F.2d 159, 164 (5th Cir. 1977)). A plaintiff may be compensated for intangible, psychological injuries as well as financial, property, or physical harms. *See Marable v. Walker*, 704 F.2d 1219, 1220-21 (11th Cir. 1983) (holding that plaintiff's own testimony that he was embarrassed and humiliated by defendant's conduct was sufficient to support compensatory damages award).

Here, the record establishes that the jury had a reasonable evidentiary basis to award Plaintiff emotional distress damages in the amount of $214,864 for retaliatory discharge.  The jury was instructed on compensatory damages

Plaintiff's Response to Defendant's Post-Trial Motions
*Key v. Dynamic Security, Inc.*
United States District Court for the Middle District of Alabama
Civil Action 2:19-CV-767-ECM

- 51 -

consistent with the Eleventh Circuit pattern instructions. The jury heard the Plaintiff's testimony about her frustration, hurt, and loss of self-esteem that began on August 1, 2017, grew the longer Dynamic went without placing her in another position, and continued through the date of trial. The jury also heard testimony about the conduct the Plaintiff suffered. Dynamic offers no evidence or argument that the jury deviated from the Courts' instructions in reaching its award. Instead, Dynamic argues generally that the award is excessive without providing any basis to so conclude. It offers no evidence of verdicts in comparable cases to serve as a basis for comparison or of how the award was not consistent with the evidence the jury heard.[25]

Dynamic's reliance on *Akouri v. Fla. DOT*, 408 F.3d 1338 (11th Cir. 2005) to justify remittitur is misplaced. In *Akouri*, after the district court set aside a jury award of $552,000 for emotional distress in a failure to promote case, the Plaintiff's main argument on the issue of compensatory damages as that the jury was entitled to infer from his demeanor while testifying at trial that he suffered

---

[25]     On December 14, 2022, a jury in this district awarded $800,000 in emotional distress damages with no award of backpay related to a suspension. *Hall v. Alabama State University*, 2:15-cv-0593-JTA, Doc. 188 (M.D. Ala. Dec 14, 2022). On June 2, 2023, a jury in the Northern District of Alabama awarded $600,000 in mental anguish damages collectively across three counts. *McClinton v. Capstone Logistics, LLC*, 2:20-cv-05430-AMM, Doc. 162 (N.D. Ala. June 2, 2023). Key's jury award of $214,864 is not out of line with other recent jury verdicts.

Plaintiff's Response to Defendant's Post-Trial Motions
*Key v. Dynamic Security, Inc.*
United States District Court for the Middle District of Alabama
Civil Action 2:19-CV-767-ECM

- 52 -

emotional harm and mental anguish. *Akouri,* 408 F.3d at 1344.  The Eleventh Circuit rejected Akouri's argument finding that inferences were insufficient to support the award. Key presented specific testimony concerning her injuries. While Dynamic may dispute that testimony or have arguments against it, her testimony and evidence presented was far more substantial than in the *Akouri* case.

There is no merit to Defendants' argument that the award was excessive and should be reduced. There is no basis on which to disturb the jury's verdict with respect to damages awarded to Plaintiff. *See, e.g., Drago v. Jenne*, 453 F.3d 1301, 1305 (11th Cir. 2006).

B.    <u>The jury's punitive damages award is proper</u>.

Dynamic seeks remittitur of the jury's $511,200 punitive damages award by arguing there was insufficient evidence for punitive damages and that the award was excessive because it exceeded the statutory caps of a different statute. The argument concerning insufficiency of the evidence is the same as the Rule 50 argument addressed above on punitive damages, so the Plaintiff adopts and incorporates by reference her arguments *supra* on this issue.

Additionally, the Court's jury instruction on punitive damages, as related to the acts of managerial employees, mirrored the pattern charge and were in line

Plaintiff's Response to Defendant's Post-Trial Motions
*Key v. Dynamic Security, Inc.*
United States District Court for the Middle District of Alabama
Civil Action 2:19-CV-767-ECM

- 53 -

with the charge requested by Dynamic. Doc. 161, p34-34. Dynamic cannot seek to overturn a verdict on the basis of a jury charge requested by Dynamic. *See Collins v. Koch Foods, Inc.*, 2022 U.S. App. LEXIS 14873, at *11-12 (11th Cir. May 31, 2022) (reversing the district court's remittitur of backpay in a failure to promote and termination case finding waiver where the jury found for the defendant on termination but plaintiff on promotion and the defendant did not object to the special verdict form or jury instructions on compensatory damages calculating lost wages to the date of the verdict.)

Next, Dynamic argues that the punitive damages award is constitutionally excessive because it exceeds the cap applicable to Title VII cases and there is a six to one ration between backpay damages and punitive damages in the case.

In assessing the propriety of a punitive damage award, this Court should apply the three "guideposts" identified in *BMW of N. Amer., Inc. v. Gore*, 517 U.S. 559, 116 S. Ct. 1589, 134 L. Ed. 2d 809 (1996) to determine whether a punitive damages award is excessive. *United States EEOC v. W&O, Inc.*, 213 F.3d 600, 614 (11th Cir. 2000). The guideposts include: "(1) the 'degree of reprehensibility' of the wrongdoing; (2) 'the disparity between the harm or potential harm suffered by [the plaintiff] and [his] punitive damages award;' and (3) 'the difference between this

Plaintiff's Response to Defendant's Post-Trial Motions
*Key v. Dynamic Security, Inc.*
United States District Court for the Middle District of Alabama
Civil Action 2:19-CV-767-ECM

- 54 -

remedy and the civil penalties authorized or imposed in comparable cases.'" *Id.* (citing *Gore*, 517 U.S. at 575).

"Reprehensibility is the first and most important of the three . . . guideposts." *E.E.O.C. v. Fed. Express Corp.*, 513 F.3d 360, 376 (4th Cir. 2008). Here, Dynamic's actions were reprehensible because they sought to undermine the remedial purposes of federal anti-discrimination statutes. Federal anti-discrimination laws only work when employees are free to complain about violations without the fear of retribution. *See Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006). The anti-retaliation provisions of statutes like § 1981 serves the purpose of protecting individuals from discrimination by "prohibiting employer actions that are likely 'to deter victims of discrimination from complaining to the EEOC,' the courts, and their employers." *Id.*  Key was financially vulnerable, waiting on a job reassignment, when Dynamic decided not to reassign her if she pursued her discrimination complaint. As argued above, Dynamic's actions showed a reckless disregard for her rights and caused her financial and emotional harm. The failure to reassign her was not accidental; it was a deliberate decision conditioned on her pursuit of a discrimination claim. Dynamic's actions were reprehensible.

Plaintiff's Response to Defendant's Post-Trial Motions
*Key v. Dynamic Security, Inc.*
United States District Court for the Middle District of Alabama
Civil Action 2:19-CV-767-ECM

- 55 -

With respect to *Gore's* second guidepost*, the United States Supreme Court has been reluctant to "identify concrete constitutional limits on the ratio between harm, or potential harm, to the plaintiff and the punitive damages award." *State Farm Mutual Auto Ins. v. Campbell*, 538 U.S. 408, 424, 123 S. Ct. 1513, 1524 (2003). Although declining to impose a bright-line ratio which a punitive damages award cannot exceed, the Supreme Court recognized that, "in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." *Id.* Citing a long history of providing sanctions of double, treble, or quadruple damages to deter and punish, the Court recently stated in *Campbell*:

> While these ratios are not binding, they are instructive. They demonstrate what should be obvious: Single-digit multipliers are more likely to comport with due process, while still achieving the State's goals of deterrence and retribution, than awards with ratios of 500 to 1 [as in *Gore*], or in this case, of 145 to 1.

> Nonetheless, because there are no rigid benchmarks that a punitive damages award may not surpass, ratios greater than those we have previously upheld may comport with due process where a particularly egregious act has resulted in only a small amount of economic damages. The converse is also true, however. Where compensatory damages are substantial, then a lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limit of the due process guarantee. The precise award in any case, of course, must be based upon the facts and circumstances of the defendant's conduct and the harm to the plaintiff.

Plaintiff's Response to Defendant's Post-Trial Motions
*Key v. Dynamic Security, Inc.*
United States District Court for the Middle District of Alabama
Civil Action 2:19-CV-767-ECM

- 56 -

> In sum, courts must ensure that the measure of punishment is both reasonable and proportionate to the amount of harm to the plaintiff and to the general damages recovered.

*Id.* (quotation marks and citations omitted).

Here, the total compensatory damages award was $300,064 ($85,200 for net lost wages and benefits, and $214,864 for emotional injuries), or approximately 58% of the punitive damages award. The punitive damages award fell slightly below a 2:1 ratio to the compensatory damages award. This is within the range which the Supreme Court has found to be acceptable. The ratio of punitive damages to compensatory damages does not indicate that the punitive damages award violates due process. Even if the punitive damages award was only examined within the context of the backpay award, the six to one ration is within the single-digit multipliers the Court has found to be acceptable. In short, the punitive damages award was both reasonable and proportionate to the amount of harm to Key suffered and to the compensatory damages awarded.

With respect to the third *Gore* factor, Dynamic argues for a limit that Congress never placed on § 1981. While Congress chose to place caps on damages for claims brought under Title VII, there are no caps on damages under 42 U.S.C. § 1981. *See Kim v. Nash Finch Co.,* 123 F.3d 1046, 1067 (8th Cir. 1997) ("the Title

Plaintiff's Response to Defendant's Post-Trial Motions
*Key v. Dynamic Security, Inc.*
United States District Court for the Middle District of Alabama
Civil Action 2:19-CV-767-ECM

- 57 -

VII statutory cap does not apply to limit the recovery under 42 U.S.C. § 1981.").

Although a comparison to Title VII damages in § 1981 claims may be instructive,

the Eleventh Circuit has refused to apply the Title VII cap to other civil rights

statutes prohibiting race discrimination, such as 42 U.S.C. § 1983.

In *Bogle v. McClure*, 332 F.3d 1347 (11th Cir. 2003), the Eleventh Circuit

reviewed an appeal from a race discrimination case brought under 42 U.S.C. §

1983. The employer for a group of librarians argued that under the third *Gore*

factor, the jury award of punitive damages should be reduced to the Title VII

statutory cap of $300,000. The Eleventh Circuit rejected the argument, refusing to

apply the cap and citing to authority that Congress has not seen fit to impose

any recovery caps in cases under § 1981 , although it has had ample opportunity to

do so since the 1991 amendments to Title VII. *Bogle*, 332 F.3d at 1362 (citing

*Swinton v. Potomac Corp.*, 270 F.3d 794, 820 (9th Cir. 2001). The *Bogle* court

went on to write that "although the punitive damages awarded here are more than

the damages available under Title VII for analogous conduct, the difference is not

enough, by itself, to suggest that the punitive damages award violates due

process." *Id.*

Plaintiff's Response to Defendant's Post-Trial Motions
*Key v. Dynamic Security, Inc.*
United States District Court for the Middle District of Alabama
Civil Action 2:19-CV-767-ECM

- 58 -

Based on the statutory language of §1981 and the Eleventh Circuit's precedent in *Bogle*, this Court should reject Dynamic's argument to apply the Title VII cap to Key's punitive damages award. This Court should deny Dynamic's motion and not remit Key's punitive damages award.

## V.    CONCLUSION

For the foregoing reasons, Dynamic's post-trial motions should be denied in their entirety.

Respectfully submitted,

Attorneys for Plaintiff
*/s/ Heather Leonard*
Heather Newsom Leonard
ASB-1152-061H

OF COUNSEL:
Heather Leonard, P.C.
2105 Devereaux Cir., Suite 111
Birmingham, AL 35243
Phone: (205) 977-5421
heather@heatherleonardpc.com

*/s/ Leslie A. Palmer.*
ASB-0436-L40P

OF COUNSEL:
Palmer Law, LLC
104 23rd Street South, Suite 100
Birmingham, AL 35233
(205) 285-3050
leslie@palmerlegalservices.com

Plaintiff's Response to Defendant's Post-Trial Motions
*Key v. Dynamic Security, Inc.*
United States District Court for the Middle District of Alabama
Civil Action 2:19-CV-767-ECM

## CERTIFICATE OF SERVICE

I hereby certify that I have filed the foregoing on the Court's CM/ECF electronic filing system which will provide notice to all counsel of record on this 27th day of June, 2023.

Wesley C. Redmond
Susan W. Bullock
FordHarrison LLC
420 20th Street North, Suite 2560
Birmingham, AL 35203

/s/ Leslie A. Palmer
OF COUNSEL

Plaintiff's Response to Defendant's Post-Trial Motions
*Key v. Dynamic Security, Inc.*
United States District Court for the Middle District of Alabama
Civil Action 2:19-CV-767-ECM