IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

DAVITA M. KEY,                           )
                                         )
        Plaintiff,                       )
                                         )
v.                                       )   CIVIL CASE NO. 2:19-cv-767-ECM
                                         )
HYUNDAI MOTOR MANUFACTURING )
ALABAMA, LLC, *et al*.,                  )        Hearing Requested
                                         )
        Defendants.                      )

## DEFENDANT DYNAMIC SECURITY, INC.'S RESPONSE TO PLAINTIFF'S MOTION FOR EQUITABLE RELIEF OF REINSTATEMENT AND INTEREST

Defendant Dynamic Security, Inc. ("Dynamic") responds as follows in opposition to Plaintiff's motion for equitable relief of reinstatement and demand for a specific amount of pre-judgment interest on her back pay award (doc. 193).[1]

### A.    Plaintiff's Prejudgment Interest Calculations Lack Evidentiary Record Support.

Plaintiff seeks an award of prejudgment interest in an amount "to make the Plaintiff whole and adjust the back pay award for inflation and reflect the present-

---

[1] Defendant incorporates into this response its arguments in support of setting aside the verdict, any award of back pay or any entitlement to reinstatement that are included in Defendant Dynamic Security, Inc.'s Motion for Renewed Judgment as a Matter of Law as to Liability and Punitive Damages; to Vacate, Alter or Amend the Judgment; or, Alternatively, for a New Trial or Remittitur of Emotional Distress and Punitive Damages (Doc. 197).

day value of income that should have been paid to her." (Doc. 193, p. 2). Dynamic restates and affirms the general rule that prejudgment interest is at the discretion of the Court. However, that is not without limitations.

      1.    <u>Plaintiff's pre-judgment interest demand is too tenuous because she did not present evidence supporting the quarterly wage amounts on which she bases her calculations.</u>

"In determining whether to award prejudgment interest, courts take into account both the failure to mitigate damages and whether the back pay amount is easily ascertainable." *Tucker v. Hous. Auth. of Birmingham Dist.*, 507 F. Supp. 2d 1240, 1283–84 (N.D. Ala. 2006), aff'd, 229 F. App'x 820 (11th Cir. 2007) (exercising discretion to award prejudgment interest on the plaintiff's back pay award "because the court finds that it is fair and necessary to make Plaintiff whole, it is in accordance with the remedial purposes of Title VII, because Plaintiff's back pay is easily ascertainable, and because the likely finding of the jury that Plaintiff failed to mitigate his damages is insufficient to overcome the presumption in favor of prejudgment interest.") (citing *e.g., Daniels v. Pipefitters' Association Local Union No. 597*, 945 F.2d 906 (7th Cir. 1991) (holding that prejudgment interest is available so long as the amount is readily ascertainable); and *E.E.O.C. v. Accurate Mech. Contractors, Inc.*, 863 F.Supp. 828 (E.D.Wis. 1994) (finding that the decision whether to grant or deny prejudgment interest in Title VII action is dependent on whether the amount of damages is easily ascertainable)). In *Tucker*, the court found

a jury award of back pay to be reasonably ascertainable as amounting to two years' of back pay even though it was not an "exactly precise" calculation because of evidentiary support and the parties' agreement that the jury's back pay award likely was reduced by three years due to failure to mitigate. *Tucker v. Hous. Auth. of Birmingham Dist.*, 507 F. Supp. 2d at 1280.

That standard has not been met in this case due to the lack of any trial evidence or of any citation to the record in Plaintiff's motion to support the back pay calculations. During closing arguments, Plaintiff's counsel petitioned the jury for a back pay award in the amount of $129,816.00 ($179,816.00 including an unsubstantiated inclusion of a 30% multiplier for undefined lost benefits less interim earnings of $50,000.00 over a five-and-a half year period).  Plaintiff's counsel stated to the jury:

> And the last thing we have to do is prove damages to you. The first thing that we're seeking is back pay, which are Ms. Key's lost wages. We calculate that at being $129,816 to carry us basically from August 2nd to today. She calculated that by taking what she had been earning, the $13 an hour, multiplying it by 40 hours a week, multiplying it times the number of weeks it's been, and that's how we came to our gross number of 135,200.
>
> We then calculated the value of the benefits. That's a hard thing to do because Dynamic didn't keep records of what the value of those benefits were. Ms. Key testified she went off what her past experience of other jobs had been, that it could be around a third or 30 percent of what your annual salary is.

3

> So her gross back pay was $179,816. Then looking at what she -- at her
> tax returns to see what her interim earnings were, we subtracted that
> amount, and it comes to that back pay of $129,816.

(Trial Transcript, Vol. III, p. 58). The jury verdict form asked the jury to find if, by

a preponderance of the evidence, "[t]hat Davita M. Key should be awarded damages

to compensate for a net loss of wages and benefits to the date of your verdict?" (Doc.

186, pp 1-2, No. 5). The jury answered "yes" and listed the total amount of wages

and benefits the Plaintiff was due as $ 85,200.00. (*Id*.). It is not possible to determine

if this amount equates to only back pay or both back pay and some undefined amount

of potential lost benefits. Plaintiff only gave an approximation of her back pay and

did not tie it to any specific wages or time period.

In addition to the back pay wages being difficult to determine with reasonable

certainty, Plaintiff's five year distribution of such amounts for the purpose of

calculating prejudgment interest is also not easily ascertainable or calculable.

Exhibit A to Plaintiff's Motion an "Interest Prejudgment Calculation" chart starts

with quarter three of 2017 and ends with quarter one of 2023. (Doc. 193-1). She

included for each quarter during this time period columns for "base wages," "interim

earnings," and "net lost wages," with a total net lost wages of $85,863.73. (*Id*.)

However, she failed to cite to any evidence supporting these 23 quarters of

calculations. In fact, there is no evidence in the trial record that supports any

particular "base wage" amount or "interim earnings."

2.  <u>The appropriate multiplier for back pay interest calculations requires further examination.</u>

The Eleventh Circuit has in the past applied the IRS prime interest rate as an appropriate multiplier. The method of calculation of prejudgment interest is also at the discretion of the trial court, and the method Plaintiff has applied is no longer currently. Accordingly, Dynamic requests a hearing to evaluate the appropriate calculation method.

In calculating pre-judgment interest on a back-pay award, the Middle District of Florida rejected the IRS prime rate method in favor of an updated method applying current IRS methodology, which the Eleventh Circuit affirmed, explaining:

> In *McKelvy v. Metal Container Corp*., 854 F.2d 448, 453 (11th Cir. 1988), the Eleventh Circuit held that the applicable prejudgment interest rate in ADEA cases "depends on the IRS prime rates calculated in accordance with 28 U.S.C. § 1961." (Citing *EEOC v. Guardian Pools, Inc*., 828 F.2d 1507 (11th Cir. 1987)). However, the court reached that conclusion at a time when post-judgment rates of interest were determined by the IRS prime rates. *See Guardian Pools*, 828 F.2d at 1512-13. To apply the IRS "prime rates" today would result in a prejudgment interest rate that is substantially higher than the post-judgment interest rate provided for by the current version of 28 U.S.C. § 1961(a), which directs use of a fluctuating rate "equal to the weekly average 1-year constant maturity Treasury yield." This would lead to an absurd result. The Court concludes that *McKelvy* no longer dictates the use of "IRS prime rates" for prejudgment interest in ADEA cases. Use of the post-judgment rate-as currently determined-is more appropriate.

*Mock v. Bell Helicopter Textron, Inc.*, No. 604CV1415OR-28DAB, 2007 WL

2774230, at *5 (M.D. Fla. Sept. 24, 2007), aff'd, 313 F. App'x 279 (11th Cir. 2009).[2]

Regardless of the formula used, however, the quarterly lost wages amounts in Plaintiff's back pay wages chart are too tenuous and unsupported by evidence to reach a reasonably certain result. Pre-judgment interest is intended to

### B.   <u>Reinstatement Is Unwieldy and Requires Further Analysis and Hearing.</u>

Plaintiff seeks an order awarding equitable relief in the form of reinstating her to employment with the Defendant and "directing the Defendant to place her in a full-time, first-shift position, paying at least $13/hour, within a 45 mile area of Montgomery, Alabama." (Doc. 193, p. 5). Dynamic will agree to place Plaintiff in any position that it has available that fits this criteria. However, Dynamic brings to the Court's attention the peculiar circumstances of Ms. Key's request for reinstatement.

The nature of employment by Dynamic, a staffing agency, carries the inherent possibility of gaps in assignments and resultant gaps in income. Dynamic cannot guarantee the parameters Plaintiff demands because assignments come and go

---

[2] The same pre-judgment interest rates apply to both the ADEA and Title VII. *Stinson v. City of Ctr., Alabama*, No. 4:08-CV-955-VEH, 2010 WL 11614229, at *4 (N.D. Ala. Apr. 7, 2010) ("[w]hile *McKelvy* arises under the ADEA , the Eleventh Circuit concluded that the same pre-judgment interest rate should apply not only to Title VII, but also in ADEA lawsuits. [*McKelvy v. Metal Container Corp.*, 854 F.2d] at 453 ("We see no reason that the rate should differ under ADEA, and indeed the plaintiff has conceded that *Guardian Pools* controls.")).

6

depending on the needs of Dynamic's clients and the terms and status of its contracts. In fact, Plaintiff's claim against Dynamic is not that it terminated her from the Hyundai job site but that it failed to reassign her after Hyundai instructed Dynamic to not return her to perform work on that site. Dynamic cannot place Plaintiff on a job site when a client removes her and does not pay its security staff for hours they do not work or are between assignments. Second, Plaintiff's performance of hourly shift work for Dynamic on first shift will inevitably require her to quit the higher paying job she currently holds.

While Plaintiff has not addressed front pay in lieu of reinstatement, it bears anticipatory attention because Plaintiff's current employment suggests that her reinstatement demand is a strategic move to secure a recover of front pay recovery, which would be an unfair windfall.  Plaintiff's testimony at trial (which also appears to be reflected in Exhibit A chart) was that she secured in 2022 a teaching job within her educational field utilizing her master's degree. In that job, her current income from Pike Road City Schools exceeds the value of her reinstatement demand by $4,240.00 plus the significant value of benefits paid to her by the Retirement Systems of Alabama. The Eleventh Circuit has held that "[t]he duty to mitigate damages by seeking employment elsewhere will, ..., limit the amount of front pay available." *Reiner v. Fam. Ford, Inc.*, 146 F. Supp. 2d 1279, 1287 (M.D. Fla. 2001) (quoting *Castle v. Sangamo Weston, Inc.*, 837 F.2d 1550, 1562 (11th Cir. 1988)

(emphasis added) (citation omitted). "Regardless of whether the duty to mitigate arises in the context of front pay or back pay, its essential elements are the same. A plaintiff-employee 'must mitigate her damages by seeking employment 'substantially equivalent' to the position [from which] she was [terminated].'" *See Joe's Stone Crab*, 15 F.Supp.2d at 1378 (S.D. Fla. 1998) (citing *Weaver v. Casa Gallardo, Inc*., 922 F.2d 1515, 1526 (11th Cir. 1991)). Dynamic requests a hearing of these matters before the Court rules on Plaintiff's request for reinstatement or awards front pay in lieu of reinstatement.

Respectfully submitted,

*/s/Susan W. Bullock*
WESLEY C. REDMOND
SUSAN W. BULLOCK
FORDHARRISON LLP
420 20th Street North, Suite 2560
Birmingham, AL  35203
Phone: (205) 244-5905
         (205) 244-5904
Email: wredmond@fordharrison.com
         sbullock@fordharrison.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that on June 27, 2023, she electronically filed a true and correct copy of the foregoing with the Clerk of Court using the CM/ECF System which will send notification of such filing to:

Heather Leonard
Heather Leonard, P.C.
2105 Devereaux Cir., Suite 111
Birmingham, AL 35243

Leslie A. Palmer, LLC
Palmer Law, LLC
104 23rd Street South, Suite 100
Birmingham, AL  35233

*Counsel for Plaintiff*

/s/Susan W. Bullock
Susan W. Bullock

WSACTIVELLP:14111482.1