IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| DAVITA M. KEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL CASE NO. 2:19-cv-767-ECM |
| | ) | |
| DYNAMIC SECURITY, INC. | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT DYNAMIC SECURITY, INC.'S REPLY TO PLAINTIFF'S
RESPONSE TO ITS MOTION FOR RENEWED JUDGMENT AS A
MATTER OF LAW AS TO THE LIABILITY AND PUNITIVE DAMAGES;
TO VACATE, ALTER, OR AMEND THE JUDGMENT; OR,
ALTERNATIVELY, FOR A NEW TRIAL OR REMITTITUR OF
EMOTIONAL DISTRESS AND PUNITIVE DAMAGES**

TABLE OF CONTENTS

PAGE

I.    INTRODUCTION ........................................................................1

II.    PLAINTIFF FAILS TO OVERCOME DYNAMIC'S ARGUMENTS
THAT THE JURY VERDICT WAS NOT SUPPORTED BY THE
EVIDENCE REQUIRING ENTRY OF JUDGMENT AS A
MATTER OF LAW........................................................................2

    A.    Plaintiff Fails to Establish Her Amended Complaint Asserted a
Retaliation Claim against Dynamic, Requiring Dismissal.................2

    B.    Plaintiff Fails to Establish She Engaged in Protected Activity............5

    C.    Plaintiff Failed to Show Evidence of Her Good Faith Belief
Should Not Have Been Excluded under the Best Evidence Rule......10

    D.    No Evidence the Decisionmaker Knew Plaintiff Complained of
Race Discrimination....................................................................16

    E.    Dynamic is Entitled to Judgment as a Matter of Law on
Punitive Damages........................................................................18

III.    DYNAMIC IS ENTITLED TO A NEW TRIAL. .......................................23

    A.    The Failure to Provide Dynamic's Requested Jury Charges on
the Fundamental Elements of a Retaliation Claim Prejudiced
Dynamic Entitling it to a New Trial..................................................25

        1.    Failure to provide a complete charge on protected
activity....................................................................................25

        2.    Failure to provide a charge that the decisionmaker had to
know Plaintiff complained about unlawful
discrimination..........................................................................26

    B.    Arguments Made in Closing Arguments Were Prejudicial,
Clearly Injurious, and Impaired the Jury's Consideration and
Thus Entitle Dynamic to a New Trial. ...............................................28

IV.    THE JURY TRIAL WAIVER SHOULD BE ENFORCED. ......................29

    A.    Plaintiff Admitted under Oath That She Had Read the Jury
Trial Waiver in the Handbook and Understood That She Had
Agreed to Waive Any Trial by Jury..................................................29

    B.    Plaintiff's Cited Legal Authority Is Not Controlling. ........................31

    C.    The Jury Trial Policy That Waived Plaintiff's Right to a Trial
by Jury Arising out of Her Employment Is Not Ambiguous. ............34

TABLE OF CONTENTS

PAGE

   1. Acknowledgement's statement that Dynamic Security's employment practices are governed by laws, regulations, and constitutional provisions does not negate her waiver of her Seventh Amendment right to trial by jury....................34

   2. Waiver of Trial by Jury Policy does not place any limit on a trial by judge.......................................................35

  D. Appointment of an Advisory Jury Decision Post-trial Is Not Appropriate.........................................................36

V. DYNAMIC IS ENTITLED TO REMITTITUR. ........................................37

  A. Emotional Distress Damages are Due to Be Remitted. ....................37

  B. The Punitive Damages Awarded Are Excessive, as Plaintiff Has Not Established Dynamic's Actions Were Reprehensible................40

VI. CONCLUSION..............................................................................46

## I.     INTRODUCTION

Plaintiff's Response in Opposition to Defendant Dynamic Security, Inc.'s Motion for Renewed Judgment as a Matter of Law as to Liability and Punitive Damages; to Vacate, Alter or Amend the Judgment; or, Alternatively, for a New Trial or Remittitur of Emotional Distress and Punitive Damages ("Plaintiff's Opposition") (Doc. 206) fails to defeat  Defendant Dynamic Security, Inc.'s Motion for Renewed Judgment as a Matter of Law as to Liability and Punitive Damages; to Vacate, Alter or Amend the Judgment; or, Alternatively, for a New Trial or Remittitur of Emotional Distress and Punitive Damages ("Motion to Vacate/New Trial") (Doc. 197) or demonstrate that Dynamic Security, Inc. ("Dynamic") is not entitled to a judgment in its favor or a new trial or, alternatively remittitur.  The facts, record and authorities establish that (a) the retaliation claim that was the basis for the trial was never asserted against Dynamic until the Pretrial Order, (b)Plaintiff never engaged in any protected activity, had no objective belief that she was subjected to race discrimination, and that there is no causation between any complaints and any adverse action in this matter; (c) Plaintiff is not entitled to the damages awarded: and (d) errors were made in not instructing the jury on the required elements of a retaliation claim and in prejudicial statements made during closing by Plaintiff's counsel.  Plaintiff's Opposition is full of references to evidence without any citations to the record and of purported statements of law without any

authorities cited, which Dynamic will identify throughout this Reply.[1]  Thus, in its well-supported and cited Motion to Vacate/New Trial, Dynamic has satisfied its requirements for being afforded a judgment in its favor or a new trial or, alternatively remittitur.

## II.   PLAINTIFF FAILS TO OVERCOME DYNAMIC'S ARGUMENTS THAT THE JURY VERDICT WAS NOT SUPPORTED BY THE EVIDENCE REQUIRING ENTRY OF JUDGMENT AS A MATTER OF LAW.

### A.   Plaintiff Fails to Establish Her Amended Complaint Asserted a Retaliation Claim against Dynamic, Requiring Dismissal.

Plaintiff raises two procedural responses to Dynamic's argument that Count V of the Amended Complaint was asserted against Dynamic, both of which are incorrect.  First, Plaintiff claims, without any citation or authority, that Dynamic waived any issue for failure to state a claim by not raising it in a motion to dismiss. That claim is contrary to the plain provisions of the Federal Rules of Civil Procedure.[2]  Rule 12(h)(2) provides that a motion to dismiss for failure to state a claim may be raised in any pleading allowed by Rule 7(a),[3] by a motion under Rule

---

[1] For instance on the dispositive issue that allowed Plaintiff to avoid summary judgment of whether Plaintiff's testimony regarding Gloria Robinson's statement about the memos is barred by the "Best Evidence Rule," Plaintiff's Opposition states that "[t]he best evidence rule tends to go hand-in-hand with the rule against hearsay" (doc. 206 at 23), but offers no authority for this statement.

[2] Dynamic also asserts, as it asserted in its post-trial motion, that this issue is more fundamental than whether Count V of the Amended Complaint states a claim. Dynamic's position is that the retaliation claim in Count V was never directed at Dynamic. Also, Dynamic raised this issue in its Motion to Dismiss (doc. 32 at 13) and or its initial Answer (doc. 43 at 25), but Plaintiff's waiver argument is so contradicted by the Federal Rules of Civil Procedure that Dynamic and the Court need not spend any additional time on those arguments.

[3] Rule 7(a)(2) allows an answer to a complaint.

12(c) or "at trial."  Thus, even if Plaintiff is correct that Dynamic failed to move to dismiss that claim in its initial 12(b)(6) motion, such omission does not waive the Dynamic's right to later move for pleading deficiencies. *Robert v. Abbett*, No. 3:08-CV-329-WKW (WO), 2009 WL 902488 *17 (M.D. Ala. March 31, 2009) ("[T]he Court concurs with the Defendants' argument that the defense of 'failure to state a claim' is not waived simply because Defendants raised the defense after filing a responsive pleading. . . .  Rather, the defense may still be asserted. *See* Fed. R. Civ. P. 12(h)(2)."); *see also Ford v. Central Loan Admin.,* No. 11-0017-WS-C, 2011 WL 4702912 *3 (S.D. Ala. Oct. 5, 2011) ("[T]he defense of failure to state a claim upon which relief can be granted is properly raised well after the pleadings stage. *See* Rule 12(h)(2)."); *Hogan v. Provident Life & Accident Ins. Co.*, No. 6:08-cv-1897-Orl-19KRS, 2009 WL 2169850 *3 (M.D. Fla. July 20, 2009) ("[F]ailure to file a motion prior to the close of pleadings does not waive the defense of failure to state a claim because Rule 12(h)(2) allows a party to raise this defense in any pleading allowed under Rule 7(a), by motion under Rule 12(c), or at trial.")

Second, Plaintiff argues without citation or authority that she sufficiently raised a retaliatory termination claim because it was included in the Pretrial Order (which was derived not from the Amended Complaint but from Plaintiff's presentation of her claims against Dynamic in the joint proposed pretrial order. Plaintiff's articulation in the proposed Pretrial Order of a retaliatory termination

claim against Dynamic does not excuse her failure to plead that claim against Dynamic. This Court has held that that a party cannot assert a claim for the first time in a Pretrial Order. *Sanders v. City of Montgomery*, 319 F. Supp. 2d 1296, 1300 (M.D. Ala. 2004) ("A plaintiff cannot circumvent the consequences of failure to timely amend the complaint by adding new claims or factual bases for a claim through the submission of a proposed pretrial order containing them. This is especially true where, as here, the defendant objects to the new claims or contentions.")[2]; *see also Gaddy v. American Interstate Ins. Co.*, 1;14-cv-1928-WSD, 2018 WL 1659156 *3 (N.D. Ga. April 5, 2018).   The Eleventh Circuit decision Plaintiff cites, *Hargett v. Valley Federal Savings Bank*, 60 F.3d 754 (11th Cir. 1995), is inapposite because it addressed an affirmative defense to a claim that was clearly asserted; it did not permit a plaintiff to assert a new claim for the first time against a defendant. More importantly, the defendant in that case – unlike the Plaintiff in this case – moved to amend the answer before the pretrial order was entered. *Id.* at 763.

In support of their opposing positions, Plaintiff and Dynamic cite virtually the same excerpts from Count V of the Amended Complaint. Neither excerpts includes an allegation that *Dynamic* retaliated against Plaintiff *by failing to offer her another job* because Plaintiff never pled such an allegation against Dynamic.

**B.**   <u>**Plaintiff Fails to Establish She Engaged in Protected Activity.**</u>

The Eleventh Circuit in *Furcron v. Mail Ctrs. Plus, LLC*,, 843 F.3d 1295 (11th Cir. 2016), made it clear that there are two separate requirements for a complaint to qualify as protected activity to support a retaliation claim: "the statute's protections only reach individuals who 'explicitly or implicitly communicate[ ] a belief that the practice constitutes unlawful employment discrimination.' EEOC Compl. Man. (CCH) § 8–11–B(2) (2006). . . . In addition, a plaintiff is required to show that she 'had a good faith, reasonable belief that the employer was engaged in unlawful employment practices.'" *Furcron*, at 1311 (emphasis added). *See also Johnson v. Global Language Center*, No. 21-1638, 2023 WL 3645055 *4-6 (4th Cir. May 25, 2023) (brief mention of "retaliation" and "harassment" is e-mail is not protected activity when the gist of the email was a general complaint about the appointment of plaintiff's supervisor).

For the legal requirements of satisfying the protected activity prong, Plaintiff also cites *Furcron* but urges the Court to limitedly apply the opinion in a broad manner that favors her position and ignores a crucial part of the *Furcron* Court's reasoning. Plaintiff uses *Furcron* to argue a plaintiff must communicate only a "*belief*" about *discrimination*. She omits key words from the opinion – words that are required in order for § 1981 protection to attach:  that the complaint must communicate a belief about "unlawful employment discrimination." (Doc. 206 at

16) (quoting *Furcron v. Mail Ctrs. Plus, LLC.*, 843 F.3d at 1311)).   Plaintiff's subsequent argument about Plaintiff having had a good faith belief of discrimination is unhelpful because she does not argue or cite to the record that Plaintiff communicated she was protesting unlawful employment discrimination – which would necessarily be an act of race discrimination by Dynamic that would violate § 1981.

Dynamic does not argue that the law requires Plaintiff to utter any "magic words"; rather, Dynamic's argument is that the words Plaintiff chose articulated a complaint about her hair and not about her race. Dynamic cited binding case law stating a plaintiff must complain about a violation of the federal anti-discrimination statutes; for a plaintiff to complain about a violation of 42 U.S.C. § 1981, the complaint must be about race discrimination. Plaintiff's arguments in Plaintiff's Opposition address various facets of what is required to engage in protected activity but stop short of responding to Defendant's argument that Plaintiff's complaint was limited to being treated differently because of her hair and did not mention race. Specifically, Plaintiff's Opposition does not address the multiple Eleventh Circuit cases, both published and unpublished (doc. 197 at 9-10, 12-13), that state the plaintiff has to complain about *unlawful discrimination*.   . Nowhere in that discussion does Plaintiff state that she complained about race discrimination. Plaintiff's conclusion that "there was a question of fact whether Key had both a

subjective and objective good faith belief that the way she was being treated was unlawful race discrimination" (doc. 206 at 17) is a separate question of whether Plaintiff actually complained of race discrimination.

Further, Plaintiff's Opposition does not address Dynamic's argument that even the mention of "race discrimination" without any other explanation does not constitute protected activity under § 1981. Instead, Plaintiff focuses on the issue of whether Plaintiff had a *good faith belief* that she was subjected to race discrimination; yet that is a discrete issue that Dynamic addresses separately.[4]

Plaintiff also bases her argument on evidence that was not before the jury and was legally excluded by the Court. Plaintiff's Opposition begins the protected activity section of the Opposition by defining the protected activity as encompassing 1) Plaintiff's internal complaint to Dynamic; and 2) Plaintiff's complaints to the EEOC. (Doc. 206 at 16).  Yet Plaintiff's arguments regarding the EEOC are irrelevant and should be struck because this Court granted Dynamic's motion in limine to disallow Plaintiff from entering into evidence at trial about Plaintiff's EEOC Charge in order to show that was a separate protected activity. (Court's Oral Order on September 27, 2023, granting in part Dynamic's Motion in Limine).  Thus, Plaintiff cannot reference the EEOC Charge as a form of protected activity to support

---

[4] This argument focuses on whether the evidence Plaintiff bases her belief she was subjected to discriminatory action is barred by the Best Evidence Rule.

her retaliation claim.  And even in the absence of such an order, the EEOC Charge was not placed into evidence; thus Plaintiff's arguments that the EEOC Charge provided some racial discrimination context for her "hair discrimination" complaint is based only on *ex post facto* arguments and not on evidence that was before the jury.

The other decision Plaintiff relied on does not apply on this issue. In *Alkins v. Sheriff of Gwinnett Cty*., 2022 U.S. Lexis 23352 (11th Cir. August 22, 2022), the Eleventh Circuit stated as follows, "[t]he sole issue on appeal is whether Alkins had a reasonable belief that she suffered sexual harassment when her alleged supervisor kissed her against her wishes, such that her report concerning the incident is protected activity under Title VII." The *Alkins* decision therefore had no impact on the first prong of a prima facie case of retaliation – that the employee must have communicated to the employer that she was protesting unlawful discrimination.

Plaintiff's reference to Dynamic's training also does not relate to this issue. The training at issue related to hair texture and not to a grooming issue.  But more importantly, the focus on protected activity is whether the Plaintiff complained of race discrimination and not whether Dynamic considered it race discrimination. Plaintiff's argument that her case is distinguished from the Eleventh Circuit's decision in E.E.O.C. v. *Catastrophe Management,* 852 F.3d 1018 (11th Cir. 2016) (Doc. 206 at 21022) is based solely on evidence that Dynamic claims in inadmissible

under Rule 1002 and, as stated before, is a separate issue than whether Plaintiff complained of race discrimination. The Court also already has ruled that Plaintiff has no claim of race discrimination based in large part on the holding in *Catastrophe Management*. (Doc. 138 at 24-31). The reference to the Dynamic training on hair texture and Plaintiff's argument that the issue is about her hair texture ignores that the Court already has dismissed Plaintiff's claim that the issue about her hair was actually race discrimination.[5] It also ignores that no evidence exists that Plaintiff during the two days she worked saw the Dynamic training materials so that could not have formed part of her protected activity.

Plaintiff's reliance on the notice Dynamic received that Plaintiff filed a Charge of Discrimination alleging race discrimination is misplaced. (Doc. 206 at 19). The mere notice of Charge alleging race is not substantial evidence that Plaintiff's internal complaint about her hair was a race complaint. First, as a matter of law the mere reference to race without any context or it being tied to specific actions is not protected activity. *See Ceus v. City of Tampa*, 803 Fed. App'x. 235, 246-47 (11th Cir. 2020) (allegations of "racist department" were not protected activity as they were not tied to any specific discrimination or adverse action the

---

[5] The Court's Memorandum Opinion also addressed the hair texture issue stating that "[t]he court in *Catastrophe Management* held that dreadlocks are a hairstyle, not an 'immutable characteristic of race,' even though they are 'are a "natural outgrowth" of the texture of black hair.'" (Doc. 138 at 28 )(quoting *Catastrophe Management*, 852 F.3d at 1030).

plaintiff or anyone else suffered); *see also Moore v. City of Atlanta*, CIVIL ACTION FILE NO. 1:20-cv-3380-JPB-JKL, 2022 WL 19517299 *23 (N.D. Ga. December 19, 2022) report and recommendation adopted CIVIL ACTION FILE NO. 1:20-cv-3380-JPB-JKL, 2023 WL 2646300 (N.D. Ga. March 27, 2023); *Johnson v. Birmingham Board of Education*, Case No. 2:18-CV-1262-CLM, 2020 WL 5203979 *5 ((N.D. Ala. September 1, 2020) ("[T]he Eleventh Circuit distinguishes between general complaints of alleged racism and complaints directed to specific, statutorily proscribed  employment practices. . . . , Only the latter can sustain a claim."); *see also Johnson v. Global Language Center*, 2023 WL 3645055 *4-6  (brief mention of "retaliation" and "harassment" in e-mail is not protected activity).

Second, under these facts, the specifics of the Charge and what was contained in the Charge was not in evidence.  No evidence exists that the Charge was related to the issues Plaintiff raised about her hair.  The bald notice of the EEOC Charge is of no matter.

### C.   <u>Plaintiff Failed to Show Evidence of Her Good Faith Belief Should Not Have Been Excluded under the Best Evidence Rule</u>.

The only evidence that supports Plaintiff's requirement that she must have a good faith belief is Plaintiff's testimony about the "memos" that Dynamic claims is barred by the Best Evidence Rule, Fed. R. Evid. 1002.  Plaintiff does not in this section dispute that this is the only evidence to support that requirement.  Nor does Plaintiff dispute the description of her testimony and that she was describing the

contents of a document.  Plaintiff also does not even address or distinguish the Eleventh Circuit cases Dynamic cited saying that the Best Evidence Rule applies when a party is describing the contents of a document.

Instead, Plaintiff references and relies on the hearsay rules to argue an exception not found in Rule 1002 that evidence otherwise inadmissible under Rule 1002 is admissible to prove the effect on the listener and cites one Georgia district court decision.  Plaintiff relies almost exclusively on a hearsay analysis in opposing this argument.  Plaintiff begins by defining Dynamic's argument as that Plaintiff's testimony about the Robinson statement is "*hearsay* which should have been excluded under the 'best evidence rule.'" (Doc. 206 at 22).  Plaintiff then states without citing any rule or authority that "[t]he best evidence rule tends to go hand-in-hand with the rule against hearsay."  *Id*. at 23.  In an attempt to set up this argument that the best evidence rule is subject to the same exceptions to the hearsay rule, Plaintiff's Opposition states that "Dynamic's argument ignores that not all out-of-court statements are hearsay.  The purpose for which a piece of evidence governs whether it is hearsay."  *Id*.

All of this is to argue that the Best Evidence Rule does not apply because Plaintiff was not offering the testimony with the intention of trying to prove the content of the document or that the document existed, but for another purpose entirely.  But the Best Evidence Rule is not that limited; it applies whenever someone

is offering testimony that describes the contents of a document. See Doc. 197 at 17-18 and n. 5. And here the Plaintiff's testimony was describing the content of the alleged memos as relayed to her by Gloria Robinson.

The Best Evidence Rule's purposes of preventing inaccurate testimony about the content of documents and ensuring documents are accurately described are furthered by applying the Best Evidence Rule to this evidence. Otherwise, a party could provide false testimony about documents that do not even exist but claim they were not attempting to prove the document's contents. Plaintiff claims she is not trying to prove the contents of a document but cites no binding or persuasive authority for this position. Dynamic cited multiple Eleventh Circuit decisions for its position, but Plaintiff does not address them and only cites one case. *City of Rome v. Hotels.com.*, CIVIL ACTION FILE NO. 4:05-CV- 249-HLM, 2011 WL 13229684. The procedural posture of the case was that it arose on a motion for class certification. *Id.* *3. The court noted repeatedly that "the Federal Rules of Evidence are not strictly enforced at the class certification stage because of the preliminary nature of the proceedings." *Id.* *4; *Id.* *5 ("Keeping in mind the more liberal rules of evidence in a motion for class certification, the Court will evaluate Plaintiffs' objections . . . ."); *Id.* *6 ("given the more liberal admissibility standard at the class certification stage"). The case involved the contracts between *Hotels.com* and various hotels and whether *Hotels.com* paid sufficient excise taxes. The opinion does

not reference any specific contents of the contracts to which plaintiffs objected, and the courts holding simply was that "declarants stated their understanding of the contracts in general." *Id.* *7. Therefore, the court found that the testimony "was not offered to prove the contents of the contracts." *Id*. *6. In contrast to the present case, some of the contracts were indeed placed into evidence. *Id.* *24. It appears that the testimony at issue related to testimony that generally none of the contracts required additional taxes to be paid, *id*. *2, and that not every contract is the same. Id. *24, n. 20. Considering the issue before the court in *City of Rome* was whether class certification issues such as commonality were satisfied thus not requiring proof of any specific contract provisions, the decision does not support Plaintiff's position,

What is significant is that on this important issue[6] the only authority Plaintiff offers to oppose Dynamic's objections to the evidence was a single district court decision that addressed the Best Evidence Rule in a class certification proceeding where no substantive findings were made and the district court noted that the Rules of Evidence were not being strictly enforced.[7] The other authorities Plaintiff cites relate to hearsay and not the Best Evidence Rule. Dynamic's arguments in its Motion to Vacate/New Trial were never that the testimony about the Gloria Robinson

---

[6] This was the testimony that allowed Plaintiff to avoid Dynamic's motion for summary judgment on this claim. (Doc. 138 at 34-36).

[7] In Plaintiff's opposition to the motion in limine on this issue Plaintiff cited no authority on this issue. (Doc. 169 at 3-4).

statement regarding the contents of the memos was hearsay; therefore, the contention that hearsay testimony can be offered to prove its effect on the listener has no bearing. Plaintiff cites no authority for her apparent proposition that a similar exception exists for testimony otherwise barred by the Best Evidence Rule. And no such authority exists. No language exists in Rule 1002 for such an exception; the only exception allows oral testimony about the contents of a document that once existed but has now been destroyed. Plaintiff has not attempted to meet this exception and could not, since the evidence of trial was that the document does not exist and no evidence was presented the document was destroyed.

Plaintiff's Opposition on this issue confirms Dynamic's position that this is a classic example of the application of the Best Evidence Rule and the reason for the Rule. Plaintiff saved her case from being dismissed before trial with and offered as her only testimony of her objective belief that her complaint of hair discrimination was a race complaint her testimony of what a Dynamic supervisor allegedly said about the contents of memos from one of the two Hyundai entities. Plaintiff may try to avoid the Best Evidence Rule by saying the purpose of the testimony was not to prove the contents of the memos but of its impact on Plaintiff, but the Best Evidence Rule does not recognize such a distinction and does not depend on the purpose for which the testimony was offered. But the purpose and reason for the Best Evidence Rule, which is to assure accuracy in the description of documents, particularly

applies here.  The evidence at trial was that no one has seen any such document or is aware of its existence; no evidence exists of the document other than Plaintiff's testimony regarding what Robinson said who admits she has not seen the document, does not know if the documents exist, and recognizes the possibility that the memos have never existed. (Tr. Vol. I at 118:23-24; 119:6-11).  Dynamic has no ability to contest the accuracy of the testimony regarding the contents of the memo, although it attempted to by offering testimony from Ms. Robinson and a Hyundai representative that no such document existed.  As this was the only testimony offered to support Plaintiff's requirement that she had a good faith belief she had been subjected to race discrimination (the Court having specifically instructed the jury that Plaintiff had to have a good faith belief that she was subjected to unlawful discrimination) the jury either ignored the instruction or accepted Plaintiff's oral testimony about the content of the memos. The Best Evidence Rule and its purpose and rationale require that Dynamic not be prejudiced by such bald testimony and that the evidence be excluded and a judgment entered in Dynamic's favor dismissing Plaintiff's claim for failure to establish she had an objective good faith belief she was subjected to race discrimination.

### D.  No Evidence the Decisionmaker Knew Plaintiff Complained of Race Discrimination.

The other side of the argument that Plaintiff never complained of any race discrimination or other protected activity is that the decisionmaker did not know Plaintiff complained of race discrimination.  Plaintiff is correct that this argument is closely related to the argument that Plaintiff never complained of race discrimination.  The evidence and the position is the same for both, Plaintiff never complained of race discrimination and thus the decisionmaker was never aware of any complaint of race discrimination.  And there is no testimony that Cureton or anyone else considered it anything other than a complaint about her hair.  Ray Cureton and Sherry Spire both testified that all they understood Plaintiff was complaining about was about her hair.  Tr. Vol. II (Cureton testimony) at 80:6-14; 83:1-4 (answering yes to the question "setting aside the pregnancy, that her other complaint was always an issue about her hair"); 16:23 ("It was never about her race."); 89:15-17; 98:17-19 ("Discrimination about her hair.")  Tr. Vol. II  (Spire testimony) at 121:9-12; 124:24-125:16 (complaint "was about her hair and her pregnancy"); 159:8-10; 161:23-162:1 (answering yes to the question "it was a complaint about her hair"); 162:4-16; 163:3-5 ("Q. From day one until now, as far as you know, it's always been a complaint about her hair, right? A. Yes.")  Plaintiff's internal complaint was never about Plaintiff's race, but was always about her hair.

As pointed out earlier, Plaintiff's reliance on the notice Dynamic received that Plaintiff filed a Charge of Discrimination alleging race discrimination is misplaced. The mere notice of Charge alleging race is not substantial evidence that Cureton and Spires knew Plaintiff's internal complaint about her hair was a race complaint. First, as a matter of law the mere reference to race without any context or it being tied to specific actions is not protected activity. *See Ceus v. City of Tampa*, 803 Fed. App'x at 246-47 (11th Cir. 2020); *Johnson v. Birmingham Board of Education*, 2020 WL 5203979 *5. Also, no evidence exists or is pointed to in Plaintiff's Opposition that the decisionmakers knew the specifics of the Charge and what was contained in the Charge. No evidence exists that they knew the Charge was related to the issues Plaintiff raised about her hair. The notice of the EEOC Charge again is of no matter.

This case is unlike the one cited by Plaintiff. *Olson v. Lowe's Home Ctrs., Inc.*, 130 F. App'x 380 (11th Cir. 2005). Unlike this case, where Dynamic never considered it to be a case of race discrimination, the employer in *Olson* considered the complaint in that case as one of possible sexual harassment. No evidence exists in this case that Dynamic treated this as a case of race discrimination. Plaintiff contends that the jury resolved this issue in favor of the Plaintiff (doc. 206 at 26), but the jury was never told that the decisionmaker had to know about the protected activity and why the Plaintiff thought it was an issue of race discrimination, which Dynamic claims was an error.

Whether Dynamic knew Plaintiff made some sort of complaint is not the question. The issue is whether Dynamic knew the Plaintiff was complaining of race discrimination. This is demonstrated by the Eleventh Circuit's decision in *Duncan v. Alabama*, 734 Fed. App'x 637 (11th Cir. 2018), where the decisionmaker knew some sort of complaint had been filed, but no evidence existed that the decisionmaker was "aware the internal complaint raised any allegations of race discrimination, such that it constituted a protected expression." *Id.* at 641. Plaintiff has cited no authority for the proposition that knowledge of general discrimination or of discrimination based on issues that are not unlawful satisfies the causation requirement.

### E.      Dynamic is Entitled to Judgment as a Matter of Law on Punitive Damages.

Plaintiff argues Dynamic waived its Rule 50(b) grounds for dismissal that punitive damages are not available because the decision-maker was not high enough in the corporate hierarchy and higher management did not approve the decision. Dynamic's Rule 50(b) motion did not assert new grounds for judgment as to punitive damages but instead fleshed out its arguments supporting grounds raised at the close of Plaintiff's evidence. Dynamic's Rule 50(a) motion stated, "Plaintiff has not put forth substantial evidence that Defendant acted with malice or reckless indifference to Plaintiff's federally protected rights and thus any claim for punitive damages should be dismissed." (Doc. 182, p. 4). Dynamic's Rule 50(b) motion moved for

judgment as a matter of law as to punitive damages because the conduct Dynamic allegedly engaged in – Cureton's failure to offer Plaintiff new assignments – was not substantial evidence that *Dynamic* acted with malice and reckless indifference sufficient to legally support punishment. *See* Doc. 197, p. 46-67.

Plaintiff argues Dynamic waived its Rule 50(b) grounds for dismissal that punitive damages are not available because the decision-maker was not high enough in the corporate hierarchy and higher management did not approve the decision. Dynamic's Rule 50(b) motion did not assert new grounds for judgment as to punitive damages but instead fleshed out its arguments supporting grounds raised at the close of Plaintiff's evidence. Dynamic's Rule 50(a) motion stated, "Plaintiff has not put forth substantial evidence that Defendant acted with malice or reckless indifference to Plaintiff's federally protected rights and thus any claim for punitive damages should be dismissed." (Doc. 182, p. 4). Dynamic's Rule 50(b) motion moved for judgment as a matter of law as to punitive damages because the conduct Dynamic allegedly engaged in – Cureton's failure to offer Plaintiff new assignments – was not substantial evidence that *Dynamic* acted with malice and reckless indifference sufficient to legally support punishment. *See* Doc. 197, p. 46-67.

The grounds for judgment as to punitive damages in its Rule 50(b) motion are the same grounds previously brought in its Rule 50(a) motion but briefed in greater depth. Rule 50(b) was designed to avoid a particular type of "post-verdict trap" that

would permit "judgment as a matter of law based upon a lack of evidence regarding a factual issue never raised by any defendant before the trial, and never addressed by anyone in any way before submission of the case to the jury." *Doe v. Celebrity Cruises, Inc.*, 394 F.3d at 902-04 (district court erred in "granting judgment as a matter of law based upon a lack of evidence regarding a factual issue never raised by any defendant before the trial, and never addressed by anyone in any way before submission of the case to the jury. This is precisely the type of post-verdict "trap" that Rule 50(b) is designed to avoid.") This rule ensures "that opposing counsel will not be 'ambushed' or 'sandbagged' regarding the sufficiency of the evidence adduced at a point in the trial proceedings when it is too late to address possible insufficiencies. The purpose of Rule 50(b) ... [is] 'to avoid making a trap' out of a motion for JNOV." *Id.* (citing *Crawford v. Andrew Sys., Inc.*, 39 F.3d 1151, 1153–54 (11th Cir. 1994) (quoting *Sims' Crane Serv. v. Ideal Steel Prod., Inc.*, 800 F.2d 1553, 1557 (11th Cir. 1986)).

Dynamic's articulation of this more specific argument supporting the same grounds does not put plaintiff in a trap of being not able to elicit sufficient evidence during defendant's case to defeat this issue of law and establish the company deserved to be punished for the actions by the decision-maker, or as Plaintiff argues, the three individuals involved in the decision. Who and how the discriminatory decision was made is part and parcel to Plaintiff's evidentiary burden to establish

the requisite amount of malice to access punitive damages against a corporate defendant.

In *Johnston v. Borders*, 36 F.4th 1254, 1270 (11th Cir. 2022), a case on which Plaintiff relied, the grounds raised in that Rule 50(b) motion were entirely new grounds that were not included in the earlier Rule 50(a) motion. One example from that case is where the challenged Rule 50(b) grounds evoking the defense of absolute privilege as to public officials was not the same ground as was included in the Rule 50(a) motion, the defense of "intracorporate" qualified privilege, and both grounds were based on sufficiency of evidence. Those were clearly separate grounds, which is not the case here. Dynamic's motion for judgment as a matter of law regarding punitive damages due to the lack of substantial evidence that Dynamic acted with malice or reckless indifference to Plaintiff's federally protected rights includes the argument that the Cureton did not impute malice to the corporation such that the entire corporation should be punished. *See also U.S. S.E.C. v. Big Apple Consulting USA, Inc*., 783 F.3d 786, 812–13 (11th Cir. 2015) as an example of separate grounds. There, the Eleventh Circuit considered to be new grounds insufficiency of evidence to prove the participation element of a claim for fraudulent scheme and insufficiency of the evidence of other elements of that claim, where the original Rule 50(a) motion challenged only the scienter element of that claim. This argument is properly before the Court on Dynamic's Rule 50(b) motion.

Apparently recognizing that Cureton is not high enough in the hierarchy, Plaintiff argues that the decision not to reassign her "involved" District Manager Cureton, HR Manager Spires, and Chief Legal Officer Kristal Riddle (doc. 206 at 27, citing PL Trial Exhibits 4, 5, 7, 8, and 10), and "their actions could be seen as the actions of Dynamic." (Doc. 206 at 29). The trial evidence shows that to be incorrect. Even though Plaintiff failed to cite authority as to the different roles each of these individuals played in taking retaliatory action against Plaintiff, Plaintiff's Opposition admits the only relevant piece of evidence when she states, "[t]he evidence demonstrates that Cureton was the final say in Key's district as to where she could be placed."[8] (*Id.*) Controlling law "does not allow a jury to impose punitive damages on an employer based on the decision of one who is not high enough in the corporate hierarchy simply because the jury wants to send a big corporation a big message," *Ash v. Tyson*, 664 F.3d 883, 903 (11th Cir. 2011) (quoting *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 529–30 (1999) (quotation omitted)). Cureton was a district manager over a regional district in Alabama. Plaintiff presented evidence that Dynamic has over 1300 employees in 13 states. The jury's belief that a single district manager chose not to reassign an employee in training because she

---

[8] Plaintiff's statement that "Spires was the final say as it related to human resources," but fails to cite any testimony or authority for these statements. (Doc. 206 at 29). She also states Kristal Riddle was Dynamic's owner's daughter-in-law who reported to her husband the Executive Vice President and concludes that "these three individuals  were not low-level managers, but rather worked in positions of great influence over not only Key but others working for Dynamic."

complained about a customer rejecting her hairstyle cannot legally justify punishing the corporation.

Plaintiff's statements that Kristal Riddle was "involved" in decisions impacting Plaintiff is completely contrary to the evidence. Plaintiff failed to present or cite any supporting testimony or evidence as to Riddle's supposed "involvement," and the only clear testimony or evidence of Kristal Riddle's involvement was her own: "Q. You were not involved in making any of the decisions with respect to Ms. Key, were you? A. No, I was not." (*See* Tr. Vol. II at 206).

To the extent Human Resources Manager Sherry Spires was "involved," the evidence is clear that the instruction she gave Cureton was to offer Plaintiff other assignments. (PL Trial Ex. 8, August 10, 2017 email from S. Spires to R. Cureton) ("Definitely offer her any other job site(s) you have available. Make sure you document everything you offer even if she refuses it.") To the extent Spires was involved in the decision, her actions would not justify awarding punitive damages against Dynamic.

## III.   DYNAMIC IS ENTITLED TO A NEW TRIAL.

Plaintiff contends that Dynamic is not entitled to a new trial because the jury verdict was not against the great weight of the evidence. (Doc. 206 at 31-32). Based on the evidence Dynamic has cited in the Motion to Vacate/New Trial and in response to Plaintiff's Opposition, the finding of liability and the damages awarded

were against the great weight of the evidence.  If the Court does not vacate the jury verdict and enter judgment for Dynamic, the Court should award a new trial.  As Dynamic has suggested throughout this case, no evidence exists that Plaintiff engaged in any protected activity; all of Plaintiff's internal complaints and all e-mails, discussions, and communications were about her hair and never about her race.  The only purported evidence of the complaint about race was the notice to Dynamic that Plaintiff had filed a Charge of Discrimination with the EEOC alleging race discrimination.  That notice alone is not enough as a matter of law to be protected activity, since the EEOC Charge was barred by the Court as being a separate instance of protected activity (Court's Oral Order on September 27, 2023, granting in part Dynamic's Motion in Limine) and there is no evidence that the Dynamic decisionmakers knew the nature of the Charge beyond the bald allegation of race discrimination.

Very closely related and based on the same lack of evidence Plaintiff cannot establish the required causation as the Dynamic decisionmakers had no knowledge that the Plaintiff engaged in any protected activity by complaining of race discrimination.  Plaintiff also has no evidence that she had a good faith belief that she had been subjected to race discrimination as the only evidence of her objective belief is the evidence that should be excluded under the Best Evidence Rule.  Plaintiff also has no evidence and has not pointed to any evidence in Plaintiff's

Opposition of any compensatory damages in the form of emotional harm resulting from the alleged termination.  Finally, no evidence exists to support the award of punitive damages as Dynamic has pointed out in its arguments on remittitur of punitive damages.

**A.**      **The Failure to Provide Dynamic's Requested Jury Charges on the Fundamental Elements of a Retaliation Claim Prejudiced Dynamic Entitling it to a New Trial.**

1.      Failure to provide a complete charge on protected activity.

The fact that the Court gave the pattern instruction is not sufficient for the instructions to be accurate. The pattern instructions do not provide all of the elements of a retaliation claim.  As the Eleventh Circuit clearly stated in *Furcron,* there are at least two elements to the issue of whether the Plaintiff engaged in protected activity: (a) did the Plaintiff communicate that she believed she was subjected to unlawful discrimination and (b) was that a good faith belief both subjectively and objectively.  The pattern instructions and those given to the jury only address the second element of good faith belief. And although Dynamic does not believe Plaintiff can establish a good faith belief that she was subjected to discrimination,[9] Dynamic has argued consistently throughout this matter that a fundamental flaw in Plaintiff's retaliation claim is the lack of any complaint of

_____

[9] Indeed, this is what entitled one of the co-Defendants in this action to dismissal of Plaintiff's retaliation claim against it. (Doc. 138 at 40-42).

unlawful discrimination.

The fact that the jury was asked to determine whether Plaintiff engaged in protected activity does not solve the issue when the jury was not properly instructed on what is required to establish protected activity. In doing so, Dynamic was not asking the Court to instruct the jury that any magic words were required. Dynamic is merely contesting the failure to provide the statement of the law from *Furcron* that the plaintiff must "communicate a belief that the practice constitutes unlawful employment discrimination." *Furcron* at 1311 (emphasis added). By only providing half of the elements, the instructions contained an inaccurate statement of the law. Plaintiff's arguments that a complaint must be "viewed in context of the circumstances" and in light of "the facts and circumstances surrounding the complaint" (doc. 206 at 34-35) may be an accurate statement of the law,[10] and the jury could have been charged on that. But that is a factual determination and has nothing to do with the failure to instruct the jury on the first element of a retaliation claim. This was a fundamental issue in this case and one on which the jury needed to be instructed properly and fully.

> 2. Failure to provide a charge that the decisionmaker had to know
> Plaintiff complained about unlawful discrimination.

Dynamic's arguments on the instructions on causation are much like those on

---

[10] Dynamic asserts as it has throughout this proceeding and in its Motion to Vacate/New Trial that the facts and circumstances demonstrate clearly and under the great weight of the evidence that Plaintiff's internal complaints have always been about her hair and never about her race.

failure to provide a complete Charge on protected activity.  Plaintiff does not argue that Dynamic is incorrect on the law about causation, but only that it is not necessary. Again, Dynamic was not asking for any magic words or a jury instruction in its favor, but only a jury instruction that contained this simple but fundamental element of a retaliation claim that the decisionmaker had to be aware of the protected activity.[11] The fact that the Charge given was that Plaintiff had to have a reasonable belief she was subjected to race discrimination (doc. 206) does not resolve Dynamic's issue on causation. That Charge only related to the Plaintiff's belief and knowledge and did not provide any instruction on what was required for the Plaintiff to establish Dynamic acted intentionally.

The same analysis Dynamic provided in support of its renewed motion for judgment as a matter of law on this issue applies with respect to the jury instructions. The courts have applied this requirement even when the decisionmaker knew some general complaint was made but was not aware that the complaint was about a protected activity.  *See Duncan v. Alabama*, 734 Fed. App'x at 741 (decisionmaker was aware of a complaint but not that it involved race discrimination).  The argument that the cases Dynamic cites about the need to show the decisionmaker had the

---

[11] In its Memorandum Opinion, this Court correctly stated as follows: "To satisfy the final element of a prima face retaliation claim, 'a plaintiff must show that the relevant decisionmaker was aware of the protected conduct . . . .'" (Doc. 138 at 33)(quoting *Patterson v. Ga. Pac., LLC,* 38 F.4th 1336, 1351 (11th Cir. 2022)).

requisite knowledge are factually distinguishable from this case is of no importance. The issue is whether the Court should have instructed the jury on this undisputed statement of the law.  One of Dynamic's primary defenses – both factually and legally – has been the related issues that Plaintiff never complained of race discrimination and the Dynamic decisionmakers were never aware that Plaintiff complained of race discrimination.  Thus, this is not an academic issue, but one that goes to one of the primary issues in the case.  Dynamic only sought and was entitled to a level playing field on this issue.

### B. Arguments Made in Closing Arguments Were Prejudicial, Clearly Injurious, and Impaired the Jury's Consideration and Thus Entitle Dynamic to a New Trial.

Dynamic has satisfied its burden that the comments in closing were unwarranted and would have impaired the jury's consideration.  Plaintiff offers no rationale for stating first that the EEOC Charge was a form of protected activity and ignores the statement counsel made that "they haven't reassigned her since she filed her EEOC Charge because she filed an EEOC Charge complaining of race discrimination."  (Tr. Vol. III at 57:24 - 58:2).  These comments were directly in violation of the Court's ruling excluding any argument that the EEOC Charge was a form of protected activity.  And this goes to the heart of Dynamic's defense that Plaintiff's internal complaint was never about race discrimination.

The fact that the Court instructed the jury only to consider the evidence does

not mitigate the improper statements counsel made, and Plaintiff cites no authority that these instructions prevent a new trial.  Dynamic, of course, cannot divine what the jurors regarded, disregarded or relied on, but the jury verdict itself indicates that the jury could have relied on and regarded these improper statements, particularly in light of the evidence that every complaint, statement or email regarding Plaintiff's complaint was about the Plaintiff's hair and not her race.  The Court allowed Plaintiff to use the EEOC Charge in a very limited and for a very specific purpose over Dynamic's objections.  Plaintiff used evidence of the EEOC Charge beyond that purpose to argue a highly contested issue.  In fact, the EEOC Charge is the only information the jury saw from the Plaintiff that mentioned race.  Dynamic most likely was prejudiced by Plaintiff using the evidence beyond the purpose allowed by the Court.   Dynamic is entitled to a level playing field where it is not deprived of the Court's rulings on summary judgment and on the motion in limine.  If Plaintiff's argument was to prevail, counsel would be allowed to make statements without restrictions, and no court would ever be able to use counsel's comments – no matter how improper – to order a new trial, but as Dynamic's Motion to Vacate/New Trial showed courts have made that finding.

## IV.    THE JURY TRIAL WAIVER SHOULD BE ENFORCED.

### A.    <u>Plaintiff Admitted under Oath That She Had Read the Jury Trial Waiver in the Handbook and Understood That She Had Agreed to Waive Any Trial by Jury</u>.

Plaintiff's argument is that Plaintiff did not knowingly waive her right to a jury trial. (Doc. 206 at 41-46). She acknowledges that, even though "Key has a fundamental right to a trial by jury secured by both the United States Constitution and federal law" and that courts analyze waivers with "exacting scrutiny" (quoting *Graves v. Avis Budget Grp., Inc.*, No. 8:20-cv-270-CEH-JSS, 2022 U.S. Dist. LEXIS 129849, at *7 (M.D. Fla. July 21, 2022)[12], she may "may waive her right to a jury if the Court determines, based on the facts of the case, that her waiver is knowing and voluntary." (Doc. 206 at 42) (citing *Tracinda Corp.*, 502 F.3d at 222 and *Bakrac, Inc. v. Villager Franchise Sys., Inc.*, 164 F. App'x 820, 823 (11th Cir. 2006)).

The undisputed facts before this Court are that Plaintiff read the Jury Waiver Policy before she signed an acknowledgement of having read it and that she understood it to mean that she was waiving her right to a jury trial:

> Q.    . . . Look, if you would, at Key number 373.
>        And it's the policy, "Waiver of Trial by Jury
>        Policy." Did you read that policy?
>
> A.    Yes.
>
> Q.    What was your understanding as to what
>        it meant?
>
> A.    Waiver of trial by jury.

(Doc. 89-4 at 3, p. 55 of Plaintiff's Deposition). Plaintiff clearly admits that she read

---

[12] Holding that the defendant showed the plaintiff waived his right to a jury trial through an explicit jury waiver contained in his signed employment application.

and understood Dynamic's Jury Waiver Policy. These undisputed facts end the "knowing and voluntary" analysis and  moot the Plaintiff's remaining challenges to waiver Plaintiff presents on pages six through 11 of her brief, including: Key's Jury Trial Waiver was not an employment contract (doc. 206 at 42, 44-45 at); that Dynamic failed to establish the waiver was conspicuous, the parties had equal bargaining power, the Plaintiff was sophisticated enough, and that the terms were negotiable (*id*. at 42-44-); and that the documents Plaintiff signed did not reference the jury waiver. (*Id*. at 44).

### B.    Plaintiff's Cited Legal Authority Is Not Controlling.

Out of an abundance of caution, Dynamic will address Plaintiff's argument that, in spite of Plaintiff having admitted to have knowingly and voluntarily waived her right to a jury trial arising out of her employment, her signed Acknowledgement that she was bound by the policies set forth in the Employee Handbook was insufficient to establish waiver. Plaintiff's argument that the Jury Trial Waiver was not knowing and voluntary has no factual or legal basis. Plaintiff has not cited a single case to support her contention that the Jury Trial Waiver was not knowing and voluntary and also has not cited a single case that has not enforced a jury trial waiver arising out of a handbook or employment policies.

Plaintiff claims the Jury Trial Waiver is not knowing and voluntary, primarily because the Handbook is "buried" in a multi-page document. (Doc. 206 at 43,).

-31-

Nothing could be further from the truth, as the Jury Trial Waiver is not hidden or buried in a complicated legal document (which is the situation many courts are faced with when determining whether a jury trial waiver is conspicuous enough to be knowing and voluntary). The Handbook is a manageable 45 pages. At the beginning of the Handbook is a Table of Contents that contains "Waiver of Trial by Jury" with the page number. The Jury Trial Waiver is a separate section with the title, "**WAIVER OF TRIAL BY JURY POLICY**" in all caps and bolded letters.

The Eleventh Circuit in *Aponte v. Brown & Brown of Fla., Inc*., 806 F. App'x 824, 827 (11th Cir. 2020), affirmed the district court's granting of the defendant's motion to strike a jury trial based on a very similar jury-trial waiver provision contained in an employment agreement between the two parties. In *Aponte*, the Eleventh Circuit agreed with the district court that the provision amounted to a "knowing and voluntary" waiver of the plaintiff's Seventh Amendment right to a trial by jury. The Court described the waiver as follows, noting that the plaintiff did not dispute that he signed the agreement:

> Here, the record evidence demonstrates that Aponte's jury-trial waiver was knowing and voluntary. The jury-trial waiver provision in the employment agreement where it was written in bold and all-capital letters and set apart in a paragraph labeled "WAIVER OF JURY TRIAL. The waiver's language was straightforward, and Aponte does not dispute that he signed the agreement. Further, Aponte doesn't raise any contract defenses, such as fraud, duress, or unconscionability.

*Aponte v. Brown & Brown of Fla., Inc*., 806 F. App'x at 827.

Furthermore, as set forth above, Plaintiff's argument has no importance as she clearly admitted she read the Jury Trial Waiver and understood she had waived her right to a jury trial. Compounding Plaintiff's weak argument is the undisputed evidence that Plaintiff signed an Acknowledgment stating that she had received the handbook that contains the Jury Trial Waiver and would read those documents. In her Response, Plaintiff admits she read that she read the Acknowledgement before she signed it and that she read the Handbook, but also inexplicably argues that Dynamic "did not elicit any facts surrounding when she read the waiver portion, and if she did so before or after signing acknowledgement . . ." (Doc. 206 at 45046 (citing Doc. 68-12, Pl Depo. 54:20-24). She confirmed that the Acknowledgement she signed on July 21, 2017, was over a week before she began work, and it was two years before this lawsuit was filed.

Since Plaintiff signed the Acknowledgement on July 21, 2017, she admits she received the Handbook that included the Jury Trial Waiver was subject to the Waiver as of that date.

Next, Plaintiff contends that the opening sentence of the Waiver of Trial by Jury Policy somehow prevents its enforcement. The sentence, found on page 37 of the Policy, reads, "[i]t is the desire of Dynamic Security to resolve disputes, whenever possible, in a fair and expeditious manner reflecting the interest of the concerned parties." (Doc. 91-1 at 23). In making this argument, Plaintiff is asking

the Court to engage in a tortured reading of the sentence (in addition to other language contained in the Waiver). The plain meaning places no limitation on the Jury Trial Waiver. Reading the Waiver of Trial by Jury Policy in its entire context demonstrates the sentence is not a limitation on the waiver, and if anything, sets forth Dynamic's reasons for the requiring the Waiver as a condition of employment. Moreover, any argument Plaintiff makes that a bench trial is not a fair or expeditious proceeding has no basis in the law and should be summarily rejected by the Court.

C. **The Jury Trial Policy That Waived Plaintiff's Right to a Trial by Jury Arising out of Her Employment Is Not Ambiguous.**

1. Acknowledgement's statement that Dynamic Security's employment practices are governed by laws, regulations, and constitutional provisions does not negate her waiver of her Seventh Amendment right to trial by jury.

Plaintiff argues that "the following statement alone [in the Acknowledgement] represents that the Dynamic Security would abide by Plaintiff's fundamental right to a jury trial: "Dynamic Security's 'employment practices are governed by applicable state and federal laws, regulations, and constitutional provisions and the Company at all times will abide by those legal requirements.' (Doc. 89-2)." (Doc. 206 at 45). Plaintiff's interpretation again misconstrues the clear meaning of the language she quoted and does not pass the "straight face test." This phrase is obviously a restatement of Dynamic's commitment to abide by all relevant employment laws, such as the FLSA, Title VII, state payroll laws, and others. As

noted multiple times above, Plaintiff acknowledges that, while an employee has a right to a trial by jury under the Seventh Amendment, the law permits an employee to knowingly and voluntarily waive that Constitutional right. Dynamic's choice to enforce the Jury Trial Waiver in this dispute arising out of her employment is clearly not a violation of her rights and is not inconsistent with the Constitution or any other law or statute.

2.   Waiver of Trial by Jury Policy does not place any limit on a trial by judge.

Plaintiff's argument that the language of the Waiver of Trial by Jury also limits her right to trial by judge is another tortured reading of the Waiver language in an attempt to avoid the fact that it is a clearly worded and well-communicated policy. (Doc. 206 at 47-48). Again, a contextual reading of the entire Jury Trial Waiver demonstrates that the language Plaintiff challenges does not limit its enforceability in any way. In fact, the very sentence upon which Plaintiff relies states that she has waived her right to a jury trial: "*By waiving the right to a jury trial* an employee *is not limiting their rights to trial by judge*." (*Id.* at 47) (quoting Ex 1, Handbook, p. 38) (emphasis added). And the next sentence cautions the "right to trial by jury is of value" and advises consultation with counsel before agreeing to the Jury Trial Waiver. (Handbook at 38) (Doc. 91-1 at 24). The language Plaintiff cites could not be clearer that, even though she forfeited her right to a jury trial, she could still have employment claims or disputes heard by a court rather than through some

form of alternative dispute resolution.

Finally, although not necessary for the Court to address in light of the arguments above, Plaintiff fails to identify any way these purported limitations and tortured reading of the Waiver prevent its enforcement in this action. To make this argument, she is left only with the convoluted position that the Court should completely ignore the plain language of the Jury Trial Waiver.

### D. <u>Appointment of an Advisory Jury Decision Post-trial Is Not Appropriate.</u>

Rule 39(c), Fed. R. Civ. P. does not allow the Court to treat the jury verdict as an advisory jury. *First*, the applicable Rule does not permit the empanelment of an advisory jury in this case. Rule of Civil Procedure 39(c) provides that "[i]n an action *not triable of right by a jury*, the court, on motion or on its own, may try an issue with an advisory jury." Fed. R. Civ. P. 39(c) (emphasis added). This is an action that *would be* triable of right by a jury but for the waivers in the governing agreements. Indeed, that is precisely why the waiver provisions are included in the governing agreements. Accordingly, as a straightforward textual matter, it would be beyond the Court's authority under Rule 39 to empanel an advisory jury.

"Judicial authority is scarce, and divided, on the issue of whether a contractual jury waiver [affirmatively] precludes the Court's use of an advisory jury." *Seven Seas Petroleum, Inc. v. CIBC World Markets Corp.*, Civ. Act. No. H-08-3048, 2012 WL 175415, at *4 (S.D. Tex. Jan. 20, 2012). However, the Tenth Circuit Court of Appeals

held that "'the [district] court was not authorized of its own initiative to call a jury in an advisory capacity, when [as here] a jury was waived in the absence of a motion by one of the party litigants.'" *OCI Wyoming, L.P. v. PacifiCorp.*, 479 F.3d 1199, 1205 (10th Cir. 2007) (quoting *Hargrove v. Am. Cent. Ins.*, 125 F.2d 225 (10th Cir. 1942)) (alteration in original). The Court should follow that holding, as it is the only one consistent with the express language in Rule 39(c). *Accord Indiana Lumbermens Mut. Ins. Co. v. Timberland Pallet & Lumber Co.*, 195 F.3d 368, 374 (8th Cir. 1999) ("Fed.R.Civ.P. 39(c) does not apply to actions triable of right by a jury. . . . Under Rule 39(c), actions *not* triable of right by a jury may be tried with an advisory jury, upon motion or of the district court's own initiative . . . ." (emphasis in original)).

Second, basic rules of fairness prevent the jury being an advisory jury without advance notice to the parties. *Thomas v. Broward County Sheriff's Office*, No. 22-11322, 2023 WL 4113309 *6 (11th Cir. June 22, 2023) ("[Rule 39] does not allow a district court to try an issue and then decide whether the jury was advisory or not.") Thus, Plaintiff's argument that the Court can treat the jury verdict as an advisory jury fails.

## V.   DYNAMIC IS ENTITLED TO REMITTITUR.

### A.   Emotional Distress Damages are Due to Be Remitted.

Plaintiff's Opposition offered no evidence to establish Plaintiff experienced any emotional damages that were caused by Dynamic's termination of her

employment when it failed to reassign her. Defendant readily concedes that the law in the Eleventh Circuit does not require the amount of emotional damages awarded by a jury be proven with a high degree of specificity. However, Plaintiff does not make it to that point in the analysis because she did not attempt to establish evidence satisfying the obvious threshold burden of causation between the illegal act and the damages suffered.

Plaintiff's Opposition addresses only the reasonableness of the amount of damages assigned to the emotional suffering she described and presents no competent evidence that the damages she claims were caused by any act by Dynamic. She missed entirely the fact that the only evidence of emotional distress that exists in the record was not caused by Dynamic. Plaintiff's only reference in her Opposition to the elementary prerequisite of causation was that "[t]he jury heard Plaintiff's testimony about her frustration, hurt, and loss of self-esteem that began on August 1, 2017, grew the longer Dynamic went without placing her in another position, and continued through the date of trial" (Doc. 206 at 52), but she cited to no testimony or record evidence for this conclusion. She failed to attempt to refute Dynamic's extensive presentation of her own trial testimony that clearly links her emotional distress to her feelings about Hyundai's hair policy and Hyundai's decision to remove her from its jobsite and failed to present evidence that the emotional damages she described resulted from Dynamic's failure to reassign her.

(*See* Tr. Vol. I, 87:10-88:19 (testimony about how it felt to be discriminated against for Hyundai's refusal to permit her to wear her hair "how God created it"; Tr. Vol I, 68:15-71:17 (the feelings she described that happened on August 1, 2017, immediately after being removed from Hyundai and leaving the Dynamic office, which was prior to any knowledge she would or would not be reassigned); Tr, Vol. I, 67:4-21(testimony about how she felt was in response to what she perceived as *discrimination*, not in response to the alleged retaliatory adverse action of failure to reassign amounting to termination, and she did not specify if she meant hair discrimination or pregnancy discrimination, which were both included in her written complaint to Chambliss)).

This Court's proper response should follow the holding of *Trantham v. Socoper, Inc*., No. 1:16-CV-1476-KOB, 2022 WL 902730, at \*22 (N.D. Ala. Mar. 28, 2022) in which the court remitted emotional damages to zero due to lack of evidence to establish that the defendant's retaliatory termination of the plaintiff was the cause of the emotional harm she claimed to have suffered. Plaintiff relied on *Advanced Bodycare Sols., LLC v. Thione Int'l, Inc.*, 615 F.3d 1352, 1364 (11th Cir. 2010), to support her position against remittitur because Dynamic failed to identify an amount of remittitur. *Advanced Bodycare* is inapposite because the Eleventh Circuit did not examine an emotional damages award but instead found that an award of *lost profits* was not excessive and not contrary to the great weight of the evidence

because lost profits were due and were clearly it was quantifiable based on calculations by an expert witness whose testimony was properly admitted. *Id.* Also, Dynamic did provide an amount of remittitur claiming the amount should be reduced to zero.[13]

### B.  The Punitive Damages Awarded Are Excessive, as Plaintiff Has Not Established Dynamic's Actions Were Reprehensible.

The most important guidepost in deciding the appropriateness of a punitive damages award is reprehensibility.[14] Plaintiff fails to analyze the factors included in this crucial guidepost and fails entirely to cite to record or any legal authority. She offers little more than a conclusion that "Dynamic's actions were reprehensible." (Doc. 206 at 55). A review of the applicable factors[15] comparing the evidence

---

[13]Plaintiff cited to *Advanced Bodycare* to persuade the Court to deny Dynamic's post-trial remittitur motion because Dynamic did not state an exact amount of the requested remittitur. (Doc. 206 at 50, n. 24 (citing *Advanced Body Care Sols., LLC v. Thione Int'l, Inc.* 615 F.3d at 1364)). Dynamic's requested remittitur amount is zero, which is exactly the result in the only case to have cited to *Advanced Bodycare, Trantham v. Socoper, Inc.*, No. 1:16-CV-1476-KOB, 2022 WL 902730, at *18–19 (N.D. Ala. Mar. 28, 2022) (granting complete remittitur of emotional damages or in the alternative a new trial).

[14] "Perhaps the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." *Collins v. Andrews*, No. 1:20-CV-296-ECM, 2022 WL 4537875, at *9 (M.D. Ala. Sept. 28, 2022) (citing *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 (1996) and *Williams v. First Advantage LNS Screening Solutions, Inc.,* 947 F.3d 735, 749 (11th Cir. 2020)).

[15] In evaluating the reprehensibility of the Defendants' conduct, the court has considered several issues: "(1) whether the harm caused was physical as opposed to economic; (2) whether the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; (3) whether the target of the conduct was financially vulnerable; (4) whether the conduct involved repeated actions or was an isolated incident; and (5) whether the harm was the result of intentional malice, trickery, or deceit, or mere accident." *Dismukes v. J & R Ent., LLC*, No. 2:11-CV-409-CSC, 2012 WL 5187761, at *5–6 (M.D. Ala. Oct. 19, 2012) (citing *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1283 (2008) (citing *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 (1996)).

Dynamic presents and Plaintiff's scant unsupported responses establish Dynamic did not engage in legally reprehensible conduct and certainly not to the degree to justify a punitive damages award of $511,000.00.

Plaintiff does not respond to the first reprehensibility factor raised by Dynamic and otherwise offers no evidence that Dynamic harmed her physically. *Id*. She does not respond to the second factor that examines whether Dynamic's failure to reassign Plaintiff to a different jobsite "evinced an indifference to or reckless disregard for the health or safety of others." *Id*. She states, "Dynamic's actions showed a reckless disregard for her rights and caused her financial and emotional harm," which misses the mark by focusing on her own emotional harm and not the health and safety of others. In *Williams v. First Advantage LNS Screening Sols. Inc*, the Eleventh Circuit rejected a plaintiff's similar argument regarding this factor. 947 F.3d 735, 749, 751–52 (11th Cir. 2020) ("the mere fact that Plaintiff understandably suffered emotional distress from twice being wrongfully labeled a criminal falls well short of proof that Defendant's conduct revealed an indifference to or reckless disregard for health and safety.") The *Williams* Court decided evidence the plaintiff presented showing impacts on her personally (that her livelihood was at stake, she was unable to fund necessities, and she suffered mental harm) did not support the second factor, writing that the district court "erred in characterizing this factor as having been met" and this factor "is focusing on something larger than whether the

reckless conduct might impact a particular person's ability to obtain a particular job." *Id*. at 752.

Next, Plaintiff's response to the third factor failed to present evidence showing she was financially vulnerable. She did not cite any evidence showing she was unable to feed her family or afford basic necessities. In fact, the evidence established a degree of financial security. Plaintiff's husband was employed by UPS when she stopped working for Dynamic and was still employed by UPS at the time of trial. (Tr. Vol. II at 17:13-20). Prior to her two-day employment with Dynamic, Plaintiff had primarily worked for the United States Postal Service, but resigned in February 2016 because she found the commute excessive. (Tr. Vol. 1 at 47:18-22, 129:7-11, DX 56). Plaintiff then worked a contract position from July 2016 to December 2016 (Tr. Vol, I at 49:2-7) while she was working on a master's degree. She finished her degree in May 2017 and only then began looking for jobs. Plaintiff did not appear to be desperate for work or financially vulnerable, having testified that "I was just applying for different jobs and just trying to see, like, you know, what direction that I exactly wanted to go in." (Tr. Vol. I at 48:4-24). She accepted an offer from Dynamic making $13.00/hour, with her first day in July 2017.[16]

---

[16] Plaintiff's Opposition states, "Dynamic argues for a limit that Congress never placed on § 1981," implying that Dynamic misstates the law that Title VII caps also apply to § 1981. See Doc. 206 at 57. Plaintiff must have misunderstood Dynamic's intentions because she summarizes its reference in stating there is value in the instructive comparison between the two statutes. Id.; see Doc. 197 at 67.

Plaintiff does not address the fourth factor, whether Dynamic repeatedly failed to offer reassignments to other employees who complained about hair discrimination, and no evidence exists of Dynamic's treatment of anyone besides Plaintiff, (Doc. 206 at 55). With regard to the fifth factor, Plaintiff contends that the decision not to reassign her was not an accident but was "a deliberate decision" by Dynamic. (Doc. 206 at 55). In *Williams v. First Advantage LNS Screening Solutions Inc.*, 947 F.3d 735, the court found a finding of willfulness was not enough to satisfy this factor and the plaintiff must show "evidence of intentional malice, trickery or deceit by Defendant." 947 F.3d at 754. Plaintiff offers no such evidence.[17]

Plaintiff fails to present evidence to satisfy any of the five reprehensibility factors. For the factors she attempts to address, she provides no serious challenge. Arguments without legal authority and conclusions unsupported by evidence or citation to the record cannot satisfy the legal requirements of reprehensibility. The evidence establishes Dynamic's conduct was not sufficient to award any punitive

---

[17] Moreover, other errors by opened the door for the jury to have weighed against Dynamic false beliefs that neutral acts were illegal. The failure to include Dynamic's requested instruction to the jury that the law in the Eleventh Circuit permits an employer from enacting a policy disallowing hairstyles, specifically the wearing of dreadlocks, could have easily caused the jury to inflate the punitive damages award. Without that instruction, it would be reasonable for the jury to incorrectly believe that a policy against dreadlocks is per se race discrimination and that the jury's chosen punishment of Dynamic was based on an incorrect statement of law. To illustrate, if a jury imposed punitive damages against a company because the company terminated an employee in retaliation for protesting being told not to wear a Mohawk hairstyle, without any instruction from the court about the employer's ability to regulate such hairstyles, a punitive damages award would be based on false beliefs of reprehensibility.

damages and certainly not the level of damages awarded here of $511,000.00.

This Court has awarded in other cases punitive damages of lower amounts to redress egregious patterns of deliberate violations of the law. The first example is *Dismukes v. J & R Ent., LLC*, No. 2:11-CV-409-CSC, 2012 WL 5187761 (M.D. Ala. Oct. 19, 2012). In *Dismukes*, after the defendants abandoned their defense, the court entered default judgment as to plaintiff's claims that her employer (through its sole owner) "discriminated against her, harassed her, subjected her to a hostile working environment, and constructively discharged her because she opposed her employer's racially discriminatory policies and also because she, a white woman, was engaged to a man of mixed race and openly associated with people of other races." *Dismukes*, at * 1-2 ("Robyn Prickett and the other employees at Dooley's Pub began to belittle, avoid, and criticize her because she had black friends and a mixed-race fiancé, and because she did not cooperate with the pub's policies that were intended to deter black customers from frequenting the establishment. Prickett made clear to Dismukes that she was 'not respected as the manager on duty' by the other employees at Dooley's because she was a 'n****r lover.'") The Court awarded $35,000.00 in compensatory damages "for her mental, emotional, and pecuniary damages," *id*. at *4, and $175,000.00 in punitive damages. *Id.* at *7.

This Court noted a number of facts demonstrated that "the discriminatory conduct was exceedingly reprehensible, highly malicious, and directed toward a

person who was known to be very vulnerable," finding particularly reprehensible that the owner of the company engaged in deliberate continuation of discriminatory conduct after she knew her actions were causing the plaintiff great anguish and harming her ability to provide for her children. *Id.*, * 4-6. The Court also considered that the illegal conduct by the owner was due to her "aggressive enforcement of a stated, long-standing, overt company policy of racial discrimination." *Id.* In the case at bar, there is no such evidence of such reprehensible behavior, much less a pattern of such behavior that justified a half-million dollars in punitive damages.

Next, in *Collins v. Andrews*, this Court concluded that an award of punitive damages in the amount of $150,000.00 (three times the amount of compensatory damages) was appropriate where the evidence of reprehensibility was that the plaintiff was financially vulnerable and dependent on her employment, the owner's acts were not an isolated instance but conduct that continued for years, and that it was clear that the owner's conduct was intentional and designated to denigrate, diminish, and offend the plaintiff. No. 1:20-CV-296-ECM, 2022 WL 4537875, at *9 (M.D. Ala. Sept. 28, 2022). Some of the facts the Court considered in deciding reprehensibility were that company owner's grandson called the plaintiff during work "a n****r-lover" (her boyfriend, children, and other family members were African-American or bi-racial) and, when she complained to the owner, he said, "well you can't help who you are" and sent her home. *Id.*, at *2. After the plaintiff

was denied unemployment for quitting, she agreed to accept an invitation by the owner's wife to return to work, but the owner continued to use the n-word in her presence. *Id.* At a later date, the owner called Plaintiff stupid and when she protested said he was "'dominant over a damn female;' that she would 'never equal a white human;' that she was not a white human; and that she thinks she's 'special because [she] live[s] with n*****s.'" *Id.* Again, the facts in the case now before this Court do not approach the level of reprehensibility present in the *Collins* case, but the punitive damages award is several times greater.

## VI.   CONCLUSION.

For these reasons and the grounds set forth in its principal brief, Defendant Dynamic Security Inc.'s Motion for Renewed Judgment as a Matter of Law as to Liability and Punitive Damages; to Vacate, Alter, or Amend the Judgment; or, alternatively, for a New Trial or Remittitur or emotional distress and punitive damages (doc. 197) should be granted.

Respectfully submitted,

_/s/Susan W. Bullock_
WESLEY C. REDMOND
SUSAN W. BULLOCK
FORDHARRISON LLP
420 20th Street North, Suite 2560
Birmingham, AL  35203
Phone: (205) 244-5905
            (205) 244-5904
Email: wredmond@fordharrison.com
            sbullock@fordharrison.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that on July 10, 2023, he electronically filed a true and correct copy of the foregoing with the Clerk of Court using the CM/ECF System which will send notification of such filing to:

Heather Leonard
Heather Leonard, P.C.
2105 Devereaux Cir., Suite 111
Birmingham, AL 35243

Leslie A. Palmer, LLC
Palmer Law, LLC
104 23rd Street South, Suite 100
Birmingham, AL  35233

*Counsel for Plaintiff*

/s/Wesley C. Redmond
Wesley C. Redmond

WSACTIVELLP:13986705.1

-48-