IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| DAVITA M. KEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL CASE NO. 2:19-cv-767-ECM |
| ) | (WO) |
| DYNAMIC SECURITY, INC., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION and ORDER**

**I. INTRODUCTION and BACKGROUND**

Now pending before the Court is Defendant Dynamic Security, Inc.'s ("Dynamic") motion for renewed judgment as a matter of law as to liability and punitive damages; to vacate, alter or amend the judgment; or, alternatively, for a new trial or remittitur of emotional distress and punitive damages. (Doc. 197). For the reasons that follow, the motion is due to be DENIED.

This case arises out of Plaintiff Davita M. Key's ("Key") two-day employment as a security guard assigned to a position at a Hyundai car manufacturing plant through Dynamic, a temporary employment agency. Key claimed sex discrimination, race discrimination, and retaliation against Dynamic and two Hyundai defendants. The only claim to survive summary judgment, however, was her race retaliation claim brought against Dynamic pursuant to 42 U.S.C. § 1981. Accordingly, Key's retaliation claim was the sole claim in the Court's pretrial order. (Doc. 178 at 2).

At trial on this claim, Key presented evidence that Gloria Robinson ("Robinson"), an employee working for one of the Hyundai defendants, told her that Koreans[1] sent memos about how they do not like African Americans wearing their hair in dreadlocks. Because of this comment, Key testified that she felt there was a hair policy specifically targeting African Americans, which constituted race discrimination. Based on that belief, Key complained to Dynamic's district manager, Ray Cureton ("Cureton"), that she felt Hyundai discriminated against her based on her hairstyle (dreadlocks). Key was subsequently removed from her position at the Hyundai plant.

Key also testified that she filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") soon after being removed from the plant, which detailed, among other claims, a claim of race discrimination based on Robinson's comment. The jury heard evidence that Dynamic received this Charge of Discrimination about a week later. The jury also saw an email conversation between Cureton and Dynamic's human resources director, Sherry Spires ("Spires"), about whether to place Key at another temporary position while her Charge of Discrimination was pending. Key testified that Dynamic never offered her another position, effectively terminating her employment.

Dynamic, on the other hand, put forth evidence at trial to rebut much of Key's testimony. Robinson testified that she never told Key about memos from Koreans targeting African Americans and that such memos, to her knowledge, did not exist.

---

[1] Hyundai is a company based in South Korea. Throughout testimony and evidentiary materials in this case, individuals refer to Hyundai upper-level management as "the Koreans." (*See, e.g.*, doc. 68-12 at 41).

2

Spires testified that Cureton did offer Key further assignments, but that Key rejected them. Cureton and Spires both testified that they did not consider a complaint about discrimination based on hairstyle to be a complaint about race discrimination.

After Key presented her case, Dynamic moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(a) on Key's § 1981 retaliation claim. Dynamic argued, in part, that there was no evidence to support a § 1981 retaliation claim because Key's internal complaint to Cureton did not constitute protected activity. Dynamic argued that its employees never knew that Key's complaint about discrimination based on her dreadlock hairstyle was a complaint about race discrimination. This argument was based largely on Dynamic's reading of *E.E.O.C. v. Catastrophe Management Solutions*, 852 F.3d 1018 (11th Cir. 2016). Because *Catastrophe Management* held that a race-neutral grooming policy which prohibits dreadlocks did not constitute race discrimination, according to Dynamic, Key's complaint about discrimination based on her hairstyle did not qualify as protected activity, *i.e.*, a complaint about race discrimination. Therefore, Dynamic argued that Key did not present evidence to satisfy the first element of her § 1981 retaliation claim.

The Court denied Dynamic's Rule 50(a) motion. After Dynamic put on its evidence, but before the case was submitted to the jury, the Court denied Dynamic's renewed motion for judgment as a matter of law. The jury returned a verdict in favor of Key, awarding her $85,200 for net lost wages and benefits, $214,864 for emotional pain and mental anguish, and $511,200 for punitive damages. The Court entered final

3

judgment in accordance with the jury verdict. After trial, pursuant to Federal Rule of Civil Procedure 50(b), Dynamic renewed its motion for judgment as a matter of law as to liability and punitive damages, or, alternatively, for a new trial. (Doc. 197). It reiterated much of the same arguments which the Court has previously rejected throughout this litigation.[2]

## II. LEGAL STANDARD

The standard for granting a Rule 50(b) motion is "the same as the standard for granting the pre-submission motion under 50(a)." *McGinnis v. Am. Home Mortg. Servicing, Inc.*, 817 F.3d 1241, 1254 (11th Cir. 2016) (alteration adopted). A court "confronting a renewed Rule 50(b) motion" must question "whether the evidence is 'legally sufficient to find for the party on that issue.'" *Id.* (alteration adopted) (quoting FED. R. CIV. P. 50(a)(1)). To do so, "the court must evaluate all the evidence, together with any logical inferences, in the light most favorable to the non-moving party." *Beckwith v. City of Daytona Beach Shores*, 58 F.3d 1554, 1560 (11th Cir. 1995)). "[T]he non-movant must put forth more than a mere scintilla of evidence suggesting that reasonable minds could reach differing verdicts." *Abel v. Dubberly*, 210 F.3d 1334, 1337 (11th Cir. 2000). Accordingly, courts should only grant a motion under Rule 50 "when the evidence is so weighted in favor of one side that that party is entitled to succeed in his or her position as a matter of law." *Thorne v. All Restoration Servs., Inc.*, 448 F.3d 1264, 1266 (11th Cir. 2006).

---

[2] The Court will not revisit every argument addressed in its prior decisions. Instead, the Court will focus on key arguments raised by Dynamic in its motion which the Court seeks to further clarify.

Alternatively, a court may grant a losing party's motion for a new trial under Federal Rule of Civil Procedure 59 on the grounds that "the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair and may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury." *McGinnis*, 817 F.3d at 1254 (alteration adopted) (quoting *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940)).  Under Rule 59(a), a court has the discretion to grant a new trial if it finds "the verdict is against the clear weight of the evidence or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." *Hewitt v. B.F. Goodrich Co.*, 732 F.2d 1554, 1556 (11th Cir. 1984) (alteration adopted) (citation omitted).  The Court "is free to weigh the evidence" on a motion for new trial, including both "that evidence favoring the jury verdict" and "evidence in favor of the moving party." *Williams v. City of Valdosta*, 689 F.2d 964, 973 (11th Cir. 1982) (citation omitted).

### III.  DISCUSSION

**A.  Dynamic's Renewed Motion for Judgment as a Matter of Law**

Dynamic's renewed motion for judgment as a matter of law under Rule 50(b) is due to be denied on grounds nearly identical to those espoused by the Court in its prior decisions throughout this litigation.  To begin, as the Court reasoned in its summary judgment order, this case is distinguishable from *Catastrophe Management*.  In that case, the actual grooming policy itself was at issue, which the Circuit held did not constitute

race discrimination if it was applied "even handedly." *Catastrophe Mgmt.*, 852 F.3d at 1032–33. The jury heard evidence at this trial that Key *believed* a grooming policy was *not applied* even handedly. Key testified that Robinson told her Koreans sent memos saying they did not want African Americans to wear their hair in dreadlocks. Because this trial concerned a retaliation claim, whether there existed such a policy targeting African Americans was not at issue; rather, the concern was whether Key had a good faith belief that a racially targeted policy existed when she complained to Cureton about discrimination. *See Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1312 (11th Cir. 2016) ("[T]he plaintiff is not required to prove that the discriminatory conduct complained of was actually unlawful. The conduct opposed need only be close enough to support an objectively reasonable belief that it is." (quotations and citation omitted)). The jury found that she did.

Moreover, evidence supported Key's belief that a facially race-neutral grooming policy was being unevenly applied to African Americans, which takes this case outside of the scope of *Catastrophe Management*. A reasonable jury could take Key's complaint to Cureton "in its social context"—with its temporal proximity to the alleged statement about how "the Koreans" did not want "African Americans" wearing dreadlocks—to find that Key and Cureton reasonably believed such a complaint was about race discrimination. *See Furcron*, 843 F.3d at 1312. Although the jury also heard contradicting evidence, it was precisely the jury's role to weigh the competing evidence. *See Lewis v. City of Union*, 934 F.3d 1169, 1179 (11th Cir. 2019) (explaining that, at

6

summary judgment, a court "may not weigh evidence or make credibility determinations, which 'are jury functions, not those of a judge'" (quoting *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013)). The Court will not now usurp the jury's role by finding one witness or version of events more credible than another.

      Finally, Dynamic renews its motion for judgment as a matter of law on the basis that the award of punitive damages should not stand since Cureton, the decisionmaker who decided not to reassign Key, was not high enough in the corporate structure to attribute his actions to Dynamic as a whole. However, Dynamic never raised the corporate hierarchy issue in connection with punitive damages in its Rule 50(a) motion, which precludes the granting of Dynamic's Rule 50(b) motion on such a basis. *Johnston v. Borders*, 36 F.4th 1254, 1270 n.31 (11th Cir. 2022) (noting that "[d]istrict courts lack authority to grant a Rule 50(b) motion on a ground not previously raised in a Rule 50(a) motion prior to the submission of the case to the jury.").

      Therefore, as the Court concluded on Dynamic's two pre-submission motions for judgment as a matter of law, making all reasonable inferences in Key's favor, there was a "legally sufficient evidentiary basis for a reasonable jury to find" for Key on her § 1981 retaliation claim. *Beckwith*, 58 F.3d at 1560. Further, such claim was properly asserted against Dynamic at trial as it was the sole claim in the Court's pretrial order. (Doc. 178 at 2); *see Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 474 (2007) (noting that pretrial orders supersede all prior pleadings).

7

### B.     Dynamic's Remaining Contentions

Dynamic also moves to vacate, alter, or amend the judgment, or, alternatively, for a new trial under Rule 59 or remittitur of emotional distress and punitive damages. (Doc. 197 at 1).  Dynamic contends, in part, that a new trial is warranted due to errors in the Court's jury instructions and its failure to enforce a "jury waiver" purportedly signed by Key.

Restating the applicable standard, a court may grant a losing party's motion for a new trial under Federal Rule of Civil Procedure 59 on the grounds that "the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair and may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury." *McGinnis*, 817 F.3d at 1254 (alteration adopted) (quoting *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940)).

The Court does not find that the jury verdict is "against the weight of the evidence," nor that the amount of damages is "excessive" or the result of an unfair trial. *Id*. at 1245.  As with the Court's conclusion regarding Dynamic's Rule 50(b) motion, the jury heard competing evidence as to whether Key formed a reasonable, good faith belief that she complained about race discrimination.  The jury also heard evidence that Dynamic knew Key's complaint was based on race discrimination.  Therefore, the jury's choice to believe Key's version of events was based on evidence legally sufficient to return a verdict against Dynamic, and to award both compensatory and punitive damages.

Dynamic additionally takes issue with the jury instructions given at trial. Over the objection of Dynamic, the Court gave the Eleventh Circuit Pattern Jury Instructions for civil jury trials. To avoid confusing the jury, the Court gave the pattern jury instruction for a retaliation claim almost verbatim. Contrary to Dynamic's assertion, the pattern jury instruction accurately describes the law on what constitutes a protected activity, and this Court's instruction was consistent with that requirement. *See* 11TH CIR. PATTERN JURY INST. 4.22 ("For the first element, [name of plaintiff] claims that [he/she] engaged in protected activity when [he/she] [describe opposition clause activity]. That action is 'protected activity' if it was based on [name of plaintiff]'s good-faith, reasonable belief that [name of defendant] discriminated against [him/her/another employee] because of [protected trait]."); *see also Fields v. Dep't of Juvenile Just.*, 712 F. App'x 934, 937–38 (11th Cir. 2017) (holding the pattern jury instruction for retaliation claims does not misstate the law nor mislead the jury).

Similarly, the Court finds Dynamic's renewed arguments regarding Key's purported jury waiver to be unpersuasive. To that end, the Court adopts its reasoning articulated in denying Dynamic's initial motion to strike Key's jury trial demand, (doc. 147), and notes that there is not sufficient evidence that Key "knowingly and intentionally waived" her Seventh Amendment right to a trial by jury. *Aponte v. Brown & Brown of Fla., Inc.*, 806 F. App'x 824, 827 (11th Cir. 2020); *cf. Haynes v. W.C. Caye & Co.*, 52 F.3d 928, 930 (11th Cir. 1995) (holding the waiver of a jury right "is not to be lightly inferred" (citation omitted)); *Burns v. Lawther*, 53 F.3d 1237, 1240 (11th Cir.

1995) ("[C]ourts must indulge every reasonable presumption against waiver." (citation omitted)).  Specifically, although Key signed a document agreeing to be bound by the provisions in an employment handbook given to her at Dynamic's orientation, insufficient evidence was presented to show that she specifically read the "Waiver of Trial by Jury" provision on page thirty-seven of the handbook before beginning work. (Doc. 89-1 at 6).  In fact, Key testified at trial that she does not remember whether she read the jury waiver provision before beginning work.  The Court reiterates that this evidence is insufficient to constitute a knowing and voluntary waiver of Key's Seventh Amendment right to a trial by jury.

In sum, Dynamic restates many of its prior arguments to claim legal error and in seeking the Court to second guess the jury which found it liable for Key's § 1981 retaliation claim.  However, Dynamic fails to meet its burden under Rules 50 and 59.  Accordingly, for the reasons stated and for good cause, it is

ORDERED  that Dynamic's motion (doc. 197) is DENIED.

Done this 11th day of March, 2024.

          /s/ Emily C. Marks  
EMILY C. MARKS  
CHIEF UNITED STATES DISTRICT JUDGE