IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| DAVITA M. KEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL CASE NO. 2:19-cv-767-ECM |
| | ) | (WO) |
| DYNAMIC SECURITY, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION and ORDER**

**I.  INTRODUCTION and BACKGROUND**

Now pending before the Court is Plaintiff Davita M. Key's ("Key") motion for equitable relief of reinstatement and prejudgment interest. (Doc. 193).  For the reasons that follow, the motion is due to be GRANTED, in part, as to prejudgment interest and DENIED, in part, as to reinstatement.

This case arises out of Key's two-day employment as a security guard assigned to a position at a Hyundai car manufacturing plant through Defendant Dynamic Security, Inc. ("Dynamic"), a temporary employment agency.  Key claimed sex discrimination, race discrimination, and retaliation against Dynamic and two Hyundai defendants.  The only claim to survive summary judgment, however, was her race retaliation claim brought against Dynamic pursuant to 42 U.S.C. § 1981.  Accordingly, Key's retaliation claim was the sole claim in the Court's pretrial order. (Doc. 178 at 2).

At trial on this claim, Key presented evidence that Gloria Robinson ("Robinson"), an employee working for one of the Hyundai defendants, told her that the Koreans[1] sent memos about how they do not like African Americans wearing their hair in dreadlocks. Because of this comment, Key testified that she felt there was a hair policy specifically targeting African Americans, which constituted race discrimination. Based on that belief, Key complained to Dynamic's district manager, Ray Cureton ("Cureton"), that she felt Hyundai discriminated against her based on her hairstyle (dreadlocks). Key was subsequently removed from her position at the Hyundai plant.

Key also testified that she filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") soon after being removed from the plant, which detailed, among other claims, a claim of race discrimination based on Robinson's comment. The jury heard evidence that Dynamic received this Charge of Discrimination about a week later. The jury also saw an email conversation between Cureton and Dynamic's human resources director, Sherry Spires ("Spires"), about whether to place Key at another temporary position while her Charge of Discrimination was pending. Key testified that Dynamic never offered her another position, effectively terminating her employment.

Ultimately, the jury returned a verdict in favor of Key on her retaliation claim, awarding her $85,200 for net lost wages and benefits ("back pay"), $214,864 for emotional pain and mental anguish, and $511,200 for punitive damages. The Court

---

[1] Hyundai is a company based in South Korea. Throughout testimony and evidentiary materials in this case, individuals refer to Hyundai upper-level management as "the Koreans." (*See, e.g.*, doc. 68-12 at 41).

entered final judgment in accordance with the jury verdict. After the entry of final judgment, Key moved for equitable relief of reinstatement and prejudgment interest. (Doc. 193).

## II. LEGAL STANDARD

As both parties have acknowledged, the award of prejudgment interest is within the discretion of the Court. *Tucker v. Hous. Auth. of Birmingham Dist.*, 507 F. Supp. 2d 1240, 1281 (N.D. Ala. 2006), *aff'd*, 229 F. App'x 820 (11th Cir. 2007) (citing *Goldstein v. Manhattan Indus., Inc.*, 758 F.2d 1435, 1448 (11th Cir. 1985)); (doc. 193 at 2); (doc. 207 at 2).[2] Specifically, such an award is meant to adjust back pay in a manner that accounts for inflation and the present-day value of income in the absence of the offending conduct which resulted in adverse employment action. Thus, courts factor in considerations such as mitigation of damages or whether back pay was readily ascertainable. *See Tucker*, 507 F. Supp. 2d at 1284.

Similarly, reinstatement or, in the alternative, front pay are equitable remedies available to be fashioned as the Court finds appropriate. *Id.* at 1281–82. As it relates to wrongful discharge cases, however, the Eleventh Circuit follows a presumption of reinstatement in the absence of "special circumstances warranting the denial of equitable relief." *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1338 (11th Cir. 1999) (quoting *Williams v. City of Valdosta*, 689 F.2d 964, 977 (11th Cir. 1982)). Notably, a

---

[2] The Court here, and elsewhere in the opinion, cites to non-binding authority. While the Court recognizes that these cases are not precedential, the Court finds them persuasive.

trial court must "carefully articulate its reasons for awarding front pay rather than reinstatement," if it chooses to do so. *Id.* at 1339.

### III.  DISCUSSION

**A.    Reinstatement**

In her motion, Key seeks reinstatement to her employment with Dynamic in a full-time, first-shift position, paying at least $13 an hour, within a forty-five-mile area of Montgomery, Alabama. (Doc. 193 at 5).  Dynamic, in its response, agrees to place Key in "any position that it has available that fits this criter[ion]," while also noting the difficulties in carrying out such a reinstatement. (Doc. 207 at 6).  For these reasons, and the ones discussed below, the Court finds reinstatement and front pay to be inappropriate in this case.

At bottom, reinstatement is meant to make a victorious plaintiff whole. *See Farley*, 197 F.3d at 1338–39.  Here, Key acknowledges that she ended up in a higher paying job, which is in the educational field associated with her master's degree. (Doc. 210 at 6). Additionally, the job to which she seeks reinstatement is, in reality, a series of temporary jobs subject to the whims of clients who contract with Dynamic.  This reality is the basis of Dynamic's concerns about reinstating Key to a position that inherently has gaps in employment and pay. (*See* doc. 207 at 6–7).  Thus, Key's previous position at Dynamic would not offer the stability and economic benefits tied to the teaching job obtained by Key following her effective termination from Dynamic.

4

Accordingly, the Court finds that reinstatement and front pay would be inequitable in light of the special circumstances of this case, as recounted above and in the parties' briefs. Further, the Court specifically finds that the remedies previously ordered, and are due to be ordered, will make Key whole in the absence of reinstatement or front pay. Therefore, Key's motion is due to be DENIED with respect to reinstatement.

**B.     Prejudgment Interest**

Key also moves for prejudgment interest on her back pay award. (Doc. 193 at 1). As previously discussed, prejudgment interest is squarely within the Court's sound discretion. *Tucker*, 507 F. Supp. 2d at 1281. Moreover, the manner and method of such prejudgment interest is in the Court's province. *See id.* at 1283–84.

The parties dispute both the equities of prejudgment interest and, if the Court finds it to be appropriate, the manner in which prejudgment interest should be calculated. Key urges the Court to utilize a methodology applying the Internal Revenue Service's ("IRS") prime rates compounded quarterly. While Dynamic cites to case law utilizing another method of calculating prejudgment interest, such a case appears to this Court to be an outlier. (*See* doc. 207 at 5–6 (citing *Mock v. Bell Helicopter Textron, Inc.*, 2007 WL 2774230 (M.D. Fla. Sept. 24, 2007), *aff'd*, 313 F. App'x 279 (11th Cir. 2009)). Indeed, Eleventh Circuit case law indicates that the methodology utilizing IRS prime rates, as implemented by the National Labor Relations Board, is the gold standard of prejudgment interest calculations as it best captures economic realities. *See E.E.O.C. v. Guardian Pools, Inc.*, 828 F.2d 1507, 1512 (11th Cir. 1987); *McKelvy v. Metal Container Corp.*,

5

854 F.2d 448, 453 (11th Cir. 1988); *Tucker*, 507 F. Supp. 2d at 1284.  Further, such a model is best suited towards being compounded quarterly. *See Darnell v. City of Jasper, Ala.*, 730 F.2d 653, 656–57 (11th Cir. 1984).  And typically, interest accrues from the date of the wrongful act until the entry of final judgement. *See Garner v. G.D. Searle Pharms. & Co.*, 2013 WL 568871, at *6 (M.D. Ala. Feb. 14, 2013).

In this case, the back pay amounts are readily accessible as Key testified to such at trial, and the jury largely agreed with these amounts in reaching its verdict.  Additionally, the Court finds the IRS prime rate methodology compounded quarterly to be the fair and just method of calculating Key's prejudgment interest.  To that end, the Court largely adopts the calculations attached to Key's motion (doc. 193-1 at 2) with the caveat that the "net lost wages" column totals an amount greater than the amount awarded by the jury.  Further, the Court utilized the IRS quarterly interest rates published by the U.S. Office of Personnel Management.[3]  Accordingly, the Court adjusted the figures to account for the aforementioned discrepancy and provide Key the award granted by the jury.  The revised Back Wages Chart is attached to this order.

Therefore, for the reasons stated and for good cause, it is

ORDERED that Key's motion (doc. 193) is GRANTED, in part, as to prejudgment interest and DENIED, in part, as to reinstatement.  It is further

---

[3] These rates are maintained for the convenience of federal agencies and appear accurate to the Court. U.S. OFF. OF PERSONNEL MGMT., FACT SHEET: INTEREST RATES USED FOR COMPUTATION OF BACK PAY (2024), https://www.opm.gov/policy-data-oversight/pay-leave/pay-administration/fact-sheets/interest-rates-used-for-computation-of-back-pay/ (noting that the chart provides IRS quarterly interest rates used to compute back pay).

ORDERED that prejudgment interest on Key's back pay award shall be paid in accordance with the chart appended to this order.

Done this 14th day of March, 2024.

                                    /s/ Emily C. Marks  
                              EMILY C. MARKS  
                              CHIEF UNITED STATES DISTRICT JUDGE

# APPENDIX A: KEY'S BACK PAY and PREJUDGMENT INTEREST CALCULATIONS

| Year | Quarter | Base Wage | Interim (Mitigating) Earnings | Adjustment to Reconcile with Jury Award | Net Lost Wages | Accumulated Principal | Office of Personnel Management Annual Interest Rate | Quarterly Interest | Amount of Interest | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | **Back Wages Chart for Key** | | | | | | |
| | | | | Back Wages Chart for Key through Verdict with IRS Prime Rate Interest | | | | | | |
| 2017 | 3 | $4,680.00 | $ - | $ 663.73 | $ 4,016.27 | $ 4,016.27 | 4% | 1.00% | $ 40.16 | $ 4,056.43 |
| 2017 | 4 | $6,760.00 | $ - | $ - | $ 6,760.00 | $ 10,816.43 | 4% | 1.00% | $ 108.16 | $ 10,924.60 |
| 2018 | 1 | $6,760.00 | $ - | $ - | $ 6,760.00 | $ 17,684.60 | 4% | 1.00% | $ 176.85 | $ 17,861.44 |
| 2018 | 2 | $6,760.00 | $ - | $ - | $ 6,760.00 | $ 24,621.44 | 5% | 1.25% | $ 307.77 | $ 24,929.21 |
| 2018 | 3 | $6,760.00 | $ - | $ - | $ 6,760.00 | $ 31,689.21 | 5% | 1.25% | $ 396.12 | $ 32,085.33 |
| 2018 | 4 | $6,760.00 | $ 3,958.98 | $ - | $ 2,801.02 | $ 34,886.35 | 5% | 1.25% | $ 436.08 | $ 35,322.43 |
| 2019 | 1 | $6,760.00 | $ 2,090.07 | $ - | $ 4,669.93 | $ 39,992.36 | 6% | 1.50% | $ 599.89 | $ 40,592.24 |
| 2019 | 2 | $6,760.00 | $ 2,090.07 | $ - | $ 4,669.93 | $ 45,262.17 | 6% | 1.50% | $ 678.93 | $ 45,941.10 |
| 2019 | 3 | $6,760.00 | $ 2,090.07 | $ - | $ 4,669.93 | $ 50,611.03 | 5% | 1.25% | $ 632.64 | $ 51,243.67 |
| 2019 | 4 | $6,760.00 | $ 2,090.70 | $ - | $ 4,669.30 | $ 55,912.97 | 5% | 1.25% | $ 698.91 | $ 56,611.88 |
| 2020 | 1 | $6,760.00 | $ 2,219.49 | $ - | $ 4,540.51 | $ 61,152.39 | 5% | 1.25% | $ 764.40 | $ 61,916.80 |
| 2020 | 2 | $6,760.00 | $ 2,219.49 | $ - | $ 4,540.51 | $ 66,457.31 | 5% | 1.25% | $ 830.72 | $ 67,288.02 |
| 2020 | 3 | $6,760.00 | $ 2,219.49 | $ - | $ 4,540.51 | $ 71,828.53 | 3% | 0.75% | $ 538.71 | $ 72,367.25 |
| 2020 | 4 | $6,760.00 | $ 2,219.49 | $ - | $ 4,540.51 | $ 76,907.76 | 3% | 0.75% | $ 576.81 | $ 77,484.57 |
| 2021 | 1 | $6,760.00 | $ 3,619.20 | $ - | $ 3,140.80 | $ 80,625.37 | 3% | 0.75% | $ 604.69 | $ 81,230.06 |
| 2021 | 2 | $6,760.00 | $ 3,619.20 | $ - | $ 3,140.80 | $ 84,370.86 | 3% | 0.75% | $ 632.78 | $ 85,003.64 |
| 2021 | 3 | $6,760.00 | $ 4,408.95 | $ - | $ 2,351.05 | $ 87,354.69 | 3% | 0.75% | $ 655.16 | $ 88,009.85 |
| 2021 | 4 | $6,760.00 | $ 4,803.69 | $ - | $ 1,956.31 | $ 89,966.16 | 3% | 0.75% | $ 674.75 | $ 90,640.90 |
| 2022 | 1 | $6,760.00 | $ 4,803.69 | $ - | $ 1,956.31 | $ 92,597.21 | 3% | 0.75% | $ 694.48 | $ 93,291.69 |
| 2022 | 2 | $6,760.00 | $ 4,803.69 | $ - | $ 1,956.31 | $ 95,248.00 | 4% | 1.00% | $ 952.48 | $ 96,200.48 |
| 2022 | 3 | $6,760.00 | $ 8,934.57 | $ - | $ - | $ 96,200.48 | 5% | 1.25% | $ 1,202.51 | $ 97,402.99 |
| 2022 | 4 | $6,760.00 | $ 11,000.00 | $ - | $ - | $ 97,402.99 | 6% | 1.50% | $ 1,461.04 | $ 98,864.04 |
| 2023 | 1 | $6,760.00 | $ 11,000.00 | $ - | $ - | $ 98,864.04 | 7% | 1.75% | $ 1,730.12 | $100,594.16 |
| | | | | | **$ 85,200.00** | | | | | |
| | | | | | | | | | **Final Backpay Amount, Inclusive of Prejudgment Interest** | **$ 100,594.16** |