IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| DAVITA M. KEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION NUMBER: |
| v. ) | |
| ) | 2:19-cv-767-ECM-SMD |
| DYNAMIC SECURITY, INC., ) | |
| ) | |
| Defendant. ) | |

## DECLARATION OF CANDIS A. MCGOWAN
## IN SUPPORT OF PETITION FOR THE AWARD OF ATTORNEYS' FEES AND EXPENSES

1. My name is Candis A. McGowan and I have personal knowledge of the facts articulated in this declaration. I swear under penalty of perjury, pursuant to 28 U.S.C. § 1746 that the following is true and accurate to the best of my knowledge.

**Experience and Expertise:**

2. I have been licensed to practice law in the State of Alabama since September 29, 1986. I graduated from Cumberland School of Law on May 18, 1986. After graduation, I clerked for the Honorable Edward B. McDermott in Mobile,

Alabama.

3.      In June of 1988, I began practicing law in Birmingham, Alabama with the law firm of Cooper, Mitch, Crawford, Kuykendall, and Whatley (hereinafter "Cooper Mitch"). While practicing at Cooper Mitch, I began to specialize in the areas of labor and employment law and civil rights. I practiced with Cooper Mitch until the firm discontinued the practice of law in October of 1998. I then began practicing labor and employment law with the law firm of Gardner, Middlebrooks. From September 1, 2002 until January 28, 2007, I was a partner with the firm of John D. Saxon, P.C. On January 29, 2007, I began practicing with the Firm of Wiggins, Childs, Quinn & Pantazis, LLC in the Birmingham Office. In 2014, the firm name was changed to Wiggins, Childs, Pantazis, Fisher & Goldfarb, P.C.

4.      I am a partner with the law firm of Wiggins, Childs, Pantazis, Fisher & Goldfarb, P.C., which has over 25 attorneys who primarily specialize in employment-related class actions and litigation. I am admitted to practice before the United States Supreme Court, the Eight and Eleventh Circuits, and various United States District Courts throughout the county, including the Southern, Middle, and Northern Districts of the United States District Courts in Alabama. My practice primarily involves representing plaintiffs in employment litigation matters, with the vast majority of my cases involving litigation in the federal court system.

5.      Since 1988, I have specialized in the areas of labor and employment

law and civil rights. I have taught numerous seminars and continuing legal education classes on the subject matters of labor and employment law, including civil rights claims under Title VII. I am the author of a published article in the area of employment law, *The ABC's of Title VII Class and Age Discrimination for Collective Actions*, 25 American Journal of Trial Advocacy 257-96, 2001. I was also selected for inclusion in the America's Best Lawyers, Labor and Employment Law from 2010 to present.

6. Throughout my career, I have received awards for attorneys' fees in previous cases that have ranged from $250.00 to $550.00 per hour. In February 2009, I received an award of $400 per hour by the Honorable Virginia E. Hopkins in *Fox, et al v Tyson Foods*, No.4:99-cv-01612-VEH (N.D. Ala.), Doc. 819 (February 17, 2009). In January 2012, I received an award of $525.00 per hour by the honorable Clay D. Land in *In Re Tyson Foods, Inc., Fair Labor Standards Act Litigation*, MDL Docket No. 1854, 4:07-md-01854-CDL (M.D. Ga.), Doc. 820, 819-2 (January 23, 2012). In February 2014, I received an award of $525.00 per hour by the Honorable T. Michael Putnam, approved by the Honorable Virginia E. Hopkins in *Burroughs v Honda Manufacturing of Alabama, LLC*, No. 1:08-cv-1239-VEH (N.D. Ala), Doc. 382 (March 10, 2014), and by the Honorable Karon O. Bowdre in *Briggins v Ellwood Tri, Inc. and Honda Manufacturing of Alabama, LLC*, No. 1:08-cv-1861-KOB (N.D. Ala), Doc. 257 (March 11, 2014). It is my

understanding that attorneys with my qualifications and years of practice in this area of law are receiving fees that range in this amount, especially the higher amount.

7. In the *Fox* Order, Judge Hopkins determined for work performed in 2007-2008 the reasonable hourly billing rate for my work on that matter was $400.00 an hour.

8. I have examined the hourly time records of Heather Leonard and Leslie Palmer (collectively "Key's attorneys") associated with this matter and believe that Key's attorneys have requested reasonable hourly rates for a reasonable number of hours.

**Reasonableness of Hours Expended:**

9. The hours expended on behalf of the plaintiff for which compensation is sought and that are itemized in the time records of Key's attorneys are reasonable and necessary, not only for the preparation of the case, but also to assess its potential value.

10. Based on my experience in this area of law in all aspects of the requisite administrated process, litigation, and my familiarity with the work done in similar cases, the amount of time was reasonable for resolution of this case, to date. Based on my review and knowledge of the case, Key's attorneys were careful to avoid unnecessary time as well as duplication of time and effort.

11. From my review of the nature of this case, which involved claims that Dynamic Security retaliated against Key for complaining of race discrimination arising from the application of a grooming policy at the Hyundai Plant where Dynamic provided various services. Because this case involved an employee who did not work very long for Dynamic and issues relating to hair discrimination (which are challenging to litigate), the case would not have been desirable to many lawyers. Indeed, a review of the file shows that Key had previously been represented by a Montgomery firm which terminated its representation of her when faced with some of the legal issues relating to hair discrimination. Further, there are a limited number of attorneys in the Montgomery area who would have been willing to take the case, as evidenced by the firm who primarily handles these types of cases (McPhillips Shinbaum) terminating its representation of Key. Mrs. Key had to look in Birmingham to find a lawyer because that is where most of the employment lawyers who represent employees in this state keep offices.

12. Based on my experience in this area of law and my familiarity with the work done in this case, the foregoing amount of time was reasonable for prosecution of the claims on which Key prevailed during the litigation that, has spanned from 2019 - 2024. The time was reasonably necessary to give Key her best chance at a favorable outcome. All of such time is of the kind and character that I would normally bill to an hourly paying client, as well as time that I normally track and

seek to be paid for at the conclusion of successful contingency litigation in cases of this type.

**Reasonable Hourly Rate:**

13. In February 2009, United States District Judge Virginia Hopkins found that the reasonable hourly rate for my time was $400 per hour for the 2007-2008 period of time. *See Memorandum Opinion* (Doc. 819) in *Fox v Tyson Foods, Inc.*, Case: 4:99-cv-01612-VEH. The *Fox* case involved individual, non-class allegations of overtime violations of the FLSA by three plaintiffs. Judge Hopkins also found an hourly rate of $200.00 per hour to be reasonable for Jacob Kiser, an associate with less than 2 years of practice at the time. In January 2012, United States District Judge Clay D. Land awarded a rate for my time of $525.00 per hour due to my 25 plus years experience. *See Order and Supporting Affidavit* (Doc. 829, 891-2, p. 12) in *In Re Tyson Foods, Inc., Fair Labor Standards Act Litigation*, MDL Docket No. 1854, 4:07-md-01854-CDL (M.D. Ga.). In February 2014, I received an award of $525.00 per hour by the Honorable T. Michael Putnam, approved by the Honorable Virginia E. Hopkins in *Burroughs v Honda Manufacturing of Alabama, LLC*, No. 1:08-cv-1239-VEH (N.D. Ala), Doc. 382 (March 10, 2014), and by the Honorable Karon O. Bowdre in *Briggins v Ellwood Tri, Inc. and Honda Manufacturing of Alabama, LLC*, No. 1:08-cv-1861-KOB (N.D. Ala), Doc. 257 (March 11, 2014). In

2020, I was compensated as the prevailing party by the opposing party in a private arbitration at hourly rates of $525.00.

14. My hourly rate and the rate of the other attorneys in my firm have increased since the fee petitions we submitted in *Fox* for the 2007-2008 time period. My hourly rate has increased to $450 to $575 per hour since Judge Hopkins' findings. The current hourly rate for associates with one to two years of experience is $275 to $300 per hour. The current hourly rate for associates with ten or more years of experience is $350 to $475 per hour. The current hourly rate for an attorney with 20-25 years of experience exceeds $500 per hour. The current hourly rate for an attorney with over 25 years of experience in the labor and employment field exceeds $500 an hour. All such hourly rates are reasonable for the reasons given in this Affidavit. The reasonable and customary hourly rate for paralegal time is $150 per hour.

15. The hourly rates requested by Key are commensurate with the prevailing range of rates charged by attorneys in similar circumstances and with comparable skill and responsibility in similar areas of litigation in the southeastern and southwestern United States, as well as in the national legal market. Because we handle cases throughout the country, Wiggins Childs routinely monitors the prevailing rates for experienced litigators in various forums nationwide. As a guide in setting our hourly rates, we regularly review published hourly rates received in contingent and non-contingent fee litigation, including the annual rate survey conducted by the National

Law Journal. Based on data published by the National Law Journal, plaintiff's counsel's rates are commensurate with hourly lawyers of similar experience handling complex litigation on a national basis. *See, e.g.,* December 6, 2010, Nat'l L.J. 12, (Col. I). For example, three labor/employment law firms handling labor and employment cases reported billing ranges that are comparable or higher to those submitted here: Jackson Lewis, (top range of $715.00); Littler Mendelson, (top range of $650.00); and Winston & Strawn, (top range $1,075.00). Even if it were not necessary to draw attorneys from a more regional or national market for legal services, it is my opinion that the hourly rates set forth in this affidavit are reasonable for the responsibilities undertaken in this matter and for the results obtained.

16. From my own personal experience and from my knowledge of what attorney's charge for federal litigation in the labor and employment area, I am familiar with fees normally charged by attorneys practicing within this jurisdiction. I am also familiar with the rates charged to clients for non-contingent, litigation-related work at rates ranging from $275.00 to $600.00 per hour.

17. I am familiar with the skill and reputation of Key's attorneys and believe that I can evaluate them based on the following factors laid out in *Norman v. Housing Authority of City of Montgomery,* 836 F.2d 1292, 1300-1301 (11th Cir. 1988):

    a. Overall skill in litigation;

    b. Knowledge of trial and appellate practice;
    c. Knowledge of substantive law;
    d. Persuasiveness and advocacy skills; and
    e. Analysis of the case and theories and procedural avenues available to obtain a satisfactory result for their client.

18. I have reviewed the proposed hourly rates sought by Key's attorneys against the background of the foregoing factors. Based on my knowledge of the prevailing hourly rates charged for similar litigation by attorneys with comparable skill and experience, the hourly rates requested are reasonable and well within the range of appropriate hourly charges in the local market for legal services performed in 2019-2024.

19. While my opinion is based on the experience and reputation of Key's attorneys, it is also based upon my observation of their skill level as compared to other attorneys prosecuting such cases in this jurisdiction and the state. In reaching my opinion, I have considered the knowledge of Key's attorneys and their extensive knowledge of trial practice and the substantive law of employment discrimination.

20. Specifically, my opinion is that Key's attorneys have a skill commensurate with, or significantly exceeding, their years of experience in handling employment discrimination cases. I have found them to be skillful in facilitating settlements, when appropriate, and in eliminating superfluous legal theories and inappropriate parties when litigation is necessary.

21.     I have frequently and confidently referred clients to Key's attorneys with employment discrimination claims which my firm could not handle because of scheduling conflicts or for other reasons.

22.     Attorneys in the relevant legal market are usually unwilling to undertake protracted discrimination cases because the fees typically awarded if they prevail have not been sufficient to compensate for the risks, difficulties and disruptions to their practices that result from such contingent representation. Montgomery is a challenging legal market where awards tend to be conservative. Contingency fee awards in cases like this have usually not been sufficient to attract competent counsel to undertake representation of plaintiffs in numbers adequate to fulfill the demand for such legal service. Consequently, it is very difficult for plaintiffs to obtain contingent representation in the Alabama market in cases like this which require a large investment of time and expense on an at-risk basis and a delay of three to four years in payment or reimbursement of such time and expense.

23.     The non-contingent hourly rates charged in the local market for other types of legal services are not structured to account for the type of difficulties and disincentives encountered in this and other discrimination cases. Protracted civil rights litigation like this case is viewed as undesirable by most members of the bar for several reasons applicable to this case, including: (1) the plaintiff almost always lacks the financial resources to vigorously prosecute the action or pay for even routine expenses

and attorney's fees; (2) many cases are lost without compensation or reimbursement for even out-of-pocket expenses; (3) considerable time can pass before any attorney's fees are even considered; (4) acceptance of this type of case often leads to an attorney being "typecast" in the role of "civil rights" attorney and leads the community in which he works to repeatedly offer him similar work but to offer less of the more remunerative work in the traditional areas of the general practice of law; (5) many persons in the community have a strong aversion to any person who vigorously prosecutes civil rights cases or who regularly handles such cases; and (6) there are often delays in receipt of fees even after judgment is entered for the plaintiff.

24. The present case also required an exertion of effort and skill greater and different than that required in the more routine provision of legal services. Specifically, the case required special familiarity with legal and factual standards unique to cases involving retaliation and race discrimination (s it related to arguments concerning protected activity). Such cases are difficult to litigate because they require attorneys experienced with and knowledgeable of the case law describing the differing burdens of proof to establish discrimination as well as comparator analysis. The services required and provided in the *Key* case also included, in my opinion, the following features: (1) organization and efficiency in the marshaling of facts, evidence and theories of liability so that there were no wasted efforts and review of the discovery to provide useful information for the trial stage of the case; (2) a thorough

comprehension of the substantive and procedural law and policy arguments necessary to efficiently present and respond to the issues raised in the case throughout the past three years of this matter; (3) case assessment which concentrates all the energies of the services on the points which are most likely to prevail or enhance the likelihood of success and others like as related claims; and (5) a good comprehension of trial practice which is minimized wasted efforts in preparing the cases for trial.

25.    Based on my knowledge of the local market for legal services, the hourly rate of $500 requested by Leonard and $400 by Palmer is fair and reasonable compensation for the work they performed

I have read the above and it is true and correct to the best of my knowledge.

Date: 3/28/24

_____
Candis A. McGowan