IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| DAVITA M. KEY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>DYNAMIC SECURITY, INC., )<br>)<br>Defendant. ) | CIVIL ACTION NUMBER:<br><br>2:19-cv-767-ECM-SMD |

### DECLARATION OF ALICIA K. HAYNES
### IN SUPPORT OF PETITION FOR THE AWARD OF ATTORNEYS' FEES AND EXPENSES

1.My name is Alicia K. Haynes and I have personal knowledge of the facts articulated in this declaration. I swear under penalty of perjury, pursuant to 28 U.S.C. § 1746 that the following is true and accurate to the best of my knowledge.

2.I am familiar with the facts of *Davita M. Key v. Dynamic Security, Inc.*, 19-cv-767-ECM-SMD, and the history of its litigation. I am familiar with the Plaintiff's attorney in this matter and have knowledge regarding their respective professional and educational background, including their familiarity and experience

in the area of employment law. I am also familiar with defense counsel in this matter and have litigated cases where they have represented one of the defendants in that litigation. I have reviewed the docket of the litigation in this matter, select pleadings, including summary judgment and trial pleadings, attorney time records for Plaintiff's counsel and their expenses sought in this matter.

**Experience and Expertise:**

3. I am an attorney licensed to practice law in the State of Alabama since October of 1987. I am an attorney with the firm of Haynes & Haynes, P.C., located in Birmingham, Alabama, where I have practiced continuously for the past 36 years. I graduated from Cumberland School of Law in 1987 and was admitted to the Alabama State Bar in September 1987. While in law school, I was a member of the Henry Upson Sims Moot Court Board; Jessup International Law Moot Court Team (Regional Competition, Gainesville, Florida); Director of the Cumberland Research Board; the Order of the Barristers; Janie Shores Moot Court Competition, winner and best advocate award; and Client Counseling Competition, winner.

4. I am admitted to the Bar of the United States Supreme Court, the Supreme Court of Alabama, the Bars of the United States District Courts for the Northern, Middle and Southern Districts of Alabama, and the Bar of the Eleventh Circuit Court of Appeals.

5. I have been a practicing attorney in Alabama for 36 years, but the last

32 years of my practice have been devoted exclusively to plaintiff's employment discrimination and civil rights litigation. It is my belief I have tried over 70 jury cases and 20 or more bench trials. I have been involved in scores of employment discrimination and civil rights cases at various stages of litigation. Further, I have appealed, or defended on appeal, numerous employment discrimination cases. I am regularly referred such employment discrimination cases by attorneys within the state, as well as outside the state. I regularly co-counsel with lawyers within the state and outside the state on employment discrimination matters. Additionally, I have been retained by defense law firms to conduct independent investigations of harassment and discrimination on behalf of their corporate clients.

6. I am a member of the National Employment Lawyers Association (NELA) and served as President of the organization for two years (2015-2016, 2016-2017). I am a former chair of the Executive Board of the Labor and Employment Section of the Alabama State Bar; and former chair of the Federal Section of the Birmingham Bar Association. I am also a past Executive Board member of Alabama NELA, a member of the Labor and Employment Section of the American Bar Association, and currently serve as an officer on the Board of Directors for the National Institute for Workers' Rights, an advocacy think tank to influence and shape employment law through research, education, and policy.

7. Each year from 2007 to 2023, I have been recognized with Super

Lawyers, Best Lawyers in America, and Best Lawyers in Alabama lists in the area of Labor and Employment Law. I have also been included in Alabama Super Lawyers' list of Top 25 Women Lawyers for several years.

8. For seven years I co-chaired the NELA Trial Boot Camp, a national trial program that mentors and teaches trial skills to lawyers practicing in the field of employment law. As part of this program, I have provided lecture, written materials, and "toolkit" written instructions on trial practice and strategic skill development.

9. I regularly speak at continuing legal education seminars on employment discrimination, civil rights, and trial practice matters within Alabama and nationally. I have written the following articles or papers that usually involved presentations of the paper to attorneys both local and national. These are as follows:

    a. <u>Maximizing the Value of Your Client's Case</u>, June 2023, Alabama NELA Presentation, Birmingham, Alabama.

    b. <u>Sexual Harassment Disputes and Mediation after the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act, 9 U.S.C. § 401, et seq.</u>, December 2022, Cumberland School of Law Annual Employment Law Seminar, Birmingham, Alabama. Paper only.

    c. <u>Birmingham Bar Association Evidence Essentials</u>, July 2022 Presentation, Judge Proctor, Judge Danella, Alicia Haynes and J.B. Ward, Birmingham, Alabama.

    d. <u>What Happens After #MeToo and #TimesUp, Sexual Harassment in Alabama</u>, December 2019, Cumberland School of Law Annual Employment Law Seminar, Birmingham, Alabama.

e. <u>Keeping a Practice Thriving in Hostile Territories and Trying Times</u>, 2018 Annual Convention, National Employment Lawyers Association, June 27-30, 2018 Chicago, IL. Presentation.

f. <u>Be the Change: Honoring Courageous Plaintiffs</u>, Presentation. 2017 Annual Convention, National Employment Lawyers Association, June 21-24, 2017 San Antonio, TX.

g. <u>Words Matter, How to Craft a Winning Opening Statement by Effective Word Choices</u>. 2016 Annual Convention, National Employment Lawyers Association,

h. <u>Top Ten Mediation Tips For Successful Resolution</u>. Paper and Presentation for NELA Fall Seminar, 2016.

i. <u>Closing Argument, Making Your Final Pitch to the Jury</u>. Paper and presentation for the National Employment Lawyers Association, Trial Boot Camp, Chicago, IL, October 15, 2015.

j. <u>The "Crucible": Closing Argument in Employment Discrimination Cases</u>, Trial Boot Camp, National Employment Lawyers Association, March 14-15, 2014. Chicago, IL. Paper and presentation.

k. <u>Developing A Winning Case Theme to Tell Your Client's Story</u>. Paper and presentation for the National Employment Lawyers Association, Trial Boot Camp, Chicago, IL, October 2013.

l. <u>Trial Evidence, Top 10 Tips, Strategies and Visual Advocacy</u>. Paper and presentation at The Summit for Worker's Rights, National Employment Lawyers Association, 2013 Annual Convention, Denver, Colorado, June 26-29, 2013.

m. <u>Identifying Juror Bias During Voir Dire</u>, 2012 National Employment Lawyers Association, June 21-23, 2012, San Diego, CA.

n. Haynes, Rozen and Wood, <u>Top Ten Do's and Don'ts For Using Social Science Regarding Bias In Your Practice and At Trial</u>, *The Employee Advocate*, Fall 2012/Winter 2013. Presentation for the American Bar

Association Labor and Employment Law Conference. Atlanta, Georgia, November 1-3, 2012.

o. <u>Creating Successful Trial Themes in Employment Cases</u>. Paper and Presentation. Georgia affiliate of NELA, Atlanta, Georgia, 2012.

p. <u>Developing A Winning Case Theme In Direct And Cross-Examination. Paper and Presentation</u>. Paper and Presentation to The National Employment Lawyers Association, Trial Boot Camp, Chicago, Illinois.

q. <u>Top Ten Do's and Don'ts For Using Social Science Regarding Bias In Your Practice and At Trial</u>. Paper and Presentation <u>Identifying & Addressing Fact-Finder Bias</u>, October 12, 2012. NELA Fall Seminar, Bias 2.0: What Every Employee Advocate Should Know. Atlanta, Georgia.

r. <u>Starting Strong</u>, presentation, 2012, NELA Illinois, 7th Circuit Conference.

s. <u>Developing a Case Theme in Employment Cases.</u> 2011 National Employment Lawyers Association, June 29-July 2, 2011, New Orleans, Louisiana.

t. <u>Post-Trial Considerations And Determining Whether To Appeal, Case Study: *Ash, Hithon v. Tyson Foods*</u>. Spring 2012.

u. <u>Rebutting the Myth: Asking The Questions When You Do Not Know The Answer</u>. Spring 2011, National Employment Lawyers Association, Chicago, Illinois.

v. <u>Defending Your Verdict</u>. Fall 2010 Appellate Law Conference, National Employment Lawyers Association, Denver, Colorado.

w. <u>Making Lemonade From Lemons: Turning Trial Issues Into Strengths</u>. National Employment Lawyers Association Trial Seminar, Spring 2010.

x. <u>The Use of Racial Slurs and Code Words in Proving A Racially Hostile Work Environment.</u> Paper and presentation. December 2008,

Cumberland School of Law, 15th Annual Employment Law Update, Birmingham Alabama.

y. Overcoming the Challenge: The Art of Defeating Defendant's Motion for Summary Judgment in Discrimination Cases (2007).

z. Emerging Litigation Trends - The Plaintiff's Perspective, "Myths, Lies and Downright Stupidity" (2006); Paper and presentation to Society for Human Resources, Birmingham, Alabama.

aa. Beyond Stereotypes: Discovering and Proving Hidden Bias in Employment Cases (2006); Paper presented to National Employment Lawyers, October 13, 2006. Washington, D.C.

bb. Age Discrimination: What If There is No Economic Damage? (2005); Paper presented to National Employment Lawyers.

cc. The Nuts and Bolts of Establishing and Growing the Small Plaintiff-Side Law Office (2004); Paper and presentation for the Birmingham Bar Association, Birmingham, Alabama.

dd. Haynes, Secrets to Obtaining Million Dollar Verdicts, *The Employee Advocate*, Spring/Summer 2004.

ee. Marketing Yourself and Your Practice: Ethics and Tips (2004); Women Trial Lawyers Caucus of the Alabama Trial Lawyers Association

ff. Litigating the Sexual Harassment Case, The Plaintiff's Perspective (1999); Paper and Presentation. Cumberland School of Law Annual Employment Law Update. Birmingham Alabama.

gg. Sexual Harassment: Latest Development from The Plaintiff's Perspective (1999); Alabama School of Law Annual Employment Law Update. Birmingham Alabama.

hh. Haynes, Office Sharing and Potential Liability for Acts of Others in Office Sharing Situations (1994); Birmingham Bar Association Journal, Birmingham, Alabama.

10. The following cases are representative of previous jury trials in civil

rights matters from 1995 to current:

    a.    1995, *Janice Dumas v. Tyson Foods, Inc.*, 93-C-2688-S; Title VII sexual harassment and hostile work environment case; $8,000,000 jury verdict.

    b.    2002, *Hithon v. Tyson Foods, Inc.* 4:96-cv-03257-RRA; Title VII and § 1981 failure to promote and race discrimination case; $3,500,000 jury verdict. Appeals of this case went to the United States Supreme Court and plaintiff received a favorable *per curiam* opinion. This case significantly changed the standard in employment discrimination cases in the Eleventh Circuit. *Hithon v. Tyson Foods* established, in part, that the use of the word "boy" in reference to African-American men could evidence discrimination. The case was tried a second time in 2005 with only one Plaintiff and resulted in a jury verdict of $1,500,000.

    c.    2009, *Edwards v. Hyundai Motor Manufacturing Alabama*, 2:07-cv-00908-MHT; Title VII sexual harassment and retaliation case; $5,750,000 jury verdict.

    d.    2010, *Marks v. U.S. Security Associates, Inc. et al.* 2:08-cv-00459-KOB; Title VII sexual harassment in the workplace; $2,700,000 jury award.

    e.    2013, *Harris v. CVS Caremark Corporation*, 1:11-cv-00732-VEH; ADEA discrimination; $400,000 in damages, liquidated damages resulting in an $800,000 judgment.

    f.    2015, *King v. CVS Caremark Corporation*, 1:12-cv-1715-VEH; ADEA termination; $1,065,383 jury verdict, liquidated damages awarded judgment of $2,130,766.

    g.    2017, *Anderson v. Surgical Care Affiliates, LLC et al.*, 2:12-cv-00598-AKK; Title VII sexual harassment; $1,000,000 jury verdict.

    h.    2019, *Collins v. Koch Foods, Inc., et al.*, 2:18-cv-211-ACA; Title VII failure to promote gender discrimination; $262,000 jury verdict. The case was appealed and affirmed, and injunctive relief, including front pay, was assessed.

   i. 2022, *Stern v. Auburn Univ.*, 3:18-cv-00807-CLM-JTA; First Amendment retaliation; $762,844.02 jury verdict and injunctive relief, including front pay, was assessed.

  11. Based on my trial work in various cases of discrimination, harassment, and retaliation, I am familiar with hourly rates of attorneys that bill and are awarded statutory fees in the Middle and Northern Districts of Alabama as well as the Eleventh Circuit in employment discrimination, harassment, and retaliation litigation and similar civil rights cases requiring comparable skill, effort, and responsibility. The prevailing market rate in Alabama currently for plaintiff's attorneys in civil rights matters, such as the current case, ranges from $335 to $850 per hour depending on the skill of the litigator (as measured by the attorney's quality and quantity of experience in handling cases of this nature, length of experience, and by his or her reputation derived therefrom), the jurisdiction where the case is tried, the availability of skilled practitioners in the location that actually litigate plaintiff's discrimination claims on a contingency basis, and the experience, skill, resources, and financial ability to litigate against certain defendants and corporations. Financial ability would include the ability to adequately staff a client's case and expend the necessary funds for depositions, experts, and other necessary case expenditures. I have also researched supporting fee affidavits of attorneys in other civil matters in federal court and other jurisdictions which further support my opinion of prevailing

M.D. Ala. 2:19-cv-767-ECM
9

hourly rates of attorneys located in the Middle and Northern Districts of Alabama.

12. I am also familiar with the hourly rates charged to clients for noncontingent, litigation-related work at rates ranging between $325 and $850 per hour, if not higher, and have researched supporting fee affidavits in other civil matters which further support my opinion of prevailing hourly rates of attorneys in the Middle and Northern Districts of Alabama. Because I am often called upon by plaintiff's and defendant's lawyers to testify as to other attorneys' fee affidavits, as well as file fee affidavits in my clients' cases, I stay current with the hourly rates in this judicial district and circuit. The hourly rate sought by Heather Leonard is $500 and for Leslie Palmer is $400. This is the hourly rate the firm bills my time and became effective on August 2021. These rates are reasonable and well within the range of appropriate hourly charges in the local market for legal services based on my research and knowledge of the local market for attorneys with their experience level.

13. To further support this rate and the basis for my opinion that $400 for Palmer and $500 for Leonard is a reasonable rate, based on my research and review of actual court filings, I am aware of defense lawyers skilled in employment law with similar years of experience that regularly charge $495 or greater on a monthly basis for paying clients in 2017. Those rates are charged with the expectation of immediate payment in comparison to Plaintiffs' counsel who are seeking rates for

work performed without compensation for the course of years. Lawyers who represent plaintiffs should not be awarded less because our clients are not in the financial position to pay a fee on a monthly basis. Employment discrimination and civil rights cases are deemed unpopular and prevent other potential clients from seeking out attorneys who practice in the area of personal rights litigation. (Research and Exhibits are available for production, if so directed).

### Reasonableness of Hours Expended:

14. The hours expended on behalf of the plaintiff for which compensation is sought and that are itemized in the time records of Key's attorneys are reasonable and necessary, not only for the preparation of the case, but also to assess its potential value.

15. Based on my experience in this area of law in all aspects of the requisite administrated process, litigation, and my familiarity with the work done in similar cases, the amount of time was reasonable for resolution of this case, to date. Based on my review and knowledge of the case, Key's attorneys were careful to avoid unnecessary time as well as duplication of time and effort.

16. From my review of the nature of this case, which involved claims that Dynamic Security retaliated against Key for complaining of race discrimination arising from the application of a grooming policy at the Hyundai Plant where Dynamic provided various services. Because this case arose from a

placement/security company refusing to reassign Key to another job after she complained that the application of a grooming policy concerning hair styles at her current assignment was a proxy for race discrimination (a challenging issue to litigate), the case would not have been desirable to many lawyers and would be a difficult case to litigate in Alabama in my professional opinion.

17. There are not a lot of lawyers in the State of Alabama who regularly handle employment discrimination claims because it is an area of the law that requires constant attention to evolving legal issues and does not promise large awards due to the statutory caps applicable to Title VII and ADA claims. Of the small number of lawyers who handle these cases for employees, most are in Birmingham. There are very few who keep offices in Montgomery. Because there is a finite number of attorneys in the Montgomery area who could have litigated this type of case, Mrs. Key had to look in Birmingham to find a lawyer.

18. My opinion is based on recent research conducted in November 2023. I reviewed employment and civil rights cases filed in the Middle District in the last 8 years. Most of us that practice on the left side of the "v" in employment discrimination matters are members of the Alabama chapter of the National Employment Lawyers Association (NELA). When we first organized some 25 years ago, there were practitioners from the Middle District that were members. I recall Wayne Sabel, Mark Sabel, Jimmy Jacobs, and Priscilla Duncan that were active

members and frequently litigated employment cases in the Middle District. I have worked with each of them in the past on employment cases. They are no members now in Ala. NELA from Montgomery and to my knowledge, while Mark Sabel handles a case or two a year the only other lawyer that takes plaintiff discrimination cases is Julian McPhillips. Birmingham lawyers make up the majority of lawyers filing employment matters for the plaintiff in the Middle District.

19. Based on my experience in this area of law and my familiarity with the work done in this case, the foregoing amount of time was reasonable for prosecution of the claims on which Key prevailed during the litigation that spanned from 2019 - 2024. The time of the legal team of Leonard & Palmer was reasonably necessary to give Key her best chance at a favorable outcome. A review of the time shows it is the type that that I would normally bill to an hourly paying client, as well as time that I normally track and seek to be paid for at the conclusion of successful contingency litigation in cases of this type.

**Reasonable Hourly Rate:**

20. Having worked as co-counsel with both Leonard and Palmer for several years, I am familiar with their skill and reputation and believe that I can evaluate each attorney based on the following factors laid out in *Norman v. Housing Authority of City of Montgomery,* 836 F.2d 1292, 1300-1301 (11th Cir. 1988):

    a. Overall skill in litigation;

    b. Knowledge of trial and appellate practice;

    c. Knowledge of substantive law;

    d. Persuasiveness and advocacy skills; and

    e. Analysis of the case and theories and procedural avenues available to obtain a satisfactory result for their client.

21. I have reviewed the proposed hourly rates sought by Key's attorneys against the background of the foregoing factors. Based on my knowledge of the prevailing hourly rates charged for similar litigation by attorneys with comparable skill and experience, the hourly rates requested are reasonable and well within the range of appropriate hourly charges in the local market for legal services performed in 2019-2024.

22. While my opinion is based on the experience and reputation of Key's attorneys, it is also based upon my observation of their skill level as compared to other attorneys prosecuting such cases in this jurisdiction and the state. In reaching my opinion, I have considered the knowledge of Key's attorneys and their extensive knowledge of trial practice and the substantive law of employment discrimination.

23. Specifically, Key's attorneys have a skill commensurate with, or significantly exceeding, their years of experience in handling employment discrimination cases. I have found them to be skillful in facilitating settlements, when appropriate, and in eliminating superfluous legal theories and inappropriate parties

when litigation is necessary. Both Leonard and Palmer regularly speak at local and national seminars and conferences on employment topics because of their experience in the field of Plaintiff's employment law, knowledge, and reputation.

24. The non-contingent hourly rates charged in the local market for other types of legal services are not structured to account for the type of difficulties and disincentives encountered in this and other discrimination cases. Protracted civil rights litigation like this case is viewed as undesirable by most members of the bar for several reasons applicable to this case, including: (1) the plaintiff almost always lacks the financial resources to vigorously prosecute the action or pay for even routine expenses and attorney's fees; (2) many cases are lost without compensation or reimbursement for even out-of-pocket expenses; (3) considerable time can pass before any attorney's fees are even considered; (4) acceptance of this type of case often leads to an attorney being "typecast" in the role of "civil rights" attorney and leads the community in which she works to repeatedly offer her similar work and less of the more remunerative work in the traditional areas of the general practice of law; (5) many persons in the community have a strong aversion to any person who vigorously prosecutes civil rights cases or who regularly handles such cases; and (6) there are often delays in receipt of fees even after judgment is entered for the plaintiff.

25. Being typecast as a civil rights attorney would also negatively impact mediation work or the recognition to mediate cases other than civil rights cases.

Heather Leonard is a very capable mediator but defense attorneys in civil rights cases will seldom agree to use her skills and services and she is overlooked because of her experience in civil rights cases to mediate other types of cases because of her work in the employment arena.

26.   The present case also required an exertion of effort and skill greater and different than that required in the more routine provision of legal services. Specifically, the case required special familiarity with legal and factual standards unique to cases involving retaliation and race discrimination (s it related to arguments concerning protected activity). Such cases are difficult to litigate because they require attorneys experienced with and knowledgeable of the case law describing the differing burdens of proof to establish discrimination as well as comparator analysis. The services required and provided in the *Key* case also included, in my opinion, the following features: (1) organization and efficiency in the marshaling of facts, evidence and theories of liability so that there were no wasted efforts and review of the discovery to provide useful information for the trial stage of the case; (2) a thorough comprehension of the substantive and procedural law and policy arguments necessary to efficiently present and respond to the issues raised in the case throughout the past three years of this matter; (3) case assessment which concentrates all the energies of the services on the points which are most likely to prevail or enhance the likelihood

of success and others like as related claims; and (5) a good comprehension of trial practice which is minimized wasted efforts in preparing the cases for trial.

27. Based on my knowledge of the local market for legal services, the hourly rate of $500 requested by Leonard and $400 by Palmer is fair and reasonable compensation for the work they performed. The requested hours by Leonard and Palmer are also fair, reasonable, and necessary.

I have read the above and it is true and correct to the best of my knowledge.

Date: March 28, 2024

_____
Alicia K. Haynes