## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| **DAVITA M. KEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION NUMBER:** |
| **v.** | ) | |
| | ) | **2:19-cv-767-ECM-SMD** |
| **DYNAMIC SECURITY, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## DECLARATION OF CYNTHIA F. WILKINSON
## IN SUPPORT OF PETITION FOR THE AWARD OF ATTORNEYS' FEES
## AND EXPENSES

1.  My name is Cynthia F. Wilkinson and I have personal knowledge of the facts articulated in this declaration. I swear under penalty of perjury, pursuant to 28 U.S.C. § 1746 that the following is true and accurate to the best of my knowledge.

2.  I am familiar with the facts of this case and the history of its litigation. I have reviewed the attorney time records for Plaintiff's counsel and their expenses sought in this matter.

**Experience and Expertise:**

I was admitted to the Alabama bar in 1989 and I have over 33 years of experience practicing law and 28 years in civil rights litigation and other complex Federal Court litigation. Not only have I practiced before courts in all federal districts in Alabama, but also in the Eleventh Circuit Court of Appeals and federal courts in Tennessee.

4.     I have handled cases involving civil rights and constitutional issues almost exclusively since 1994. From 1994 to the present, my practice has been dedicated exclusively to employment civil rights and constitutional litigation. I have handled over **790** civil rights actions in the various federal district courts and many such cases in the appellate courts.  Positive findings have been made in the fee decisions which have been rendered on these factors in other cases concerning Plaintiff's counsel.

4.     Additionally, I am asked to speak to both lay and legal groups on employment discrimination issues both in state and out of state, with local and national organizations. I serve on the planning committee for the Cumberland School of Law Annual Labor and Employment CLE, and I am a board member for the Alabama affiliate for the National Employment Lawyers Association and former officer. I have taught numerous seminars for the Cumberland Annual Labor

and Employment CLE, have presented numerous times at the Alabama State Bar's Labor and Employment Section and at seminars and conventions for the National Employment Lawyers Association.

5.     I have tried several cases and been awarded jury verdicts exceeding $200,000.00 to $500,000.00, including, but not limited to, *Goldsmith v. Bagby Elevator, Co.*, *Hopkins v. Wal-Mart*, *Crout v. Gilco Contractors*, and have been awarded verdicts exceeding $200,000.00 in several arbitrations.

**Reasonableness of Hours Expended:**

3.     The hours expended on behalf of the plaintiff for which compensation is sought and that are itemized in the time records of Key's attorneys are reasonable and necessary, not only for the preparation of the case, but also to assess its potential value.

4.     Based on my experience in this area of law in all aspects of the requisite administrated process, litigation, and my familiarity with the work done in similar cases, the amount of time was reasonable for resolution of this case, to date. Based on my review and knowledge of the case, Key's attorneys were careful to avoid unnecessary time as well as duplication of time and effort.

5.     From my review of the nature of this case, which involved claims that Dynamic Security retaliated against Key for complaining of race discrimination

arising from the application of a grooming policy at the Hyundai Plant where Dynamic provided various services. Because this case involved involved an employee who did not work very long for Dynamic and issues relating to hair discrimination (which are challenging to litigate), the case would not have been desirable to many lawyers. Indeed, a review of the file shows that Key had previously been represented by a Montgomery firm which terminated its representation of her when faced with some of the legal issues relating to hair discrimination. Further, there are a limited number of attorneys in the Montgomery area who would have been willing to take the case, as evidenced by the firm who primarily handles these types of cases (McPhillips Shinbaum) terminating its representation of Key. Mrs. Key had to look in Birmingham to find a lawyer because that is where most of the employment lawyers who represent employees in this state keep offices.

6.     Based on my experience in this area of law and my familiarity with the work done in this case, the foregoing amount of time was reasonable for prosecution of the claims on which Key prevailed during the litigation that has spanned from 2019 - 2024.  The time was reasonably necessary to give Key her best chance at a favorable outcome. All of such time is of the kind and character that I would normally bill to an hourly paying client, as well as time that I normally track and seek to be paid for at the conclusion of successful contingency litigation in cases of

this type.

**Reasonable Hourly Rate:**

7.      In March 2024, United States District Court Judge Corey L. Maze

found that the reasonable hourly rate for my time for a First Amendment retaliation

case tried in the federal courthouse in Opelika was $450 per hour. *See Memorandum*

*Opinion* (Doc. 280, p. 14) in *Stern v. Roberts.*, Case: 3:18-cv-00807-CLM-JTA. In

2022, United States Magistrate Judge Kelly Pate awarded Leonard and me an hourly

rate of $400 for an ADA promotion case. *See Wiggins v. City of Montgomery*, 2:17-

cv-425-KFP, Doc. 165, p. 12 (M.D. Ala. July 1, 2022)

8.      The hourly rates requested by Key's attorneys are commensurate with

the prevailing range of rates charged by attorneys in similar circumstances and with

comparable skill and responsibility in similar areas of litigation in the southeastern

and southwestern United States, as well as in the national legal market. I am a member

of the National Employment Lawyers Association, and at national conferences where

rates are discussed, the typical hourly rates for attorneys of ten years' or more

experience ranges from $300 - $750 an hour.

9.      From my own personal experience and from my knowledge of what

attorney's charge for federal litigation in the labor and employment area, I am familiar

with fees normally charged by attorneys practicing within this jurisdiction. I am also

familiar with the rates charged to clients for non-contingent, litigation-related work at rates ranging from $300 - $750 0 per hour.

10.     Having worked a co-counsel with both Leonard, and Palmer, I am familiar with their skill and reputation and believe that I can evaluate them based on the following factors laid out in *Norman v. Housing Authority of City of Montgomery,* 836 F.2d 1292, 1300-1301 (11th Cir. 1988):

    a.    Overall skill in litigation;

    b.    Knowledge of trial and appellate practice;

    c.    Knowledge of substantive law;

    d.    Persuasiveness and advocacy skills; and

    e.    Analysis of the case and theories and procedural avenues available to obtain a satisfactory result for their client.

11.     I have reviewed the proposed hourly rates sought by Key's attorneys against the background of the foregoing factors. Based on my knowledge of the prevailing hourly rates charged for similar litigation by attorneys with comparable skill and experience, the hourly rates requested are reasonable and well within the range of appropriate hourly charges in the local market for legal services performed in 2019-2024.

12.     While my opinion is based on the experience and reputation of Key's attorneys, it is also based upon my observation of their skill level as compared to other attorneys prosecuting such cases in this jurisdiction and the state. In reaching my opinion, I have considered the knowledge of Key's attorneys and their extensive knowledge of trial practice and the substantive law of employment discrimination.

13.     Specifically, Key's attorneys have a skill commensurate with, or significantly exceeding, their years of experience in handling employment discrimination cases. I have found them to be skillful in facilitating settlements, when appropriate, and in eliminating superfluous legal theories and inappropriate parties when litigation is necessary.  Both Leonard and Palmer regularly speak at CLEs on employment topics because of their experience and knowledge.

14.     Attorneys in the relevant legal market are usually unwilling to undertake protracted discrimination cases because the fees typically awarded if they prevail have not been sufficient to compensate for the risks, difficulties and disruptions to their practices that result from such contingent representation.

a.     The Middle District of Alabama, and Montgomery in particular, is a challenging legal market because summary judgment is granted at a high rate and jury awards tend to be conservative.  The risk of not recovering time and expenses invested in a contingency fee case filed in this jurisdiction is a deterrent for many lawyers. I served on the board of the

Alabama affiliate for the National Employment Lawyers Association, and in reviewing our membership roster, I saw the number of members who kept offices in Montgomery decrease.

b.    Contingency fee awards in cases like this have usually not been sufficient to attract competent counsel to undertake representation of plaintiffs in numbers adequate to fulfill the demand for such legal service, especially if the contingency fee has to be shared among multiple lawyers. Consequently, it is very difficult for plaintiffs to obtain contingent representation in the Alabama market in cases like this which require a large investment of time and expense on an at-risk basis and a delay of three to four years in payment or reimbursement of such time and expense.

c.    Both Leonard and Palmer are solo practitioners, like me.  When we take a case outside of Birmingham, it creates a burden on our practice because it means our offices are essentially closed when we are in Montgomery taking depositions and/or appearing in Court. The travel time takes us away from being able to perform other legal work, and we do not have another lawyer to whom we can delegate that work. Therefore, when we take cases in Montgomery, those cost us more than cases we take in the

Birmingham area. That increased cost is a disincentive to take cases in Montgomery.

15.     The non-contingent hourly rates charged in the local market for other types of legal services are not structured to account for the type of difficulties and disincentives encountered in this and other discrimination cases. Protracted civil rights litigation like this case is viewed as undesirable by most members of the bar for several reasons applicable to this case, including: (1) the plaintiff almost always lacks the financial resources to vigorously prosecute the action or pay for even routine expenses and attorney's fees; (2) many cases are lost without compensation or reimbursement for even out-of-pocket expenses; (3) considerable time can pass before any attorney's fees are even considered; (4) acceptance of this type of case often leads to an attorney being "typecast" in the role of "civil rights" attorney and leads the community in which he works to repeatedly offer him similar work but to offer less of the more remunerative work in the traditional areas of the general practice of law; (5) many persons in the community have a strong aversion to any person who vigorously prosecutes civil rights cases or who regularly handles such cases; and (6) there are often delays in receipt of fees even after judgment is entered for the plaintiff.

16.     The present case also required an exertion of effort and skill greater and different than that required in the more routine provision of legal services. Specifically, the case required special familiarity with legal and factual standards

unique to cases involving retaliation and race discrimination (s it related to arguments concerning protected activity). Such cases are difficult to litigate because they require attorneys experienced with and knowledgeable of the case law describing the differing burdens of proof to establish discrimination as well as comparator analysis. The services required and provided in the *Key* case also included, in my opinion, the following features: (1) organization and efficiency in the marshaling of facts, evidence and theories of liability so that there were no wasted efforts and review of the discovery to provide useful information for the trial stage of the case; (2) a thorough comprehension of the substantive and procedural law and policy arguments necessary to efficiently present and respond to the issues raised in the case throughout the past three years of this matter; (3) case assessment which concentrates all the energies of the services on the points which are most likely to prevail or enhance the likelihood of success and others like as related claims; and (5) a good comprehension of trial practice which is minimized wasted efforts in preparing the cases for trial.

17.     Based on my knowledge of the local market for legal services, the hourly rate of $500 requested by Leonard and $400 by Palmer is fair and reasonable compensation for the work they performed

I have read the above and it is true and correct to the best of my knowledge.

Date: 3-27-24

Cynthia Wilkinson