APPEAL,CLOSED,CONFLICT_STMT,ECM–Clerk5

# U.S. District Court
# Alabama Middle District (Montgomery)
# CIVIL DOCKET FOR CASE #: <u>2:19–cv–00767–ECM–SMD</u>
## *Internal Use Only*

| | |
|---|---|
| Key v. Dynamic Security, Inc. | Date Filed: 10/10/2019 |
| Assigned to: Chief Judge Emily C. Marks | Date Terminated: 03/30/2023 |
| Referred to: Magistrate Judge Stephen Michael Doyle | Jury Demand: Plaintiff |
| Cause: 42:2000 Job Discrimination | Nature of Suit: 442 Civil Rights: Jobs |
| | Jurisdiction: Federal Question |

**Plaintiff**

**Davita M. Key**     represented by   **Heather Newsom Leonard**
Heather Leonard, PC
2105 Devereux Circle; Suite 111
Birmingham, AL 35242
205–977–5421
Fax: 205–278–1400
Email: <u>heather@heatherleonardpc.com</u>
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
**Bar Status: Active**

**Leslie Ann Palmer**
Palmer Law, LLC
104 23rd Street South
Suite 100
Birmingham, AL 35233
205–285–3050
Email: <u>leslie@palmerlegalservices.com</u>
*ATTORNEY TO BE NOTICED*
**Bar Status: Active**

V.

**Defendant**

**Hyundai Motor Manufacturing**     represented by   **David James Middlebrooks**
**Alabama, LLC**                                  Lehr Middlebrooks Vreeland & Thompson
*TERMINATED: 02/10/2023*                          PC
PO Box 11945
Birmingham, AL 35202–1945
205–326–3002
Fax: 205–326–3008
Email: <u>dmiddlebrooks@lehrmiddlebrooks.com</u>
*TERMINATED: 02/10/2023*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
**Bar Status: Active**

**Whitney Ryan Brown**
Lehr Middlebrooks Price & Vreeland, PC
2021 Third Avenue North
Birmingham, AL 35203
205–323–9274
Fax: 205–326–3008
Email: wbrown@lehrmiddlebrooks.com
*TERMINATED: 02/10/2023*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
**Bar Status: Active**

**Defendant**

| | | |
|---|---|---|
| **Hyundai Engineering America, Inc.**<br>*TERMINATED: 02/10/2023* | represented by | **Cortlin Lee Bond**<br>Bradley Arant Boult Cummings LLP<br>One Federal Pl – 1819 Fifth Ave N<br>Birmingham, AL 35203<br>205–521–8206<br>Fax: 205–521–8800<br>Email: cbond@bradley.com<br>*TERMINATED: 02/10/2023*<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br>**Bar Status: Active** |

**Richard Leon DeWeese , Jr.**
DeWeese & Bae LLC
8191 Seaton Pl
Montgomery, AL 36117
334–239–7994
Email: richard@deweesebae.com
*TERMINATED: 01/14/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
**Bar Status: Active**

**Sarahanne Young Vaughan**
Bradley Arant Boult Cummings
One Federal Pl; 1819 Fifth Ave N.
Birmingham, AL 35203–2119
205–521–8000
Fax: 205–521–8800
Email: svaughan@bradley.com
*TERMINATED: 02/10/2023*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
**Bar Status: Active**

**Thomas Matthew Miller**
Bradley Arant Boult Cummings LLP
One Federal Place; 1819 Fifth Avenue

North
Birmingham, AL 35203–2119
205–521–8000
Fax: 205–521–8800
Email: mmiller@bradley.com
*TERMINATED: 02/10/2023*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
**Bar Status: Active**

**Yurie Yeoul Bae**
DeWeese & Bae LLC
8191 Seaton Pl
Montgomery, AL 36116
334–239–7994
Email: yurie@deweesebae.com
*TERMINATED: 01/14/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
**Bar Status: Active**

**Defendant**

| | | |
|---|---|---|
| **Dynamic Security, Inc.** | represented by | **Susan Ware Bullock** |

Ford Harrison LLP
420 20th Street North; Suite 2560
Birmingham, AL 35203
205–244–5904
Fax: 205–244–5901
Email: sbullock@fordharrison.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
**Bar Status: Active**

**Wesley Clyde Redmond**
Ford Harrison, LLP
420 20th Street North; Suite 2560
Birmingham, AL 35203
205–244–5905
Fax: 404–244–5901
Email: wredmond@fordharrison.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
**Bar Status: Active**

**Movant**

| | | |
|---|---|---|
| **Equal Employment Opportunity Commission** | represented by | **Gerald Lee Miller** |

U.S. Equal Employment Opportunity
Commission
Ridge Park Place– Suite 2000
1130 22nd Street, South
Birmingham, AL 35205

205–212–2047
Fax: 205–212–2041
Email: gerald.miller@eeoc.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
**Bar Status: US Attorney–and other
Special**

**Kurt Sethu Fischer**
United States Equal Employment
Opportunity Commission
EEOC, Birmingham District Office, Ridge
Park Place
1130 22nd Street South, Suite 2000
Birmingham, AL 35205
205–212–2043
Fax: 205–212–2084
Email: kurt.fischer@eeoc.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
**Bar Status: US Attorney–and other
Special**

**Marsha Lynn Rucker**
EEOC–Birmingham District
1130 22nd Street South
Ridge Park Place
Birmingham, AL 35205
205–212–2046
Fax: 205–212–2041
Email: marsha.rucker@eeoc.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
**Bar Status: US Attorney–and other
Special**

| Date Filed | # | Docket Text |
|---|---|---|
| 10/10/2019 | 1 | COMPLAINT against Dynamic Security, Inc., Hyundai Engineering America, Inc., Hyundai Motor Manufacturing Alabama, LLC ( Filing fee $ 400.00 receipt number 4602055239.), filed by Davita M. Key. (Attachments: # 1 EEOC Letter and Right to Sue Letter, # 2 Civil Cover Sheet, # 3 Filing Fee Receipt)(dmn, ) (Entered: 10/11/2019) |
| 10/10/2019 | | DEMAND for Trial by Jury by Davita M. Key. (dmn, ) (NO PDF, see Doc. 1 for pdf.) (Entered: 10/11/2019) |
| 10/10/2019 | 2 | Corporate/Conflict Disclosure Statement by Davita M. Key. (dmn, ) (Entered: 10/11/2019) |
| 10/15/2019 | 3 | **(VACATED PURSUANT TO THE COURT'S 26 ORDER) ORDER REFERRING CASE to Magistrate Judge Honorable Judge Stephen Michael** |

| | | |
|---|---|---|
| | | **Doyle for all pretrial proceedings and entry of any orders or recommendations as may be appropriate. Signed by Chief Judge Emily C. Marks on 10/15/2019.(kh, )** Modified on 5/27/2020 (kh, ). (Entered: 10/15/2019) |
| 01/06/2020 | 4 | Summons Issued as to Dynamic Security, Inc., Hyundai Engineering America, Inc., Hyundai Motor Manufacturing Alabama, LLC., mailed CMRRR with copy of 1 Complaint. (cnw, ) (Entered: 01/06/2020) |
| 01/09/2020 | 5 | Return Receipt Card showing service of Summons and 1 Complaint signed by Jennifer Lockwood for Hyundai Engineering America, Inc. served on 1/7/2020, answer due 1/28/2020. (kh, ) (Entered: 01/09/2020) |
| 01/14/2020 | 6 | Return Receipt Card showing service of Summons and 1 Complaint signed by Gail Arrington for Dynamic Security, Inc. served on 1/9/2020, answer due 1/30/2020. (kh, ) (Entered: 01/14/2020) |
| 01/14/2020 | 7 | Return Receipt Card showing service of Summons and 1 Complaint signed by M.C. for Hyundai Motor Manufacturing Alabama, LLC served on 1/9/2020, answer due 1/30/2020. (kh, ) (Entered: 01/14/2020) |
| 01/27/2020 | 8 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Hyundai Engineering America, Inc.. (Bae, Yurie) (Entered: 01/27/2020) |
| 01/27/2020 | 9 | Corporate/Conflict Disclosure Statement by Hyundai Engineering America, Inc.. (Bae, Yurie) (Entered: 01/27/2020) |
| 01/30/2020 | 10 | NOTICE of Appearance by Whitney Ryan Brown on behalf of Hyundai Motor Manufacturing Alabama, LLC (Brown, Whitney) (Entered: 01/30/2020) |
| 01/30/2020 | 11 | MOTION to Dismiss , MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Hyundai Motor Manufacturing Alabama, LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G)(Middlebrooks, David) (Entered: 01/30/2020) |
| 01/30/2020 | 12 | Corporate/Conflict Disclosure Statement by Hyundai Motor Manufacturing Alabama, LLC. (Brown, Whitney) (Entered: 01/30/2020) |
| 01/30/2020 | 13 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *Motion to Dismiss by Defendant Dynamic Security* by Dynamic Security, Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Bullock, Susan) (Entered: 01/30/2020) |
| 01/31/2020 | 14 | Corporate/Conflict Disclosure Statement by Dynamic Security, Inc.. (Bullock, Susan) (Entered: 01/31/2020) |
| 01/31/2020 | 15 | **ORDER: Upon consideration of Defendant Hyundai Engineering America, Inc.'s Motion to Dismiss (Doc. 8 ); Defendant Hyundai Motor Manufacturing Alabama, LLC's Motion to Dismiss (Doc. 11 ); and Defendant Dynamic Security, Inc.s Motion to Dismiss (Doc. 13 ), it is ORDERED that, on or before February 21, 2020, Plaintiff shall file written responses showing cause why Defendants' Motions should not be dismissed. Plaintiff shall file separate responses to each of the motions. Further, it is ORDERED that Defendants may file replies to Plaintiff's responses on or before March 6, 2020. Signed by Honorable Judge Stephen Michael Doyle on 1/31/2020.(kh, )** (Entered: 01/31/2020) |
| 02/18/2020 | 16 | |

| | | |
|---|---|---|
| | | MOTION for Extension of Time To Respond To Defendant's <u>13</u> Motion To Dismiss by Davita M. Key. (kh, ) (Entered: 02/19/2020) |
| 03/04/2020 | <u>17</u> | **ORDERED that the Motion (Doc. <u>16</u> ) is GRANTED. Plaintiff's deadline to show cause as to why Defendants' Motions to Dismiss (Docs. <u>8</u> , <u>13</u> ) should not be granted is extended to March 21, 2020. Signed by Honorable Judge Stephen Michael Doyle on 3/4/2020. (kh, )** (Entered: 03/04/2020) |
| 03/06/2020 | <u>18</u> | MOTION for Extension of Deadline to Reply to Plaintiff's Responses to their Respective Motions to Dismiss by Hyundai Motor Manufacturing Alabama, LLC by Hyundai Motor Manufacturing Alabama, LLC. (Brown, Whitney) (Entered: 03/06/2020) |
| 03/06/2020 | <u>19</u> | **ORDER: Upon consideration of Defendants HMMA's and HEA's Motion to Extend Time to Reply to Respond to Plaintiff's Responses to Their Respective Motions to Dismiss (Doc. <u>18</u> ), it is ORDERED that the Motion (Doc. <u>18</u> ) is GRANTED. Defendants may file replies to Plaintiff's response(s) to Defendants' Motions to Dismiss on or before April 6, 2020.Signed by Honorable Judge Stephen Michael Doyle on 3/6/2020. (kh, )** (Entered: 03/06/2020) |
| 03/09/2020 | <u>20</u> | MOTION for Extension of Time To Respond To Defendant's Motion to Dismiss by Davita M. Key. (Attachments: # <u>1</u> Supporting Document)(kh, ) (Entered: 03/10/2020) |
| 03/10/2020 | <u>21</u> | **ORDER: Upon consideration of Plaintiff's Motion for Extension of Time to Respond to Defendants' Motion to Dismiss (Doc. <u>20</u> ), it is ORDERED that the Motion (Doc. <u>20</u> ) is GRANTED. Plaintiff may file a response to Defendants' Motion to Dismiss on or before May 20, 2020. Defendants may reply to Plaintiff's response on or before June 3, 2020. Signed by Honorable Judge Stephen Michael Doyle on 3/10/2020. (kh, )** (Entered: 03/10/2020) |
| 05/20/2020 | <u>22</u> | NOTICE of Appearance by Heather Newsom Leonard on behalf of Davita M. Key (Leonard, Heather) (Entered: 05/20/2020) |
| 05/20/2020 | <u>23</u> | MOTION to Amend/Correct <u>1</u> Complaint, by Davita M. Key. (Attachments: # <u>1</u> Exhibit 1 – Proposed Amended Complaint)(Leonard, Heather) (Entered: 05/20/2020) |
| 05/20/2020 | <u>24</u> | RESPONSE in Opposition re <u>8</u> MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM , <u>13</u> MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *Motion to Dismiss by Defendant Dynamic Security*, <u>11</u> MOTION to Dismiss MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by Davita M. Key. (Leonard, Heather) (Entered: 05/20/2020) |
| 05/20/2020 | <u>25</u> | NOTICE of Appearance by Leslie Ann Palmer on behalf of Davita M. Key (Palmer, Leslie) (Entered: 05/20/2020) |
| 05/27/2020 | <u>26</u> | **ORDERED that the Court's Order of Referral, dated October 15, 2019 (doc. <u>3</u> ), is VACATED. Signed by Chief Judge Emily C. Marks on 5/27/2020. (kh, )** (Entered: 05/27/2020) |
| 05/27/2020 | | Motions No Longer Referred: <u>13</u> MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *Motion to Dismiss by Defendant Dynamic Security*, <u>11</u> MOTION to Dismiss MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM , <u>23</u> MOTION to Amend/Correct <u>1</u> Complaint, , <u>8</u> MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM (kh, ) (Entered: 05/27/2020) |
| 05/29/2020 | <u>27</u> | |

| | | |
|---|---|---|
| | | **ORDERED that the Plaintiff's motion (doc. 23 ) is GRANTED. It is further ORDERED that the Plaintiff shall file her amended complaint on or before June 5, 2020 in compliance with this Court's local rules. See L.R.M.D.Ala.15.1. Signed by Chief Judge Emily C. Marks on 5/29/2020. (kh, ) (Entered: 05/29/2020)** |
| 06/01/2020 | 28 | AMENDED COMPLAINT against All Defendants, filed by Davita M. Key.(Palmer, Leslie) (Entered: 06/01/2020) |
| 06/02/2020 | 29 | **ORDER: it is ORDERED that the Defs' motions to dismiss (doc. 8 ); (doc. 11 ); (doc. 13 ), are DENIED as moot. Signed by Chief Judge Emily C. Marks on 6/2/2020. (Attachments: # 1 Civil Appeals Checklist) (cwl, ) (Entered: 06/02/2020)** |
| 06/12/2020 | 30 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Hyundai Motor Manufacturing Alabama, LLC. (Brown, Whitney) (Entered: 06/12/2020) |
| 06/15/2020 | 31 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Hyundai Engineering America, Inc.. (Bae, Yurie) (Entered: 06/15/2020) |
| 06/15/2020 | 32 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Dynamic Security, Inc.. (Attachments: # 1 Exhibit Exhibit A)(Bullock, Susan) (Entered: 06/15/2020) |
| 06/15/2020 | | ***PURSUANT TO THE 31 MOTION – Attorney Richard Leon DeWeese, Jr for Hyundai Engineering America, Inc. added. (No pdf attached to this entry) (cwl, ) (Entered: 06/16/2020) |
| 06/15/2020 | | ***PURSUANT TO THE 32 MOTION – Attorney Wesley Clyde Redmond for Dynamic Security, Inc. added. (no pdf attached to this entry) (cwl, ) (Entered: 06/16/2020) |
| 06/17/2020 | 33 | **ORDER: Now pending before the Court are the Defendants' Motions to Dismiss. (Doc. 30 ); (Doc. 31 ); (Doc. 32 ). Upon consideration of the motions and for good cause, it is ORDERED that on or before July 8, 2020, the Plaintiff shall show cause why the Defendants' motions (docs. 30 , 31 & 32 ), should not be granted. The Defendants may file replies on or before July 15, 2020. Signed by Chief Judge Emily C. Marks on 6/17/2020. (kh, ) (Entered: 06/17/2020)** |
| 07/08/2020 | 34 | RESPONSE in Opposition re 30 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM , 32 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM , 31 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by Davita M. Key. (Palmer, Leslie) (Entered: 07/08/2020) |
| 07/15/2020 | 35 | REPLY to Response to Motion re 30 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by Hyundai Motor Manufacturing Alabama, LLC. (Brown, Whitney) (Entered: 07/15/2020) |
| 07/15/2020 | 36 | REPLY to Response to Motion re 30 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM , 32 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by Dynamic Security, Inc.. (Bullock, Susan) (Entered: 07/15/2020) |
| 07/15/2020 | 37 | REPLY to Response to Motion re 31 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by Hyundai Engineering America, Inc.. (Bae, Yurie) (Entered: 07/15/2020) |
| 08/31/2021 | 38 | **MEMORANDUM OPINION AND ORDER: it is ORDERED as follows: 1) Defendant HMMA's 30 motion to dismiss, is DENIED in its entirety; 2)** |

| | | |
|---|---|---|
| | | **Defendant HEA's <u>31</u> motion to dismiss, is GRANTED with respect to the Plaintiff's Title VII claims contained in Counts 1, 2, and 4; The motion is DENIED with respect the Plaintiff's 1981 claims contained in Counts 3 and 5; and 3) Defendant Dynamic's <u>32</u> motion to dismiss, is DENIED in its entirety, as further set out in Order. Signed by Chief Judge Emily C. Marks on 8/31/2021. (am, )** (Main Document 38 replaced on 8/31/2021 to correct heading in main pdf previously attached by clerk's office) (am, ). (Entered: 08/31/2021) |
| 08/31/2021 | <u>39</u> | NOTICE of Correction re <u>38</u> Memorandum Opinion and Order to correct the case caption only. (Attachments: # <u>1</u> Corrected Main Document <u>38</u> )(am, ) (Entered: 08/31/2021) |
| 09/01/2021 | <u>40</u> | **Rule 26(f) ORDER: DIRECTING that that the FED.R.CIV.P. 26(f) report containing the discovery plan shall be filed as soon as practicable but not later than 9/22/2021, as further set out in Order. Signed by Chief Judge Emily C. Marks on 9/1/2021. (am, )** (Entered: 09/01/2021) |
| 09/13/2021 | <u>41</u> | ANSWER to <u>28</u> Amended Complaint by Hyundai Motor Manufacturing Alabama, LLC.(Brown, Whitney) (Entered: 09/13/2021) |
| 09/14/2021 | <u>42</u> | ANSWER to <u>28</u> Amended Complaint by Hyundai Engineering America, Inc..(Bae, Yurie) (Entered: 09/14/2021) |
| 09/14/2021 | <u>43</u> | ANSWER & Defenses <u>28</u> Amended Complaint by Dynamic Security, Inc..(Bullock, Susan) Modified on 9/15/2021 to clarify text as reflected in pleading (am, ). (Entered: 09/14/2021) |
| 09/22/2021 | <u>44</u> | MOTION for Extension of Time to File *Report of Parties' Planning Meeting* by Hyundai Motor Manufacturing Alabama, LLC. (Brown, Whitney) (Entered: 09/22/2021) |
| 09/23/2021 | 45 | **TEXT ORDER: GRANTING the <u>44</u> MOTION for Extension of Time to File Report of Parties' Planning Meeting. Signed by Chief Judge Emily C. Marks on 9/23/2021. (NO PDF attached to this entry)(am, )** (Entered: 09/23/2021) |
| 09/23/2021 | <u>46</u> | REPORT of Rule 26(f) Planning Meeting. (Palmer, Leslie) (Entered: 09/23/2021) |
| 09/23/2021 | <u>47</u> | Joint MOTION for Protective Order by Davita M. Key, Hyundai Motor Manufacturing Alabama, LLC, Hyundai Engineering America, Inc., & Dynamic Security, Inc.. (Attachments: # <u>1</u> Text of Proposed Order)(Leonard, Heather) Modified on 9/24/2021 to add filers (am, ). (Entered: 09/23/2021) |
| 09/24/2021 | <u>48</u> | **PRIVACY PROTECTIVE ORDER: GRANTING the <u>47</u> Joint Motion for Protective Order, as further set out in Order. Signed by Honorable Judge Stephen Michael Doyle on 9/24/2021. (am, )** (Entered: 09/24/2021) |
| 11/08/2021 | <u>49</u> | **ORDER: it is ORDERED that this matter is SET for a hearing by status and scheduling conference on 11/19/2021 at 11:00 a.m. in Courtroom 2A, US Courthouse Complex, One Church Street, Montgomery, AL; DIRECTING the Clerk to provide a court reporter for this proceeding. Signed by Chief Judge Emily C. Marks on 11/8/2021. (Furnished: Calendar & WS)(am, )** (Entered: 11/08/2021) |
| 11/19/2021 | <u>50</u> | Minute Entry for proceedings held before Chief Judge Emily C. Marks: Status Conference held on 11/19/2021 (PDF available for court use only). (Court Reporter Katie Sears Silas.) (ws, ) (Entered: 11/19/2021) |

| 11/19/2021 | 51 | **UNIFORM SCHEDULING ORDER: Final Pretrial Conference set for 9/22/2022, at 2:30 PM, in Courtroom 2A, before Chief Judge Emily C. Marks; Jury Selection & Trial set for 11/14/2022, at 10:00 AM, in Montgomery, AL, before Chief Judge Emily C. Marks; Amended Pleadings due by 2/4/2022; Discovery due by 4/25/2022; Mediation Notice due by 4/30/2022; Dispositive and Daubert Motions due by 5/25/2022; Proposed Pretrial Order due by 9/15/2022, as further set out in order. Signed by Chief Judge Emily C. Marks on 11/19/2021. (Furnished: Calendar & WS) (amf, )** (Entered: 11/19/2021) |
|---|---|---|
| 01/13/2022 | 52 | MOTION to Substitute Attorney by Hyundai Engineering America, Inc., construed as a Motion to Withdraw Counsel pursuant to the Court's 53 Order. (Miller, Thomas) Modified on 1/14/2022 (am, ). (Entered: 01/13/2022) |
| 01/13/2022 | | ***PURSUANT TO THE 52 MOTION – Attorney Cortlin Lee Bond for Hyundai Engineering America, Inc. added. (NO PDF attached to this entry) (am, ) (Entered: 01/13/2022) |
| 01/14/2022 | 53 | **ORDER: Construing the 52 Motion to Substitute Counsel as a Motion to Withdraw as Counsel; GRANTING the 52 Motion to Withdraw; DIRECTING Defendant's new counsel to file a notice of appearance in this matter. Signed by Chief Judge Emily C. Marks on 1/14/2022. (am, )** (Entered: 01/14/2022) |
| 01/14/2022 | | *** PURSUANT TO THE COURT'S 53 ORDER – Attorney Yurie Yeoul Bae and Richard Leon DeWeese, Jr terminated. (NO PDF attached to this entry) (am, ) (Entered: 01/14/2022) |
| 01/14/2022 | 54 | NOTICE of Appearance by Thomas Matthew Miller on behalf of Hyundai Engineering America, Inc. (Miller, Thomas) (Entered: 01/14/2022) |
| 01/14/2022 | 55 | NOTICE of Appearance by Cortlin Lee Bond on behalf of Hyundai Engineering America, Inc. (Bond, Cortlin) (Entered: 01/14/2022) |
| 03/28/2022 | 56 | MOTION to Amend 51 Scheduling Order by Davita M. Key. (Leonard, Heather) Modified on 3/28/2022 to clarify text as reflected in pleading (am, ). (Entered: 03/28/2022) |
| 03/28/2022 | 57 | **ORDER it is ORDERED that the 56 motion to amend is GRANTED; It is further ORDERED as follows: The pretrial conference presently scheduled for 9/22/2022, is RESET to 2/2/2023, @ 11:00 a.m. in the Courtroom 2A, FMJ US Courthouse, Montgomery, AL; DIRECTING the parties to jointly prepare a Proposed Pretrial Order due on or before 1/26/2023; This cause, presently set for jury selection and trial during the term of court commencing on 11/14/2022, is hereby RESET to the trial term commencing on 3/27/2023, @ 10:00 a.m. in Montgomery, AL; Dispositive & Daubert Motions due by 10/5/2022; Mediation Notice not more than 5 days after the Settlement Conference; Discovery Cutoff due on or before 9/2/2022, as further set out in Order. Signed by Chief Judge Emily C. Marks on 3/28/2022. (Furnished: Calendar & WS; Terminates: PTC – 9/22/2022; Jury Selection & Jury Trial – 11/14/2022)(am, )** (Entered: 03/28/2022) |
| 04/12/2022 | 58 | NOTICE of Appearance by Kurt Fischer on behalf of by Equal Employment Opportunity Commission (Fischer, Kurt) (Entered: 04/12/2022) |
| 04/12/2022 | 59 | MOTION to Quash *Subpoena* by Equal Employment Opportunity Commission. (Attachments: # 1 Exhibit Ex A: Defendant HMMA's Subpoena to EEOC, # 2 Exhibit Ex B: Defendant HMMA's Ltr to EEOC dated March 30, 2022)(Fischer, |

| | | |
|---|---|---|
| | | Kurt) (Entered: 04/12/2022) |
| 04/12/2022 | 60 | **TEXT ORDER TO SHOW CAUSE: Upon consideration of the 59 Motion to Quash Subpoena filed by non–party Equal Employment Opportunity Commission, it is ORDERED that, on or before 4/15/2022, Dft Hyundai Motor Manufacturing, LLC, shall show cause, if any there be, why the Motion should not be granted. Signed by Honorable Judge Stephen Michael Doyle on 4/12/2022. (No pdf attached to this entry) (wcl, )** (Entered: 04/12/2022) |
| 04/12/2022 | | ***PURSUANT TO THE 59 MOTION – Attorney Marsha Lynn Rucker and Gerald Lee Miller for Equal Employment Opportunity Commission added. (No pdf attached to this entry) (wcl, ) (Entered: 04/12/2022) |
| 04/12/2022 | | MEMORANDUM in Support of 59 MOTION to Quash *Subpoena* filed by Equal Employment Opportunity Commission. (NO PDF – See doc 59 ) (am, ) (Entered: 04/15/2022) |
| 04/15/2022 | 61 | RESPONSE to Motion re 59 MOTION to Quash *Subpoena* filed by Hyundai Motor Manufacturing Alabama, LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G)(Brown, Whitney) (Entered: 04/15/2022) |
| 04/19/2022 | 62 | **ORDER: it is ORDERED that the Board's 59 Motion to Quash is DENIED, as further set out in Order. Signed by Honorable Judge Stephen Michael Doyle on 4/19/2022. (am, )** (Entered: 04/19/2022) |
| 08/19/2022 | 63 | MOTION to Take Depositions of Cassandra Williams/Hyundai Engineering America, Inc.'s 30(B)(6) Deponent Outside of the Discovery Deadline *on September 6, 2022* by Davita M. Key. (Leonard, Heather) Modified on 8/22/2022 to reflect actual title. (dmn, ) (Entered: 08/19/2022) |
| 08/22/2022 | 64 | **ORDER: Now pending before the Court is Plaintiff Davita M. Key's motion to take depositions outside of the discovery deadline (doc. 63 ) filed on 8/19/2022. Upon consideration of the motion, and for good cause, it is ORDERED that the motion (doc. 63 ) is GRANTED to the extent that the discovery deadline is extended to 9/9/2022, for the sole purpose of taking the deposition of Cassandra Williams. It is further ORDERED that the dispositive motion deadline is extended to 10/12/2022. Signed by Chief Judge Emily C. Marks on 8/22/2022. (dmn, )** (Entered: 08/22/2022) |
| 09/15/2022 | 65 | Notice of Mediation and Settlement Conference by Davita M. Key (Leonard, Heather) (Entered: 09/15/2022) |
| 10/12/2022 | 66 | MOTION for Summary Judgment by Hyundai Motor Manufacturing Alabama, LLC. (Brown, Whitney) (Entered: 10/12/2022) |
| 10/12/2022 | 67 | BRIEF/MEMORANDUM in Support re 66 MOTION for Summary Judgment filed by Hyundai Motor Manufacturing Alabama, LLC. (Brown, Whitney) (Entered: 10/12/2022) |
| 10/12/2022 | 68 | Evidentiary Submission re 66 MOTION for Summary Judgment , 67 BRIEF/MEMORANDUM in Support filed by Hyundai Motor Manufacturing Alabama, LLC. (Attachments: # 1 Exhibit 1 – Declaration of R. Burns, # 2 Exhibit 2 – Depo Transcript of R. Burns, # 3 Exhibit 3 – Depo Transcript of K. Riddle, # 4 Exhibit 4 – Depo Transcript of S. Piers, # 5 Exhibit 5 – Declaration of G. Robinson, # 6 Exhibit 6 – Depo Transcript of C. Williams, # 7 Exhibit 7 – HEA's Response – |

| | | |
|---|---|---|
| | | RFA#2, # 8 Exhibit 8 – SOS Records Hyundai ENG, # 9 Exhibit 9 – SOS Records HEA, # 10 Exhibit 10 – SOS Records HMMA, # 11 Exhibit 11 – SOS "Hyundai" Word Search, # 12 Exhibit 12 – Plf's Depo Transcript (1 of 2), # 13 Exhibit 12 – Plf's Depo Transcript (2 of 2), # 14 Exhibit 13 – Declaration of C. Williams, # 15 Exhibit 14 – Plf's Second Supp Response to HMMA RFP #8)(Brown, Whitney) (Entered: 10/12/2022) |
| 10/12/2022 | 69 | MOTION for Summary Judgment by Hyundai Engineering America, Inc.. (Miller, Thomas) (Entered: 10/12/2022) |
| 10/12/2022 | 70 | BRIEF/MEMORANDUM in Support re 69 MOTION for Summary Judgment *Hyundai ENG America, Inc.'s Memorandum of Law in Support of its Motion for Summary Judgment* filed by Hyundai Engineering America, Inc.. (Miller, Thomas) (Entered: 10/12/2022) |
| 10/12/2022 | | ***PURSUANT TO THE 69 MOTION – Attorney Sarahanne Young Vaughan for Hyundai Engineering America, Inc. added. (No PDF attached to this entry) (bes, ) (Entered: 10/12/2022) |
| 10/12/2022 | 71 | Evidentiary Submission re 70 BRIEF/MEMORANDUM in Support, 69 MOTION for Summary Judgment – *Hyundai ENG America, Inc.'s Evidentiary Submission in Support of its Motion for Summary Judgment* filed by Hyundai Engineering America, Inc.. (Attachments: # 1 Exhibit 1_Part01 – Deposition of Davita Key, # 2 Exhibit 1_Part02 – Deposition of Davita Key, # 3 Exhibit 1_Part03 – Deposition of Davita Key, # 4 Exhibit 1_Part04 – Deposition of Davita Key, # 5 Exhibit 1_Part05 – Deposition of Davita Key, # 6 Exhibit 1_Part06 – Deposition of Davita Key, # 7 Exhibit 1_Part07 – Deposition of Davita Key, # 8 Exhibit 1_Part08 – Deposition of Davita Key, # 9 Exhibit 1_Part09 – Deposition of Davita Key, # 10 Exhibit 1_Part10 – Deposition of Davita Key, # 11 Exhibit 1_Part11 – Deposition of Davita Key, # 12 Exhibit 1_Part12 – Deposition of Davita Key, # 13 Exhibit 2 – Deposition of Cassandra Williams, # 14 Exhibit 3 – Declaration of Cassandra Williams)(Miller, Thomas) (Entered: 10/12/2022) |
| 10/12/2022 | 72 | MOTION for Leave to File *Supplemental Brief* by Hyundai Motor Manufacturing Alabama, LLC. (Middlebrooks, David) (Entered: 10/12/2022) |
| 10/12/2022 | 73 | MOTION for Summary Judgment by Dynamic Security, Inc.. (Bullock, Susan) (Entered: 10/12/2022) |
| 10/12/2022 | 74 | BRIEF/MEMORANDUM in Support re 73 MOTION for Summary Judgment filed by Dynamic Security, Inc.. (Bullock, Susan) (Entered: 10/12/2022) |
| 10/12/2022 | 75 | Evidentiary Submission re 73 MOTION for Summary Judgment , 74 BRIEF/MEMORANDUM in Support filed by Dynamic Security, Inc.. (Attachments: # 1 Exhibit Deposition Transcript of Plaintiff Davita Key, # 2 Exhibit Dynamic Pre–Employment Screening Form, # 3 Exhibit Plaintiffs Check Stub from Dynamic, # 4 Exhibit July 21, 2017, email from Gloria Robinson to Plaintiff, # 5 Exhibit HEA Appearance Standards for Security Personnel, # 6 Exhibit HMMA PPE and Dress Code Matrix, # 7 Exhibit Dynamic Acknowledgement and Receipt of Employee Handbook, # 8 Exhibit HEA Employee Handbook, # 9 Exhibit HMMA Contractor Safety, Security, and Fire Protection Handbook, # 10 Exhibit EEOC Intake Questionnaire – HMMA, # 11 Exhibit Dynamic EEOC Charge, # 12 Exhibit HMMA EEOC Charge, # 13 Exhibit Handwritten letter from Plaintiff to EEOC dated August 8, 2017, # 14 Exhibit Plaintiff's complaint of discrimination, # 15 Exhibit Dynamics Security Officers Manual Acknowledgement, # 16 Exhibit Signed acknowledgement |

| | | |
|---|---|---|
| | | of Dynamics Harassment Policy, # 17 Exhibit Signed acknowledgement of Dynamics Rules and Regulations, # 18 Exhibit Dynamic Dismissal and Notice of Right to Sue, # 19 Exhibit EEOC HMMA Letter of Determination, # 20 Exhibit EEOC Letter to Plaintiff and HMMA, # 21 Exhibit HMMA Notice of Right to Sue, # 22 Exhibit Rebuttal Letter from Plaintiff to EEOC, # 23 Exhibit Letter from Plaintiff to Alabama DOL, # 24 Exhibit Deposition Transcript of Cassandra Williams, # 25 Exhibit Deposition Transcript of Ray Curenton, # 26 Exhibit Deposition Transcript of Dynamic – Riddle, # 27 Exhibit Deposition Transcript of Dynamic – Spires, # 28 Exhibit Deposition Transcript of HMMA – Burns, # 29 Exhibit HEA Appearance Standards for Security Contractors, # 30 Exhibit Internal Dynamic Email Attaching Notice of Right to Sue, # 31 Exhibit Postmarked Envelope from EEOC to Dynamic, # 32 Exhibit Exhibits to Deposition Transcript of Ray Curenton Part 1 of 2, # 33 Exhibit Exhibits to Deposition Transcript of Ray Curenton Part 2 of 2)(Bullock, Susan) (Entered: 10/12/2022) |
| 10/13/2022 | 76 | **ORDER TO SHOW CAUSE, by the PLF, as to why the 66 , 69 , & 73 Motions for Summary Judgment filed by Hyundai Engineering America, Inc. should not be granted; Show Cause Response due by 11/3/2022; further ORDERED that the Dfts may file replies to the Plf's responses on or before 11/10/2022. Signed by Chief Judge Emily C. Marks on 10/13/2022. (bes, )** (Entered: 10/13/2022) |
| 10/13/2022 | 77 | **(VACATED PURSUANT TO THE COURT'S 78 ORDER) ORDER TO SHOW CAUSE, by the PLF, as to why the 72 Motion for Leave to File Supplemental Brief filed by Hyundai Motor Manufacturing Alabama, LLC should not be granted; Show Cause Response due by 11/20/2022. Signed by Chief Judge Emily C. Marks on 10/13/2022. (bes, )** Modified on 10/18/2022 (es, ). (Entered: 10/13/2022) |
| 10/18/2022 | 78 | **ORDER: it is ORDERED that the 77 Order dated 10/13/2022, is VACATED; it is ORDERED that on or before 10/25/2022, the Plaintiff shall show cause why the 72 motion should not be granted. Signed by Chief Judge Emily C. Marks on 10/18/2022. (es, )** (Entered: 10/18/2022) |
| 10/25/2022 | 79 | RESPONSE in Opposition re 72 MOTION for Leave to File *Supplemental Brief* filed by Davita M. Key. (Attachments: # 1 Exhibit 1 – HMMA's Rule 26 Disclosures, # 2 Exhibit 2 – HMMA's Interrogatory Answers)(Leonard, Heather) (Entered: 10/25/2022) |
| 10/27/2022 | 80 | **ORDER: it is ORDERED that Dft's 72 Motion for Leave to File Supplemental Brief is DENIED without prejudice with leave to refile. Signed by Chief Judge Emily C. Marks on 10/27/2022. (bes, )** (Entered: 10/27/2022) |
| 11/03/2022 | 81 | Evidentiary Submission re 73 MOTION for Summary Judgment , 69 MOTION for Summary Judgment , 66 MOTION for Summary Judgment filed by Davita M. Key. (Attachments: # 1 Exhibit 1 – HMMA's Rule 26 Disclosures, # 2 Exhibit 2 – HMMA's Interrogatory Answers, # 3 Exhibit 3 – HMMA's RPD Responses, # 4 Exhibit 4 – Email Composite, # 5 Exhibit 5 – Howell Statement, # 6 Exhibit 6 – HEA 30(b)(6) Notice, # 7 Exhibit 7 – Robinson Memo, # 8 Exhibit 8 – Williams Email, # 9 Exhibit 9 – HMMA Safety Handbook, # 10 Exhibit 10 – Robinson Email, # 11 Exhibit 11 – Unemployment Hearing Transcript, # 12 Exhibit 12 – Invoices, # 13 Exhibit 13 – Dynamic Security's EEOC Position Statement, # 14 Exhibit 14 – Notice of Charge to HMMA, # 15 Exhibit 15 – HMMA Mailroom Duties, # 16 Exhibit 16 – Williams Email re EEOC Filings, # 17 Exhibit 17 – Email re Causing Finding, # 18 Exhibit 18 – Email re Key's Unemployment, # 19 Exhibit 19 – Key |

| | | |
|---|---|---|
| | | Declaration, # 20 Exhibit 20 – Peoples July 31 Email)(Leonard, Heather) (Entered: 11/03/2022) |
| 11/03/2022 | 82 | BRIEF/MEMORANDUM in Opposition re 68 Evidentiary Submission,,, 70 BRIEF/MEMORANDUM in Support, 66 MOTION for Summary Judgment , 73 MOTION for Summary Judgment , 71 Evidentiary Submission,,,, 75 Evidentiary Submission,,,,,,, 69 MOTION for Summary Judgment , 67 BRIEF/MEMORANDUM in Support, 74 BRIEF/MEMORANDUM in Support filed by Davita M. Key. (Palmer, Leslie) (Entered: 11/03/2022) |
| 11/09/2022 | 83 | MOTION for Extension of Time to File Response/Reply as to 82 BRIEF/MEMORANDUM in Opposition, *Defendant Dynamic Security, Inc.'s Motion for Enlargement of Time to File Reply to Plaintiff's Opposition to Its Motion for Summary Judgment* by Dynamic Security, Inc.. (Redmond, Wesley) (Entered: 11/09/2022) |
| 11/10/2022 | 84 | **TEXT ORDER granting 83 Motion for Extension of Time; the deadline for Dft Dynamic Security, Inc. to file a reply to Plf's Opposition to its Motion for Summary Judgment is extended to 11/14/2022. Signed by Chief Judge Emily C. Marks on 11/10/2022. (No PDF attached to this entry) (bes, )** (Entered: 11/10/2022) |
| 11/10/2022 | 85 | REPLY BRIEF *in Response to Plaintiff's Brief* filed by Hyundai Motor Manufacturing Alabama, LLC. (Brown, Whitney) (Entered: 11/10/2022) |
| 11/10/2022 | 86 | REPLY BRIEF re 70 BRIEF/MEMORANDUM in Support, 71 Evidentiary Submission,,,, 69 MOTION for Summary Judgment – *Hyundai ENG America, Inc.'s Reply in Support of its Motion for Summary Judgment* filed by Hyundai Engineering America, Inc.. (Miller, Thomas) (Entered: 11/10/2022) |
| 11/14/2022 | 87 | REPLY BRIEF re 73 MOTION for Summary Judgment , 75 Evidentiary Submission,,,,,,, 74 BRIEF/MEMORANDUM in Support, 82 BRIEF/MEMORANDUM in Opposition, filed by Dynamic Security, Inc.. (Bullock, Susan) (Entered: 11/14/2022) |
| 11/14/2022 | 88 | MOTION to Strike 82 BRIEF/MEMORANDUM in Opposition, *Plaintiff's Declaration* by Dynamic Security, Inc.. (Bullock, Susan) (Entered: 11/15/2022) |
| 12/27/2022 | 89 | MOTION to Strike *Plaintiff's Demand for Jury Trial* by Dynamic Security, Inc.. (Attachments: # 1 Exhibit 1 – Waiver of Trial by Jury Policy Handbook Excerpt, # 2 Exhibit 2 – Signed Handbook Acknowledgement, # 3 Exhibit 3 – Signed Pre–Application Employment Screening, # 4 Exhibit 4 – Deposition Excerpts of Plaintiff with Exhibits 2 and 10)(Bullock, Susan) (Entered: 12/27/2022) |
| 01/05/2023 | 90 | **ORDER: it is ORDERED that the Plaintiff shall file a response to Dynamic's 89 motion on or before 1/19/2023. It is further ORDERED that Dynamic shall file a reply to the Plaintiff's response to on or before 1/26/2023. Signed by Chief Judge Emily C. Marks on 1/5/2023. (cwl, )** (Entered: 01/05/2023) |
| 01/19/2023 | 91 | RESPONSE in Opposition re 89 MOTION to Strike *Plaintiff's Demand for Jury Trial* filed by Davita M. Key. (Attachments: # 1 Exhibit Ex1 – Full Dynamic Security Officer's Handbook, # 2 Exhibit Ex 2 – Dynamic Security Signed Policies)(Palmer, Leslie) (Entered: 01/19/2023) |
| 01/25/2023 | 92 | **ORDER: it is ORDERED that the pretrial conference presently set for 2/2/2023, is RESET to 11:00 AM on 2/17/2023, in Courtroom 2A; The parties are** |

| | | |
|---|---|---|
| | | **DIRECTED to jointly prepare a proposed pretrial order, and the Plf shall ensure that the original of the proposed pretrial order is received by the Court on or before 2/10/2023, by transmitting an electronic copy of the proposed pretrial order to the Court as an attachment to an email message sent to propord_marks@almd.uscourts.gov.The Clerk is DIRECTED to provide a court reporter for this proceeding. Signed by Chief Judge Emily C. Marks on 1/25/2023. (Furn: calendar, cs) (Term: FPC set for 02/02/2023)(bes, )** (Entered: 01/25/2023) |
| 01/26/2023 | 93 | Witness List by Hyundai Motor Manufacturing Alabama, LLC. (Middlebrooks, David) (Entered: 01/26/2023) |
| 01/26/2023 | 94 | Deposition Designations by Hyundai Motor Manufacturing Alabama, LLC.. (Middlebrooks, David) (Entered: 01/26/2023) |
| 01/26/2023 | 95 | Exhibit List by Hyundai Motor Manufacturing Alabama, LLC.. (Middlebrooks, David) (Entered: 01/26/2023) |
| 01/26/2023 | 96 | Witness List by Hyundai Engineering America, Inc.. (Miller, Thomas) (Entered: 01/26/2023) |
| 01/26/2023 | 97 | Exhibit List by Hyundai Engineering America, Inc... (Miller, Thomas) (Entered: 01/26/2023) |
| 01/26/2023 | 98 | Witness List by Dynamic Security, Inc.. (Redmond, Wesley) (Entered: 01/26/2023) |
| 01/26/2023 | 99 | Exhibit List by Dynamic Security, Inc... (Redmond, Wesley) (Entered: 01/26/2023) |
| 01/26/2023 | 100 | Deposition Designations by Dynamic Security, Inc... (Redmond, Wesley) (Entered: 01/26/2023) |
| 01/26/2023 | 101 | Witness List by Davita M. Key. (Attachments: # 1 Exhibit Ex A – Depo Designations Dynamic Riddle, # 2 Exhibit Ex B – Depo Designations Dynamic Spires, # 3 Exhibit Ex C – Depo Designations HMMA Burns, # 4 Exhibit Ex D – Depo Designations HEA Williams, # 5 Exhibit Ex E – Depo Designations Cureton)(Palmer, Leslie) (Entered: 01/26/2023) |
| 01/26/2023 | 102 | Exhibit List by Davita M. Key.. (Palmer, Leslie) (Entered: 01/26/2023) |
| 01/26/2023 | 103 | REPLY to Response to Motion re 89 MOTION to Strike *Plaintiff's Demand for Jury Trial* filed by Dynamic Security, Inc.. (Bullock, Susan) (Entered: 01/26/2023) |
| 01/27/2023 | 104 | MOTION to Continue – *Unopposed Motion to Continue Pre–Trial Setting* by Hyundai Engineering America, Inc.. (Miller, Thomas) (Entered: 01/27/2023) |
| 01/27/2023 | 105 | Exhibit List *Defendant Dynamic Security, Inc.'s Amended Exhibit List* by Dynamic Security, Inc... (Redmond, Wesley) (Entered: 01/27/2023) |
| 01/30/2023 | 106 | **ORDER: it is ORDERED that unopposed motion to continue (doc. 104 ) is GRANTED and the pretrial conference presently set for February 17, 2023, is RESET to 2:00 p.m. on February 21, 2023, in Courtroom 2A, in the Frank M. Johnson, Jr. U.S. Courthouse, One Church Street, Montgomery, Alabama. No other deadlines are extended. The Clerk of the Court is DIRECTED to provide a court reporter for this proceeding. Signed by Chief Judge Emily C. Marks on 01/30/2023. (furnished: calendar and cs) (terminated: PTC for 2/17/2023).(amf, )** (Entered: 01/30/2023) |

| 02/01/2023 | 107 | MOTION for Leave to File *Amended Exhibit List* by Hyundai Motor Manufacturing Alabama, LLC. (Brown, Whitney) (Entered: 02/01/2023) |
|---|---|---|
| 02/02/2023 | 108 | **ORDER: it is ORDERED that on or before 2/6/2023, the Plaintiff shall show cause why the 107 motion should not be granted. Signed by Chief Judge Emily C. Marks on 2/2/2023. (cwl, )** (Entered: 02/02/2023) |
| 02/02/2023 | 109 | Deposition Designations *(Responsive Designations of Deposition/Trial Excerpts)* by Hyundai Motor Manufacturing Alabama, LLC.. (Middlebrooks, David) (Entered: 02/02/2023) |
| 02/02/2023 | 110 | Deposition Designations – *Defendant Hyundai ENG America, Inc.'s Responsive Designation of Deposition Trial Excerpts* by Hyundai Engineering America, Inc... (Miller, Thomas) (Entered: 02/02/2023) |
| 02/02/2023 | 111 | MOTION for Leave to File – *Defendant Hyundai ENG America, Inc.'s Motion for Leave to Amend its Trial Exhibit List* by Hyundai Engineering America, Inc.. (Miller, Thomas) (Entered: 02/02/2023) |
| 02/02/2023 | 112 | Deposition Designations *Defendant Dynamic Security, Inc.'s Deposition Counter–Designations* by Dynamic Security, Inc... (Redmond, Wesley) (Entered: 02/02/2023) |
| 02/03/2023 | 113 | Response to Order re 108 Order to Show Cause, 107 MOTION for Leave to File *Amended Exhibit List* filed by Davita M. Key. (Leonard, Heather) (Entered: 02/03/2023) |
| 02/03/2023 | 114 | **ORDER granting 107 Motion for Leave to Amend Exhibits List. Signed by Chief Judge Emily C. Marks on 2/3/2023. (amf, )** (Entered: 02/03/2023) |
| 02/03/2023 | 115 | **ORDER: it is ORDERED that on or before February 7, 2023, the Plaintiff shall show cause why the 111 motion for leave to amend trial exhibit list should not be granted. Signed by Chief Judge Emily C. Marks on 2/7/2023. (amf, )** (Entered: 02/03/2023) |
| 02/03/2023 | 116 | Exhibit List *(As Amended)* by Hyundai Motor Manufacturing Alabama, LLC.. (Middlebrooks, David) (Entered: 02/03/2023) |
| 02/07/2023 | 117 | RESPONSE TO ORDER TO SHOW CAUSE re 115 Order to Show Cause filed by Davita M. Key. (Leonard, Heather) (Entered: 02/07/2023) |
| 02/07/2023 | 118 | (STRICKEN – ENTERED IN WRONG CASE) Partial Filing fee: $ 6.00, receipt number 1417 (tha, ) Modified on 2/7/2023 (tha, ). (Entered: 02/07/2023) |
| 02/07/2023 | 119 | NOTICE of Error re 118 Filing Fee Received, which is STRICKEN from the record. This document was filed in the wrong civil action. (tha,) (Entered: 02/07/2023) |
| 02/08/2023 | 120 | **TEXT ORDER granting 111 Motion for Leave to Amend Trial Exhibit List. Signed by Chief Judge Emily C. Marks on 2/8/2023. (No pdf attached) (cwl, )** (Entered: 02/08/2023) |
| 02/08/2023 | 121 | Exhibit List – *Amended Trial Exhibit List* by Hyundai Engineering America, Inc... (Miller, Thomas) (Entered: 02/08/2023) |
| 02/09/2023 | 122 | Witness List by Hyundai Motor Manufacturing Alabama, LLC. (Brown, Whitney) (Entered: 02/09/2023) |

| 02/09/2023 | 123 | Objections to Plaintiff's 101 Witness List and Defendant Dynamic's 100 Deposition Designation List (Doc. 100) by Hyundai Motor Manufacturing Alabama, LLC.. (Brown, Whitney) Modified on 2/10/2023 to clarify the docket text(bes, ). (Entered: 02/09/2023) |
|---|---|---|
| 02/09/2023 | 124 | Objections to Plaintiff's 102 Exhibit List and Dynamic's 105 Amended Exhibit List by Hyundai Motor Manufacturing Alabama, LLC.. (Brown, Whitney) Modified on 2/10/2023 to clarify the docket text (bes, ). (Entered: 02/09/2023) |
| 02/09/2023 | 125 | Objection to re 93 Witness List, 116 Exhibit List filed by Davita M. Key. (Leonard, Heather) (Entered: 02/09/2023) |
| 02/09/2023 | 126 | Objection to re 105 Exhibit List filed by Davita M. Key. (Leonard, Heather) (Entered: 02/09/2023) |
| 02/09/2023 | 127 | Objection to re 121 Exhibit List filed by Davita M. Key. (Leonard, Heather) (Entered: 02/09/2023) |
| 02/09/2023 | 128 | Deposition Designations *Hyundai ENG America, Inc.'s Objections to Deposition Designations* by Hyundai Engineering America, Inc... (Attachments: # 1 Exhibit A – HEA's Chart of Depo Designation Objections, # 2 Exhibit B – Deposition Excerpts)(Miller, Thomas) (Entered: 02/09/2023) |
| 02/09/2023 | 129 | Exhibit List *Hyundai ENG America, Inc.'s Objections to Plaintiff's Exhibit List (Doc. 102)* by Hyundai Engineering America, Inc... (Miller, Thomas) (Entered: 02/09/2023) |
| 02/09/2023 | 130 | Objection to re 94 Deposition Designations, 101 Witness List, *Defendant Dynamic Security, Inc.'s Objections to Deposition Testimony Designations* filed by Dynamic Security, Inc.. (Attachments: # 1 Exhibit A – Excerpts (Kristal Riddle), # 2 Exhibit B – Excerpts (Sherry Spires, # 3 Exhibit C – Excerpts (Cassandra Williams), # 4 Exhibit D – Excerpts (Ray Cureton), # 5 Exhibit E – Excerpts (Davita Key))(Bullock, Susan) (Entered: 02/09/2023) |
| 02/09/2023 | 131 | Objection to re 97 Exhibit List *Defendant Dynamic Security, Inc.'s Objections to Defendant Hyundai ENG America, Inc.'s Exhibit List* filed by Dynamic Security, Inc.. (Bullock, Susan) (Entered: 02/09/2023) |
| 02/09/2023 | 132 | Objection to re 95 Exhibit List *Defendant Dynamic Security, Inc.'s Objections to Defendant HMMA's Exhibit List* filed by Dynamic Security, Inc.. (Bullock, Susan) (Entered: 02/09/2023) |
| 02/09/2023 | 133 | Objection to re 102 Exhibit List *Defendant Dynamic Security, Inc.'s Objections to Plaintiff's Exhibit List* filed by Dynamic Security, Inc.. (Bullock, Susan) (Entered: 02/09/2023) |
| 02/09/2023 | 134 | Objection to re 101 Witness List, *Defendant Dynamic Security, Inc.'s Objections to Plaintiff's Witness List* filed by Dynamic Security, Inc.. (Bullock, Susan) (Entered: 02/09/2023) |
| 02/09/2023 | 135 | Objections to Dynamic Security Designations by Davita M. Key.. (Attachments: # 1 Exhibit Ex A – Depo Designations Dynamic Riddle, # 2 Exhibit Ex B – Depo Designations Dynamic Spires, # 3 Exhibit Ex C – Depo Designations Dynamic Cureton, # 4 Exhibit Ex D – Depo Designations Dynamic Williams, # 5 Exhibit Ex E – Depo Designations Dynamic Key)(Palmer, Leslie) Modified on 2/10/2023 to clarify the docket text (bes, ). (Entered: 02/09/2023) |

| 02/09/2023 | 136 | Objection to HEA Designations by Davita M. Key.. (Attachments: # 1 Exhibit Ex A – Depo Designations HEA Williams, # 2 Exhibit Ex B – Depo Designations HEA Williams Errata, # 3 Exhibit Ex c –Depo Designations HEA Cureton, # 4 Exhibit Ex D – Depo Designations HEA Spires, # 5 Exhibit Ex E – Depo Designations HEA Riddle)(Palmer, Leslie) Modified on 2/10/2023 to clarify the docket text (bes, ). (Entered: 02/09/2023) |
|---|---|---|
| 02/09/2023 | 137 | Objections to HMMA Designations by Davita M. Key.. (Attachments: # 1 Exhibit Ex A – Depo Designations HMMA Burns, # 2 Exhibit Ex B – Depo Designations HMMA Burns Errata, # 3 Exhibit Ex C – Depo Designations HMMA Williams, # 4 Exhibit Ex D – Depo Designations HMMA Williams Errata, # 5 Exhibit Ex E – Depo Designations HMMA Spires, # 6 Exhibit Ex F – Depo Designations HMMA Riddle, # 7 Exhibit Ex G – Depo Designations HMMA Cureton, # 8 Exhibit Ex H – Depo Designations HMMA Key)(Palmer, Leslie) Modified on 2/10/2023 to clarify the docket text (bes, ). (Entered: 02/09/2023) |
| 02/10/2023 | 138 | **MEMORANDUM OPINION AND ORDER: it is ORDERED that: 1) Dynamic's 88 motion to strike the declaration of Davita Key is DENIED; 2) HMMA's 66 motion for summary judgment is GRANTED, and all Plf's claims against HMMA are DISMISSED; 3) HEA's 69 motion for summary judgment is GRANTED, and all Plf's claims against HEA are DISMISSED; 4) Dynamic's 73 motion for summary judgment is GRANTED, to the extent that Plf's Counts I, II, III, and IV are DISMISSED as to Dynamic; and 5) Dynamic's 73 motion for summary judgment is DENIED in all other respects. Signed by Chief Judge Emily C. Marks on 2/10/2023. (bes, )** (Entered: 02/10/2023) |
| 02/10/2023 | 139 | **ORDER: it is ORDERED that the 89 motion to strike Plf's jury demand is hereby SET for oral argument on 2/21/2023, at 2:00 PM in Courtroom 2A; Oral argument will take place at the same time and place as the pretrial conference. Signed by Chief Judge Emily C. Marks on 2/10/2023. (Furn: Calendar, cs) (bes, )** (Entered: 02/10/2023) |
| 02/16/2023 | 140 | Response to PLF's 105 Objections to Exhibit List by Dynamic Security, Inc... (Attachments: # 1 Exhibit 1 – Deposition Transcript of Plaintiff Davita Key, # 2 Exhibit 22 – Rebuttal Letter from Plaintiff to EEOC dated October 4, 2017, # 3 Exhibit 24 – Letter of Intent – HEA0280, # 4 Exhibit 39 – Gloria Robinson Statement regarding removal, # 5 Exhibit 40 – Assignment Refusal Forms, # 6 Exhibit 43 – Ray Cureton Statement, # 7 Exhibit 44 – Nicole Scavell Statement, # 8 Exhibit 48 – Pl Discovery Resp to Dynamic IROG signed (4–11–22), # 9 Exhibit 49 – Pl Discovery Resp to Dynamic RFP (4–11–22), # 10 Exhibit 50 – Pl Discovery Resp to Dynamic RFA (4–11–22), # 11 Exhibit 59 – Key Response to Depart of Labor, # 12 Exhibit 60 – Contract for Services btween HE and HMMA., # 13 Exhibit 61 – July 27, 2015, letter of extension of Contract., # 14 Exhibit 64 – PowerPoint – Sexual harassment in the workplace., # 15 Exhibit 65 – PowerPoint – EEOC – What does it mean to me., # 16 Exhibit 88 – Transcript of Unemployment Compensation hearing)(Redmond, Wesley) Modified on 2/17/2023 to clarify the docket text (bes, ). (Entered: 02/16/2023) |
| 02/16/2023 | 141 | Response to Plf's 135 Objections to Deposition Designations by Dynamic Security, Inc... (Redmond, Wesley) Modified on 2/17/2023 to clarify the docket text (bes, ). (Entered: 02/16/2023) |
| 02/16/2023 | 142 | Resposne to 135 Objections to Exhibit List by Davita M. Key.. (Attachments: # 1 Exhibit Px 2 Hair Photos, # 2 Exhibit Px 10 Email, # 3 Exhibit Px 11 Email, # 4 |

| | | |
|---|---|---|
| | | Exhibit Px 13 Statement to Unemployment, # <u>5</u> Exhibit Px 14 Unemployment, # <u>6</u> Exhibit Px 15 Email, # <u>7</u> Exhibit Px 17 Complaint, # <u>8</u> Exhibit Px 18 Removal Memo, # <u>9</u> Exhibit Px 20 Email, # <u>10</u> Exhibit Px 21 Email, # <u>11</u> Exhibit Px 22 Statement, # <u>12</u> Exhibit Px 24 Howell Statement, # <u>13</u> Exhibit Px 25 Email, # <u>14</u> Exhibit Px 26 Email, # <u>15</u> Exhibit Px 27 Email, # <u>16</u> Exhibit Px 28 Email, # <u>17</u> Exhibit Px 29 Email, # <u>18</u> Exhibit Px 30 Email, # <u>19</u> Exhibit Px 32 Email, # <u>20</u> Exhibit Px 33 Email, # <u>21</u> Exhibit Px 34 Email, # <u>22</u> Exhibit Px 35 Email, # <u>23</u> Exhibit Px 36 Email, # <u>24</u> Exhibit Px 37 Email, # <u>25</u> Exhibit May Use Px 14 Charge Questionnaire, # <u>26</u> Exhibit May use Px 15 EEOC Charge, # <u>27</u> Exhibit May use Px 19 Position Statement, # <u>28</u> Exhibit May use Px 27 Security Detail Reports, # <u>29</u> Exhibit May use Px 41 Harassment Policy, # <u>30</u> Exhibit May use Px 43 Email, # <u>31</u> Exhibit May use Px 44 Email, # <u>32</u> Exhibit May use Px 45 Email)(Palmer, Leslie) Modified on 2/17/2023 to clarify the docket text (bes, ). (Entered: 02/16/2023) |
| 02/16/2023 | <u>143</u> | Response to <u>134</u> Objections to Witness List by Davita M. Key. (Palmer, Leslie) Modified on 2/17/2023 to clarify the docket text (bes, ). (Entered: 02/16/2023) |
| 02/16/2023 | <u>144</u> | Response to <u>130</u> Objections to Deposition Designations by Davita M. Key.. (Palmer, Leslie) Modified on 2/17/2023 to clarify the docket text (bes, ). (Entered: 02/16/2023) |
| 02/20/2023 | <u>145</u> | MOTION for Reconsideration re <u>138</u> Memorandum Opinion and Order by Dynamic Security, Inc.. (Redmond, Wesley) Modified on 2/21/2023 to clarify the docket text (bes, ). (Entered: 02/20/2023) |
| 02/21/2023 | <u>146</u> | MOTION for Extension of Time to File *Defendant Dynamic Security, Inc.'s Motion for Enlargement of Time to File Jury Instructions, Voir Dire Questions, and Motions In Limine* by Dynamic Security, Inc.. (Bullock, Susan) (Entered: 02/21/2023) |
| 02/21/2023 | <u>147</u> | **ORDER: it is ORDERED that: 1) The Dft's <u>89</u> Motion to Strike Plf's Jury Demand is DENIED; 2) The Dft's <u>145</u> Motion to Reconsider is DENIED; 3) The Dft's <u>146</u> Motion for Enlargement of Time to File Jury Instructions, Voire Dire Questions, and Motions in Limine is GRANTED, and the parties shall submit these filings on or before 2/28/2023; Objections to motions in limine, fully briefed, must be filed on or before 3/7/2023; 4) The parties are DIRECTED to jointly prepare a proposed pretrial order, and the Plf shall ensure that the original of the proposed pretrial order is received by the Court on or before 2/23/2023, by transmitting an electronic copy of the proposed pretrial order to the Court as an attachment to an email message sent to propord_marks@almd.uscourts.gov. Signed by Chief Judge Emily C. Marks on 2/21/2023. (bes, )** (Entered: 02/21/2023) |
| 02/21/2023 | <u>148</u> | Minute Entry for proceedings held before Chief Judge Emily C. Marks: Oral Argument held on 2/21/2023, Final Pretrial Conference held on 2/21/2023 (PDF available for court use only). (Court Reporter Blanton Callen.) (cs, ) (Entered: 02/22/2023) |
| 02/24/2023 | <u>149</u> | Proposed Jury Instructions by Davita M. Key. (Leonard, Heather) (Entered: 02/24/2023) |
| 02/24/2023 | <u>150</u> | First MOTION in Limine *To Exclude Reference to Ray Cureton Profession as Minister* by Davita M. Key. (Palmer, Leslie) (Entered: 02/24/2023) |
| 02/24/2023 | <u>151</u> | Second MOTION in Limine *To Preclude Mention of Dismissed Claims or Parties* by Davita M. Key. (Palmer, Leslie) (Entered: 02/24/2023) |

| 02/24/2023 | 152 | Third MOTION in Limine *To Exclude Reference to the EEOC Determination* by Davita M. Key. (Palmer, Leslie) (Entered: 02/24/2023) |
|---|---|---|
| 02/24/2023 | 153 | Fourth MOTION in Limine *To Exclude Reference to Unemployment Determination* by Davita M. Key. (Palmer, Leslie) (Entered: 02/24/2023) |
| 02/24/2023 | 154 | Proposed Voir Dire by Davita M. Key. (Palmer, Leslie) (Entered: 02/24/2023) |
| 02/28/2023 | 155 | Proposed Voir Dire by Dynamic Security, Inc.. (Redmond, Wesley) (Entered: 02/28/2023) |
| 02/28/2023 | 156 | First MOTION in Limine *Defendant Dynamic Security, Inc.'s First Motion In Limine to Exclude Plaintiff's Testimony About Gloria Robinson's Alleged Comments About the Content of Memos Sent by "The Koreans"* by Dynamic Security, Inc.. (Redmond, Wesley) (Entered: 02/28/2023) |
| 02/28/2023 | 157 | Second MOTION in Limine *Defendant Dynamic Security, Inc.'s Second Motion in Limine to Exclude Its Statement of Position Submitted to the EEOC* by Dynamic Security, Inc.. (Redmond, Wesley) (Entered: 02/28/2023) |
| 02/28/2023 | 158 | Third MOTION in Limine *Defendant Dynamic Security, Inc.'s Third Motion In Limine to Exclude Evidence of Dismissed Claims* by Dynamic Security, Inc.. (Redmond, Wesley) (Entered: 02/28/2023) |
| 02/28/2023 | 159 | Fourth MOTION in Limine *Defendant Dynamic Security, Inc.'s Fourth Motion In Limine to Exclude Questions Asked by Ray Cureton Related to Assignment for the Plaintiff* by Dynamic Security, Inc.. (Redmond, Wesley) (Entered: 02/28/2023) |
| 02/28/2023 | 160 | Fifth MOTION in Limine *Defendant's Fifth Motion In Limine to Exclude Any Reference to Plaintiff Filing an EEOC Charge Against Defendant Dynamic Security, Inc.* by Dynamic Security, Inc.. (Redmond, Wesley) (Entered: 02/28/2023) |
| 02/28/2023 | 161 | Proposed Jury Instructions by Dynamic Security, Inc.. (Bullock, Susan) (Entered: 02/28/2023) |
| 03/01/2023 | 162 | Objection to re 155 Proposed Voir Dire filed by Davita M. Key. (Leonard, Heather) (Entered: 03/01/2023) |
| 03/03/2023 | 163 | MOTION for Certificate of Appealability *to Certify the portion of the Court's 2/21/2023* 147 *Order for Interlocutory Appeal and to Continue Trial Setting* by Dynamic Security, Inc. (Bullock, Susan) Modified on 3/6/2023 to create link and include additional text. (dmn, ) (Entered: 03/03/2023) |
| 03/07/2023 | 164 | RESPONSE in Opposition re 157 Second MOTION in Limine *Defendant Dynamic Security, Inc.'s Second Motion in Limine to Exclude Its Statement of Position Submitted to the EEOC* filed by Davita M. Key. (Attachments: # 1 Exhibit A – Dynamic Security's EEOC Position Statement (HEA 0053–56))(Leonard, Heather) (Entered: 03/07/2023) |
| 03/07/2023 | 165 | (Objections) RESPONSE in Opposition re 150 First MOTION in Limine *To Exclude Reference to Ray Cureton Profession as Minister Defendant Dynamic Security, Inc.'s Objections to Plaintiff's First Motion in Limine to Exclude Related to Ray Cureton's Profession as a Minister* filed by Dynamic Security, Inc.. (Redmond, Wesley) Modified on 3/8/2023 to clarify the docket text (amf, ). (Entered: 03/07/2023) |
| 03/07/2023 | 166 | (Objections) RESPONSE in Opposition re 151 Second MOTION in Limine *To Preclude Mention of Dismissed Claims or Parties Defendant Dynamic Security, Inc.'s* |

| | | |
|---|---|---|
| | | *Objections to Plaintiff's Second Motion in Limine to Exclude Reference to And/Or Evidence of the Court's Dismissal of Any of the Plaintiff's Claims* filed by Dynamic Security, Inc.. (Redmond, Wesley) Modified on 3/8/2023 to clarify the docket text (amf, ). (Entered: 03/07/2023) |
| 03/07/2023 | <u>167</u> | (Objections) RESPONSE in Opposition re <u>152</u> Third MOTION in Limine *To Exclude Reference to the EEOC Determination Defendant Dynamic Security, Inc.'s Objections to Plaintiff's Third Motion In Limine to Exclude Reference to And/Or Evidence of the EEOC's Determination* filed by Dynamic Security, Inc.. (Redmond, Wesley) Modified on 3/8/2023 to clarify the docket text (amf, ). (Entered: 03/07/2023) |
| 03/07/2023 | <u>168</u> | (Objections) RESPONSE in Opposition re <u>153</u> Fourth MOTION in Limine *To Exclude Reference to Unemployment Determination Defendant Dynamic Security, Inc.'s Objections to Plaintiff's Fourth Motion In Limine to Exclude Reference to And/Or Evidence of the Findings of the Alabama Department of Labor* filed by Dynamic Security, Inc.. (Redmond, Wesley) Modified on 3/8/2023 to clarify the docket text (amf, ). (Entered: 03/07/2023) |
| 03/07/2023 | <u>169</u> | RESPONSE in Opposition re <u>156</u> First MOTION in Limine *Defendant Dynamic Security, Inc.'s First Motion In Limine to Exclude Plaintiff's Testimony About Gloria Robinson's Alleged Comments About the Content of Memos Sent by "The Koreans"* filed by Davita M. Key. (Palmer, Leslie) (Entered: 03/07/2023) |
| 03/07/2023 | <u>170</u> | RESPONSE in Opposition re <u>158</u> Third MOTION in Limine *Defendant Dynamic Security, Inc.'s Third Motion In Limine to Exclude Evidence of Dismissed Claims* filed by Davita M. Key. (Palmer, Leslie) (Entered: 03/07/2023) |
| 03/07/2023 | <u>171</u> | RESPONSE in Opposition re <u>159</u> Fourth MOTION in Limine *Defendant Dynamic Security, Inc.'s Fourth Motion In Limine to Exclude Questions Asked by Ray Cureton Related to Assignment for the Plaintiff* filed by Davita M. Key. (Palmer, Leslie) (Entered: 03/07/2023) |
| 03/07/2023 | <u>172</u> | RESPONSE in Opposition re <u>160</u> Fifth MOTION in Limine *Defendant's Fifth Motion In Limine to Exclude Any Reference to Plaintiff Filing an EEOC Charge Against Defendant Dynamic Security, Inc.* filed by Davita M. Key. (Palmer, Leslie) (Entered: 03/07/2023) |
| 03/07/2023 | <u>173</u> | (Objections) BRIEF/MEMORANDUM in Opposition re <u>161</u> Proposed Jury Instructions filed by Davita M. Key. (Palmer, Leslie) Modified on 3/8/2023 to clarify the docket text (amf, ). (Entered: 03/07/2023) |
| 03/07/2023 | | Objections to <u>150</u> First MOTION in Limine *To Exclude Reference to Ray Cureton Profession as Minister* filed by Dynamic Security, Inc.. (No PDF attached to this entry – See doc <u>165</u> for PDF) (amf, ) (Entered: 03/08/2023) |
| 03/07/2023 | | Objections to <u>151</u> Second MOTION in Limine *To Preclude Mention of Dismissed Claims or Parties* filed by Dynamic Security, Inc.. (No PDF attached to this entry – See doc <u>166</u> for PDF) (amf, ) (Entered: 03/08/2023) |
| 03/07/2023 | | Objections to <u>152</u> Third MOTION in Limine *To Exclude Reference to the EEOC Determination* filed by Dynamic Security, Inc.. (No PDF attached to this entry – See doc <u>167</u> for PDF) (amf, ) (Entered: 03/08/2023) |
| 03/07/2023 | | Objections to <u>153</u> Fourth MOTION in Limine *To Exclude Reference to Unemployment Determination* filed by Dynamic Security, Inc.. (No PDF attached to |

| | | |
|---|---|---|
| | | this entry – See doc <u>168</u> for PDF) (amf, ) (Entered: 03/08/2023) |
| 03/07/2023 | | Objections to <u>161</u> Proposed Jury Instructions filed by Davita M. Key. (No PDF attached to this entry – See doc <u>173</u> for PDF) (amf, ) (Entered: 03/08/2023) |
| 03/08/2023 | <u>174</u> | **MEMORANDUM OPINION AND ORDER: This matter is before the Court on Defendant Dynamic Security, Inc.'s motion to certify for interlocutory appeal and continue trial setting. (Doc. <u>163</u> ). Dynamic's request failed on all three elements of a 1292(b) justification for certifying an interlocutory appeal. Furthermore, immediate appeal here would not "materially advance the ultimate termination of the litigation." For good cause, it is ORDERED that Dynamic's motion (doc. <u>163</u> ) is DENIED as further set out in the opinion and order. Signed by Chief Judge Emily C. Marks on 3/8/2023. (dmn, )** (Entered: 03/08/2023) |
| 03/16/2023 | <u>175</u> | NOTICE OF JURY LIST AND JURORS' PROFILES for Jury Selection and Trial commencing on 3/27/2023 (Attachments: # <u>1</u> Juror Certification)(cs, ) (Entered: 03/16/2023) |
| 03/17/2023 | <u>176</u> | BILL OF COSTS by Hyundai Motor Manufacturing Alabama, LLC. (Attachments: # <u>1</u> Exhibit Costs)(Brown, Whitney) (Entered: 03/17/2023) |
| 03/17/2023 | <u>177</u> | BILL OF COSTS by Hyundai Engineering America, Inc., Hyundai Motor Manufacturing Alabama, LLC. (Attachments: # <u>1</u> Exhibit A)(Miller, Thomas) (Entered: 03/17/2023) |
| 03/24/2023 | <u>178</u> | **ORDER ON PRETRIAL HEARING: The jury selection and trial of this case, which is set to last 2 days, is set for 3/27/2023, at 10:00 AM in the United States District Court in Courtroom 2A of the US District Court in Montgomery, AL; Trial counsel and parties are to be present in the Courtroom no later than 8:30 AM on the morning of trial, as further set out in order. Signed by Chief Judge Emily C. Marks on 3/24/2023. (furn: Calendar, cs) (bes, )** (Entered: 03/24/2023) |
| 03/26/2023 | <u>179</u> | Proposed Jury Verdict Form by Davita M. Key. (Palmer, Leslie) (Entered: 03/26/2023) |
| 03/26/2023 | <u>180</u> | Deposition Designations *of Gloria Robinson* by Davita M. Key.. (Attachments: # <u>1</u> Exhibit A – Excerpts from Deposition of Gloria Robinson)(Leonard, Heather) (Entered: 03/26/2023) |
| 03/26/2023 | <u>181</u> | Proposed Jury Verdict Form by Dynamic Security, Inc.. (Bullock, Susan) (Entered: 03/26/2023) |
| 03/27/2023 | | **ORAL ORDER granting in part and denying in part <u>150</u> First Motion in Limine To Exclude Reference to Ray Cureton Profession as Minister by Davita M. Key, as further stated on the record. Entered by Chief Judge Emily C. Marks on 3/27/2023. (cs, )** (Entered: 03/28/2023) |
| 03/27/2023 | | **ORAL ORDER granting <u>151</u> Second MOTION in Limine To Preclude Mention of Dismissed Claims or Parties by Davita M. Key. Entered by Chief Judge Emily C. Marks on 3/27/2023. (cs, )** (Entered: 03/28/2023) |
| 03/27/2023 | | **ORAL ORDER denying as moot <u>152</u> Third MOTION in Limine To Exclude Reference to the EEOC Determination by Davita M. Key.Entered by Chief Judge Emily C. Marks on 3/27/2023. (cs, )** (Entered: 03/28/2023) |

| 03/27/2023 | | **ORAL ORDER granting 153 Fourth MOTION in Limine To Exclude Reference to Unemployment Determination by Davita M. Key.Entered by Chief Judge Emily C. Marks on 3/27/2023. (cs, )** (Entered: 03/28/2023) |
|---|---|---|
| 03/27/2023 | | **ORAL ORDER denying 156 First MOTION in Limine Defendant Dynamic Security, Inc.'s First Motion In Limine to Exclude Plaintiff's Testimony About Gloria Robinson's Alleged Comments About the Content of Memos Sent by "The Koreans" by Dynamic Security, Inc.Entered by Chief Judge Emily C. Marks on 3/27/2023. (cs, )** (Entered: 03/28/2023) |
| 03/27/2023 | | **ORAL ORDER denying as moot 157 Second MOTION in Limine Defendant Dynamic Security, Inc.'s Second Motion in Limine to Exclude Its Statement of Position Submitted to the EEOC by Dynamic Security, Inc.Entered by Chief Judge Emily C. Marks on 3/27/2023. (cs, )** (Entered: 03/28/2023) |
| 03/27/2023 | | **ORAL ORDER granting in part and denying in part 158 Third MOTION in Limine Defendant Dynamic Security, Inc.'s Third Motion In Limine to Exclude Evidence of Dismissed Claims by Dynamic Security, Inc, as further stated on the record. Entered by Chief Judge Emily C. Marks on 3/27/2023. (cs, )** (Entered: 03/28/2023) |
| 03/27/2023 | | **ORAL ORDER denying 159 Fourth MOTION in Limine Defendant Dynamic Security, Inc.'s Fourth Motion In Limine to Exclude Questions Asked by Ray Cureton Related to Assignment for the Plaintiff by Dynamic Security, Inc.. Entered by Chief Judge Emily C. Marks on 3/27/2023. (cs, )** (Entered: 03/28/2023) |
| 03/27/2023 | | **ORAL ORDER granting in part and denying in part 160 Fifth MOTION in Limine Defendant's Fifth Motion In Limine to Exclude Any Reference to Plaintiff Filing an EEOC Charge Against Defendant Dynamic Security, Inc. by Dynamic Security, Inc., as further stated on the record. Entered by Chief Judge Emily C. Marks on 3/27/2023. (cs, )** (Entered: 03/28/2023) |
| 03/27/2023 | | Minute Entry for proceedings held before Chief Judge Emily C. Marks: Voir Dire, Jury Selection and Trial Began on 3/27/2023 (NO PDF ATTACHED, SEE FINAL MINUTE ENTRY). (Court Reporter Patricia Starkie.) (cs, ) (Entered: 03/28/2023) |
| 03/28/2023 | 182 | MOTION for Judgment as a Matter of Law *Defendant Dynamic Security Inc.'s Motion for Judgment as a Matter of Law* by Dynamic Security, Inc.. (Redmond, Wesley) (Entered: 03/28/2023) |
| 03/28/2023 | | **ORAL ORDER Denying 182 Motion for Judgment as a Matter of Law. Entered by Chief Judge Emily C. Marks on 3/28/2023. (cs, )** (Entered: 03/28/2023) |
| 03/28/2023 | | Minute Entry for proceedings held before Chief Judge Emily C. Marks: Jury Trial continued on 3/28/2023 (NO PDF ATTACHED, SEE FINAL MINUTE ENTRY). (Court Reporter Patricia Starkie.) (cs, ) (Entered: 03/28/2023) |
| 03/29/2023 | 183 | MOTION for Judgment as a Matter of Law *Defendant Dynamic Security, Inc.'s Renewed Motion for Judgment as a Matter of Law* by Dynamic Security, Inc.. (Redmond, Wesley) (Entered: 03/29/2023) |
| 03/29/2023 | | **ORAL ORDER Denying 183 Motion for Judgment as a Matter of Law. Entered by Chief Judge Emily C. Marks on 3/29/2023. (cs, )** (Entered: 03/29/2023) |
| 03/29/2023 | | |

| | | ORAL MOTION to Strike Defendant's Affirmative Defense on Failure to Mitigate by Davita M. Key. (cs, ) (Entered: 03/29/2023) |
|---|---|---|
| 03/29/2023 | | **ORAL ORDER denying Oral Motion to Strike Defendant's Affirmative Defense on Failure to Mitigate. Entered by Chief Judge Emily C. Marks on 3/29/2023. (cs, )** (Entered: 03/29/2023) |
| 03/29/2023 | 184 | Closing Instructions to the Jury. (cs, ) (Entered: 03/30/2023) |
| 03/29/2023 | 185 | JURY VERDICT. (cs, ) (Entered: 03/30/2023) |
| 03/29/2023 | 187 | Minute Entry for proceedings held before Chief Judge Emily C. Marks: Jury Trial completed on 3/29/2023 (PDF available for court use only). (Court Reporter Patricia Starkie.) (Attachments: # 1 Witness List, # 2 Court's Exhibit List, # 3 CX−1 (Conventionally filed), # 4 CX−2 (Conventionally filed), # 5 Plaintiff's Exhibit List, # 6 Plaintiff's Exhibits (Conventionally filed), # 7 Defendant's Exhibit List, # 8 Defendant's Exhibits (Conventionally filed)) (cs, ) (Entered: 03/30/2023) |
| 03/30/2023 | 186 | **ORDER AND JUDGMENT: After this case had been presented to a jury, a verdict was returned, as further set out in order; It is, therefore, the ORDER, JUDGMENT, and DECREE of the Court, based on the jury verdict, that judgment is entered in favor of the Plf Davita M. Key and against the Dft Dynamic Security, Inc. as follows: 1. Compensatory damages in the amount of $300,064.00; 2. Punitive damages in the amount of $511,200.00; 3. Costs are taxed against the Defendant for which execution may issueThe Clerk of the Court is DIRECTED to enter this as a Final Judgment pursuant to Federal Rule of Civil Procedure 58. Signed by Chief Judge Emily C. Marks on 3/30/2023. (bes, )** (Entered: 03/30/2023) |
| 03/30/2023 | 188 | JUROR QUESTIONNAIRE CERTIFICATION received 3/27/2023 from Heather Newsom Leonard on behalf of Davita M. Key. (cs, ) (Entered: 03/30/2023) |
| 03/30/2023 | 189 | JUROR QUESTIONNAIRE CERTIFICATION received 3/27/2023 by Leslie Ann Palmer on behalf of Davita M. Key. (cs, ) (Entered: 03/30/2023) |
| 03/30/2023 | 190 | JUROR QUESTIONNAIRE CERTIFICATION received 3/27/2023 by Susan Ware Bullock on behalf of Dynamic Security, Inc.. (cs, ) (Entered: 03/30/2023) |
| 04/13/2023 | 191 | Costs Taxed in amount of $ 4,636.10 against Davita M. Key. (bes, ) (Entered: 04/13/2023) |
| 04/13/2023 | 192 | Costs Taxed in amount of $ 3,943.50 against Davita M. Key (bes, ) (Entered: 04/13/2023) |
| 04/25/2023 | 193 | MOTION for Equitable Relief of Reinstatement of Interest by Davita M. Key. (Attachments: # 1 Exhibit A – Damages Calculation with Interest)(Palmer, Leslie) (Entered: 04/25/2023) |
| 04/26/2023 | 194 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Jury Trial VOLUME I (PDF ACCESS RESTRICTED FOR 90 DAYS) held on 03/27/2023, before Judge Emily C. Marks. Court Reporter/Transcriber Patricia G. Starkie, Telephone number (334) 322–8053. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. NOTICE OF INTENT TO REQUEST REDACTION DUE WITHIN 7 BUSINESS DAYS. Redaction Request due 5/17/2023. Redacted Transcript Deadline set for 5/30/2023. |

| | | |
|---|---|---|
| | | Release of Transcript Restriction set for 7/25/2023. (bes, ) (Entered: 04/26/2023) |
| 04/26/2023 | 195 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Jury Trial VOLUME II (PDF ACCESS RESTRICTED FOR 90 DAYS) held on 3/28/2023, before Judge Emily C. Marks. Court Reporter/Transcriber Patricia G. Starkie, Telephone number (334) 322–8053. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. NOTICE OF INTENT TO REQUEST REDACTION DUE WITHIN 7 BUSINESS DAYS. Redaction Request due 5/17/2023. Redacted Transcript Deadline set for 5/30/2023. Release of Transcript Restriction set for 7/25/2023. (bes, ) (Entered: 04/26/2023) |
| 04/26/2023 | 196 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Jury Trial VOLUME III (PDF ACCESS RESTRICTED FOR 90 DAYS) held on 3/29/2023, before Judge Emily C. Marks. Court Reporter/Transcriber Patricia G. Starkie, Telephone number (334) 322–8053. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. NOTICE OF INTENT TO REQUEST REDACTION DUE WITHIN 7 BUSINESS DAYS. Redaction Request due 5/17/2023. Redacted Transcript Deadline set for 5/30/2023. Release of Transcript Restriction set for 7/25/2023. (bes, ) (Entered: 04/26/2023) |
| 04/26/2023 | 197 | MOTION for Renewed Judgment as a Matter of Law *as to Liability and Punitive Damages; MOTION To Vacate, Alter or Amend the Judgment; or, Alternatively, MOTION for a New Trial or Remittitur of Emotional Distress and Punitive Damages* by Dynamic Security, Inc.. (Redmond, Wesley). Added MOTION for New Trial, MOTION to Alter Judgment on 3/11/2024 (AM). (Entered: 04/26/2023) |
| 04/27/2023 | 198 | **ORDER: it is ORDERED that the Dft shall file a response to the Plf's 193 motion for equitable relief of reinstatement and interest on or before 5/11/2023; It is further ORDERED that the Plf shall file a reply to the Dft's response on or before 5/18/2023. Signed by Chief Judge Emily C. Marks on 4/27/2023. (bes, )** (Entered: 04/27/2023) |
| 04/27/2023 | 199 | **ORDER: it is ORDERED that the Plf shall file a response to the Dft's 197 motion for renewed judgment on or before 5/11/2023; It is further ORDERED that the Dft shall file a reply to the Plf's response on or before 5/18/2023. Signed by Chief Judge Emily C. Marks on 4/27/2023. (bes, )** (Entered: 04/27/2023) |
| 05/03/2023 | 200 | MOTION for Extension of Deadline Time to File Petition for Attorneys' Fees and Bill of Cost *Unopposed* by Davita M. Key. (Palmer, Leslie) (Entered: 05/03/2023) |
| 05/08/2023 | 201 | **TEXT ORDER granting 200 Motion to Extend Deadline to Submit Petition for Attorneys' Fees and Cost Bill. Signed by Chief Judge Emily C. Marks on 5/8/2023. (No PDF attached to this entry) (bes, )** Modified on 5/8/2023 to correct a typographical error contained with the original text order (bes, ). (Entered: 05/08/2023) |
| 05/10/2023 | 202 | Joint MOTION for Extension of Time to File Response/Reply as to 199 Order, 198 Order, *Responding to Post Judgment Motions* by Davita M. Key. (Palmer, Leslie) (Entered: 05/10/2023) |
| 05/10/2023 | 203 | **ORDER: it is ORDERED that the 202 joint motion to extend deadlines is GRANTED to the extent that all pending deadlines related to post judgment response briefing are CONTINUED GENERALLY; It is further ORDERED** |

| | | |
|---|---|---|
| | | **that the parties shall jointly report the status of mediation no later than noon on 6/12/2023; Thereafter, should it be necessary, the Court will reschedule the post judgment briefing deadlines. Signed by Chief Judge Emily C. Marks on 5/10/2023. (bes, )** (Entered: 05/10/2023) |
| 06/12/2023 | 204 | Joint REPORT *on Status of Mediation* by Dynamic Security, Inc., Davita M. Key. (Redmond, Wesley) Modified on 6/12/2023 to add as also filed on behalf of the Plaintiff (amf, ). (Entered: 06/12/2023) |
| 06/13/2023 | 205 | **ORDER: it is ORDERED as to the following: 1) On the Plf's 193 motion for equitable relief: a.) The Dft shall file a response to the Plf's motion on or before 6/27/2023; b.) The Plf shall file a reply to the Dft's response on or before 7/5/2023; 2) On the Dft's 197 motion for judgment as a matter of law: a.) The Plf shall file a response to the Dft's motion on or before 6/27/2023; b.) The Dft shall file a reply to the Plf's response on or before 7/5/2023. Signed by Chief Judge Emily C. Marks on 6/13/2023. (bes, )** (Entered: 06/13/2023) |
| 06/27/2023 | 206 | RESPONSE in Opposition re 197 MOTION for Judgment as a Matter of Law *Defendant Dynamic Security, Inc.'s Motion for Renewed Judgment as a Matter of Law as to Liability and Punitive Damages; To Vacate, Alter or Amend the Judgment; or, Alternatively, for a New Trial or Remitt filed by Davita M. Key. (Palmer, Leslie) (Entered: 06/27/2023)* |
| 06/27/2023 | 207 | RESPONSE in Opposition re 193 MOTION for Equitable Relief of Reinstatement of Interest filed by Dynamic Security, Inc.. (Bullock, Susan) (Entered: 06/27/2023) |
| 06/29/2023 | 208 | MOTION for Extension of Time to File Response/Reply as to 206 Response in Opposition to Motion, 207 Response in Opposition to Motion *Dynamic Security Inc.'s Motion for Three−Day Enlargement of Time to File Its Reply as to Its Motion for Renewed Judgment as A Matter of Law and Motion for Three−Day Enlargement of Time for Plaintiff to File her Reply as to Her Motion for Equitable Relief* by Dynamic Security, Inc.. (Bullock, Susan) (Entered: 06/29/2023) |
| 06/30/2023 | 209 | **TEXT ORDER granting 208 Motion for Extension of Time. Signed by Chief Judge Emily C. Marks on 6/30/2023. (No PDF attached to this entry) (bes, )** (Entered: 06/30/2023) |
| 07/10/2023 | 210 | REPLY to Response to Motion re 193 MOTION for Equitable Relief of Reinstatement of Interest filed by Davita M. Key. (Palmer, Leslie) (Entered: 07/10/2023) |
| 07/10/2023 | 211 | REPLY BRIEF re 206 Response in Opposition to Motion, 197 MOTION for Judgment as a Matter of Law *Defendant Dynamic Security, Inc.'s Motion for Renewed Judgment as a Matter of Law as to Liability and Punitive Damages; To Vacate, Alter or Amend the Judgment; or, Alternatively, for a New Trial or Remitt Defendant Dynamic Security, Inc.'s Reply to Plaintiff's Response to Its Motion for Renewed Judgment as a Matter of Law as to the Liability and Punitive Damages; To Vacate, Alter, Or Amend the Judgment; or, Alternatively, For A New Trial or Remittitur of Emotional Distress and Punitive Damages filed by Dynamic Security, Inc.. (Bullock, Susan) (Entered: 07/10/2023)* |
| 03/11/2024 | 212 | **MEMORANDUM OPINION AND ORDER: it is ORDERED that Dynamic's 197 motion is DENIED, as further set out in Order. Signed by Chief Judge Emily C. Marks on 3/11/2024. (AM)** (Entered: 03/11/2024) |

| 03/14/2024 | 213 | **MEMORANDUM OPINION AND ORDER: it is ORDERED that Key's 193 motion is GRANTED, in part, as to prejudgment interest and DENIED, in part, as to reinstatement; It is further ORDERED that prejudgment interest on Key's back pay award shall be paid in accordance with the chart appended to this order. Signed by Chief Judge Emily C. Marks on 3/14/2024. (AM)** (Entered: 03/14/2024) |
|---|---|---|
| 03/28/2024 | 214 | BILL OF COSTS by Davita M. Key. (Leonard, Heather) (Entered: 03/28/2024) |
| 03/28/2024 | 215 | MOTION for Attorney Fees by Davita M. Key. (Attachments: # 1 Exhibit 1 – Declaration of Davita Key, # 2 Exhibit 2 – Declaration of Leslie Palmer, # 3 Exhibit 3 – Declaration of Heather Leonard, # 4 Exhibit 4 – Declaration of Candis McGowan, # 5 Exhibit 5 – Declaration of Alicia Haynes, # 6 Exhibit 6 – Declaration of Jim Roberts, # 7 Exhibit 7 – Declaration of Sonya Edwardes, # 8 Exhibit 8 – Declaration of Cynthia Wilkinson) (Leonard, Heather) (Attachment 3 replaced on 3/29/2024 due to pages sideways/upside down) (DMN). Modified on 3/29/2024. (DMN) (Additional attachment(s) added on 3/29/2024: # 9 Corrected Certificate of Service) (DMN). (Entered: 03/28/2024) |
| 03/29/2024 | 216 | **(VACATED PURSUANT TO THE 219 ORDER) ORDER: Now pending before the Court is Plaintiff Davita M. Key's motion for attorney fees and expenses, filed on 3/28/2024. (Doc. 215 ). Upon consideration of the motion, and for good cause, it is ORDERED that the Defendant shall file a response to the Plaintiff's motion on or before 4/12/2024. It is further ORDERED that the Plaintiff shall file a reply to the Defendant's response on or before 4/19/2024. Signed by Chief Judge Emily C. Marks on 3/29/2024. (DMN)** Modified on 4/8/2024 (AM). (Entered: 03/29/2024) |
| 04/05/2024 | 217 | NOTICE OF APPEAL by Dynamic Security, Inc. as to 213 Memorandum Opinion and Order entered 3/14/2024, 212 Memorandum Opinion and Order entered 3/11/2024, 186 Order and Judgment entered 3/30/2023, 147 Order entered 2/21/2023, Oral Orders entered on 3/28/2023 and 3/29/2023, Oral Order entered 3/28/2023, Oral Order entered on 3/28/2023, denial of Defendant's Jury Verdict Form (Doc. 181 ) as reflected in Jury Verdict Form submitted to jury on 3/30/2023 (Doc. 185 ), Closing Jury Instructions to jury as entered by the Court on 3/30/2023 (Doc. 184 ), and 213 Memorandum Opinion and Order entered 3/14/2024. ( Filing fee $ 605 receipt number AALMDC–3617496.) (Redmond, Wesley) Modified on 4/8/2024 to clarify text and create links. (DMN) (Entered: 04/05/2024) |
| 04/08/2024 | 218 | Appeal Instructions sent to Wesley C. Redmond and Susan W. Bullock, counsel for Appellant Dynamic Security, Inc. re 217 Notice of Appeal. A copy of the Transcript Information Form must be mailed to each court reporter from whom you are requesting a transcript. (Attachments: # 1 Transcript Order Form)(DMN) (Entered: 04/08/2024) |
| 04/08/2024 | 219 | **ORDER: it is ORDERED that the Plaintiff's 215 motion is DENIED without prejudice with leave to refile, if appropriate, after the Eleventh Circuit has issued its final mandate in the Defendant's appeal; It is further ORDERED that the Court's briefing order on the Plaintiff's 216 motion is VACATED. Signed by Chief Judge Emily C. Marks on 4/8/2024. (AM)** (Entered: 04/08/2024) |
| 04/08/2024 | 220 | Transmission of 217 Notice of Appeal, 213 Memorandum Opinion and Order, 212 Memorandum Opinion and Order, 186 Order and Judgment, 147 Order, and Docket Sheet to US Court of Appeals. (Attachments: # 1 Docket Sheet and Appeal |

| | | |
|---|---|---|
| | | Record)(DMN) (Main Document 220 replaced on 4/11/2024) (DMN). (Entered: 04/08/2024) |
| 04/10/2024 | 221 | NOTICE OF APPEAL by Davita M. Key as to 138 Memorandum Opinion and Order entered 2/10/2023; 38 Order entered 8/31/2021; and from all other interlocutory orders or rulings affecting her rights entered by the Court prior to the entry of the final judgment. Plaintiff also appeals the Taxation of Costs entered 4/13/2023 for Defendants HEA and HMMA (Docs. 191 , 192 ). ( Filing fee $ 605 receipt number BALMDC−3619801.) (Palmer, Leslie) Modified on 4/11/2024 to clarify text and create links. (DMN) (Entered: 04/10/2024) |
| 04/11/2024 | 222 | Appeal Instructions sent to Heather Leonard and Leslie A. Palmer counsel for Appellant Davita Key re 221 Notice of Appeal. A copy of the Transcript Information Form must be mailed to each court reporter from whom you are requesting a transcript. (Attachments: # 1 Transcript Order Form)(DMN) (Entered: 04/11/2024) |

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| DAVITA M. KEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:19-CV-767-ECM |
| | ) | |
| HYUNDAI MOTOR | ) | |
| MANUFACTURING, ALABAMA, | ) | |
| LLC; HYUNDAI ENG AMERICA, | ) | |
| INC.; and DYNAMIC SECURITY, | ) | |
| INC. | ) | |
| | ) | |
| Defendants. | ) | |

## **NOTICE OF APPEAL**

COMES NOW Davita Key, Plaintiff in the above-named case, by and through her undersigned counsel of record and hereby appeals to the United States Court of Appeals for the Eleventh Circuit from the Court's Order dated February 10, 2023, Granting Summary Judgment in full to Defendant HMMA and Defendant HEA and partially to Defendant Dynamic (Doc. 138); the Court's Order dated August 31, 2021 partially Granting Defendant HEA's Motion to Dismiss as to all Title VII claims (Doc. 38); and from all other interlocutory orders or rulings affecting her rights entered by the Court prior to the entry of the final judgment. Plaintiff also appeals the Taxation of Costs entered on April 13, 2023 for Defendants HEA and HMMA (Docs. 191, 192).

1

Judgment on the jury verdict was entered on March 30, 2023. (Doc. 186). Plaintiff filed a post judgment Motion for Equitable Relief of Reinstatement and Interest on April 25, 2023 (Doc. 193) which was disposed of by the court's Order dated March 14, 2024. (Doc. 213). Dynamic Security filed post judgment motions seeking to alter, amend or vacate the judgment, or in the alternative for a new trial under Rules 59 and 60 on April 26, 2023 (Doc. 197) which were disposed of by the court's Order dated March 11, 2024 (Doc. 212). Dynamic security filed a Notice of Appeal on April 5, 2024 (Doc. 217). Plaintiff's Notice of Appeal is filed within 14 days of the filing of Dynamic Security's Notice of Appeal. Fed. R. App. P. 4(a)(3) and within thirty (30) days of the Order disposing of the last of the timely-filed post-judgment motions. Fed. R. App. P. 4(a)(4)(A)

|  | Respectfully submitted, |
|  | Attorneys for Plaintiff |
|  | */s/ Heather Leonard* |
|  | Heather Newsom Leonard |
| OF COUNSEL: |  |
| Heather Leonard, P.C. |  |
| 2105 Devereaux Cir., Suite 111 |  |
| Birmingham, AL 35243 |  |
| Phone: (205) 977-5421 |  |
| heather@heatherleonardpc.com |  |
|  |  |
|  | */s/ Leslie A. Palmer.* |
|  | Leslie A. Palmer |
| OF COUNSEL: |  |
| Palmer Law, LLC |  |
| 104 23rd Street South, Suite 100 |  |
| Birmingham, AL 35233 |  |

| (205) 285-3050 | |
| leslie@palmerlegalservices.com | |

## Certificate of Service

I certify that I have filed the foregoing on the Court's CM/ECF filing system which will provide notice to all counsel of record on this 10th day of April, 2024.

Wesley C. Redmond
Susan W. Bullock
FordHarrison LLC
420 20th Street North, Suite 2560
Birmingham, AL 35203
wredmond@fordharrison.com
sbullock@fordharrison.com
Phone: (205) 244-5905
Counsel for Dynamic Security, Inc.

David J. Middlebrooks
Whitney R. Brown
Lehr Middlebrooks Vreeland & Thompson, P.C.
PO Box 11945
Birmingham, AL 35202
dmiddlebrooks@lehrmiddlebrooks.com
wbrown@lehrmiddlebrooks.com
Phone: (205) 326-3002
Counsel for Hyundai Motor Manufacturing Alabama, LLC

T. Matthew Miller
Cortlin Bond
Bradley, Arant, Boult Cummings, LLP
One Federal Place
1819 5th Avenue North
Birmingham, AL 35203
mmiller@bradley.com
cbond@bradley.com
Phone: (205) 521-8000
Counsel for Hyundai ENG America, Inc.

/s/ Leslie A. Palmer
OF COUNSEL

3

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

DAVITA M. KEY,                          )
                                        )
          Plaintiff,                    )
                                        )
     v.                                 )   CIVIL CASE NO. 2:19-cv-767-ECM
                                        )            (WO)
HYUNDAI MOTOR MANUFACTURING             )
ALABAMA, LLC, *et al.*,                 )
                                        )
          Defendants.                   )

## MEMORANDUM OPINION and ORDER

## I. INTRODUCTION

Now pending before the Court are motions for summary judgment filed by
Defendants Hyundai Motor Manufacturing Alabama, LLC ("HMMA") (doc. 66), Hyundai
Engineering America, Inc. ("HEA") (doc. 69), and Dynamic Security, Inc. ("Dynamic")
(doc. 73). Plaintiff Davita M. Key ("Key") brings five claims against all three Defendants:
pregnancy discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C.
§ 2000e-2 (Count I), race discrimination pursuant to Title VII and 42 U.S.C. § 1981
(Counts II and III), and race retaliation pursuant to Title VII and § 1981 (Counts IV and
V).[1] Her claims arise out of two days of employment at the Hyundai car manufacturing
plant in Montgomery, Alabama, spanning from July 31, 2017, until August 1, 2017. Based

---

[1] The Court previously dismissed Key's Title VII claims (Counts I, II, and IV) against HEA. *See Key v.
Hyundai Motor Mfg., Ala., LLC*, 2021 WL 3909663, at *5 (M.D. Ala. Aug. 31, 2021). Therefore, the only
claims against HEA to be discussed on summary judgment are her claims for race discrimination (Count
III) and race retaliation (Count V) brought pursuant to § 1981.

on a thorough review of the record, the briefs, and the applicable law, for the reasons to be discussed, HMMA's and HEA's motions for summary judgment are due to be GRANTED, and Dynamic's motion for summary judgment is due to be GRANTED in part and DENIED in part.

## II.  JURISDICTION

The Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343(a)(4).  The parties do not contest personal jurisdiction or venue, and the Court concludes that venue properly lies in the Middle District of Alabama. *See* 28 U.S.C. § 1391.

## III.  STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a).  A "genuine" dispute of fact exists "if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996).  An issue of fact is "material" if it could "affect the outcome of the case under the governing law." *Id.*  The movant bears the initial burden to identify evidence showing no genuine dispute of material fact remains, or that the non-moving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  If the movant satisfies this burden, then the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts,"

2

and they do so by citing to particular parts of the record or by showing the cited materials do not establish the presence or absence of a genuine dispute. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); FED. R. CIV. P. 56(c)(1).  If the non-movant fails to support their version of the facts or to properly address the movant's version of the facts as required by Rule 56(c), then the court may "consider the fact undisputed for purposes of the motion." FED. R. CIV. P. 56(e)(2).

At the summary judgment stage, the Court must view all evidence in the light most favorable to the non-movant and draw all justifiable inferences from the evidence in the non-movant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  However, "unsubstantiated assertions alone are not enough to withstand a motion for summary judgment." *Sprowl v. Mercedes-Benz U.S. Int'l, Inc.*, 815 F. App'x 473, 478 (11th Cir. 2020) (quoting *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987)).

## IV.  FACTS

**A.   Corporate Relationship Between HMMA, HEA, and Dynamic**

This case involves three distinct corporate entities.  HMMA is an automotive assembly plant that produces vehicles in Montgomery, Alabama, for Hyundai's North American automobile market—Hyundai is a company based out of South Korea.  HMMA employed HEA to provide it with various services—e.g., security, janitorial, landscaping, and general contracts.[2]  Though the two companies share "Hyundai" in their names, there

---

[2] HEA went by "AMCO America, Inc." at the time of Key's employment by Dynamic, and Key referred to HEA as "AMCO" in her EEOC intake questionnaire.

is no shared ownership affiliation between the two.  HEA turned to various subcontractors to fulfill the services it provided HMMA, one being Dynamic.  Dynamic equipped HEA with the manpower necessary to fulfill its security contract with HMMA.  While the three entities were distinct, HMMA could ask the HEA director of security at its plant to request Dynamic to remove a Dynamic employee from an assignment there, though no request was ever made relevant to this case.  HEA informed Dynamic employees that they had to abide by HMMA's company policies while at the plant.

## B.    Grooming Policies

HEA had an "Appearance Standard[] for Security Personnel" at the plant created by HEA's Manager of Security Services, Cassandra Williams ("Williams"), a black female.  The appearance standard stated that well-groomed braids were permitted for female uniformed officers but "[d]reads or dreadlocks hairstyle [were] prohibited." (Doc. 71-3 at 5).  Williams decided to prohibit dreadlocks altogether for HEA because she believed they did not appear professional and well-kempt.

In 2017, the time of the plaintiff's employment at the plant, HMMA had a "Dress Code Matrix" that did not discuss dreadlocks but required "hair longer than collar length" to be "tied back or tucked in [a] hat." (Id. at 8).  HMMA's dress code only applied to production areas, not administrative buildings like the mailroom, where the plaintiff was stationed.

Dynamic had a "Personal Appearance" standard in its employee handbook.  It stated that female officers "[s]hall maintain a neat hairstyle that keeps long hair away from the

4

face and the hair should not extend more than two inches below the top of the collar.  If hair extends more than two inches below the top of the collar, then it must be worn up when on duty." (Doc. 75-7 at 19).

HEA permitted two black female Dynamic security employees stationed at the HMMA plant to wear their hair in dreadlocks, albeit in a tight pulled-up bun style in compliance with HEA's and Dynamic's appearance standards.  There is no evidence that any white employees at HMMA, HEA, or Dynamic wore their hair in dreadlocks.

## C.    Key's Interview with Dynamic

Key responded to a job advertisement by Dynamic for a security position in the mailroom at the HMMA plant.  She interviewed for the position on July 19, 2017, in the plant's security building.   Gloria Robinson ("Robinson") and Maurice Chambliss ("Chambliss"), both black Dynamic employees, conducted the interview.  Chambliss was a District Manager for Dynamic.  Robinson was Dynamic's Account Manager at the HMMA plant.  During the interview, Robinson told Key, "Oh, your hair might be a problem." (Doc. 68-12 at 6).  Key wore her hair in shoulder length dreadlocks.

Key offered a photograph example on her phone of an "up-do" hairstyle, where the dreadlocks were pulled up tight in a bun.  Robinson left the room to speak with Williams, who was in her office nearby.  Robinson told Williams that an interviewee for the mailroom position wore dreadlocks, and asked Williams if Key could put her dreadlocks in an "up-do" style to meet HEA's appearance standard.  Williams entered the interview room and confirmed that Key's dreadlocks were not permitted by HEA but said that if Key could get

them styled in the "up-do" style, then she could maintain her dreadlocks. In Williams' view, the style in which Key wore her dreadlocks appeared "frayed" and not "neat." Key indicated she would contact her stylist to put her hair in the "up-do" style. Robinson offered Key the mailroom security position two days later.

**D.      Events on July 31, 2017**

When Key arrived at her first day of work at the HMMA plant on July 31, 2017, her dreadlocks remained shoulder-length, as they appeared at her interview. Key did not style her dreadlocks in the "up-do" style because Dynamic's Office Manager, Nicole Scavella ("Scavella"), a black female, told Key during Dynamic's orientation on July 21, 2017, that her dreadlocks did not violate Dynamic's personal appearance standard.

At the HMMA plant on July 31, 2017, Dynamic employee LaTonya Howell ("Howell") was assigned as Key's trainer and Chambliss was her direct supervisor. Key first went to HMMA's training center for a safety class, where she received an HMMA safety handbook—the only handbook she received from HMMA. An HMMA employee at the security building—the only HMMA employee Key met during her employment— gave Key a "Hyundai" badge with her name written on it. The only HEA employee with whom Key interacted was Williams. Williams set the schedule for when Dynamic personnel were to manage the mailroom according to the basic shift hours provided to her by HMMA. Based on this schedule, Dynamic informed Key when she was to report to the mailroom and paid her according to the number of hours reported.

6

After Key received her badge, she waited in the security building for Howell to pick her up to begin training. As she waited, Robinson and Chambliss greeted her. At that point Key told Robinson and Chambliss for the first time that she was pregnant by handing them a doctor's note that specified Key had no work restrictions. Robinson later informed Williams about the pregnancy. About ten to twenty minutes after Key gave the doctor's note to Robinson—who had since returned to the office she shared with Williams— Williams came out of the office, and asked Key, "What's wrong with your hair?" (Doc. 68-12 at 30). Williams then returned to her office without saying more. Eventually, Howell met Key, and they began their training.

About an hour into the training, Chambliss retrieved Key from the mailroom to meet with Robinson in her office. When Key arrived, Williams and Robinson began questioning Key about her hairstyle. Key explained that she did not change her dreadlock style because the Dynamic handbook only said it had to be neat and groomed, a standard she felt her hair met. Williams and Robinson responded that while it might comply with Dynamic's personal appearance standard, her hair did not comply with HEA's standard. Upon Key's request, Williams showed her HEA's appearance standard policy.

Williams told Key that she could only wear her dreadlocks if she wore a hat until she could get her hair styled in the "up-do" manner. Because Key would have had to return home to retrieve a hat, Robinson instructed her to go home and not return to work that day. Key never spoke with Williams again after that meeting. After she left work, Key got in contact with her stylist to schedule a hair appointment for the upcoming weekend. Also,

7

after Key left the plant, Robinson called Key to ask when her baby was due and whether her doctor was aware of her job requirements.

After this conversation on the phone, Robinson emailed her superiors at Dynamic. In her email, Robinson outlined various issues she had with Key on her first day of employment. Specifically, she noted that Key had not changed her hair as they had agreed at her interview. Robinson complained that Key, four months into her pregnancy, did not inform her or Chambliss during the interview that she was pregnant. Robinson expressed concern about having a pregnant woman working in the mailroom, where she had to be able to lift up to fifty pounds. Tracy Peoples, Dynamic's Vice President of Operations, responded to Robinson's email, "[I]f the officer they hired is not a fit (because she was pregnant) when they hired her[,] the only way I can see her being removed is if she does not comply with rules and regs regarding hair." (Doc 81-20 at 2).

E.     **Events on August 1, 2017**

The next day, on August 1, 2017, Key returned to the Hyundai plant wearing a hat covering her hair. Howell met Key in the morning at the security office to bring her to the mailroom. As they drove to the mailroom, Howell asked Key why she went home early the previous day. Key responded that there was something wrong with her hair and that she did not think she was being treated fairly. Thereafter, Howell informed Williams that Key wanted to see the HMMA handbook to review the hair and appearance policy because Key felt as though she was being discriminated against. Williams notified Robinson and Chambliss about the request to let them "get ahead of" Key's complaint. (Doc. 71-13

8

at 27). Williams "did not construe [Key's] complaints about hairstyle to be about race." (Doc. 71-14 at 5).

Robinson summoned Key from the mailroom and asked her if she felt discriminated against. Key responded, "[N]o comment." (Doc. 68-12 at 41). Robinson then said that Key should not have asked Williams to see HEA's appearance policy. According to Key, Robinson said "that the Koreans were a different breed of animals and that they send little memos and they don't want African Americans . . . wearing their hair [in dreadlocks] because of the clientele they have." (*Id.*).

Robinson and Williams later conferred about whether to continue Key's assignment at the plant. They concluded that Key should be reassigned to a new site by Dynamic. Williams memorialized this decision in an email sent to Ray Cureton ("Cureton"), Dynamic's District Manager, a white male. In the email, Williams wrote: "I foresee an issue down the road with [Key]. Rather than let it fester I'm asking that she be moved to another site." (Doc. 81-8 at 2). Williams highlighted the following concerns: "After the issue with her hair yesterday she returns this morning with a hat, not necessarily what I thought was appropriate"; Key "asked to see a copy of our policy regarding dreads"; "she didn't bother to speak when she entered our office;" "we hear from our mailroom employee Latunya Howell that [Key] is already stating that she can't lift boxes"; and "she's asking to see a HMMA handbook and that the issue is not about her hair, she is being discriminated against because she is pregnant." (*Id.*). After Williams sent this email, Robinson informed Williams that Key had been sent to Dynamic's off-plant office to meet with Cureton.

9

When Key first arrived at Dynamic's office, Key informed Cureton about the events that took place at the HMMA plant and submitted a signed, handwritten complaint to Cureton. Specifically, Key's complaint was against "Hyundai," Williams, and Robinson. Key wrote, "I believe that I have been discriminated against on the basis of my current hairstyle (dreadlocks), and also because I told Ms. Gloria Robinson that I was pregnant on Mon., July 31, 2017." (Doc. 75-14 at 2). According to Key, Scavella, Dynamic's Office Manager, sat in on Key's meeting with Cureton and later told her not to file a complaint because, given that she was not called the "n-word," Key was fighting a losing battle and had not really been discriminated against.

At her meeting with Cureton, Key first learned that Dynamic was not going to send her back to the HMMA plant. Cureton told her that Robinson made the request "[b]ecause of [her] hair and something else"; though he said he did not want to get into what the "something else" was at that moment. (Doc. 68-12 at 12). After Key turned in her Hyundai badge, Cureton told her that he would try to send her to another job site when one came available. Key contends that Dynamic never reached out to offer her another assignment, even after she inquired in person on August 8, 2017. Dynamic maintains, however, that it did offer Key other assignments, but they only had available part-time or second or third-shift positions, which Key was unwilling to work. Cureton sent an email to Sherry Spires ("Spires"), Dynamic's Human Resources Coordinator, on August 1, 2017, stating, "I can attempt to reassign Ms. Key to a different site, but I don't think that's advisable at this time, especially if she has to carry through with the stated 'official complaint' of discrimination

10

against Hyundai, Ms. Williams, and Ms. Robinson." (Doc. 75-25 at 26–27). Moreover, on August 6, 2017, he asked Spires in another email, "[I]s it advisable to try to move her to a different site when she is making threats to sue HMMA over the appearance standards?" (Doc. 75-33 at 25).

## F.    EEOC Procedural History

On August 2, 2017, the day after she submitted her written complaint to Dynamic, Key visited the U.S. Equal Employment and Opportunity Commission ("EEOC") office. She followed the instructions of EEOC representatives and filled out an EEOC Intake Questionnaire. In the Questionnaire, signed by Key that day, she asserted her belief that "Hyundai," "Ms. Cassandra Williams, AMCO," and "Ms. Gloria Robinson" discriminated against her. (Doc. 75-12 at 2, 3). She listed the HMMA plant address and Ray Cureton at Dynamic Security as the human resources director of contact. On the Questionnaire, Key selected "race," "retaliation," and "pregnancy" as the bases for her claims, writing that Robinson told her that "the Koreans who own the company didn't want Blks wearing their hair a certain way." (*Id.* at 3).

Page four of the Questionnaire provided, "If you would like to file a charge of job discrimination, you must do so . . . within 180 days from the day you knew about the discrimination . . . . If you want to file a charge, you should check Box 2." (*Id.* at 5). Key checked Box 2, which read, "I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above. I understand that the EEOC must give the employer, union, or employment agency that I accuse of discrimination

information about the charge, including my name." (Doc. 75-12 at 5).  After this box, in

the section labeled "PRIVACY ACT STATEMENT," the Questionnaire listed its principal

purpose: "This questionnaire may serve as a charge if it meets the elements of a charge."

(*Id.*).  Key attached to the Questionnaire details of the events spanning from her interview

on July 19, 2017, until her termination on August 1, 2017, indicating that she "wish[ed] to

file a charge of discrimination for race and gender, pregnancy discrimination and retaliation

due to [her] exercise of protected activity by filing a complaint of discrimination with [her]

employer . . . Hyundai (Dynamic Security)." (*Id.* at 6).

    The EEOC investigator assigned to Key's case compiled Key's information,

prepared a Formal Charge of Discrimination against "Dynamic Security Incorporated" and

had Key sign it on August 3, 2017. (Doc. 75-11 at 2).  Dynamic received a copy of this

Charge by August 11, 2017.  It then submitted a position statement in opposition to Key's

assertions of race and pregnancy discrimination and retaliation.

    Over a year later, in October of 2018, a new EEOC investigator assigned to Key's

case asked her to sign a separate Charge of Discrimination against HMMA; Key signed the

Charge on October 16, 2018.  Key assumed her Intake Questionnaire filed on August 2,

2017, qualified as her Formal Charge against both Dynamic and HMMA, so she thought

the 2018 Charge against HMMA was merely a formality.  She also assumed that the EEOC

had consolidated her Charges against Dynamic and HMMA, handling both as one case.

    The EEOC sent a letter to "HMMA Hyundai" on October 24, 2018, writing:

> Due to administrative error, our staff failed to serve the Notice on Hyundai
> within ten days.  We received Charging Party's intake questionnaire on

August 3, 2017.  On the intake questionnaire, she indicated her intention to file a Charge of Discrimination against Hyundai.  Consequently, the original filing date will reflect as the date of the Commission's receipt of her original communication, the intake questionnaire.

(Doc. 81-14 at 2).  The EEOC's investigation determined an employment relationship existed between Key and HMMA and recommended a for-cause determination, believing discrimination and retaliation did occur.  Key and HMMA took part in conciliation efforts, but the efforts failed.  The EEOC thereafter "determine[d] that further conciliation efforts would be futile or non-productive," and decided to "not bring a lawsuit against [HMMA]" on Key's behalf. (Doc. 71-10 at 9).  On July 12, 2019, Key received from the EEOC its notice of conciliation failure and her right to sue HMMA.

Key listed the same home address on her Intake Questionnaire and on her two EEOC Charges.  The EEOC gave notice to Dynamic of Key's Charge against it on August 11, 2017, and Dynamic subsequently wrote a position statement in opposition to the Charge. At her provided home address, Key received from the EEOC a mailed copy of Dynamic's position statement, experiencing no problem in the mailing process.  Additionally, Key received three mailings from the EEOC—one sent on or about June 10, 2019; two sent on or about July 12, 2019—pertaining to her charge against HMMA, again with no problem. On March 1, 2019, the EEOC mailed to the address provided by Key a Dismissal and Notice of Rights to Sue ("right-to-sue letter") as to her Charge against Dynamic, issuing a "no cause" determination.  The notice stated that if she chose to pursue a civil action against Dynamic under Title VII, then the "lawsuit must be filed within 90 days of [her] receipt of this notice." (Doc. 75-18 at 2).  By March 20, 2019, at the latest, Dynamic received a copy

13

of Key's right-to-sue letter; the delay was due to Dynamic forwarding mail from a previous address to a new office.

Key, on the other hand, claims she never received the Dynamic right-to-sue letter from the EEOC. The letter was properly addressed, Key had no issues with the mail before or after that time, and she or her husband retrieved mail from the mailbox regularly. According to Key, the first time she saw the Dynamic right-to-sue letter was when Dynamic attached it to its motion to dismiss this lawsuit.

After she undisputedly received her right-to-sue letter as to her Charge against HMMA, Key filed suit in this Court on October 10, 2019, ninety days after the HMMA right-to-sue letter was mailed.

## V. DISCUSSION

### A.    Evidentiary Objections

The Court first addresses Dynamic's motion to strike certain portions of Key's declaration submitted in support of her opposition to summary judgment. (Doc. 88). Dynamic asserts that paragraph twenty-seven of Key's declaration contains her account of statements made by Cureton during an unemployment hearing and statements made by the EEOC in a written rebuttal. Dynamic argues that this paragraph should be stricken because it is not based on personal knowledge, it is conclusory and speculative, it is hearsay, and is not the best evidence. In addition to the objection as to this specific paragraph, Dynamic objects to "all other inadmissible portions of the Plaintiff's Declaration on which she relies to oppose Defendant Dynamic's Motion for Summary Judgment." (*Id.* at 4).

14

First, to the extent Dynamic objects on the basis of hearsay, the Court finds that the statements could be reduced to admissible form at trial. *See Jones v. UPS Ground Freight*, 683 F.3d 1283, 1293–94 (11th Cir. 2012) ("[A] district court may consider a hearsay statement in passing on a motion for summary judgment if the statement could be reduced to admissible evidence at trial or reduced to admissible form." (citation omitted)). Further, Dynamic's specific objections to paragraph twenty-seven go more to the weight of the evidence than its admissibility. Finally, the last "catch-all" objection lacks sufficient clarity, and the Court will not guess as to which portions of the Declaration Dynamic finds "inadmissible." Accordingly, for good cause, Dynamic's motion to strike (doc. 88) is due to be DENIED.

**B.      Count I – Title VII Pregnancy Discrimination**

Key claims that Dynamic and HMMA discriminated against her based on her pregnancy in violation of Title VII. Title  VII, as amended by the Pregnancy Discrimination Act, prohibits discrimination based on pregnancy, childbirth, or related medical conditions. 42 U.S.C. § 2000e(k) (amending 42 U.S.C. § 2000e-2). To survive summary judgment on a pregnancy discrimination claim, a plaintiff must provide evidence that the defendant took an adverse employment action against her because of her pregnancy. *See Chapter 7 Tr. v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1254–55 (11th Cir. 2012); *Holland v. Gee*, 677 F.3d 1047, 1054–55 (11th Cir. 2012) ("The analysis for a pregnancy discrimination claim is the same type of analysis used in other Title VII sex discrimination suits." (citation omitted)).

15

A plaintiff may rely on "either direct or indirect evidence to show that her employer discriminated against her because of her pregnancy." *Chapter 7 Tr.*, <u>683 F.3d at 1255</u>. Direct evidence is evidence that, if believed, "proves the existence of a fact without inference or presumption." *Id.* (citation omitted). "Indirect evidence is circumstantial evidence." *Id.* (citation omitted). "Discrimination is about actual knowledge, and real intent, not constructive knowledge and assumed intent." *Silvera v. Orange Cnty. Sch. Bd.*, <u>244 F.3d 1253, 1262</u> (11th Cir. 2001). Therefore, when evaluating a charge of pregnancy discrimination, courts "must focus on the actual knowledge and actions of the decision-maker." *Walker v. Prudential Prop. and Cas. Ins. Co.*, <u>286 F.3d 1270, 1274</u> (11th Cir. 2002).

### 1. *HMMA*

HMMA asserts that it cannot be found liable for intentional pregnancy discrimination against Key because there is no evidence that it either knew of her pregnancy or took an adverse action against her. To survive a motion for summary judgment, Key must present evidence demonstrating that HMMA actually knew she was pregnant—otherwise it could not be held accountable for acting on that basis. *See Lubetsky v. Applied Card Sys., Inc.*, <u>296 F.3d 1301, 1306</u> (11th Cir. 2002) ("[W]hen we evaluate a charge of disparate treatment employment discrimination, we must focus on the actual knowledge and actions of the decision-maker."); *see also Geraci v. Moody-Tottrup, Int'l, Inc.*, <u>82 F.3d 578, 580</u>–82 (3d Cir. 1996) (cited approvingly by *Lubetsky*) (holding plaintiff failed to establish a prima facie case of pregnancy discrimination even though she told six

16

co-workers she was pregnant but could not provide any evidence the defendant decision-maker knew she was pregnant).  Likewise, Key must present evidence that HMMA was the actual decision-maker in her termination. *Walker*, 286 F.3d at 1274.

Key has not presented sufficient evidence that anyone at HMMA knew of Key's pregnancy or was a decision-maker in her termination.  No evidence indicates that Key, HEA, or Dynamic informed an HMMA employee about Key's pregnancy.  Key argues that HMMA is nevertheless liable because Williams' knowledge is imputable to HMMA, and thus "notice to Williams was . . . notice to HMMA." (Doc. 82 at 68).  Key contends that HMMA intentionally discriminated against her due to her pregnancy based on its constructive knowledge of her pregnancy, imputed from Williams, an HEA employee.  The Eleventh Circuit, however, has declined to find discriminatory intent based on constructive notice.

In *Silvera*, for example, the Circuit held that a district court erred by imputing knowledge of one school board member to the board as a whole. 244 F.3d at 1261.  In that case, a school board fired a school employee based on a newly discovered prior arrest. *Id.* at 1256–57.  The fired employee sued the board, claiming that his firing was pretext for race discrimination because one board member was aware of his arrest before the board hired him. *Id.* at 1257.  The district court found a conflict of evidence as to whether the board had knowledge of the arrest, thus calling into question whether the firing was pretextual. *Id.* at 1261.  Because one board member had knowledge of the arrest, the district court "reason[ed] that if the Board constructively knew of" the arrest through imputed

17

knowledge, then a jury could find that the stated reason for the employee's firing was pretext. *Silvera*, 244 F.3d at 1261–62.

The Circuit in *Silvera* reversed the district court, holding it erred by "simply imputing the knowledge" of one board member to the board as a whole, while there was "no evidence at all that [the one board member] actually told the Board anything about [the employee's] arrest." *Id.* at 1262. Discrimination, the Circuit held, must be based on "actual knowledge, and real intent, not constructive knowledge and assumed intent." *Id.*

Key maintains that HMMA discriminated against her due to her pregnancy based solely on Williams' knowledge of the pregnancy and Williams' decision to terminate her employment at the HMMA plant. As the court held in *Silvera*, however, a discrimination claim cannot rely solely on "constructive knowledge and assumed intent," but instead must be based on evidence of *actual* knowledge and intent. 244 F.3d at 1262; *cf. Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 800 (11th Cir. 2000) (declining to impute knowledge to a corporation in a retaliation case because "the fact the employer is a corporation does not relieve a plaintiff of the burden of showing a causal connection between the protected conduct and the decision to take the adverse employment action"); *Pressley v. Haeger*, 977 F.2d 295, 297 (7th Cir. 1992) (stating that "[r]acial discrimination is an intentional wrong. An empty head means no discrimination. There is no 'constructive intent,' and constructive knowledge does not show actual intent"). Key fails to present evidence that anyone at HMMA actually knew that Key was pregnant and intended to take an adverse action against her based on that pregnancy. Therefore, no genuine dispute of

18

fact remains as to Key's pregnancy discrimination claim against HMMA, and its motion for summary judgment is due to be GRANTED as to Count I.

### 2. *Dynamic*

Dynamic contends that all Key's Title VII claims against it must be dismissed because Key failed to file her complaint in this Court within the prescribed statutory period after receiving her Dynamic right-to-sue letter from the EEOC. Title VII provides, "Within ninety days after the giving of . . . notice [of dismissal of the charge] a civil action may be brought against the respondent named in the charge . . . by the person claiming to be aggrieved." 42 U.S.C § 2000e-5(f)(1). When a defendant contests whether the complaint was timely filed, the plaintiff bears the burden of showing she has met the timeliness requirement. *Kerr v. McDonald's Corp.*, 427 F.3d 947, 951 (11th Cir. 2005); *Green v. Union Foundry Co.*, 281 F.3d 1229, 1233–34 (11th Cir. 2002). Determinations on when notice was received—and thus the start of the ninety-day limitation period—are to be considered "on a case-by-case basis to fashion a fair and reasonable rule for the circumstances of each case, one that would require plaintiffs to assume some minimum responsibility without conditioning a claimant's right to sue on fortuitous circumstances or events beyond her control." *Kerr*, 427 F.3d at 952 (alternations adopted).

When there is a dispute about when the plaintiff received her right-to-sue letter, the Eleventh Circuit has applied a "presumption of three days for receipt by mail." *Id.* at 953 n.9; *Zillyette v. Cap. One Fin. Corp.*, 179 F.3d 1337, 1342 (11th Cir. 1999). This presumption, however, "does not apply if the plaintiff can show that receipt of the notice

19

was delayed 'through no fault of [her] own.'" *Robbins v. Vonage Bus., Inc.*, 819 F. App'x 863, 867 (11th Cir. 2020) (quoting *Lewis v. Conners Steel Co.*, 673 F.2d 1240, 1243 (11th Cir. 1982)). To establish no fault, a plaintiff must show that she took "reasonable steps to ensure delivery of the notice to [her] current address." *Id.* (quoting *Lewis*, 673 F.2d at 1243); *see also Stallworth v. Wells Fargo Armored Servs. Corp.*, 936 F.2d 522, 524 (11th Cir. 1991) ("[A] plaintiff 'should not be heard to complain' unless the plaintiff has . . . [taken] reasonable steps to ensure delivery of the notice to [her] current address.").

The parties dispute when Key received her right-to-sue letter, but there is no dispute as to when the EEOC mailed the letter: March 1, 2019. If the time for Key's Title VII claims against Dynamic began running on March 4, 2019—when Key presumably received her right-to-sue letter as to Dynamic—then Key's Title VII claims against Dynamic are time-barred. If, however, the time ran from the date that Key received the letter attached to Dynamic's motion to dismiss in this case, then her claims were timely filed with this Court.

On March 1, 2019, the EEOC mailed Key the notice of her right to sue Dynamic. Given the disputed receipt date, the Circuit's "three-day presumption" applies. Therefore, unless Key can show delay in receipt was caused through no fault of her own, the Court presumes that she received her right-to-sue letter by March 4, 2019. Key had ninety days from that date to file a lawsuit in federal court—June 2, 2019. However, Key did not file suit until October 10, 2019—one hundred and thirty days after the presumed June 2 deadline. Dynamic argues that Key does not carry her burden to present sufficient evidence

20

that she never received the right-to-sue letter due to no fault of her own within the presumed three days.

Key asserts, on the other hand, that she did not receive the Dynamic right-to-sue letter until it was attached to a filing by Dynamic in this case. She also maintains that she and her husband alone resided, and regularly checked the mailbox, at the address to which the EEOC sent mail. Key further contends that she thought her Charge against Dynamic was consolidated with her Charge against HMMA, and thus was included in the right-to-sue letter as to HMMA. These facts, according to Key, are sufficient evidence to overcome the presumption of timely mailing and receipt.

A similar argument was made, and rejected, in *Kerr*. The parties in *Kerr* disputed the exact date on which the plaintiffs received their right-to-sue letters in the mail, and thus when the clock began ticking on when they could bring a Title VII claim against their employer. 427 F.3d at 951. There was no dispute as to whether the right-to-sue letters were mailed. *Id.* at 951–52. The employer produced evidence that the EEOC followed the same procedures mailing the right-to-sue letters as it did other mailings that had reached the plaintiffs' addresses. *Id.* at 952. Evidence also demonstrated that the defendant employer received a copy of the right-to-sue letters in the mail with no unusual delay. *Id.* The court held that the employer sufficiently raised the "presumption that the notices were properly mailed," and the plaintiffs did not present sufficient evidence to rebut that presumption. *Id.*

The circumstances in this case are similar to the circumstances in *Kerr*, such that they raise a presumption that the EEOC properly mailed notice of Key's right to sue

21

Dynamic on March 1, 2019. Key received three mailings from the EEOC regarding her charge against HMMA at the same address listed on her Dynamic right-to-sue letter. Additionally, Dynamic provided evidence that it received a copy of the notice on or before March 20, 2022.[3] Key has not identified any evidence demonstrating there may have been a flaw in the mailing procedure. Like the employer in *Kerr*, Dynamic has presented sufficient evidence to "raise a presumption that the notices were properly mailed." 427 F.3d at 952.

Key contends that her sworn testimony that she never received the right-to-sue letter should overcome the three-day presumption of receipt. However, this testimony alone is insufficient to defeat the presumption of proper mailing and receipt within three days. *See Sevillano v. Orange County*, 2021 WL 2431847, at *3 (M.D. Fla. May 26, 2021) (finding self-serving testimony alone not sufficient to defeat the presumption of timely mailing and receipt). Without pointing to specific evidence of who or what could be at fault besides herself, Key fails to present a genuine dispute of fact as to when she received the Dynamic right-to-sue letter.

In *Bloom v. Shinseki*, for example, the only evidence to overcome the presumption of timely receipt was the plaintiff's own declaration that he and his wife did not receive the right-to-sue notices in their mailbox. 2012 WL 4009751, at *4 (M.D. Ala. Sept. 12, 2012). The court found that this declaration alone was insufficient evidence to "demonstrate a

---

[3] The delay in Dynamic's receipt of the mailed copy of Key's right-to-sue letter was due to Dynamic forwarding mail from a previous address to a new office. Even if the ninety-day period began running three days after Dynamic received the letter on March 20, 2019, Key still failed to meet that filing deadline, which would have been June 21, 2019.

basis for" finding that the plaintiff never received the notices, "and it [did] not refute the [defendant's] evidence" to the contrary. *Bloom*, 2012 WL 4009751, at *4.  Similarly, Key's only evidence to overcome the presumption of proper delivery is her sworn testimony that neither she nor her husband received the notice in their mailbox, though they regularly checked it.

Key bears the burden to present evidence to overcome the three-day presumption of receipt. *Green*, 281 F.3d at 1233–34.  There is insufficient evidence in this case that the mail failed to make it to her through "fortuitous circumstances or events beyond her control." *Kerr*, 427 F.3d at 952.  The cases cited by Key either were decided at the motion to dismiss stage or had some type of *affirmative evidence* that an event out of the complainant's control occurred to keep her from noticing the right-to-sue letter. *See, e.g.*, *McAllister v. Metro. Transit Auth.*, 2013 WL 4519795, at *1 (E.D.N.Y. Aug. 26, 2013) (occurring at the motion to dismiss stage); *Stallworth*, 936 F.2d at 525 (resting fault with the EEOC for not sending the notice to plaintiff's attorney as directed); *Franks v. Bowman Transp. Co.*, 495 F.2d 398, 404–05 (5th Cir. 1974) (plaintiff's nine-year-old nephew, "through no fault of" plaintiff, "lost the letter").  Key speculates that the problem could lay with the postal service.  However, this speculation does constitute evidence giving rise a reasonable inference either that the EEOC did not actually mail the right-to-sue letter or that the letter was never delivered by the postal service.  Key, therefore, does not affirmatively demonstrate that her "failure to receive [a right-to-sue] letter was in no way her fault"; thus, "[r]eceipt is presumed." *Kerr*, 427 F.3d at 952.

23

Because receipt was presumed to be within three days of the March 1, 2019 mailing—March 4, 2019—the last day in which Key could file a Title VII claim against Dynamic for these events was June 2, 2019. Key fails to overcome this presumption, so her October 10, 2019, Title VII complaint against Dynamic was untimely, and Dynamic's motion for summary judgment is due to be GRANTED as to all Title VII claims against it.

## C. Counts II and III – Title VII and § 1981 Race Discrimination

Key brings race discrimination claims against Dynamic[4] and HMMA pursuant to Title VII, and against all three defendants pursuant to § 1981.[5] Title VII prohibits discrimination on the basis of race. 42 U.S.C. § 2000e-2(a)(1). Section 1981 provides, "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). In their motions for summary judgment, the Defendants analyze Key's race discrimination claims under the familiar *McDonnell Douglas* burden shifting analysis. *See* 411 U.S. 792 (1973). They highlight that Key fails to present evidence of a valid comparator, and thus her claims would fail the *McDonnell Douglas* test.

Key argues, however, that the lack of a valid comparator does not doom her claims because *McDonnell Douglas* does not apply in this case. Instead, she asserts for the first

---

[4] Because Key's Title VII claims against Dynamic were untimely filed, *see supra*, the only remaining discrimination claim against Dynamic falls under § 1981. Dynamic's motion for summary judgment as to Key's Title VII race discrimination claim against it is therefore due to be GRANTED.

[5] Because, as will be discussed, the Court finds that Key cannot survive summary judgment on her race discrimination claims against all three defendants, the Court aggregates its discussion of her claims against individual defendants and refers to Dynamic, HEA, and HMMA in this Part collectively as "the Defendants."

24

time in her response to summary judgment that this is a mixed motive case, and that *Quigg v. Thomas County School District* should apply because "*McDonnell Douglas* is inappropriate for evaluating mixed-motive claims." 814 F.3d 1227, 1239 (11th Cir. 2016).[6] A discrimination claim may survive summary judgment "where both legitimate and illegitimate reasons motivated the decision." *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 93 (2003); *Quigg*, 814 F.3d at 1239. If a plaintiff alleges such a mixed-motive claim, then "the court must determine whether the plaintiff has presented sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence, that her protected characteristic was a motivating factor for [an] adverse employment decision." *Quigg*, 814 F.3d at 1239 (alteration adopted) (quotation and citation omitted). Specifically, courts assess whether "(1) the defendant took an adverse employment action against the plaintiff; and (2) a protected characteristic was *a* motivating factor for the defendant's adverse employment action." *Id.* (emphasis in original) (alteration adopted) (citation omitted). The second element requires the plaintiff to demonstrate that she would not have been terminated if not for her protected characteristic. *See Lewis v. Metro. Atlanta Rapid Transit Auth.*, 343 F. App'x 450, 455 (11th Cir. 2009).

---

[6] HMMA argues that Key waived her mixed-motive claim because she did not affirmatively plead it in her complaint. (Doc. 85 at 25). Decisions on waiver in this context have varied. *See, e.g., Price Waterhouse v. Hopkins*, 490 U.S. 228, 247 n.12 (1989) ("Nothing in this opinion should be taken to suggest that a case must be correctly labeled as either a 'pretext' case or a 'mixed-motives' case from the beginning in the District Court."), *superseded by statute on other grounds as recognized by Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1017 (2020); *Robinson v. Alexander City*, 2021 WL 4134054, at *6 (M.D. Ala. Sept. 10, 2021) (finding waiver where plaintiff did not plead a mixed-motive claim or put the defendants on notice during the discovery process of a claim under that theory, which "highlight[s] the problem with parties failing to plainly articulate the nature of their claims in their complaints"). The Court does not reach the question of waiver because Key's claims fail on the merits.

25

Even if *McDonnell Douglas* did apply in this case, Key argues that it "is not, and never was intended to be, the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011); (Doc. 82 at 72). Rather than rely on the more stringent *McDonnell Douglas* burden shifting analysis, Key asserts that her race discrimination claim survives summary judgment based on a convincing mosaic of discrimination. Indeed, Key analyzes her race discrimination claims under the less demanding convincing mosaic theory, and so the Court does the same.[7]

A plaintiff can "survive summary judgment by presenting 'circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent.'" *Jenkins v. Nell*, 26 F.4th 1243, 1250 (11th Cir. 2022) (quoting *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011)). There remains a genuine dispute of fact "if the record, viewed in a light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Id.* (citation omitted). A plaintiff establishes a "convincing mosaic" by pointing to evidence demonstrating, among other things, "(1) suspicious timing, ambiguous statements, or other information from which discriminatory intent may be inferred, (2) systematically better treatment of similarly situated employees, and (3) pretext." *Id.* (quotations and citation omitted).

---

[7] Key provides her convincing mosaic argument also in support of her mixed-motive theory. Therefore, the Court will address her convincing mosaic argument, understanding that its analysis applies also to her argument for a mixed-motive theory.

Key argues that she presents sufficient evidence to establish a convincing mosaic of discrimination from which a reasonable jury could infer discrimination.  Specifically, she claims this mosaic includes the following circumstantial evidence:  (1) HEA's appearance standard was not applied uniformly, (2) the Defendants permitted at least two other black employees to wear dreadlocks that were "styled," indicating Key's dreadlocks were problematic because they were worn naturally; (3) the Defendants authorized Key to wear dreadlocks if she styled them differently from their natural appearance by putting them in a bun or covering them with a hat so that the dreadlocks were not visible; (4) the intention of the appearance standard was to prevent black persons from wearing their hair in natural dreadlocks; and (5) the appearance standard was not applied to all races because there is no evidence that a white employee attempted to wear dreadlocks.

This circumstantial evidence, however, does not demonstrate a convincing mosaic of racial discrimination.  To Key's first three pieces of the mosaic, evidence that HEA's appearance standard was not applied uniformly because other employees were permitted to wear dreadlocks actually strikes against her convincing mosaic theory.  The other employees permitted to wear dreadlocks here were also black.  The only distinguishing factors that Key identifies between herself and these employees is that she wore her dreadlocks at shoulder length, while they wore dreadlocks pulled up in a tight bun, in keeping with HEA's appearance standard.  This evidence does not reasonably lead to an inference that the Defendants engaged in disparate enforcement based on racial animus.  Rather, it reveals that Williams and Robinson took issue with Key's dreadlocks due to the

27

style in which she wore her dreadlocks, which was not in keeping with HEA's facially race-neutral appearance policy. *Cf. Willingham v. Macon Tel. Publ'g Co.*, <u>507 F.2d 1084, 1092</u> (5th Cir. 1975)[8] (holding a grooming policy based on "something other than immutable or protected characteristics do not inhibit employment opportunity").

Simply because dreadlocks were permitted in a tight bun does not raise the inference that HEA's appearance standard was being enforced in a racially discriminatory manner. Absent evidence of discriminatory application of restrictions on dreadlocks, the Eleventh Circuit treats race neutral no-dreadlocks grooming policies as nondiscriminatory. *E.E.O.C. v. Catastrophe Mgmt. Sols.*, <u>852 F.3d 1018, 1030</u> (11th Cir. 2016). The court in *Catastrophe Management* held that dreadlocks are a hairstyle, not "an immutable characteristic of race," even though they "are a 'natural outgrowth' of the texture of black hair." *Id.*

Key contends that her style of dreadlocks was racially targeted due to their natural, un-styled appearance, as opposed to the permitted "styled" dreadlocks worn by two other black employees. This argument reveals, however, that Key's dreadlocks—which the Eleventh Circuit holds is a style in which one wears her hair, not an immutable characteristic—were not styled in as professional a manner as were the other two employees' dreadlocks. *Cf. Willingham*, <u>507 F.2d at 1092</u>. These pieces of evidence, therefore, do not support the inference that Williams and Robinson disapproved of Key's

---

[8] In *Bonner v. City of Prichard*, <u>661 F.2d 1206, 1209</u> (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981.

dreadlocks based on intentional race discrimination. *See Catastrophe Mgmt. Sols.*, 852 F.3d at 1030 (rejecting plaintiff's argument that a race-neutral grooming policy to prohibit dreadlocks, without evidence of racially discriminatory application, constitutes intentional race discrimination).[9]

To her fourth piece of the mosaic, Key presents evidence that Robinson told her "that the Koreans were a different breed of animals and that they send little memos and they don't want African Americans . . . wearing their hair [in dreadlocks] because of the clientele they have." (Doc. 68-12 at 41).  Robinson, however, denies ever making this statement, and the only evidentiary support for the memos from unidentified "Koreans" is Key's own testimony as to Robinson's statement.  No documentary evidence corroborating this claim was ever submitted.

The Defendants argue that Key's testimony about Robinson's comment cannot be considered as part of a convincing mosaic because it is inadmissible hearsay.  Even if Key's testimony on this point could be reduced to admissible form at trial, it could not support an inference on which a reasonable jury could find a convincing mosaic of intentional race discrimination.  Absent evidence of unequal application of the appearance standard on the basis of race in this situation, Key fails to show that the statement, even if it was made,

---

[9]  Key claims, without evidentiary support from the record, that HEA's appearance standard was not race neutral because it "require[ed] Key to chemically treat her hair." (Doc. 82 at 71).  As HMMA points out, however, there is nothing in the record to suggest that any Defendant had a grooming policy in which Key was forced to chemically treat her hair to comply. (Doc. 58 at 13).  The record indicates that Key's dreadlocks, worn at shoulder-length at the time of her interview, did not comply with HEA's appearance standard, and when Key showed Williams a style in which she could wear her dreadlocks pulled up in a tight bun, Williams agreed that the style in the photo was acceptable under HEA's standard.  Nothing from this evidence implies that Key was *required* to chemically treat her hair to comply.

reveals intentional racial animus. Even when viewed in the light most favorable to Key, her factual showing does not create a triable claim of race discrimination.

To the fifth and final piece of evidence, Key contends that it is mere speculation and conjecture that the appearance standard was applied race-neutrally because the Defendants cannot point to any white employee that attempted to wear dreadlocks. Key, however, bears the burden of weaving a convincing mosaic of intentional race discrimination, and she has offered no evidence that the Defendants have permitted a white person to wear dreadlocks but prohibited a black person from doing so. To infer racial animus from this lack of evidence would relieve Key of her burden to present sufficient evidence from which a reasonable jury could find intentional race discrimination. *See Holland*, 677 F.3d at 1056 (noting plaintiff bears the burden to establish a "reasonable inference that the employer engaged in the alleged discrimination" (quoting *Smith*, 644 F.3d at 1326)); *cf. Catastrophe Mgmt. Sols.*, 852 F.3d at 1030 (holding that being "historically, physiologically, and culturally associated with [a black person's] race . . . does not make [dreadlocks] an immutable characteristic of race" such that a no-dreadlock grooming policy in and of itself is racially discriminatory). That no white employee has attempted to wear dreadlocks is insufficient to transform a race-neutral appearance standard into evidence of intentional discrimination, particularly where there is evidence that black employees were permitted to wear dreadlocks in professional styles.

Viewing the evidence in the light most favorable to Key, the Court concludes that Key's circumstantial evidence does not present questions of material fact as to intentional

race discrimination in enforcing an appearance standard sufficient to submit those claims to a jury. Key has not carried her "ultimate burden" of demonstrating that a "trier of fact" could reasonably be persuaded that the Defendants "intentionally discriminated against [her]" under either a convincing mosaic theory or a mixed-motive theory. *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1088 (11th Cir. 2004), *abrogated on other grounds by Lewis v. City of Union City*, 918 F.3d 1213 (11th Cir. 2019) (en banc). Thus, no genuine dispute of material fact remains as to Key's race discrimination claims, and summary judgment on these claims is warranted.

## D. Counts IV and V – Title VII and § 1981 Race Retaliation

Key brings retaliation claims against Dynamic and HMMA pursuant to Title VII, and against all three defendants pursuant to § 1981. She maintains that all three defendants fired her in retaliation for filing a complaint about race discrimination. Retaliation claims brought under § 1981 are analyzed under the same framework as their Title VII counterparts, and they therefore are subject to the *McDonnell Douglas* burden-shifting analysis. *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1134 (11th Cir. 2020) (en banc).[10]

A prima facie case of retaliation requires a plaintiff to show that (1) "she engaged in statutorily protected activity," (2) "she suffered an adverse action," and (3) "the adverse action was causally related to the protected activity." *Id.* (citation omitted). Statutory

---

[10] The Court addresses Key's § 1981 race retaliation claims with the understanding that the same analytic framework applies to her Title VII race retaliation claims.

protections are not limited to those who file formal complaints; they also extend to those who voice informal complaints "to their superiors or who use their employers' internal grievance procedures." *Rollins v. State of Fla. Dep't of Law Enf't*, 868 F.2d 397, 400 (11th Cir. 1989) (per curiam).

A plaintiff can show that she engaged in a statutorily protected activity if her complaint "explicitly or implicitly communicate[s] a belief that the practice constitutes unlawful employment discrimination." *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1311 (11th Cir. 2016) (citation omitted). A plaintiff must show that she "had a good faith, reasonable belief that the employer was engaged in unlawful employment practices." *Id.* (citing *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997)). Her burden includes both a subjective and an objective component—"[t]hat is, the plaintiff must not only show that she subjectively (i.e., in good faith) believed the defendant was engaged in unlawful employment practices, but also that her belief was *objectively* reasonable in light of the facts and record present." *Id.* (emphasis in original) (quotations and citation omitted). The plaintiff, however, "is not required to prove that the discriminatory conduct complained of was actually unlawful" for the retaliation claim to succeed. *Id.* The conduct need only "be close enough to support an objectively reasonable belief that it is." *Id.* (citation omitted). Whether the offensive conduct is "close enough" to an unlawful employment practice is "measured by reference to controlling substantive law" at that time. *Id.*

A materially adverse employment action is an action that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quotations and citation omitted).

To satisfy the final element of a prima facie retaliation claim, "a plaintiff must show that the relevant decisionmaker was aware of the protected conduct, and that the protected activity and the adverse actions were not wholly unrelated." *Patterson v. Ga. Pac., LLC*, 38 F.4th 1336, 1351 (11th Cir. 2022) (citation omitted). A plaintiff generally satisfies the causal link element if she can present circumstantial evidence of "close temporal proximity between" the protected activity and the adverse employment action. *Tolar v. Bradley Arant Boult Commings, LLP*, 997 F.3d 1280, 1295 (11th Cir. 2021).

When the plaintiff establishes a prima facie case of retaliation, there is a "presumption that the adverse action was the product of an intent to retaliate." *Bryant v. Jones*, 575 F.3d 1281, 1308 (11th Cir. 2009). The burden then shifts to the employer to rebut this presumption by "articulating a legitimate, non-[retaliatory] reason for the employment action." *Gogel*, 967 F.3d at 1135. If the employer successfully does so, then the burden shifts back to the plaintiff to demonstrate that the "proffered reason was merely a pretext to mask [retaliatory] actions." *Bryant*, 575 F.3d at 1308. It is at this crucial stage that the plaintiff must establish but-for causation: she must demonstrate that her "protected activity was a but-for cause of the alleged adverse action by the employer," *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013), or, in other words, she must show that

33

she would not have been fired if she had not engaged in the protected activity. *Gogel*, 967 F.3d at 1135. The burden of persuasion remains on the employee throughout. *Id.*

### 1.    *Dynamic*[11]

Dynamic argues that Key did not engage in a statutorily protected activity and that, if she had, there was no causal relationship between her complaint about discrimination and her being fired for wearing her hair in dreadlocks. Key's burden to establish a prima facie case against Dynamic "is not [an] onerous" one. *Furcron*, 843 F.3d at 1312 (quoting *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981)).

### a.    **Statutorily Protected Activity**

Key asserts that her written complaint submitted to Cureton at Dynamic's office on the afternoon of August 1, 2017, satisfied the first element of her prima facie race retaliation claim. To satisfy this first element, the workplace conduct at issue must not "be viewed in isolation, but rather it is to be viewed cumulatively, and in its social context." *Id.* (citation omitted).

Key complained that she felt discriminated against, in part, "on the basis of [her] current hairstyle (dreadlocks)." (Doc. 75-14 at 2). She made this complaint just hours after Robinson allegedly told her that "the Koreans" "send little memos and they don't want African Americans . . . wearing their hair [in dreadlocks]." (Doc. 68-12 at 41). Taking Key's complaint about being discriminated based on her dreadlocks "in its social

---

[11] As with Key's other Title VII claims against Dynamic, which were untimely filed, *see supra*, the only remaining retaliation claim against Dynamic falls under § 1981. Dynamic's motion for summary judgment as to Key's Title VII race retaliation claim (Count IV) against it is therefore due to be GRANTED.

34

context"—with its temporal proximity to the alleged statement about how "the Koreans" do not want "African Americans" wearing dreadlocks—a reasonable jury could find that Key reasonably believed such a complaint was about race discrimination. *See Furcron*, 843 F.3d at 1312.

The proximity of Robinson's alleged statement about "Koreans" not liking "African Americans" wearing their hair in dreadlocks demonstrates that there is a question of fact as to whether Key had both a subjective and objective good faith belief that her employers were "engag[ing] in unlawful employment practices." *Id.* at 1311 (citation omitted). A reasonable jury could find that this fact permits a complainant to both subjectively and objectively believe that complaining about discrimination due to her dreadlocks was the functional equivalent of complaining about race discrimination. Thus, Key's complaint about discrimination due to her dreadlocks, based on the context of Robinson's alleged statement, could have been a statutorily protected activity. *See Martin v. Fin. Asset Mgmt. Sys., Inc.*, 959 F.3d 1048, 1053 n.3 (11th Cir. 2020) ("[Section] 1981 prohibits employers from retaliating against employees for complaining about race discrimination."); *see also Bryant*, 575 F.3d at 1309.

Dynamic argues that Key's complaint was not objectively reasonable given Eleventh Circuit precedent at the time. The Circuit in *Catastrophe Management* held that a no-dreadlock grooming policy was a permissible race-neutral grooming policy, not a proxy for race discrimination. 852 F.3d at 1030. So long as a grooming policy that

prohibits dreadlocks is applied "even handedly," the grooming policy is considered race-neutral and not discriminatory. *Catastrophe Mgmt.*, 852 F.3d at 1032–33 (citation omitted).

There is evidence, however, that Key's discrimination complaint to Cureton was not based on the policy itself, but on the *application* of the policy. Key's complaint specified that she felt discriminated against based on her dreadlocks. This alone may not ordinarily suffice. However, Key filed this complaint after Robinson allegedly made a statement about "the Koreans" not wanting "*African Americans*" to wear their hair in dreadlocks.[12] It would be reasonable, in this context, for Key to believe that the dreadlock prohibition was a race-based policy. Because Key could have believed the policy was not applied "even-handedly," as it was in *Catastrophe Management*, she also could have reasonably believed that complaining about discrimination based on dreadlocks was equivalent to complaining about race discrimination. *See id.* A reasonable jury could find that Key engaged in a protected activity when she complained to Cureton. *Knox v. Roper Pump Co.*, 957 F.3d 1237, 1245 (11th Cir. 2020) ("It is undisputed that [a] complaint of racial discrimination was a protected activity.").

---

[12] Even if Key's testimony as to Robinson's comment could not be reduced to admissible evidence to prove the Defendants' intentional *discrimination*, it is admissible as part of Key's retaliation claim. Rather than proving the truth of the matter asserted, the statement could evidence Key's state of mind when she made her complaint to Cureton, which is relevant to the first element of her retaliation claim. *See United States v. Jeri*, 869 F.3d 1247, 1261 (11th Cir. 2017) (holding that "before a statement that would otherwise be inadmissible hearsay can be admitted under 803(3) to show the declarant's then existing state of mind, the declarant's state of mind must be a relevant issue in the case" (quotations and citation omitted)). Whether Robinson, in fact, made the statement is a question of fact for the jury.

### b. Adverse Employment Action

Key presents evidence that, following her complaint of race discrimination to Cureton, Dynamic never reached out to offer a new employment assignment, effectively terminating her employment with Dynamic. Termination certainly satisfies the low "well might have dissuaded" standard for Key's retaliation claim. *See White*, 548 U.S. at 68. Key therefore presents sufficient evidence to meet the adverse action element of her prima facie race retaliation claim.

### c. Causal Connection

Key has presented sufficient evidence to raise a question of fact as to a causal connection between her protected activity and the alleged adverse employment action. There was a close temporal proximity between Dynamic's knowledge of Key's race discrimination complaint to Cureton and the adverse employment action it took against her. Cureton and Scavella could have reasonably believed that Key's complaint about being "discriminated against on the basis of [her] current hairstyle (dreadlocks), (doc. 75-14 at 2), was equivalent to a race discrimination complaint. Indeed, there is evidence that Dynamic understood Key's complaint to encompass a race discrimination claim. According to Key, Scavella advised her not to file a complaint because, given that she was not called the "n-word," Key was fighting a losing battle and had not really been discriminated against. Moreover, by August 11, 2017, Dynamic knew that Key filed an EEOC Charge against Dynamic for, in part, "race discrimination." (*See* Doc. 68-3, 27). In its September 1, 2017, position statement on this Charge, Dynamic stated: "[I]t did not

discriminate or retaliate in any way against [Key] on the basis of her race, her sex, or on any other basis." (Doc. 81-13 at 2).

Key presents evidence that after her complaint to Cureton and after her Formal Charge filed against Dynamic with the EEOC, Dynamic never offered her another assignment. Moreover, on August 1, 2017, Cureton wrote an email to Dynamic human resources, saying, "I can attempt to reassign Ms. Key to a different site, but I don't think that's advisable at this time, especially if she has to carry through with the stated 'official complaint' of discrimination against Hyundai, Ms. Williams, and Ms. Robinson." (Doc. 75-25 at 26–27). This email demonstrates that Dynamic was aware of Key's complaint and that the decision to take an adverse employment action occurred very soon thereafter. *See Tolar*, 997 F.3d at 1295. Therefore, Key satisfies this element of her prima facie case.

### d. Legitimate, Nonretaliatory Reasons

Because Key has established a prima facie case of retaliation, the burden now shifts to Dynamic to produce legitimate, nonretaliatory reasons for its actions. *See id.* at 1289. Dynamic contends that it offered Key other employment opportunities, but that she refused to take any further job due to her unwillingness to work part-time, or second or third shifts. Key, however, offers contradictory evidence demonstrating she was never offered any more assignments from Dynamic, and that she indicated to Dynamic that she would be willing to work any shift.

At the summary judgment stage, the Court must construe the evidence in the light most favorable to Key. There is a dispute of fact as to whether Key was offered further

38

employment from Dynamic. Therefore, the "presumption that the adverse action was the product of an intent to retaliate" remains unrebutted. *Bryant*, 575 F.3d at 1308. Key has presented sufficient evidence to raise a genuine dispute of fact as to her § 1981 race retaliation claim against Dynamic, and Dynamic's motion for summary judgment on Count V is due to be DENIED.

### 2. HEA[13]

HEA does not dispute that Key suffered an adverse action in the form of termination from her work at the HMMA plant, but it does argue that she did not engage in a statutorily protected activity and that, if she had, there was no causal relationship between her complaint about discrimination and her being fired for wearing her hair in dreadlocks.

At issue in Key's retaliation claim against HEA is the complaint she voiced to Howell the morning of August 1, 2017, which was then brought to the attention of Williams. Key told Howell that she felt discriminated against because she was "being treated unfairly because of [her] hair." (Doc. 68-12 at 40). After Robinson confronted Key about whether she felt discriminated against, Robinson and Williams concurred that Key should be reassigned to a new site. Williams memorialized this decision to terminate her assignment at the Hyundai plant in an email to Cureton at 8:50 a.m. on August 1, 2017. Williams' decision to terminate Key came after her first complaint voiced to Howell but before her written complaint submitted to Cureton at the Dynamic office.

---

[13] The Court previously dismissed Key's Title VII race retaliation claim against HEA, *see Key*, 2021 WL 3909663, at *5, and so only a § 1981 race retaliation claim remains as to HEA.

39

While Key's race retaliation claim against *Dynamic* satisfies the "objective reasonableness" prong of her statutorily protected activity prima facie element, Key cannot meet this prong in her claim against *HEA*.  Key fails to produce evidence that the complaint she made to Howell the morning of August 1, 2017, reasonably referenced unlawful race discrimination.   Regardless of whether Key had a good faith subjective belief that complaining about HEA's appearance standard was a complaint about race discrimination, there was no objective basis at that point for her to believe the policy was racially discriminatory. *See Furcron*, 843 F.3d at 1311.  The context of Key's complaint to HEA is different from the context of her complaint to Dynamic.   When Key complained to Dynamic about discrimination based on her dreadlocks, she had allegedly been told by Robinson that "the Koreans" did not like "African Americans" wearing their hair in dreadlocks.  A reasonable jury could find that, in this context, Key's complaint related to race discrimination.   There was no such context in Key's earlier complaint to Howell, which was then communicated to HEA.  Prior to Robinson's alleged comments, when Key made her complaint to Howell, there was no evidence that Key reasonably believed the appearance standard was being applied disparately to black persons.

The Eleventh Circuit makes it clear that if offensive conduct is not unlawfully discriminatory, opposing that conduct does not constitute protected activity. *See, e.g.*, *Butler v. Ala. Dep't of Transp.*, 536 F.3d 1209, 1214 (11th Cir. 2008) ("Where binding precedent squarely holds that particular conduct is not an unlawful employment practice by the employer, and no decision of this Court or of the Supreme Court has called that

40

precedent into question or undermined its reasoning, an employee's contrary belief that the practice is unlawful is unreasonable."); *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1317 (11th Cir. 2002) ("Finally, the plaintiffs may not stand on their ignorance of the substantive law to argue that their belief was reasonable. As we have stated previously, '[i]f the plaintiffs are free to disclaim knowledge of the substantive law, the reasonableness inquiry becomes no more than speculation regarding their subjective knowledge.'" (citation omitted)).

At the time of Key's employment in this case, the Eleventh Circuit held that a race-neutral grooming policy that prohibited wearing dreadlocks is not racially discriminatory on its face. *See Catastrophe Mgmt.*, 852 F.3d at 1035 (rejecting the argument that a no-dreadlock policy on its face is a proxy for intentional race discrimination, so long as the grooming policy is applied race-neutrally); *cf. Willingham*, 507 F.2d at 1091 (holding that men and women could be subject to different grooming standards because length of hair was "related more closely to the employer's choice of how to run his business than to equality of employment opportunity," and both sexes were subject to grooming policies); *Harper*, 139 F.3d at 1387, 1389 (according to precedent established in *Willingham*, "plaintiffs could not have had an objectively reasonable belief that [defendant] . . . discriminated against them on the basis of their sex" when they complained about a "grooming policy that prohibited men, but not women, from wearing long hair").

Key fails to provide sufficient evidence that she knew or thought the policy was applied in a racially disparate manner when she complained to Howell, and thus she had

no objective belief that she engaged in a protected activity. Therefore, Key fails to show that her complaint was "a good faith, reasonable belief that the employer was engaged in unlawful employment practices." *Furcron*, 843 F.3d at 1311 (citation omitted). Additionally, Williams did not perceive Key's "complaints about hairstyle to be about race." (Doc. 71-14 at 5). So, there could be no causal link between Key's purported protected activity and termination. *See Patterson*, 38 F.4th at 1351 (holding "a plaintiff must show that the relevant decisionmaker was aware of the protected conduct"). Key therefore fails to meet the first element of her prima facie race retaliation claim against HEA, and no genuine dispute of fact remains as to her § 1981 race relation claim against HEA; its motion for summary judgment is due to be GRANTED regarding Count V.

### 3. HMMA

Key asserts that HMMA retaliated against her in violation of Title VII and § 1981 because Williams, acting as HMMA's agent, terminated Key's employment at the plant after she complained about race discrimination. Even if Williams acted as HMMA's agent, any race retaliation claim against HMMA fails because Key cannot make out a prima facie retaliation case based on Williams' knowledge alone. As discussed above, because there was no objectively reasonable basis for Key to believe that her complaint voiced to Howell the morning of August 1, 2017—the only complaint that Williams knew about—was a statutorily protected activity, she cannot make out a prima facie retaliation case based on Williams' knowledge alone. Indeed, Williams' knowledge of her first complaint is the only basis on which Key seeks to hold HMMA liable for retaliation. Therefore, Key fails

to create a genuine dispute of fact as to a prima facie retaliation case against HMMA as well as HEA, and HMMA's motion for summary judgment is due to be GRANTED as to Counts IV and V.

## VI. CONCLUSION

Accordingly, and for good cause, it is

ORDERED that:

1) Dynamic's motion to strike the declaration of Davita Key (doc. 88) is DENIED;

2) HMMA's motion for summary judgment (doc. 66) is GRANTED, and all Plaintiff's claims against HMMA are DISMISSED;

3) HEA's motion for summary judgment (doc. 69) is GRANTED, and all Plaintiff's claims against HEA are DISMISSED;

4) Dynamic's motion for summary judgment (doc. 73) is GRANTED, to the extent that Plaintiff's Counts I, II, III, and IV are DISMISSED as to Dynamic; and

5) Dynamic's motion for summary judgment (doc. 73) is DENIED in all other respects.

Done this 10th day of February, 2023.

_____/s/ Emily C. Marks_____
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

DAVITA KEY,                              )
                                         )
    Plaintiff,                           )
                                         )
v.                                       ) CIVIL ACT. NO. 2:19-cv-767-ECM
                                         )              (WO)
HYUNDAI MOTOR MANUFACTURING,             )
ALABAMA, LLC, *et al.*,                  )
                                         )
    Defendants.                          )

## MEMORANDUM OPINION and ORDER

### I. INTRODUCTION

Davita Key ("Plaintiff" or "Key") filed the operative complaint in this action on June 1, 2020, (doc. 28), in which she alleges Defendants Hyundai Motor Manufacturing Alabama, LLC, ("HMMA"), Hyundai ENG America, Inc., ("HEA"), and Dynamic Security, Inc., ("Dynamic") (collectively "the Defendants") discriminated against her because of her pregnancy and race. Specifically, Key brings claims against all Defendants for pregnancy discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") (count one); race discrimination under Title VII (count two); race discrimination pursuant to 42 U.S.C. § 1981 (count three); retaliation under Title VII (count four); and retaliation pursuant to 42 U.S.C. § 1981 (count five). (Doc. 28).

Now pending before the Court are the Defendants' motions to dismiss the Plaintiff's first amended complaint. (Docs. 30–32). For the reasons that follow, the Defendants' motions (docs. 30, 31 and 32) are due to be GRANTED in part and DENIED in part.

1

## II. JURISDICTION AND VENUE

The Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and the jurisdictional grant found in 42 U.S.C. § 2000e-5(f)(3). Personal jurisdiction and venue are uncontested, and the Court concludes that venue properly lies in the Middle District of Alabama. *See* 28 U.S.C. § 1391.

## III. LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (alteration in original) (citation omitted). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id*., at 678. Conclusory allegations that are merely "conceivable" and fail to rise "above the speculative level" are insufficient to meet the plausibility standard. *Twombly*, 550 U.S. at 555–56. This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Indeed, "[a] pleading that offers 'labels and

2

conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"
*Id*.

## IV. FACTS AND PROCEDURAL HISTORY[1]

Key applied for and was offered an interview with Dynamic Security, an employment agency, for a mail clerk position at the Hyundai Plant in Montgomery, Alabama.  At the interview, she met with Gloria Robinson, a Dynamic employee, Maurice Chambliss,[2] and Cassandra Williams, an HEA employee.

For the interview, Key wore her hair in "a neat dreadlocks style."  At the end of the interview, Robinson asked Williams if Key's hairstyle was "okay."  Williams "turned up her nose" and asked Key if she could take her hair down.  Key responded that she could take her hair down only if she cut it.  Williams then asked Robinson about the hair policy at the plant.  Robinson did not think Key's hairstyle was allowed.  In response, Key showed Robinson and Williams that she could wear her hair "up."  Both approved of the style. Two days later, Robinson hired Key for the mail clerk position at Hyundai.

The next week, Key trained and completed paperwork at Dynamic's facility.  After training, Key asked Nicole Scavella, Dynamic's office manager, whether her hairstyle was consistent with company policy.  Scavella told Key she did not think there would be an issue because her hair was neat and consistent with policy.

---

[1] This recitation of the facts is based upon the Plaintiff's complaint.  At this stage of the proceedings, for purposes of ruling on the motions to dismiss, the facts alleged in the complaint and reasonable inferences drawn therefrom are set forth in the light most favorable to the Plaintiff.

[2] The complaint does not specify which entity employed Maurice Chambliss or in what capacity he was employed.

3

On July 31, 2017, Key arrived at the Hyundai plant for her first day of work. She wore her hair in the same manner as in her interview and approved by Scavella. During her training at the plant, Key received a safety manual marked "Hyundai Motor Manufacturing of Alabama, LLC."

Both Robinson and Williams spoke with Key. Although Key's hair was fully visible, neither commented on it.

After receiving instructions from Robinson, Key told Robinson and Chambliss that she was pregnant. Key informed Robinson and Chambliss of her pregnancy to notify them of upcoming doctor appointments. She also gave them a note from her doctor that indicated that Key "was pregnant, had no restrictions, and would be able to fulfill all her duties."

Robinson took the note to the office she shared with Williams. About ten minutes later, Williams twice came to Key's area. Williams asked Key "what she was going to do about her hair." Key responded that Dynamic told her that her hair was neat and in compliance with policy. Williams "aggressively" and "loudly" told Key that it was "what she [Williams] said that mattered" and "not what Dynamic had told [Key]."

Shortly thereafter, Key was called to the office where she met with Williams, Robinson, and Chambliss. Williams sternly informed Key that she could not keep her hairstyle because it violated policy. Key asked to see the policy. They showed Key a policy for a female uniformed officer—not Key's position. Williams told Key that Dynamic could send her to other facilities if it approved of her hairstyle; but she could not wear her current hairstyle at the Hyundai plant. Williams explained women could wear braids, which were different because of the "name and professionalism" and the scalp was

visible. Key asked if her hairstyle would be appropriate if her scalp was visible, but Robinson and Williams would not answer her question.

Williams told Key she would have to get her hair restyled and gave Key the option of "wearing a hat all day every day if all her hair was covered." Key responded she had a hat at home that could cover all her hair. After telling Key to contact her stylist, Robinson sent Key home for the day and said they "would go from there." Key left the plant, having worked approximately 3.5 hours.

Within minutes of leaving the Hyundai plant, Robinson called Key and asked her baby's due date and whether "her doctor knew she would be lifting boxes." Key said she was due in six months and that her doctor had cleared her to perform her work responsibilities.

The next day, August 1, 2017, Key reported to the Hyundai plant. In compliance with Williams' instructions, she wore a hat that completely covered her hair. As Key and her trainer made their rounds, they encountered Robinson and Williams. Neither said anything about Key's hat or hairstyle. On the way back to the mailroom, her trainer asked Key why she was sent home the previous day. Key explained she was sent home because of her hair. Key said, "she did not think it was right," but she still wanted "to work with them."

After returning to the mailroom, Key was summoned to the security building to meet with Robinson and Chambliss. Robinson asked Key "if anything was wrong with her." Although Key did not know the reason for the question, she replied she was fine and explained that she wore a hat because she had not yet gotten a hair appointment. Robinson

5

told her the meeting was not about the hat and asked, "so you feel discriminated against?" When Key replied that "she had no comment," Robinson responded, "so you do." Robinson also stated that Key's trainer said Key felt that she was being discriminated against. Robinson told Key that the Koreans "were a different breed of animals and they send little memos saying that they do not want African-Americans wearing their hair in dreadlock hairstyles." Robinson said Key and her situation were going to be problematic. Nonetheless, Key returned to work.

When Key returned to the mailroom, she wrote a formal complaint against Hyundai, Robinson, and Williams. She told Chambliss she wanted to file a complaint with human resources. He told her to speak with Williams and Robinson. Key was concerned about speaking directly with Williams and Robinson, so Chambliss told her to go speak with Ray Cureton at Dynamic's facility. Key immediately left the Hyundai plant and went to the Dynamic facility.

Key met with Cureton and Scavella who told Key that her efforts would be "fruitless and that filing a discrimination complaint is a serious offense." Cureton then added that "Williams did not want [Key] at the Hyundai plant anymore because of her hair and 'something else.'" Cureton told Key he would forward her complaint to the HR office in Birmingham. He also told Key he would contact her in a few days to review the dismissal paperwork from Hyundai. "Scavella walked Key to her car and told [Key] that she (Scavella) had 'really' been discrimination (sic) against and that what Key experience[d] (sic) was not discrimination and she was fighting a losing battle."

The next day, Robinson, using a HMMA email address, emailed Cureton and others at Dynamic to specify that Hyundai's policy did not permit women to have "cornrows or dreads." She specifically "asked that Key not return to the plant." Dynamic did not place Key in any other assignments. When Key received a paycheck from Dynamic for her partial days of work, HMMA was listed as the customer.

On August 3, 2017—the day after Key was terminated—she completed an EEOC intake questionnaire setting forth her allegations against Dynamic and "Hyundai." She described "Hyundai" as being located at 700 Hyundai Blvd., Montgomery, Alabama. The EEOC created two charges: one against HMMA and another against Dynamic.

Although the EEOC dismissed her charge against Dynamic on March 1, 2019, Key alleges that she did not receive the right to sue letter until Dynamic filed it in this action.

On July 12, 2019, the EEOC issued a cause finding and notice of right to sue against HMMA. Key alleges that she believed her claims against Dynamic had been "incorporated with the Hyundai charge." She further asserts that when she received the notice of right to sue on her Hyundai charge, she believed that it also applied to the charge against Dynamic. On October 10, 2019, Key filed suit against HMMA, HEA, and Dynamic. Key filed this action within 90 days of her receipt of the EEOC charge determination against "Hyundai."

## V. DISCUSSION

The Defendants move to dismiss the Plaintiff's claims of pregnancy discrimination, race discrimination and retaliation under Title VII and race discrimination and retaliation claims under § 1981. The Defendants argue that the Plaintiff has not stated a plausible claim for relief against them under any of the causes of action. In response, the Plaintiff

7

argues that she pleaded sufficient facts to withstand the Defendants' motions to dismiss. The Court turns first to the Defendants' motions to dismiss the Plaintiff's Title VII claims.

## A. **Title VII**

In addition to their arguments that the Plaintiff has failed to state a claim under Title VII, the Defendants also argue that the Plaintiff's Title VII claims are barred for several procedural deficiencies as well. HEA argues that Key's Title VII claims against it are due to be dismissed because the Plaintiff did not specifically name HEA in her EEOC charge. Thus, she did not exhaust her administrative remedies against HEA with the EEOC. (Doc. 31 at 1). HEA and HMMA also argue that the claims against them should be dismissed because they had no employment relationship with the Plaintiff. (Doc. 30 at 2–8; doc 31 at 7–8).

Dynamic argues that Key failed to file her lawsuit against Dynamic within the prescribed statutory period after receiving a determination from the EEOC, so her Title VII claims against Dynamic should be dismissed. (Doc. 32 at 1).

The Court first considers the preliminary issues of whether the claims are procedurally barred for failure to satisfy administrative prerequisites and whether the Plaintiff has adequately pleaded facts to show that HEA or HMMA were Key's joint employers. The Court will then turn to whether the Plaintiff has stated claims for relief under Title VII or § 1981.

8

### 1. Procedural prerequisites

### a. Plaintiff failed to exhaust her administrative remedies as to HEA

HEA argues that the Plaintiff failed to exhaust the EEOC administrative remedies by not naming HEA in her EEOC charge.  (Doc. 31 at 1).  HEA points out that nowhere in the Plaintiff's complaint does she identify HEA as the "Hyundai" entity located at 700 Hyundai Blvd, and the only connection that the Plaintiff makes with HEA is in her intake form identifying Cassandra Williams—specifically identified as an employee AMCO, the former name of HEA.  (Id. at 11).  Further, in her EEOC charge against HMMA she identified Williams—an HEA employee— as an employee of HMMA.[3]  (Doc 13-1).  HEA argues that allowing the Title VII claims to proceed against HEA, a party not named in Key's EEOC charge, would not fulfill the purpose of Title VII. (Doc. 31 at 11).

---

[3] Although the Plaintiff did not attach a copy of her EEOC charges to her complaint, defendants HMMA and Dynamic attached copies to their motions to dismiss the complaint. (Doc. 11-1; Doc. 13-1 and 2).  In general, the Court considers matters outside the pleadings on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the motion is converted into a motion for summary judgment.  The Court may consider exhibits attached to a motion to dismiss in certain circumstances, however, without converting the motion to dismiss into a motion for summary judgment.

> Our Rule 12(b)(6) decisions have adopted the "incorporation by reference" doctrine, see In re Silicon Graphics Inc. Securities Litigation, 183 F.3d 970 (9th Cir.1999), under which a document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment only if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed. See Harris v. Ivax Corp., 182 F.3d 799, 802 n.2 (11th Cir.1999). "Undisputed" in this context means that the authenticity of the document is not challenged. See, e.g., Beddall v. State Street Bank and Trust Co., 137 F.3d 12, 16–17 (1st Cir.1998); GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir.1997); Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir.1994).

Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002).

> Although Key did not attach her EEOC charges to her amended complaint, she references them; they are central to her claims; and she does not dispute its contents or authenticity.

Key responds that she listed "Hyundai" in her EEOC charge as her employer at 700 Hyundai Blvd, and that HEA operates at that facility.  (Doc. 34 at 17).  The Plaintiff asserts that HEA and HMMA "operate out of the same facility, for the same interest, share policies, and act as joint employees," (*id.*), so notice to HMMA was sufficient as to HEA.

HEA argues that neither the Plaintiff nor the EEOC provided it notice about Plaintiff's EEOC claim.  (Doc. 31 at 12).  Even if it was aware of Plaintiff's charge, HEA suggests that the charge would not have put HEA on notice that it faced potential liability as an employer of the Plaintiff.  (*Id.*).  HEA also claims that it was not invited to participate or included in the EEOC conciliation process, and that they were prejudiced by this exclusion from the proceedings.  (*Id.*).  In response, the Plaintiff does not assert that she filed an EEOC complaint against HEA but instead argues that she pleaded enough facts to show that including HEA would be consistent with the purposes of Title VII.  (Doc. 34 at 16).

Before bringing a Title VII claim, a plaintiff is required to exhaust administrative remedies which includes first filing a charge with EEOC.  *Virgo v. Riviera Beach Assocs., Ltd.*, 30 F.3d 1350, 1358 (11th Cir. 1994) (referencing 42 U.S.C. § 2000e-5).  Generally, a plaintiff must name a defendant in an EEOC charge before proceeding against it in subsequent litigation under Title VII.  *Id.*  However, "courts liberally construe this requirement." *Id.*  Although the naming requirement "serves to notify the charged party of the allegations and allows the party an opportunity to participate in conciliation and voluntarily comply with the requirements of Title VII," courts allow claims against unnamed parties to proceed if doing so would fulfill the purposes of Title VII.  *Peppers v.*

10

*Cobb Cty., Georgia*, 835 F.3d 1289, 1296 (11th Cir. 2016). To determine whether the purposes of Title VII have been met, a court considers:

> (1) the similarity of interest between the named party and the unnamed party; (2) whether the plaintiff could have ascertained the identity of the unnamed party at the time the EEOC charge was filed; (3) whether the unnamed parties received adequate notice of the charges; (4) whether the unnamed parties had an adequate opportunity to participate in the reconciliation process; and (5) whether the unnamed party actually was prejudiced by its exclusion from the EEOC proceedings.

*Peppers*, 835 F.3d at 1296 (citing *Virgo*, 30 F.3d at 1358–59).

Here, allowing Title VII claims to proceed against HEA would not advance the purpose of Title VII. The Plaintiff demonstrated in her EEOC charge that she was aware of the distinction between her employers when she brought separate charges against HMMA and Dynamic. In addition, she showed that she could distinguish between the two Hyundai entities when she identified Williams as an AMCO (HEA) employee in her intake questionnaire and an HMMA employee in her charge. *Compare* Doc. 11-2 and Doc. 13-1. Further, simply directing her discrimination charge against at "Hyundai" located 700 Hyundai Blvd. did nothing to put HEA on notice that Key asserted a claim against it. Indeed, Key asserts in the complaint that "HMMA contracted with HEA in 2017 for HEA to provide services at HMMA's Montgomery, Alabama location." (Doc. 28 at 2). These allegations illustrate that HEA and HMMA are distinct entities which contracted with one another for the provision of services. Unlike in *Virgo*, 30 F.3d at 1359, where the plaintiff used the name under which her actual employer did business, the Plaintiff alleged in her complaint that HEA and HMMA are separate corporate entities. Although the Plaintiff

11

implies that HMMA received notice of the EEOC complaint, (doc. 28 at 5), she alleges nothing to suggest that HEA was on notice of her charge. She argues that because HEA and HMMA are an integrated enterprise, notice to both was unnecessary. In contrast to *Virgo* where named and unnamed defendants shared executives who knew of the charge, there is no indication that HEA was ever on notice of the Plaintiff's EEOC charge. 30 F.3d at 1359. Although Key alleges "[u]pon information and belief, HEA and HMMA are joint employers and/or an integrated enterprise," (doc. 28 at 3), she fails to allege sufficient facts to support this vague assertion. The failure to name HEA in the EEOC charge, thereby depriving it of an opportunity to participate in the conciliation process, constitutes prejudice to HEA. Because the Plaintiff does not plead sufficient facts to demonstrate that proceeding against HEA would advance the purposes of Title VII, her Title VII claims against HEA are due to be DISMISSED for her failure to exhaust her administrative remedies against that entity.

### b. Plaintiff's claims against Dynamic

Dynamic argues that the Plaintiff did not plead that "all conditions precedent to the institution of the lawsuit have been fulfilled" pursuant to Fed. R. Civ. P. 9(c), so the Court must dismiss all of the Plaintiff's Title VII claims against Dynamic. Specifically, the Defendant asserts the Plaintiff failed to bring her lawsuit within the statutory period prescribed by Title VII. (Doc. 32 at 1). Dynamic contends that, on March 1, 2019, the EEOC District Director mailed to the Plaintiff a notice of right to sue, (*id.* at 3), of which Dynamic received a copy. (Doc. 13-3). Plaintiff had 90 days within which to file a lawsuit in district court. Because the Plaintiff filed her suit on October 10, 2019—more than a

hundred days after the June 3, 2019 deadline—the Plaintiff's Title VII claims are untimely. Further, Dynamic argues that the Plaintiff did not plead any specific facts that she did not receive the notice of right to sue on March 1, 2019, or that the EEOC had combined her Dynamic claim with her Hyundai claim. (Doc. 32 at 9, 11).

In response, the Plaintiff asserts that she did not receive the Dynamic right to sue letter until it was filed by one of the defendants in this case. (Doc. 28 at 5). She further contends that she thought the charges were handled together and her claims against Dynamic were included in the right to sue notice against HMMA. So, according to the Plaintiff, it was enough for her to set forth that she received the right to sue letter only when it was attached to a filing in the case. (Doc. 34 at 18). Because of this, she argues, she is not required to plead more specific facts of when she received the right to sue letter. (*Id.*). Instead, she argues that the "three-day" rule applied by the Defendant is only applicable when there is no alternative proof of when the Plaintiff received the right to sue letter. (*Id.* at n.8).

Title VII provides that "[w]ithin ninety days after the giving of . . . notice [of dismissal of the charge] a civil action may be brought against the respondent named in the charge . . . by the person claiming to be aggrieved . . . ." 42 U.S.C § 2000e–5(f)(1). When a defendant contests whether the complaint was timely filed, the plaintiff bears the burden of showing that the plaintiff has met the timeliness requirement. *Kerr v. McDonald's Corp.*, 427 F.3d 947, 951 (11th Cir. 2005); *Green v. Union Foundry Company,* 281 F.3d 1229, 1233–34 (11th Cir. 2002). The Eleventh Circuit further explained that determinations on when notice was received, and thus the start of the 90-day limitation period, are to be

13

considered, "on a case-by-case basis to fashion a fair and reasonable rule for the circumstances of each case, one that would require plaintiffs to assume some minimum responsibility . . . without conditioning a claimant's right to sue . . . on fortuitous circumstances or events beyond [her] control." *Kerr*, 427 F.3d at 952 (citing *Zillyette v. Capital One Fin. Corp.*, 179 F.3d 1337, 1340 (11th Cir. 1999)) (alternations in original). However, when there is a dispute about when the plaintiff received notice of the EEOC determination, the Eleventh Circuit has applied a "presumption of three days for receipt by mail." *Kerr*, 427 F.3d at 953 n.9; *Zillyette*, 179 F.3d at 1342.

"Because courts must make findings of fact regarding when a plaintiff . . . received [notice] in order to determine whether an action was timely filed, courts tend to this issue at summary judgment or after holding an evidentiary hearing." *Blair v. Brennan*, 2017 WL 2538564, at *2 (M.D. Fla. June 12, 2017). *See also Kerr,* 427 F.3d at 951–52 (summary judgment); *Zillyette*, 179 F.3d at 1341 (summary judgment); *Lewis v. Conners Steel Co.*, 673 F.2d 1240, 1243 (11th Cir. 1982) (reversing dismissal and remanding for an evidentiary hearing). When courts have considered the issue at the motion to dismiss stage, two general trends have emerged. If the plaintiff does not dispute receiving notice or does not plead any facts about when notice was received, courts apply the three-day receipt presumption and will dismiss the claim if it is untimely. *See Hood v. WalMart Store #5903*, 2020 WL 3555226, at *2 (M.D. Ala. June 11, 2020), *report and recommendation adopted*, 2020 WL 3549992 (M.D. Ala. June 30, 2020); *Howard v. Sec'y of the Army*, 2015 WL 4496129, at *5 (M.D. Fla. July 23, 2015) ("Howard has not contested the date Defendants contend she received the letter, nor has she attempted to refute the presumption of

14

receipt."); *Mims v. Monroe Cty. Bd. of Educ.*, <u>2014 WL 2508732</u>, at *3 (S.D. Ala. June 4, 2014) (finding that even though the plaintiff did not offer any evidence of when she received the right to sue letter, the court assumed she received it three days after mailing and her claim was timely filed).  However, if a plaintiff disputes when or if she received a right to sue letter and pleads sufficient supporting facts, courts have either denied the motion to dismiss without prejudice or allowed limited discovery to the issue of when the plaintiff received notice of the determination. *Blair*, <u>2017 WL 2538564</u> at *2 (allowed limited discovery about receipt when plaintiff argued "that USPS must have misdelivered [the determination] addressed to his attorney's office because his attorney did not receive [the determination] on November 12 (a Saturday) or November 14 (the next business day)") (brackets added); *Themm v. Tervis Tumbler Co.*, <u>2015 WL 1293120</u>, at *1, 4 (M.D. Fla. Mar. 23, 2015) (denied motion to dismiss without prejudice when the plaintiff argued she only received notice of the right to sue letter when her lawyer requested the letter and was told it had been sent almost three months before).

Here the Plaintiff argues that she only received notice of the Dynamic right to sue letter when it was filed as an attachment to the Defendants' motions to dismiss, and she had never received a copy from the EEOC in the mail.  She further argues that she thought when she received the HMMA right to sue letter that it had integrated her charges against Dynam<u>ic. (Doc. 34 at 18</u>).  Because the Plaintiff disputes when she received the Dynamic right to sue letter and pleads facts, which taken as true as to when she received notice, it would be premature to dismiss her Title VII claim as untimely at this time. This case is distinguishable from other cases that were dismissed for untimeliness at the motion to

dismiss stage because in those cases, the plaintiffs either did not contest receipt or did not plead any facts of when they received notice. The Plaintiff here pleads enough facts that she did not receive notice until she received the Dynamic right to sue letter from Dynamic. (Doc. 28 at 5). Therefore, the motion to dismiss the Plaintiff's Title VII claims against Dynamic on timeliness grounds is due to be DENIED without prejudice.

### 2. *Joint employer theory*

Because the Plaintiff did not file an EEOC charge against HEA and the Court has concluded that the Title VII claims against HEA should be dismissed, the Court only addresses whether HMMA had an employment relationship Key.

### a. **The Plaintiff has pleaded enough facts to support a plausible employment relationship between HMMA and Key**

HMMA claims that the Plaintiff has not plausibly pleaded that HMMA was a joint employer of the Plaintiff. (Doc. 30 at 2-8). According to HMMA, because every step of the Plaintiff's employment was predominated by employees of Dynamic and HEA, no HMMA employee played any role in the Plaintiff's employment. (*Id.* at 3). As alleged in the complaint, the Plaintiff applied for employment with Dynamic; the grooming policy was enforced by employees of HEA or Dynamic; and an HEA employee (Williams) did not want Key to return the Hyundai plant. (Doc. 28 at 6–7, 12). HMMA argues that the Plaintiff, without factual support, combined HMMA and HEA in her pleadings. (Doc. 30 at 4). The only claims specific to HMMA were that it provided the work site and a safety manual. (*Id.* at 5). HMMA asserts that, because these two instances would be insufficient to provide a factual basis that HMMA was Key's joint employer, the allegations are conclusory and, therefore, should not be considered under 12(b)(6). (*Id.* at 4-5).

16

Because Plaintiff alleged various facts that support the interrelationship between the Defendants, the Plaintiff asserts she pleaded enough facts to show the Defendants are joint employers or involved in an integrated enterprise.[4] (Doc. 34 at 5-7). Because the Plaintiff alleges a plausible employment relationship, she argues her claims against HMMA should survive the motion to dismiss. (*Id.* at 8).

"A Title VII . . . discrimination claim can only be brought by an employee against [her] employer." *Peppers*, 835 F.3d at 1297 (alteration added). However, courts have interpreted the term "employer" liberally in line with the remedial purpose of Title VII. *Id.* The Eleventh Circuit has explained the existence of an employer relationship turns on the question of "who (or which entity) is in control of the fundamental aspects of the employment relationship that gave rise to the claim." *Id.* (citing *Lyes v. City of Riviera Beach*, 166 F.3d 1332, 1345 (11th Cir. 1999) (en banc)). To answer this question, courts consider "the totality of the employment relationship." *Peppers*, 835 F.3d at 1297 (citing *Welch v. Laney*, 57 F.3d 1004, 1011 (11th Cir. 1995)). Courts consider: "(1) how much control the alleged employer exerted on the employee, and (2) whether the alleged employer had the power to hire, fire, or modify the terms and conditions of the employee's employment." *Id.* (citing *Welch*, 57 F.3d at 1011). In the joint employer context, courts

---

[4] The Plaintiff has not pleaded facts, however, to show that Defendants HEA and HMMA are an integrated enterprise. An integrated enterprise exists "where two nominally separate entities are actually part of a single integrated enterprise so that, for all purposes, there is in fact only a single employer." *Long v. Aronov Realty Mgmt., Inc.,* 645 F. Supp. 2d 1008, 1029 (M.D. Ala. 2009) (quotation marks omitted). "The single employer analysis involves examining various factors to determine if two nominally independent entities are so interrelated that they actually constitute a single integrated enterprise. . . ." *Id.*, (citing *Swallows v. Barnes & Noble Book Stores, Inc.,* 128 F.3d 990, 993 n.4 (6th Cir. 1997)). Beyond conclusory assertions, the Plaintiff has not pleaded enough facts to show the sufficient level of interrelation between HEA and HMMA to be an integrated enterprise.

examine the alleged employer's control over: "(1) the means and manner of the plaintiff's work performance; (2) the terms, conditions, or privileges of the plaintiff's employment; and (3) the plaintiff's compensation." *Kaiser v. Trofholz Techs., Inc.,* 935 F. Supp. 2d 1286, 1293 (M.D. Ala. 2013). The Eleventh Circuit has explained that "the focal point of the inquiry is not which entity controlled the specific aspect of the relationship giving rise to a discrimination claim, but rather which entity or entities controlled the fundamental and essential aspects of the employment relationship when taken as a whole." *Peppers,* 835 F.3d at 1301.

Courts usually determine whether a defendant is a joint employer at the summary judgment stage because such a determination requires a factual determination. Therefore, at the motion to dismiss stage, the Court is limited to considering whether a plaintiff has alleged sufficient facts that the defendant had enough control to plausibly be a joint employer. *Caver v. Help at Home LLC,* 2019 WL 2024265, at *2 (N.D. Ala. 2019). For example, in *Kaiser,* 935 F. Supp. 2d at 1293, the court found that the plaintiff had pleaded sufficient factual allegations to support the inference of an employment relationship when she alleged that the alleged employer employed her supervisors who could report on her job performance and her supervisors precipitated her termination by threatening to terminate her employer's contract. Similarly, a court found a plausible employment relationship existed when the plaintiff pleaded that the alleged employer provided feedback, oversaw day-to-day employment, work hours, and could discipline and remove employees. *Linzy v. Alabama Dep't of Pub. Health,* 2020 WL 6205848, at *2 (M.D. Ala. Oct. 22, 2020). The *Linzy* court further noted that the plaintiff need not allege that the

employer controlled every aspect of employment. *Id.* Further, in *Caver*, the court concluded that the plaintiff had plausibly alleged facts supporting the existence of an employment relationship when the employer's name was used on internal records, the plaintiff's paychecks, and the plaintiff's termination email. 2019 WL 2024265 at *2. However, a court found there was no plausible employment relationship when the plaintiff only pleaded that he "worked under the supervision" of the alleged employer, attended a meeting called by the alleged employer, and reported harassment to the alleged employer by one of its employees. *Isaacs v. Felder Servs., LLC*, 2014 WL 2806128, at *3 (M.D. Ala. 2014). And another court found there not to be a plausible employment relationship in light of only pleading "[t]here existed an employer-employee relationship between Plaintiff and Defendants" without specific factual support beyond "[m]ere shadowy allegations." *Craighead v. Austal USA, LLC*, 2017 WL 6559917, at *4 n.7 (S.D. Ala. 2017).

Here, the Plaintiff pleads enough facts—barely—to plausibly show that HMMA had enough control of her employment to support an employment relationship. After disregarding conclusory and speculative "upon information and belief" statements,[5] the Plaintiff has pleaded that she worked at a facility owned by HMMA, (doc. 28 at 2), received a safety manual "marked Hyundai Motor Manufacturing, LLC", (*id.* at 8), an HEA employee emailed Dynamic from an HMMA email address stating dreadlocks were not allowed, (*id.* at 13), and HMMA was the customer identified on the Plaintiff's check from Dynamic. (*Id.*). The Plaintiff also alleges that she was told that the Koreans were a

---

[5] The Court is not required to accept as true the Plaintiff's conclusory "upon information and belief" statements without more factual information. *Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013) (citing *Twombly*, 550 U.S. at 551 (declining to take as true the conclusory allegation "upon information and belief" that the companies had entered a conspiracy without enough facts to take that statement plausible)).

"different breed of animals and they send little memos saying that they do not want African-Americans wearing their hair in dreadlock hairstyles. . .." (*Id.* at 11–12). Although the Plaintiff does not plead that HMMA had the same amount of control to directly supervise or set work hours as in *Kaiser* or *Lenz,* she has alleged that she worked at facility owned by HMMA and, similar to *Caver*, that HMMA's name was used on her paycheck and emails about Key came from an HMMA email address. Although the Plaintiff's complaint contains conclusory statements about the nature of the employment relationship, there are enough factual allegations to distinguish the instant case from the cases where courts concluded that statements could not be considered more than mere allegations. Therefore, at this point, HMMA's motion to dismiss on the basis that it was not the Plaintiff's employer is due to be DENIED.

### 3. *Title VII claims against HMMA and Dynamic*

Because the Plaintiff failed to exhaust the administrative remedies against HEA, the only Title VII claims that remain are against Dynamic and HMMA. The Court first considers whether the Plaintiff has pleaded sufficient facts to proceed on her race discrimination and the pregnancy discrimination claims. The Court will then turn to whether the Plaintiff has alleged sufficient facts to support her claims of retaliation.

#### a. **Race Discrimination**

HMMA argues that the Plaintiff cannot state a claim for race discrimination because enforcing a ban on dreadlocks is not a racially discriminatory practice, and, therefore, does not fall within the ambit of Title VII. (Doc. 30 at 8). HMMA points to the Eleventh Circuit's holding in *Equal Emp't Opportunity Comm'n v. Catastrophe Mgmt. Solutions*,

20

852 F.3d 1018 (11th Cir. 2016) that a no-dreadlock grooming policy is not racially discriminatory. (Doc. 30 at 9). The Plaintiff responds that she pleaded a plausible claim under Title VII for both disparate treatment and disparate impact.

I.     Disparate treatment

HMMA argues the Plaintiff cannot plausibly plead a race discrimination claim based on the enforcement of Hyundai's dreadlock ban because dreadlocks are not an immutable characteristic of race but is an "elective, mutable style." (Doc. 30 at 9). The Plaintiff responds that the grooming policy was used to target her because she was African American and distinguishes the instant case from *Catastrophic Mgmt. Solutions, supra*. (Doc. 34 at 9–11). In *Catastrophic Mgmt. Solutions,* the court said there was no disparate treatment claim when a company applied a race neutral grooming policy. 852 F.3d at 1030. But in the instant case, the Plaintiff alleges that discrimination occurred when she was reprimanded for wearing her hair in dreadlocks based on a policy she was not shown and after she was given approval to wear her hair in that manner. (Doc. 28 at 11). In addition, she was told that the policy against dreadlocks was specific to African Americans and that her dismissal was "because of her hair and something else." (*Id.* at 11–12). She argues that these facts distinguish her case from *Catastrophe Mgmt. Solutions,* because they plausibly show that the grooming policy was used as proxy for intentional race discrimination. (Doc. 34 at 11–12).

Because the Supreme Court has explained that to survive a motion to dismiss a plaintiff is not required to plead facts to establish a prima facie case under the *McDonnell*

21

*Douglas*[6] framework, Key is only required to plausibly set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." *Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, 511–12 (2002) (citing Federal Rule of Civil Procedure 8(a)(2)). "The question in a disparate treatment case is 'whether the protected trait actually motivated the employer's decision.'" *Catastrophe Mgmt. Solutions,* 852 F.3d at 1026 (quoting *Raytheon Co. v. Hernandez,* 540 U.S. 44, 53 (2003)). Therefore, at the motion to dismiss stage, the Court must determine whether the Plaintiff has plausible pleaded sufficient facts that the Defendants discriminated against her because of a *protected trait.*

Although the *Catastrophe Mgmt. Solutions* court found that dreadlocks were not immutable traits, and, therefore, not protected under Title VII, there is some daylight between *Catastrophe Mgmt. Solutions* and this case. In that case, the court found that not hiring an employee because she would not cut her dreadlocks in compliance with the company's grooming policy did not violate Title VII. 852 F.2d at 1021–1022. The court reasoned that "Title VII protects persons in covered categories with respect to their immutable characteristics, but not their cultural practices." *Id*. at 1030. However, the Court noted the allegations before it did not suggest that the dreadlock policy was used as a proxy for intentional race discrimination. *Id.*

The allegations in this case are distinguishable from *Catastrophe Mgmt. Solutions* because there are allegations that the enforcement of the dreadlock policy was a proxy for

---

[6] The Court, in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), set forth the now familiar test for establishing a prima facie case of discrimination by presenting circumstantial evidence.

race discrimination.[7]  The Plaintiff alleges that the basis of her termination was more than her just having dreadlocks.  Unlike in *Catastrophe Mgmt. Solutions* where the company told the plaintiff it would be unable to hire her because she would not cut her dreadlocks, the Plaintiff here was first told that her hairstyle was fine if worn in a certain manner. When this was later corrected at the Hyundai plant, she was given the option to cover her hair in a hat until she could get her hair restyled.  When her supervisors became aware that she felt that she was being discriminated against because she had to wear a hat to cover her hair, they confronted her.  In this encounter, the Dynamic employee told Key, "the Koreans … were a 'different breed of animals and they send little memos saying that they do not want African-Americans wearing their hair in dreadlock hairstyles.'" (Doc. 28 at 11–12). This statement suggests that the enforcement of the dreadlock policy, as applied to Key, was not solely about her hair—but was instead a proxy for her race.  The comment combined with the back and forth about what the dreadlock policy actually required support a plausible claim for intentional race discrimination, so the Defendants' motions to dismiss the race discrimination claim based on disparate treatment are due to be DENIED.

## II.    Disparate impact

HMMA also asserts that the Plaintiff cannot plead around *Catastrophe Mgmt. Solutions* by reframing her claim as a disparate impact claim.  (Doc. 30 at 9–10).  For her disparate impact claim, the Plaintiff argues that she fulfilled the pleading requirements by alleging "she wore her hair neat, within policy, and in a manner commonly worn by African

---

[7] It is important to clarify that this Court is not contravening Eleventh Circuit precedent that dreadlocks are not an immutable characteristic under Title VII.  This Court's holding at this juncture has nothing to do with the mutable nature of dreadlocks.  Instead, in this case, the Plaintiff has pleaded sufficient facts to show that the use of grooming policy was a proxy for underlying race discrimination.

23

Americans" and "the alleged policy used to terminated [sic] Key creates a disparate impact on African Americans." (Doc. 34 at 10).

To establish a disparate impact claim, a plaintiff must first identify the specific employment practice that allegedly has a disproportionate impact," and then "establish causation by offering statistical evidence sufficient to show that the challenged practice has resulted in prohibited discrimination." *Armstrong v. Flowers Hosp., Inc.*, 33 F.3d 1308, 1314 (11th Cir. 1994). To support her disparate impact claim, the Plaintiff solely pleads, "Defendants (sic) purported policy creates a disparate impact on African Americans." (Doc 28 at 17). Although the Plaintiff identified a specific employment practice that allegedly has a disparate impact, she fails to plead any factual allegations to support the claim that the dreadlocks policy resulted in a disparate impact on African Americans. Because the Plaintiff fails to plead anything beyond conclusory allegations of the disparate impact of the Defendants' dreadlock policy, the Plaintiff fails to state a plausible claim for relief for disparate impact discrimination. Therefore, Defendants' motions to dismiss the race discrimination claim based on disparate impact are due to be GRANTED.

### b. Pregnancy Discrimination

HMMA argues that Plaintiff has not plausibly pleaded enough facts to support a claim of pregnancy discrimination. HMMA asserts that the Plaintiff did not adequately allege that it knew of her pregnancy or that HMMA influenced any other defendants. (Doc. 30 at 13-14). Dynamic does not move for dismissal of the Plaintiff's pregnancy discrimination count on any basis other than the failure to comply with administrative prerequisites prior to filing suit. *See* Doc. 32.

The Plaintiff responds by arguing that she pleaded enough facts that the Defendants discriminated against her because of her pregnancy. (Doc. 34 at 12). She argues that it can be inferred that pregnancy "was a motivating factor in the employment decision by the mere mention of her pregnancy in close proximity to her discipline." (*Id.* at 13). She alleges that her hairstyle only became a problem after she told her supervisors she was pregnant. (Doc. 28 at 14). She also alleges that the Court can infer discriminatory motive from the fact that Robinson called and asked about her baby's due date. (Doc. 34 at 13).

"The PDA amended Title VII to add that discrimination because of sex or on the basis of sex, includes discrimination on the basis of pregnancy, childbirth, or related medical conditions." *Hicks v. City of Tuscaloosa, Ala.*, 870 F.3d 1253, 1258 (11th Cir. 2017) (internal quotations omitted); *Valentine v. Legendary Marine FWB, Inc.*, 2010 WL 1687738, at *4 (N.D. Fla. Apr. 26, 2010) ("Discrimination on the basis of sex includes discrimination on the basis of pregnancy or childbirth."). Courts use the same framework for a pregnancy discrimination claim as other claims of discrimination. *Chapter 7 Trustee v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1255 (11th Cir. 2012). To state a prima facie case for pregnancy-discrimination, the Plaintiff must allege that "(1) she [was pregnant]; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) employment or disciplinary policies were differently applied to her." *Poague v. Huntsville Wholesale Furniture*, 369 F. Supp. 3d 1180, 1195 (N.D. Ala. 2019) (brackets in original). However, like her Title VII race discrimination claim, the Plaintiff is not required to plead facts sufficient to establish a prima facie pregnancy discrimination claim, only that she pleads enough facts upon which relief may be plausibly granted.

Here, the Plaintiff alleges that her supervisors began to discriminate against her immediately after she notified them of her pregnancy. (Doc. 28 at 10). The Plaintiff further asserts that although the Defendants did not question the manner in which she wore her hair in previous encounters—including that day—Williams, an HEA employee whom the Plaintiff alleges was also employed by HMMA, told the Plaintiff that she could not wear her hair in dreadlocks. The Plaintiff asserts that "minutes" after she was sent home, Robinson called and asked when her baby was due and if her doctor knew she would be lifting boxes. (*Id.*). The Plaintiff has plausibly pleaded enough facts to demonstrate that the very close temporal proximity of her disclosing her pregnancy was linked to the beginning of the Defendants' alleged discriminatory conduct. The extremely close temporal proximity alleged here is enough to survive a motion to dismiss. *See Brungart v. Bellsouth Telecomm., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000). Therefore, HMMA's motion to dismiss Key's pregnancy discrimination claim is due to be DENIED.

### c. Retaliation

HMMA asserts that the Plaintiff failed to allege a plausible claim of retaliation. Dynamic seeks to dismiss the Plaintiff's retaliation claim against it for the reasons asserted by HMMA. (Doc. 32 at 12). In light of Eleventh Circuit precedent in *Catastrophe Mgmt. Solutions*, the Defendants argue that it was unreasonable for the Plaintiff to believe that the enforcement of the dreadlocks ban was discriminatory and therefore her complaining about it was not a protected activity.

In response, the Plaintiff argues that her complaint was about race discrimination and not just about her hairstyle, and that the Defendants knew this. The Plaintiff alleges

she pleaded enough facts to show that Defendants subjected her to discrimination based on her race. She points to two examples that support an inference that she was targeted based on her race. She points to the statement that the "Koreans" did not want "African Americans" to wear their hair in dreadlocks, and no supervisor could point to any policy that applied to Plaintiff. (Doc. 34 at 14). She also alleges that she was summoned to speak with her supervisors after she complained about discrimination. (*Id.*). In her complaint, Key alleges that in the meeting with the Defendants' employees, she was told that she and her situation were going to be problematic. (Doc. 28 at 12). And she was later told by Dynamic employees that her filing a complaint was a serious offense. (*Id.*).

To establish a prima facie case of retaliation, a plaintiff must show that "(1) she engaged in statutorily protected activity, (2) an adverse employment action occurred, and (3) the adverse action was causally related to plaintiff's protected activities." *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 959 (11th Cir. 1997). To establish a causal connection, a plaintiff only has to demonstrate "that the protected activity and the adverse action were not wholly unrelated." *Matamoros v. Broward Sheriff's Office*, 2 F.4th 1329, 1336 (11th Cir. 2021) (citing *Shortz v. City of Plantation*, 344 F.3d 1161, 1180 n.30 (11th Cir. 2003)). In cases in which plaintiffs attempt to establish causation through temporal proximity, the temporal proximity must be "very close." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001).

In this case, the Plaintiff's allegations support a plausible retaliation claim. Although the Defendants are correct that the Plaintiff initially complained to her trainer about how she was treated regarding her hair, which precipitated a meeting with her supervisors, it

was only after this meeting with her supervisors that she was told that the Koreans "do not want African-Americans wearing their hair in dreadlock hairstyles" and that the Plaintiff and her situation were "going to be a problem." (Doc. 28 at 12).  After this meeting, the Plaintiff wrote a formal complaint against Hyundai, Robinson, a Dynamic employee, and Williams, an HEA employee, and stated she wanted to file it with human resources. (*Id*). The Plaintiff has pleaded sufficient facts to show that her complaint, which was shortly followed by her termination, was not just about her hair because she complained after she was told that the dreadlock ban was specific to African Americans.  While at the Dynamic facility to file her complaint, Dynamic employees told her that a complaint "would be fruitless and that filing a discrimination complaint was a serious offense." (*Id*.) While at Dynamic, Key was also told that Williams did not want her back at the Hyundai plant because of her "hair and 'something else.'" (*Id*.)

In addition, the Plaintiff argues that the HEA and HMMA conflate "reasonable belief" with a "correct belief." (Doc. 34 at 15).  She asserts that the correct standard is a "'reasonable form of good faith belief' that the conduct complained of is unlawful" and not that an employee "need to be correct in her beliefs or consult a lawyer for expert analysis for her complaint." (*Id.*).  The Plaintiff does not need to prove the conduct about which she complained "was actually unlawful in order to establish a prima facie case." *Little,* 103 F.3d at 960.  Based on the nature of her complaint which was made after her meeting with staff at the Hyundai plant, and the close temporal proximity of her termination of employment at the Hyundai plant, the Plaintiff has pleaded enough facts to support a

plausible claim of race retaliation upon which relief might be granted, so the Defendants' motions to dismiss the retaliation claim are due to be DENIED.

**B. 42 U.S.C. § 1981**

Although this Court found that the Plaintiff had not exhausted her administrative remedies against HEA as to her Title VII claims, section 1981 has no such administrative prerequisites.

**a. Race Discrimination**

Although the Defendants do not differentiate their Title VII arguments from their §1981 arguments in their briefs, the arguments appear to be the same—namely that hairstyle discrimination is not cognizable under either statute. In response, the Plaintiff argues that she has pleaded enough facts to support a disparate treatment claim[8] because she identifies statements where the Defendants described her hairstyle in the negative context of race.

Section 1981 provides, "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens . . . ." 42 U.S.C. § 1981(a). The statute's prohibition against race discrimination in the making and enforcement of contracts includes employment contracts. *Ferrill v. Parker Grp., Inc.*, 168 F.3d 468, 472 (11th Cir. 1999).

> To state a claim for race discrimination under § 1981, plaintiffs must allege facts establishing: (1) that the plaintiff is a member of a racial minority; (2) that the defendant intended to discriminate on the basis of race; and (3) that the discrimination

---

[8] The Plaintiff also argues she brought a disparate impact § 1981 race discrimination claim. However, disparate impact claims are not cognizable under § 1981. *See Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 391 (1982) ("We conclude, therefore, that § 1981, like the Equal Protection Clause, can be violated only by purposeful discrimination.").

concerned one or more of the activities enumerated in the statute.

*Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1270 (11th Cir. 2004).

"The test for intentional discrimination in suits under § 1981 is the same as the formulation used in Title VII discrimination treatment cases." *Ferrill*, 168 F.3d at 472. In this case, by pleading that she is Black and was discriminated against "on the basis of her race in the terms and conditions of her employment," Key satisfies the first and third requirements for a § 1981 race discrimination claim. However, like her Title VII claim, the Defendants argue that Plaintiff fails to show intentional race discrimination because hairstyle discrimination is not a protected characteristic. And because of this, the Defendants argue that the Plaintiff cannot show that the Defendants discriminated against her by terminating her employment. Nevertheless, the Plaintiff has pleaded enough facts to show that her claim for race discrimination goes beyond a neutral application of the dreadlocks policy to her. The Plaintiff instead argues that the Defendants used the policy to target her because of her race and in support of this, the Plaintiff points to the statement that the Koreans "do not want African-Americans wearing their hair in dreadlock hairstyles." (Doc. 28 at 12). Further, when asked by the Plaintiff, the Defendants could not produce a policy that squarely applied to her. (*Id*. at 9). Because the Plaintiff has pleaded sufficient facts to plausibly show that the Defendants terminated her employment based on

30

race discrimination, the Defendants' motions to dismiss on that basis are due to be DENIED.[9]

### b. Retaliation

Even though the Defendants do not distinguish their arguments under § 1981 and Title VII for retaliation, the Courts construes them as the same. Namely, the Defendants argue that the Plaintiff cannot show that she reasonably thought she participated in a protected activity by complaining about how she was treated based on how she wore her hair. The Plaintiff responds that her complaint was not just about hairstyle discrimination but that the Defendants had revealed to her that the policy was based on racial stereotypes.

In addition to prohibiting race discrimination in the formation of employment contracts, § 1981 also prohibits retaliation against workers who engage in statutorily protected activity. *Goldsmith v. Bagby Elevator Co.,* 513 F.3d 1261, 1277 (11th Cir. 2008). The same standard applies to retaliation claims under Title VII and § 1981. Therefore, to prevail on § 1981 retaliation claim, a plaintiff must show that she "engaged in statutorily protected activity, [s]he suffered a materially adverse action, and there was some causal relation between the two events." *Moore v. Grady Mem. Hosp. Corp.*, 834 F.3d 1168, 1176 (11th Cir. 2016). "A complaint about discrimination is protected if the plaintiff could "reasonably form a good faith belief that the alleged discrimination existed." *Jefferson v.*

---

[9] Section 1981 is broad enough to include situations where parties do not "occupy a direct employment relationship" affect the Plaintiff's employment. *See Zaklama, M.D. v. Mt. Sinai Medical Center,* 842 F.2d 291, 294–295 (11th Cir. 1988). Therefore, the Court does not have to determine if an employment relationship existed between HMMA or HEA and the Plaintiff—only whether the Plaintiff has pleaded enough facts that there was sufficient interference by the Defendants of her contractual rights. Because the Plaintiff alleges each of the parties participated in the alleged discriminatory actions and policies that were applied to her, the Plaintiff has met this burden.

*Sewon Am., Inc.*, 891 F.3d 911, 925 (11th Cir. 2018) (quoting *Taylor v. Runyon*, 175 F.3d 861, 869 (11th Cir. 1999).  Similar to the pleading stage under Title VII, a plaintiff is only required to plead enough facts to establish a plausible claim of retaliation pursuant to § 1981.

Here the Plaintiff has pleaded enough facts to support a plausible claim of § 1981 retaliation.  Although the Defendants argue that the Plaintiff could not have reasonably thought that hairstyle discrimination was protected, the Plaintiff is correct that she could maintain a retaliation claim she acted on a good faith reasonable belief in complaining about conduct prohibited by § 1981. The Plaintiff has pleaded enough facts that she was retaliated against for complaining about race discrimination.  The Defendants' argument about hairstyle discrimination is unavailing because the Plaintiff decided to file a formal complaint against her employer *after* she met with her supervisors and they explained to her that the Koreans did not want African Americans to wear their hair in dreadlocks. The Plaintiff also pleaded that she was terminated from her employment at the Hyundai plant on the same day she submitted her complaint about race discrimination.  Accordingly, the Plaintiff has alleged sufficient facts to support a claim of § 1981 retaliation, and the Defendants' motions to dismiss the retaliation claim are due to be DENIED.

# VI. CONCLUSION

Accordingly, for the reasons as stated, it is

ORDERED as follows:

1.  Defendant HMMA's motion to dismiss, (doc. 30), is GRANTED with respect to the Plaintiff's disparate impact discrimination claims under Title VII and § 1981. The motion is DENIED in all other respects.

2.  Defendant HEA's motion to dismiss, (doc. 31), is GRANTED with respect to the Plaintiff's Title VII claims contained in Counts 1, 2, and 4 and with respect to the Plaintiff's disparate impact discrimination claims under Title VII and § 1981. The motion is DENIED with respect the Plaintiff's § 1981 claims contained in Counts 3 and 5; and

3.  Defendant Dynamic's motion to dismiss, (doc. 32), is GRANTED with respect to the Plaintiff's disparate impact discrimination claims under Title VII and § 1981. The motion is DENIED in all other respects.

DONE this 31st day of August, 2021.

/s/ Emily C. Marks
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE

AO 133    (Rev. 12/09) Bill of Costs

# UNITED STATES DISTRICT COURT

for the

Middle District of Alabama

| | |
|---|---|
| DAVITA M. KEY<br><br>v.<br><br>HYUNDAI MOTOR MANUFACTURING,<br>ALABAMA, LLC, et al. | )<br>)<br>)  Case No.: 2:19-CV-767-ECM<br>)<br>) |

## BILL OF COSTS

Judgment having been entered in the above entitled action on _____02/09/2023_____ against _____Davita M. Key_____ ,
                                                                                                      *Date*

the Clerk is requested to tax the following as costs:

| | |
|---|---|
| Fees of the Clerk . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ _____ |
| Fees for service of summons and subpoena . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | _____ |
| Fees for printed or electronically recorded transcripts necessarily obtained for use in the case . . . . . . | 4,636.10 |
| Fees and disbursements for printing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | _____ |
| Fees for witnesses *(itemize on page two)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 0.00 |
| Fees for exemplification and the costs of making copies of any materials where the copies are<br>necessarily obtained for use in the case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | _____ |
| Docket fees under 28 U.S.C. 1923 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | _____ |
| Costs as shown on Mandate of Court of Appeals . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | _____ |
| Compensation of court-appointed experts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | _____ |
| Compensation of interpreters and costs of special interpretation services under 28 U.S.C. 1828 . . . . . | _____ |
| Other costs *(please itemize)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | _____ |
| TOTAL | $    4,636.10 |

*SPECIAL NOTE:* Attach to your bill an itemization and documentation for requested costs in all categories.

### Declaration

I declare under penalty of perjury that the foregoing costs are correct and were necessarily incurred in this action and that the services for which fees have been charged were actually and necessarily performed. A copy of this bill has been served on all parties in the following manner:

[✓] Electronic service          [ ] First class mail, postage prepaid

[ ] Other: _____

s/ Attorney: _____

Name of Attorney: T. Matthew Miller

For: _____HYUNDAI ENG AMERICA, INC._____          Date: 3.17.2023
         *Name of Claiming Party*

### Taxation of Costs

Costs are taxed in the amount of _____$4,636.10_____ and included in the judgment.

*Trey Granger,* Clerk of Court          By: _____          4/13/2023
      *Clerk of Court*                          *Deputy Clerk*                          *Date*

AO 133    (Rev. 12/09)  Bill of Costs

# UNITED STATES DISTRICT COURT

## for the

### MIDDLE DISTRICT OF ALABAMA

DAVID M. KEY          )
                  )
v.           )    Case No.: 2:19-CV-767-ECM-SMD
HYUNDAI MOTOR MANUFACTURING   )
ALABAMA, LLC, et al.        )

## BILL OF COSTS

Judgment having been entered in the above entitled action on ___02/10/2023___ against ___Davita M. Key___ ,
                              *Date*

the Clerk is requested to tax the following as costs:

| | |
|---|---:|
| Fees of the Clerk ................................................... | $ _____ |
| Fees for service of summons and subpoena ................................. | _____ |
| Fees for printed or electronically recorded transcripts necessarily obtained for use in the case ...... | 3,547.50 |
| Fees and disbursements for printing ...................................... | _____ |
| Fees for witnesses *(itemize on page two)* ................................. | 0.00 |
| Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case........................................ | 396.00 |
| Docket fees under 28 U.S.C. 1923 ....................................... | _____ |
| Costs as shown on Mandate of Court of Appeals ............................. | _____ |
| Compensation of court-appointed experts ................................. | _____ |
| Compensation of interpreters and costs of special interpretation services under 28 U.S.C. 1828 ..... | _____ |
| Other costs *(please itemize)* ......................................... | _____ |
| TOTAL  $ | 3,943.50 |

*SPECIAL NOTE:*  Attach to your bill an itemization and documentation for requested costs in all categories.

### Declaration

    I declare under penalty of perjury that the foregoing costs are correct and were necessarily incurred in this action and that the services for which fees have been charged were actually and necessarily performed.  A copy of this bill has been served on all parties in the following manner:

[✓]  Electronic service    [ ]  First class mail, postage prepaid

[ ]  Other: _____

s/ Attorney:   s/ Whitney R. Brown _____

    Name of Attorney:  Whitney R. Brown _____

For: _____Hyundai Motor Manufacturing Alabama, LLC_____   Date:  ___03/17/2023___
              *Name of Claiming Party*

### Taxation of Costs

Costs are taxed in the amount of   **$ 3,943.50**   and included in the judgment.

*Trey Granger,* **Clerk of Court**   By: _____   4/13/2023
   *Clerk of Court*                    *Deputy Clerk*            *Date*