# UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

August 05, 2026

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number:  24-11069-GG   ; 24-11126 -GG
Case Style:  Davita Key v. Dynamic Security, Inc.
District Court Docket No:  2:19-cv-00767-ECM-SMD

Opinion Issued
Enclosed is a copy of the Court's decision issued today in this case. Judgment has been entered today pursuant to FRAP 36. The Court's mandate will issue at a later date pursuant to FRAP 41(b).

Petitions for Rehearing
The time for filing a petition for panel rehearing or rehearing en banc is governed by 11th Cir. R. 40-2. Please see FRAP 40 and the accompanying circuit rules for information concerning petitions for rehearing. The Court has proposed amending 11th Cir. R. 40-1 (Number of Copies) to no longer require paper copies of a petition for panel rehearing or a petition for rehearing en banc. Based on the proposed amendment, other than an original petition filed in paper by a non-electronic filer, **parties are asked not to submit any paper copies** of a petition for panel rehearing or a petition for rehearing en banc.

Costs
No costs are taxed.

Bill of Costs
If costs are taxed, please use the most recent version of the Bill of Costs form available on the Court's website at www.ca11.uscourts.gov. For more information regarding costs, see FRAP 39 and 11th Cir. R. 39-1.

Attorney's Fees
The time to file and required documentation for an application for attorney's fees and any objection to the application are governed by 11th Cir. R. 39-2 and 39-3.

Appointed Counsel
Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation via the eVoucher system no later than 45 days after issuance of the mandate or the filing of a petition for writ of certiorari. Please contact the CJA Team at (404) 335-6167 or

cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

<u>Clerk's Office Phone Numbers</u>

| | | | |
|---|---|---|---|
| General Information: | 404-335-6100 | Attorney Admissions: | 404-335-6122 |
| Case Administration: | 404-335-6135 | Capital Cases: | 404-335-6200 |
| CM/ECF Help Desk: | 404-335-6125 | Cases Set for Oral Argument: | 404-335-6141 |

OPIN-1 Ntc of Issuance of Opinion

**FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-11069

_____

DAVITA M. KEY,

*Plaintiff-Appellee,*

*versus*

HYUNDAI ENGINEERING AMERICA, INC.,

*Defendant,*

DYNAMIC SECURITY, INC.,

*Defendant-Appellant.*

_____

Appeals from the United States District Court
for the Middle District of Alabama
D.C. Docket No. 2:19-cv-00767-ECM-SMD

_____

_____

No. 24-11126

_____

DAVITA M. KEY,

*Plaintiff-Appellant,*

*versus*

HYUNDAI MOTOR MANUFACTURING ALABAMA, LLC,
HYUNDAI ENGINEERING AMERICA, INC.,
DYNAMIC SECURITY, INC.,

*Defendants-Appellees.*

————————————

Appeals from the United States District Court
for the Middle District of Alabama
D.C. Docket No. 2:19-cv-00767-ECM-SMD

————————————

Before WILLIAM PRYOR, Chief Judge, and LAGOA and KIDD, Circuit Judges.

KIDD, Circuit Judge:

Davita Key is a Black woman who wears her hair in a natural style colloquially known as "dreadlocks" ("locs"). Key claims that the defendants, who were her employers, racially discriminated against her because she wore her hair in locs. She also claims that they retaliated against her for complaining about that discrimination. After the district court dismissed some of Key's claims, she went to trial solely against Dynamic Security on her retaliation claim. A jury awarded her a total of $811,264 in damages.

Dynamic Security appeals the judgment against it, and Key appeals the district court's orders dismissing some of her claims against Dynamic Security and all of her claims against the other defendants.

We affirm the district court's judgment as to Hyundai Motor Manufacturing Alabama and Hyundai Engineering America. As to Dynamic Security, we affirm the district court's judgment against Key's § 1981 race discrimination claim. But we find that the district court should not have presumed at the summary judgment stage that Key received notice of her right to sue. As a result, the district court should not have ruled that her Title VII claims were untimely. We also find that the district court abused its discretion when it did not instruct the jury to determine whether Dynamic Security discriminated against Key on the basis of her race. So we reverse the district court on these issues, vacate the judgment against Dynamic Security, and remand the case against Dynamic Security for a new trial.

## I. BACKGROUND

A. *Underlying Facts*

Key submitted a job application to work for Dynamic Security, Inc. ("Dynamic"), in the mailroom at the Hyundai Motor Manufacturing Alabama ("HMMA") plant in Montgomery, Alabama. Among other things, Dynamic provides security services to HMMA. Dynamic has a grooming policy that applies to all uniformed security officers assigned to HMMA, including those

assigned to the mailroom. Dynamic's grooming policy prohibits locs and similar hairstyles.

On July 19, 2017, Key interviewed for the mailroom job. Gloria Robinson, an employee of Dynamic, and Cassandra Williams, an employee of Hyundai Engineering America ("HEA"), attended Key's interview. During the interview, Robinson told Key that her locs might be a problem. After some discussion, Key showed Robinson and Williams a picture of her locs styled in a manner called an "updo," and both women said "okay." Dynamic hired Key for the mailroom position.

During Key's training, Dynamic provided her with the Security Officer's Handbook ("Handbook"). The Handbook included a section titled "Waiver of Trial By Jury Policy." Key admits that she skimmed parts of the Handbook and signed an "Acknowledgement and Receipt of Employee Handbook" form, confirming she had received the Handbook and was bound by its policies. But at trial, Key testified that she could not recall whether she read the jury trial waiver before or after starting her job in the mailroom.

Key appeared for her first day of work with her hair styled in locs. She was sent home before the end of the workday because of her hair. Key testified that Robinson told her that "the Koreans" at Hyundai "send these memos, and they don't want African Americans wearing their hair like this because . . . you have people like Todd Strange, who . . . was the mayor at that time . . . he doesn't, like, basically want to see me and my hair like this." Key thought the statement was racist.

24-11069                  Opinion of the Court                    5

The next day, Key's hair remained in locs, but she wore a hat to work. When Key's trainer asked why she left early the prior day, Key said that she was sent home because management had an issue with her hair. Later that day, Key had a meeting with Robinson and another manager, Maurice Chambliss. During the meeting, Robinson stated: "So I heard that you feel like you been discriminated against." Key responded that she was wearing a hat, as instructed. Robinson replied, "This is going to be a problem. You're going to be a problem." When Key again said she was wearing a hat covering her hair, as instructed, Robinson said, "This is not about your hat, like, this is not about your hat. This is not about your hair." After the meeting, Key went back to the mailroom and asked whether her trainer had told management that "[she] felt discriminated against." The trainer responded, "Yes, because that's what you said."

Key then told Chambliss she would like to speak with someone in human resources so that she could make an official complaint of discrimination. Chambliss told Key she would have to speak to Robinson. When Key asked if there was anyone else with whom she could speak, Chambliss called Robinson and asked what to do. Key made an official, written complaint of discrimination and gave the complaint to Chambliss. Key complained that she "was being discriminated against because [she had her] hair in dreadlocks, and also because [she] was pregnant." Key testified that she viewed her complaint as alleging race discrimination.

Key then asked Chambliss if she could leave to speak with Ray Cureton at Dynamic's office. Key thought Cureton was in Dynamic's human resources department, but, in fact, he was Dynamic's district manager and acting operations manager with authority over security at the Montgomery plant. Chambliss confirmed that if Key left to speak with Cureton, she would be able to return to work, so Key left to meet with Cureton. When Key spoke with Cureton, he asked Key if she was going to sue them. After Key disclosed the events of her first day, Cureton told Key that she could not return to work.

B. *EEOC Charges*

Key completed a U.S. Equal Employment Opportunity Commission ("EEOC") intake questionnaire on August 2, 2017, the day after her last day of work. She named "Cassandra Williams, AMCO" and Gloria Robinson as the persons responsible for the alleged discrimination. "AMCO" was the previous name for HEA. On August 3, 2017, the EEOC issued a charge of discrimination against Dynamic Security, which Key signed. The EEOC issued a second charge against HMMA, which Key also signed. Once Dynamic responded, the EEOC mailed Key a copy of Dynamic's statement. The EEOC also mailed Key a conciliation letter on her HMMA charge.

On March 1, 2019, the EEOC issued Key a right-to-sue letter for her charge against Dynamic. But Key claims she never received this right-to-sue letter. On July 12, 2019, the EEOC also issued Key a right-to-sue letter against HMMA, which she received.

24-11069                 Opinion of the Court                 7

C. *The District Court Litigation*

On October 10, 2019, Key filed a complaint against Dynamic, HEA, and HMMA, alleging race discrimination, pregnancy discrimination, and retaliation under Title VII. Key subsequently filed an amended complaint against the same parties alleging five claims against all three defendants: (1) pregnancy discrimination under Title VII, (2) race discrimination under Title VII, (3) race discrimination under 42 U.S.C. § 1981, (4) retaliation under Title VII, and (5) retaliation under 42 U.S.C. § 1981.

All three defendants moved to dismiss the amended complaint. The district court granted in part and denied in part the motions, dismissing the disparate-impact race discrimination claims under Title VII and § 1981 against all three defendants and all the Title VII claims against HEA. Each of the defendants then moved for summary judgment. The district court granted summary judgment on all claims Key brought against HEA and HMMA, and it granted summary judgment on all claims Key brought against Dynamic except the § 1981 retaliation claim, which proceeded to trial.

Dynamic then filed a motion to strike Key's demand for a jury trial, arguing that Key had signed an agreement that included an express waiver of a right to trial by jury. The district court denied Dynamic's motion to strike without an explanation. Dynamic then moved to certify an interlocutory appeal of the district court's denial of its motion to strike the jury demand. The district court denied this motion as well. But in its order denying the motion, the district court also explained that it denied Dynamic's previous

motion to strike the jury demand because "it did not find evidence that Key 'knowingly and intentionally' waived her Seventh Amendment right to a trial by jury."

During the trial for Key's § 1981 retaliation claim, Dynamic proposed a jury instruction regarding the first element of the retaliation claim—protected activity. But the district court declined to use Dynamic's proposed instruction and, instead, used its own instruction. The jury returned a verdict in favor of Key and awarded compensatory backpay damages of $85,200, compensatory emotional pain and suffering damages of $214,864, and punitive damages of $511,200, plus interest.

Dynamic appeals the district court's judgment against it while Key appeals the district court's orders on her other claims.

## II. STANDARD OF REVIEW

"We review the district court's order granting summary judgment *de novo*." *Saregama India Ltd. v. Mosley*, 635 F.3d 1284, 1290 (11th Cir. 2011) (citing *Acevedo v. First Union Nat'l Bank*, 476 F.3d 861, 865 (11th Cir. 2007)). "In conducting our review, we apply the same legal standards as the district court . . . [and] review the facts in the light most favorable to the non-moving party and draw all reasonable inferences in [its] favor." *Id.* (citation modified).

"We [also] review jury instructions de novo to determine whether they misstate the law or mislead the jury to the prejudice of the objecting party." *Conroy v. Abraham Chevrolet–Tampa, Inc.*, 375 F.3d 1228, 1233 (11th Cir. 2004) (emphasis omitted) (quoting

24-11069                    Opinion of the Court                    9

*Palmer v. Bd. of Regents of the Univ. Sys. of Ga.*, 208 F.3d 969, 973 (11th Cir. 2000)).

Finally, "[w]e review only for an abuse of discretion a district court's refusal to give a requested jury instruction." *Pensacola Motor Sales Inc. v. E. Shore Toyota, LLC*, 684 F.3d 1211, 1224 (11th Cir. 2012) (citation omitted). "In refusing to give a requested jury instruction, '[a]n abuse of discretion is committed only when (1) the requested instruction correctly stated the law, (2) the instruction dealt with an issue properly before the jury, and (3) the failure to give the instruction resulted in prejudicial harm to the requesting party.'" *Id.* (quoting *Burchfield v. CSX Transp., Inc.*, 636 F.3d 1330, 1333–34 (11th Cir. 2011)).

### III. DISCUSSION

A. *Key's Claims Against Dynamic Security, Inc.*

1. Summary Judgment

The district court granted summary judgment on Key's Title VII claims on timeliness grounds, finding that Key sued Dynamic more than ninety days after the presumed date that she received the right-to-sue letter. *See* 42 U.S.C. § 2000e-5(f)(1). Key maintains that she never received in the mail the EEOC's letter notifying her of her right to sue Dynamic. Nevertheless, the district court found that the circumstances of this case raised "a presumption that the EEOC properly mailed notice of Key's right to sue Dynamic on March 1, 2019." It relied on evidence that Key received mail from the EEOC at the same address prior to the alleged failure to receive the right-to-sue letter and that Key failed to identify "any evidence

demonstrating there may have been a flaw in the mailing procedure." Thus, the district court presumed that Key received the letter on March 4, 2019—three days after the EEOC mailed it—and that Key was at that point on notice of her right to sue Dynamic. With that presumption, the deadline for Key to sue Dynamic was June 2, 2019. *See* 42 U.S.C. § 2000e-5(f)(1). Because she filed suit on October 10, 2019—more than three months after the presumed deadline—the district court granted summary judgment based on lack of timeliness.

Key argues that the district court should have credited her testimony at the summary judgment stage and sent the timeliness question to the jury. In her view, because there was no indication that she should be held at fault for the failure to receive the notice, the district court should not have presumed that she received it within three days of mailing. We agree.

Typically, when we consider whether a person has exhausted administrative remedies before the EEOC, "statutory notification is complete only upon actual receipt of the right to sue letter." *Kerr v. McDonald's Corp.*, 427 F.3d 947, 952 (11th Cir. 2005) (quoting *Franks v. Bowman Transp. Co.*, 495 F.2d 398, 404 (5th Cir. 1974), *rev'd on other grounds,* 424 U.S. 747 (1976)). But instead of "a rule determining when a complainant has received notice of the right to sue," we have "imposed upon complainants some 'minimum responsibility . . . for an orderly and expeditious resolution' of their claims." *Id.* (quoting *Zillyette v. Cap. One Fin. Corp.*, 179 F.3d 1337, 1340 (11th Cir. 1999) (citation modified)). We analyze the

ninety-day limitations period for a person to sue after receiving a right-to-sue letter "on a case-by-case basis to fashion a fair and reasonable rule for the circumstances of each case, one that would require plaintiffs to assume some minimum responsibility . . . without conditioning a claimant's right to sue . . . on fortuitous circumstances or events beyond [their] control." *Zillyette*, 179 F.3d at 1340 (citation omitted). We have "applied a presumption of three days for receipt by mail, akin to the time period established in Fed. R. Civ. P. 6(e)." *Kerr*, 427 F.3d at 953 n.9 (citing *Zillyette*, 179 F.3d at 1342). "Receipt is presumed when a complainant is unable to show that her failure to receive [a right-to-sue] letter was in no way her fault." *Id.* at 952.

In her deposition, Key testified to the following: (1) Key had never seen the Dynamic right-to-sue letter before, (2) no one except Key and her husband retrieved their household mail (3) she received three other letters from the EEOC within a few months, and (4) Key believed her charges against Dynamic and HMMA were combined and that the right-to-sue letter she received regarding HMMA was also her right-to-sue letter regarding Dynamic. She also testified that she engaged in email communications with the investigator at the EEOC, but in those emails, the EEOC never notified her that it had dismissed the charge against Dynamic. Absent any evidence of negligence on Key's part, we find that Key has met her burden to establish that the failure to receive the right-to-sue letter was in no way her fault and that she took "minimum responsibility . . . for an orderly and expeditious resolution of [her] claims." *Id.* (citation modified).

The Third Circuit addressed a similar situation. *Hayes v. N.J. Dep't of Hum. Servs.*, 108 F.4th 219 (3d Cir. 2024). In *Hayes*, the plaintiff filed a charge with the EEOC but, after deciding not to pursue the case, the EEOC mailed the right-to-sue letter to the plaintiff on March 11, 2020. *Id.* at 220. The plaintiff claimed that she did not receive the letter in the mail or otherwise see the letter until August 27, 2020. *Id.* at 221. The plaintiff filed her lawsuit on November 24, 2020—"more than eight months after the mailing date listed on the EEOC's letter but fewer than 90 days after [the plaintiff] . . . claim[ed] to have received it." *Id.* at 221. To determine the date that the ninety-day filing period began, the Third Circuit applied a three-day presumption of receipt by mail. *Id.* at 224 (citing *Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 239 (3d Cir. 1999)). The court then determined whether the plaintiff provided sufficient evidence to rebut the three-day presumption of receipt. *See id.*

The Third Circuit concluded that the plaintiff "introduced enough evidence to rebut the three-day presumption and defeat summary judgment." *Id.* The court considered the plaintiff's sworn declaration that "she never received the right-to-sue letter by mail and first saw it after her lawyer obtained it from the EEOC on August 27," and the sworn statement from her lawyer's office manager "that the law office never received the letter by mail, despite having scanned and documented all incoming correspondence." *Id.* Because the plaintiff's declarations "create[d] a dispute of material fact sufficient to defeat summary judgment on timeliness," the

court determined that "[a] jury therefore must resolve when [the plaintiff] first received the right-to-sue letter." *Id.*

We adopt the Third Circuit's reasoning in *Hayes*. Because Key "introduced enough evidence to rebut the three-day presumption" and "create[d] a dispute of material fact sufficient to defeat summary judgment on timeliness," the district court erred by using the presumption to grant summary judgment in favor of Dynamic on Key's Title VII claims. *See id.* Therefore, at trial, the jury must determine the date by which Key was on notice of her right to sue Dynamic. *See id.*

### 2. Jury Trial Waiver

Dynamic moved to strike Key's jury demand, but the district court denied the motion. Dynamic argues that the district court erred because Key waived her right to a jury trial. We disagree.

The Seventh Amendment guarantees the right to a jury trial in civil cases. U.S. CONST. amend. VII. A party may waive the right to a jury trial if the waiver is made knowingly and voluntarily. *See Brookhart v. Janis*, 384 U.S. 1, 4 (1966) ("[F]or a waiver [of constitutional rights] to be effective it must be clearly established that there was 'an intentional relinquishment or abandonment of a known right or privilege.'" (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938))). Because the right to a jury trial is fundamental, courts "must indulge every reasonable presumption against waiver." *LaMarca v. Turner*, 995 F.2d 1526, 1544 (11th Cir. 1993) (citation modified).

The district court declined to strike Key's jury demand because it could not find that Key made a knowing and voluntary waiver of her right to a jury trial. Key did not sign the portion of the Handbook where the waiver language was located or any other page of the Handbook. Instead, she signed a separate form agreeing to be bound by the "rules, regulations, and policies set forth in th[e] [H]andbook." But a waiver is not a rule, regulation, or policy, and the signed form did not specifically mention the right to trial by jury. So a signature expressing agreement to be bound by the many "rules, regulations, and policies set forth in th[e] [H]andbook" does not evince Key's intent specifically to waive her fundamental right to a jury trial. Additionally, Key testified that she did not remember whether she read the jury waiver before beginning work at Dynamic.

We conclude that Dynamic failed to establish that Key read and understood the meaning of the Handbook's jury waiver provision before signing the acknowledgement form. We therefore affirm the district court's decision on this issue.

### 3. Jury Instruction Challenge

At trial, the district court gave the following instruction regarding protected activity:

> For the first element, protected activity, Ms. Key claims that she engaged in protected activity when she complained to Dynamic that she felt discriminated against based on her race. That action is "protected activity" if it was based on Ms. Key's good-

24-11069                Opinion of the Court                15

faith, reasonable belief that she was discriminated against because of her race. Ms. Key had a "good faith" belief if she honestly believed that she was discriminated against because of her race. Ms. Key had a "reasonable" belief if a reasonable person would, under the circumstances, believe that she was discriminated against because of her race. Ms. Key does not have to prove that she was actually discriminated against because of her race. But she must prove that she had a good-faith, reasonable belief that discrimination occurred.

Dynamic argues that the district court abused its discretion by charging the jury with this instruction over its objection. We agree.

"An employee's complaint about discrimination constitutes protected activity if the employee could 'reasonably form a good faith belief that the alleged discrimination existed.'" *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 924 (11th Cir. 2018) (quoting *Taylor v. Runyon*, 175 F.3d 861, 869 (11th Cir. 1999)). Additionally, the plaintiff must "explicitly or implicitly communicate [the] belief that the [challenged] practice constitutes unlawful employment discrimination." *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1311 (11th Cir. 2016) (citation modified) (quoting EEOC Compl. Man. (CCH) § 8–11–B(2) (2006)).

The district court's protected activity instruction omitted the second requirement: It failed to instruct the jury to determine whether Key explicitly or implicitly communicated her belief that she had been discriminated against because of her race. Instead, the court's instructions erroneously presumed that Key had met her

16                    Opinion of the Court                    24-11069

burden on this issue: "[S]he complained to Dynamic that she felt discriminated against based on her race."

Because the jury was not properly instructed on protected activity, we reverse the district court, vacate the judgment, and remand the case for a new trial. Since we are remanding the case for a new trial, we need not address the remainder of the arguments related to the previous trial.

B. *Key's Claims Against HMMA and HEA*

Key asks us to reverse the district court's dismissals of her Title VII and § 1981 claims against HEA and HMMA and her § 1981 race discrimination claim against Dynamic at both the motion-to-dismiss and summary-judgment stages. After careful consideration of the record and the parties' briefs, and with the benefit of oral argument, we find no reversible error in the district court's conclusions. Accordingly, we affirm as to these issues.

## IV. CONCLUSION

We **AFFIRM** the district court's dismissals and grants of summary judgment on Key's claims against HEA and HMMA and Key's § 1981 race discrimination claim against Dynamic. But as to Key's other claims against Dynamic, we **REVERSE** the district court's rulings as set forth above, we **VACATE** the district court's judgment, and we **REMAND** the case for further proceedings consistent with this opinion.